MANATT, PHELPS & PHILLIPS, LLP
CHRISTOPHER CHATHAM (CA Bar #240972)
  CChatham@manatt.com
NATHANIEL L. BACH (CA Bar #246518)
  NBach@manatt.com
SARAH E. MOSES (CA Bar #291491)
  SMoses@manatt.com
2049 Century Park East
Suite 1700
Los Angeles, California  90067
Telephone:   (310) 312-4000
Facsimile:    (310) 312-4224

Attorneys for Defendants
MEGAN ROUP and THE SCULPT SOCIETY, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACY ANDERSON MIND AND BODY, LLC, a Delaware limited liability company; and T.A. STUDIO NEW YORK LLC, a California limited liability company,<br><br>    Plaintiffs,<br><br>    v.<br><br>MEGAN ROUP, an individual; and THE SCULPT SOCIETY, LLC, a California limited liability company,<br><br>    Defendants. | Case No. 2:22-cv-04735-RSWL-E<br><br>Hon. Ronald S.W. Lew<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS MEGAN ROUP AND THE SCULPT SOCIETY, LLC'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT AND SPECIAL MOTION TO STRIKE (ANTI-SLAPP)**<br><br>[*Filed Concurrently with Notice of Motion and Motion to Dismiss Plaintiffs' First Amended Complaint and Special Motion to Strike (Anti-SLAPP); Declaration of Nathaniel L. Bach; and [Proposed] Order*]<br><br>Hearing Date:   Nov. 1, 2022<br>Hearing Time:   10:00 a.m.<br>Location:            TBD<br><br>Complaint Filed:   July 11, 2022<br>FAC Filed:            Sept. 13, 2022<br>Trial Date:            Not yet set |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................... 1

II. FACTUAL BACKGROUND ..................................................................... 3

III. LEGAL STANDARD ................................................................................ 6

IV. ARGUMENT ............................................................................................. 7

  A. Plaintiffs' Copyright Claim Fails as a Matter of Law as Anderson's Exercises Are Noncopyrightable ...................................... 7

  B. Plaintiffs' Lanham Act False Advertising Claim Fails as a Matter of Law ...................................................................................... 12

    1. Plaintiffs Allege No False or Misleading Statement of Fact Upon Which Consumers Would Rely ............................. 13

    2. The Challenged Biographical Quips Are Non-Material .......... 14

    3. Plaintiffs' "False Advertising" Claim Is a Barred "False Designation of Origin" Authorship Claim in Disguise ........... 15

    4. The Biographical Statements Contain No Misrepresentation of the "Nature, Characteristics, Qualities, or Geographic Origin" of Defendants' Services ...... 17

  C. Plaintiffs' Breach of Contract Claim Fails as a Matter of Law ......... 18

  D. Plaintiffs' UCL Claim Is Derivative of Their Failed Lanham Act and Contract Claims, and Thus Also Fails as a Matter of Law ......... 21

  E. Plaintiffs' UCL Claim Should Be Struck Under California's Anti-SLAPP Statute ..................................................................... 23

  F. Because Plaintiffs Have No Viable Federal Claim, the Court Should Decline to Exercise Supplemental Jurisdiction Over Any Surviving State-Law Claim .......................................................... 24

V. CONCLUSION ....................................................................................... 25

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*AMN Healthcare, Inc. v. Aya Healthcare Services, Inc.*,
28 Cal. App. 5th 923 (2018) ............................................................... 20

*Ballinger v. City of Oakland*,
24 F.4th 1287 (9th Cir. 2022) ............................................................... 6

*Baral v. Schnitt*,
1 Cal. 5th 376 (2016) ........................................................................ 24

*Barrett v. Rosenthal*,
40 Cal. 4th 33 (2006) ........................................................................ 23

*Bell Alt. v. Twombly*,
550 U.S. 544 (2007) ...................................................................... 6, 11

*Bikram's Yoga College of India, L.P. v. Evolation Yoga, LLC*,
803 F.3d 1032 (2015) ..................................................................*passim*

*Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co.*,
149 F. Supp. 3d 1167 (N.D. Cal. 2015) ............................................. 11

*Brown v. TGS Mgmt. Co., LLC*,
57 Cal. App. 5th 303 (2020) ............................................................... 20

*Cannarella v. Volvo Car USA LLC*,
No. CV 16-6195-RSWL-JEMX, 2016 WL 9450451 (C.D. Cal. Dec. 12,
2016) ........................................................................................... 12, 17

*Carnegie-Mellon Univ. v. Cohill*,
484 U.S. 343 (1988) ......................................................................... 25

*Cleary v. News Corp.*,
30 F.3d 1255 (9th Cir. 1994) ............................................................. 22

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
173 F.3d 725 (9th Cir. 1999) ............................................................. 13

*Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.*,
911 F.2d 242 (9th Cir. 1990) ............................................................. 14

*Daniels v. Walt Disney Co.*,
958 F.3d 767 (9th Cir. 2020) ............................................................... 8

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
539 U.S. 23 (2003) ....................................................................*passim*

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

ii                                        CASE NO. 2:22-CV-04735-RSWL-E

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND STRIKE PLAINTIFFS' FAC

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Edwards v. Arthur Andersen LLP*,
　44 Cal. 4th 937 (2008) ................................................................. 20

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
　499 U.S. 340 (1991) ................................................................. 7, 8

*Focal Point Films, LLC v. Sandhu*,
　No. 19-CV-02898-JCS, 2019 WL 7020209 (N.D. Cal. Dec. 20, 2019) ........... 17

*Golden v. California Emergency Physicians Med. Grp*.,
　896 F.3d 1018 (9th Cir. 2018) ...................................................... 20

*Herring Networks v. Maddow*,
　8 F.4th 1148 (9th Cir. 2021) ....................................................... 23

*Japan Telecom., Inc. v. Japan Telecom Am. Inc.*,
　287 F.3d 866 (9th Cir. 2002) ....................................................... 22

*Kinney v. Oppenheim*,
　No. CV-10-6287 SVW (RZX), 2011 WL 13217573 (C.D. Cal. Mar. 3,
　2011) ............................................................................... 18

*Knievel v. ESPN*,
　393 F.3d 1068 (9th Cir. 2005) ....................................................... 5

*Lewis v. YouTube, LLC*,
　244 Cal. App. 4th 118 (2015) ....................................................... 18

*Makaeff v. Trump Univ., LLC*,
　715 F.3d 254 (9th Cir. 2013) ......................................................... 7

*Metabolife Int'l, Inc. v. Wornick*,
　264 F.3d 832 (9th Cir. 2001) ....................................................... 23

*Nat'l Rural Telecomm. Co–op. v. DIRECTV, Inc.*,
　319 F. Supp. 2d 1059 (C.D. Cal. 2003) .............................................. 22

*Newcal Indus., Inc. v. Ikon Off. Sol.*,
　513 F.3d 1038 (9th Cir. 2008) ....................................................... 13

*Parrino v. FHP, Inc.*,
　146 F.3d 699 (9th Cir. 1998) ......................................................... 3

*Pilkin v. Google LLC*,
　No. 21-CV-01483-DMR, 2021 WL 3604677 (N.D. Cal. Aug. 13, 2021),
　*aff'd*, No. 21-16346, 2022 WL 1223992 (9th Cir. Apr. 26, 2022) ................... 9

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
  890 F.3d 828 (9th Cir. 2018) ............................................................................... 7

*Prager Univ. v. Google LLC*,
  951 F.3d 991 (9th Cir. 2020) ....................................................................... 12, 17

*R and A Synergy LLC v. Spanx, Inc.*,
  2019 WL 4390564 (C.D. Cal. May 1, 2019) ....................................... 14, 15, 22

*RDF Media Ltd. v. Fox Broad. Co.*,
  372 F. Supp. 2d 556 (C.D. Cal. 2005) ............................................................... 6

*Skydive Ariz., Inc. v. Quattrocchi*,
  673 F.3d 1105 (9th Cir. 2012) ......................................................................... 12

*Southland Sod Farms v. Stover Seed Co.*,
  108 F.3d 1134 (9th Cir. 1997) ......................................................................... 15

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) ............................................................................. 6

*Stewart v. Rolling Stone LLC*,
  181 Cal. App. 4th 664 (2010) .......................................................................... 23

*Sybersound Records, Inc. v. UAV Corp.*,
  517 F.3d 1137 (9th Cir. 2008) ............................................................. 17, 18, 22

*Universal City Studios, Inc. v. Sony Corp. of America*,
  429 F. Supp. 407 (1977) .................................................................................. 14

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ........................................................................... 6

*Williams & Lake LLC v. Genesis Systems LLC*
  No. CV-17-00117-TUC-CKJ, 2017 WL 6418937 (D. Ariz. Sept. 13,
  2017) ................................................................................................................. 17

**STATUTES**

15 U.S.C. § 1125(a)(1)(A) .................................................................................... 16

15 U.S.C. § 1125(a)(1)(B) ................................................................... 5, 12, 17

17 U.S.C. § 102(b) ................................................................................. 2, 7, 8, 10

28 U.S.C. § 1367(c)(3) ......................................................................................... 24

Cal. Code Civ. Proc. § 425.16 ............................................................................. 23

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- iv -

CASE NO. 2:22-CV-04735-RSWL-E

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND STRIKE PLAINTIFFS' FAC

# TABLE OF AUTHORITIES
(continued)

**Page**

Cal. Code Civ. Proc. § 425.16(a) ................................................................... 6

Cal. Code Civ. Proc. § 425.16(b)(1) .............................................................. 6

Cal. Code Civ. Proc. § 425.16(c) ................................................................. 24

Cal. Code Civ. Proc. § 425.16(e) ................................................................. 23

California Business & Professions Code § 16600 ................................ 2, 19, 20, 21

California Business & Professions Code §§ 17200 *et seq* ................................ 1, 22

## OTHER AUTHORITIES

Registration of Claims to Copyright, 77 Fed. Reg. 37607 (June 22, 2012) ............ 10

U.S. Copyright Office, Compendium of U.S. Copyright Office Practices §
    805.5(B)(3) (3d ed. 2021) .......................................................................... 9

## RULES

Rule 12(b)(6) ........................................................................................ *passim*

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- v -                    CASE NO. 2:22-CV-04735-RSWL-E

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND STRIKE PLAINTIFFS' FAC

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   <u>INTRODUCTION</u>

This lawsuit is a frivolous and unprovoked effort to bully a rising competitor.  Tracy Anderson, a self-styled "pioneer" of the dance-fitness movement, sued Roup, a former employee and increasingly popular celebrity fitness entrepreneur, for allegedly using exercise sequences that Anderson asserts she developed (the "TA Method") and other supposedly "confidential information" to build Roup's own fitness business, The Sculpt Society.  On this basis, Plaintiffs allege two federal claims (copyright infringement and violation of the Lanham Act) and two state-law claims (breach of contract and violation of California Business & Professions Code §§ 17200 *et seq.* ("UCL")).  Plaintiffs attempt to weaponize their meritless claims against Roup for daring to strike out on her own and establish a competing business.

Rather than support other women in the fitness industry, Anderson attempts to intimidate them.  She seeks to lay claim to dance-cardio exercises and movements that have their roots in the true pioneers of the field:  Jacki Sorensen (the "mother of aerobic dancing"), Judi Sheppard Missett (who founded Jazzercize in 1969), Jane Fonda (who released the hit 1982 VHS "Workout"), Richard Simmons (celebrity aerobic fitness instructor), and Beto Pérez (creator of Latin-dance cardio program Zumba), among others.  Anderson may feel that Roup owes her a debt, but Anderson's feelings are not the law.  Indeed, Anderson's claims are foreclosed by binding Supreme Court and Ninth Circuit precedent—because no one "owns" functional exercise movements—as well as the plain terms of the contract Anderson seeks to enforce against Roup, and unsurprisingly all claims fail as a matter of law.

*First*, Plaintiffs allege Defendants violated Anderson's copyrights in her exercise DVDs through TSS's on-demand streaming workouts that contain allegedly similar exercises.  But the Ninth Circuit has foreclosed such claims, holding in *Bikram's Yoga College of India, L.P. v. Evolation Yoga, LLC*, 803 F.3d 1032, 1037-

1

40 (2015) ("*Bikram*"), that functional exercise sequences—even if aesthetically pleasing or incorporating choreographic elements—are unprotectable ideas or processes under 17 U.S.C. § 102(b) and non-copyrightable.

*Second*, Plaintiffs allege that two innocuous sentences in Roup's online biography support a false advertising claim under the Lanham Act. This claim fails for numerous reasons, including that (i) it fails to plead a false or misleading statement of "fact" (as opposed to opinion or puffery), (ii) the biographical quips are non-material, (iii) the false advertising claim is just a disguised false designation of origin authorship claim—foreclosed by *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 32-35 (2003), and (iv) the statements are not about the "nature, characteristics, qualities, or geographic origin" of Roup's services.

*Third*, T.A. Studio New York LLC ("TANY") attempts to plead a breach of contract claim against Roup for misuse of allegedly confidential information. This claim fails because (i) the same provision explicitly exempts publicly disclosed information, which Plaintiffs concede the TA Method is, (ii) the restrictive covenant is a facial and as-applied invalid restriction on trade in violation of California Business & Professions Code § 16600, and (iii) it is based on a superseded contract.

*Fourth*, the UCL claim fails because it is derivative of the failed Lanham Act and contract claims. The UCL claim should also be struck under California's anti-SLAPP law, because it is based on Roup's written autobiographical statements, which is speech on a matter of public interest (*i.e.*, a celebrity fitness trainer's life).

Because all of Plaintiffs' claims fail as a matter of law and cannot be cured by amendment, the Court should dismiss them with prejudice under Rule 12(b)(6) and also strike Plaintiffs' UCL claim under California's anti-SLAPP law with prejudice. Even if the Court believes a state law claim might be salvaged by amendment, it should decline to exercise supplemental jurisdiction over it after dismissing the copyright and Lanham Act claims, which are the linchpin of this Court's jurisdiction.

## II.    FACTUAL BACKGROUND

Anderson alleges she created the "TA Method," which she describes as a "revolutionary choreography protocol made up of custom and specific movements, sequences, and routines that uniquely combines choreography, fitness, and cardiovascular movement to help people create balance in their bodies so they can create balance in their lives."  FAC ¶ 1.  The FAC alleges that Tracy Anderson Mind and Body, LLC ("TAMB") is the owner of various registered copyrights, including "DVDs created by and featuring Anderson, that express, relate to, or are based on the TA Method."  *Id.* ¶ 2.  TAMB's copyrights, which are attached to the FAC, are each registered as a "Motion Picture (DVD)."  *Id.* at ¶ 45, Att. A.

Anderson alleges that from 2011-2017, Roup worked for Anderson's company, TANY.  *Id.* ¶ 3.  As part of her employment, Roup signed a contract ("Trainer Agreement") dated February 28, 2011,[1] which purports to restrict Roup's ability to "use or disclose any [of TANY's] confidential or proprietary trade secrets" including "training materials or methods" and "workouts, movements, exercise routines, exercise formulas, nutrition advice, content, sequences, prescriptions, dances, muscular structure work and equipment . . . unless such Confidential Information has been previously disclosed to the public generally . . ."  Declaration of Nathaniel L. Bach ("Bach Decl."), ¶¶ 2-3, Exs. A & B;[2] *see also* FAC ¶¶ 3, 29.

Plaintiffs allege that Roup left TANY in or around February 2017 and formed her own competing fitness business, The Sculpt Society, which offers in-person classes and over 400 on-demand exercise videos.  FAC ¶¶ 5-6, 34.  Plaintiffs allege, on only information and belief, that "a significant number of [TSS's on-demand]

---

[1] The FAC relies on the wrong agreement between Roup and TAMB; a later version, dated June 11, 2011, expressly supersedes the February 2011 agreement.

[2] The Court can consider the February and June 2011 contracts under the incorporation by reference doctrine because Plaintiffs reference the contracts' terms throughout the FAC and their state law claims rely on them.  *See Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998), *superseded by statute on other grounds as recognized in Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 681 (9th Cir. 2006).

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

3

CASE NO. 2:22-CV-04735-RSWL-E
MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND STRIKE PLAINTIFFS' FAC

1   videos infringe TAMB's copyrights in Anderson's DVDs," and that Defendants'

2   exercise routines were created using "Confidential Information," which was also

3   disclosed to third parties.  *Id.* ¶ 6.  Each category of allegations is taken in turn.

4        First, Anderson alleges "Defendants' videos infringe TAMB's copyrights by

5   copying the choreography movements, sequences, and routines depicted in the TA

6   Works [*i.e.*, Anderson's DVDs]; organizational structure and format of the TA

7   Works; and aesthetic elements depicted in the TA Works."  *Id.* ¶ 47.  In support,

8   Plaintiffs identify six of TSS's on-demand videos, among "hundreds" more, in which

9   they allege "Roup or TSS employees perform[] choreography movements,

10  sequences, and routines that are substantially similar to those depicted in" portions

11  of TAMB's copyrighted DVDs.  *Id.* ¶¶ 48-49.  Apart from alleging that certain

12  "movements, sequences, and routines" are substantially similar to those in portions

13  of Anderson's videos, Plaintiffs do not identify any specific movement or series of

14  movements in any of Defendants' videos that Defendants have supposedly copied,

15  nor do they include copies of the videos or screenshots thereof.  *See id.* ¶ 49.

16       Second, Plaintiffs allege that Roup has "concealed" her training from and

17  association with Anderson to "create the false impression" by implication that (i)

18  Roup developed the TSS and its exercises over multiple years; (ii) TSS's program,

19  like the TA Method, "was created through years of science-based research,

20  development, data collection and analysis, and trial and error"; and (iii) TSS's

21  programs are "significantly different" than the TA Method.  *Id.* ¶¶ 8, 42.  Plaintiffs

22  complain that Roup "ha[s] never credited Anderson or TANY" for training her or for

23  creating the exercise movements featured in TSS workouts (*id.* ¶ 41) and point to the

24  "Meet Megan" section on The Sculpt Society website in which Roup explains her

25  motivation for developing the TSS:  "I knew that there was something missing from

26  the boutique fitness community, so I combined my passion for dance and love for

27  fitness to create The Sculpt Society.  I spent years teaching fitness and developing

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

4

CASE NO. 2:22-CV-04735-RSWL-E
MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND STRIKE PLAINTIFFS' FAC

The Sculpt Society method before launching in 2017." Bach Decl., ¶ 4, Ex. C;[3] *see also* FAC ¶ 43. On the basis of these autobiographical statements, Anderson alleges that Defendants "mislead consumers," quoting several positive online reviews of TSS in which consumers praise Roup for the exercises contained in the TSS classes. FAC p. 12; *see, e.g.*, *id.* ¶ 44 ("'I really love the workouts that Megan has created'").

Third, TANY alleges that Roup used "Confidential Information" under the Trainer Agreement to develop and launch The Sculpt Society. *See id.* ¶ 40. TANY alleges, again on information and belief, that Roup used TANY's "Confidential Information," including "nonpublic transcriptions of choreography routines" to develop TSS (*id.* ¶ 31), identifying four of Defendants' videos that supposedly use Plaintiffs' "Confidential Information," *e.g.*, "'24Min Full Body 12 w/ Chair/Stool,' published in or around Spring 2021." *Id.* ¶ 37. TANY also alleges, without providing any specifics, that Roup used and disclosed unspecified "Confidential Information" about TANY's "business operations, customers, program structure, customer intake methods, and employees" at unspecified times in at least 2019 and 2022. *Id.* ¶ 38 ("Defendants have also used Confidential Information . . . including as recently as Spring 2022."); *id.* (Defendants "have disclosed Confidential Information to third parties, including employees, affiliates, and/or customers of TSS at various times, including as recently as Spring 2022"); *id.* ¶ 68 (Roup used "Confidential Information" "on various dates during 2019").

On these allegations, Plaintiffs bring claims for copyright infringement under 17 U.S.C. §§ 106 and 501; violation of Section 43(a)(1)(B) of the Lanham Act (15 U.S.C. § 1125(a)(1)(B)); breach of the Trainer Agreement; and UCL violations.

---

[3] The Court can also incorporate by reference Roup's full biography on the TSS website (Bach Decl., Ex. C) because the FAC cites it repeatedly, but incompletely, and the Lanham Act and UCL claims rely on it. *Knievel v. ESPN*, 393 F.3d 1068, 1076-77 (9th Cir. 2005) (considering on Rule 12(b)(6) motion a website's contents that were context for the disputed statement in a defamation suit).

## III.   LEGAL STANDARD

**Rule 12(b)(6), Motion to Dismiss**.  To survive a Rule 12(b)(6) motion to dismiss, a cause of action must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Alt. v. Twombly*, 550 U.S. 544, 570 (2007).  Dismissal is proper if the complaint "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Ballinger v. City of Oakland*, 24 F.4th 1287, 1292 (9th Cir.), *cert. denied*, 142 S. Ct. 2777 (2022).  Allegations must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action" (*Twombly*, 550 U.S. at 555), and courts should not accept "unreasonable inferences" or "unwarranted deductions of fact." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  "[W]here the amendment would be futile . . . or where the amended complaint would be subject to dismissal," the complaint should be dismissed with prejudice. *RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556, 561 (C.D. Cal. 2005).

**Anti-SLAPP Special Motion to Strike**.  California's anti-SLAPP law permits courts to root out baseless lawsuits that attack free expression, and was enacted after the legislature found "a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech." Cal. Code Civ. Proc. § 425.16(a).  Ninth Circuit courts apply the anti-SLAPP statute to California state law claims brought in federal court. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1109 (9th Cir. 2003) ("Motions to strike a state law claim under California's anti-SLAPP statute may be brought in federal court").  Courts use a two-step inquiry to determine if a cause of action (or portion thereof) is subject to an anti-SLAPP motion.  First, a defendant must make a prima facie case that a "cause of action against [it] aris[es] from any act of that person in furtherance of [its] right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." Cal. Code Civ. Proc. § 425.16(b)(1).  Once that showing is made, the burden shifts to the plaintiff at the second prong of the analysis

to "establish[] that there is a probability that the plaintiff will prevail on the claim." *Id.* If a plaintiff cannot meet its burden on this second step, "it has no possibility of success on the merits" and the Court should grant the motion to strike. *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 265 (9th Cir. 2013). Where, as here, "a defendant makes a special motion to strike based on alleged deficiencies in the plaintiff's complaint, the motion must be treated in the same manner as a motion under Rule 12(b)(6)," and no discovery is necessary or required before the Court can rule on Defendants' anti-SLAPP motion. *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018) (citation omitted).

## IV.   <u>ARGUMENT</u>

### A.   Plaintiffs' Copyright Claim Fails as a Matter of Law as Anderson's Exercises Are Noncopyrightable

Plaintiffs' copyright claim fails for the fundamental reason that functional exercise movements are not copyrightable, and therefore cannot be the basis for an infringement claim. This is true whether or not such exercises are fixed in a tangible medium of expression like a DVD, as Plaintiffs allege Anderson's exercises are. Indeed, TAMB only alleges ownership of copyrights ***in the DVDs*** in which certain of the TA Method sequences are embodied, not in the exercise sequences themselves. But Plaintiffs do not allege that Defendants copied Anderson's DVDs; rather, they allege Defendants copied the "choreography *movements, sequences, and routines*" shown therein. FAC ¶ 47 (emphasis added). However, binding Ninth Circuit precedent makes clear that the Copyright Act does not protect exercise sequences, which are unprotectable "ideas" or "processes" under 17 U.S.C. § 102(b). The copyright claim thus fails as a matter of law.

To state a claim for copyright infringement, a plaintiff must allege: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). On a motion to dismiss, a court must determine whether the plaintiff has

1  sufficiently alleged that the work at issue is entitled to copyright protection.  *See*

2  *Daniels v. Walt Disney Co*., 958 F.3d 767, 771-74 (9th Cir. 2020) (affirming district

3  court's dismissal of complaint that failed to adequately plead the existence of

4  copyrightable material).  Fundamental to copyright law is the encoded principle that

5  copyright protection does not extend to "any idea, procedure, process, system,

6  method of operation, concept, principle, or discovery, regardless of the form in which

7  it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102(b);

8  *see also Feist Publications, Inc.,* 499 U.S. at 344-45 ("The most fundamental axiom

9  of copyright law is that no author may copyright his ideas or the facts he narrates.")

10  (internal citation omitted).  Anderson's claim fails because she grounds it in such an

11  unprotectable "idea, procedure, process, system, method of operation, concept,

12  principle, or discovery."

13      1.  The Ninth Circuit's decision in *Bikram, supra,* forecloses Anderson's

14  copyright claim in its entirety.  In *Bikram*, yogi pioneer Bikram Choudhury and his

15  company (together, "Choudhury") sued a yoga studio and its two owners (who had

16  taken Choudhury's training course) for allegedly infringing his copyright in the

17  "Sequence"—a series of 26 yoga poses and two breathing exercises Choudhury had

18  developed.  803 F.3d at 1035-36.  Like Anderson, Choudhury alleged that he spent

19  years researching the Sequence and authored a book (for which he obtained a

20  copyright registration) that included descriptions, photographs, and drawings of the

21  Sequence.  *Id*.  Defendants opened their own yoga studio and taught the Sequence

22  which, like Choudhury's classes, were performed in a hot studio for 90 minutes and

23  accompanied by oral instructions.  *Id*. at 1036.  Defendants moved for partial

24  summary judgment on Choudhury's copyright claim; the district court granted the

25  motion, holding that the Sequence "is a collection of facts and ideas" that was not

26  entitled to copyright protection, including as a compilation or choreographic work.

27  *Id*.

28      The Ninth Circuit affirmed, holding that the Sequence was unprotectable under

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

8

CASE NO. 2:22-CV-04735-RSWL-E
MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND STRIKE PLAINTIFFS' FAC

section 102(b) of the Copyright Act. The Ninth Circuit observed that the Sequence was "an idea, process, or system designed to improve health" that "primarily reflects function, not expression." *Id*. at 1036, 1040. Choudhury's claim thus ran afoul of the Copyright Act's "idea/expression dichotomy," which aims to strike a balance between the First Amendment's free communication of ideas and the Copyright Act's protection of an author's expression. *Id*. at 1037. That the Sequence reflected Choudhury's "aesthetic preferences" and was "graceful" and "beautiful" did not alter this conclusion. Choudhury was, in effect, improperly attempting to secure copyright protection for a "healing art: a system designed to yield physical benefits and a sense of well-being"—protection that is only available, if at all, under patent laws. *Id*. at 1040. The Court distinguished between Choudhury's book, in which he described the Sequence and which ***was*** protectable expression, and the Sequence itself, which was not. *Id*. at 1037-38 (collecting cases in which courts declined to extend copyright protection to ideas and processes but acknowledged that the expression of those ideas could be copyrightable).

The Court further held that because the Sequence was not copyrightable in the first instance, it was not copyrightable as a compilation or a choreographic work either. Rejecting Choudhury's argument that the Sequence was protectable choreography, the Court held that "[e]ven if the Sequence could fit within some colloquial definitions of dance or choreography, it remains a process ineligible for copyright protection." *Id*. at 1044. The Court looked to the U.S. Copyright Office's Compendium of U.S. Copyright Office Practices (the "Compendium"), which states that "dance movements" must be more than "mere exercises."[4] *Id*. at 1043; *see also Pilkin v. Google LLC*, No. 21-CV-01483-DMR, 2021 WL 3604677, at *3 (N.D. Cal.

---

[4] The current version of the Compendium confirms the same. "Non-expressive physical movements, such as 'ordinary motor activities' or 'functional physical movements' — in and of themselves — do not represent the type of authorship that Congress intended to protect as choreography." U.S. Copyright Office, Compendium of U.S. Copyright Office Practices § 805.5(B)(3) (3d ed. 2021) (internal citations omitted), available at https://www.copyright.gov/comp3/chap800/ch800-performing-arts.pdf.

Aug. 13, 2021), *aff'd*, No. 21-16346, 2022 WL 1223992 (9th Cir. Apr. 26, 2022) (granting defendant's motion to dismiss plaintiff's copyright claim with prejudice; holding that a work describing features of a hypothetical interactive map constituted an unprotectable idea; "[e]ssentially, the Work describes a wide range of possible expressions of the features described in it but does not actually convey any particular expression of those features.").

2. The takeaway from *Bikram* is straightforward—and fatal to Anderson's claim: exercise sequences are ***not*** copyrightable, even when described as choreographic works or compilations, because they constitute an idea, process, or system. *Bikram*, 803 F.3d at 1044 ("The Sequence is not copyrightable as a choreographic work for the same reason that it is not copyrightable as a compilation: it is an idea, process, or system to which copyright protection may '[i]n no case' extend.") (citing 17 U.S.C. § 102(b)); *see also* Registration of Claims to Copyright, 77 Fed. Reg. 37607 (June 22, 2012) ("Exercise is not a category of authorship in section 102 and thus a compilation of exercises would not be copyrightable subject matter."). Indeed, Anderson repeatedly admits the functional—and thus non-protectable—nature of her exercises, stating that her "Method" "combines choreography, fitness, and cardiovascular movement," and is "[r]ooted in research, dance and the elements of choreography." *Id.* ¶ 19. These inescapable concessions doom the copyright claim.

3. That Anderson's exercises are fixed on video does not help her claim. A party cannot "obtain monopoly rights over [] functional physical sequences by describing them in a tangible medium of expression and labeling them choreographic works." *Bikram*, 803 F.3d at 1044. Indeed, just as the Sequence in *Bikram* was designed to "improve health" and was informed by Choudhury's research, here, Plaintiffs' own allegations confirm that the TA Method is designed to "improve [ ] lives" by "conferring physical and mental benefits" and "creating balance," and is similarly allegedly informed by Anderson's own research about how best to achieve

that end.  FAC ¶¶ 19, 20.  The very name—the TA *Method*—reveals the routines for what they are: a system or process, and thus not protectable.

4.  That the TA Method may be "aesthetically engaging and appealing" and integrated with music into an "expressive whole" (*id*. ¶ 19)—much like the Sequence was allegedly "beautiful and graceful" and reflected Choudhury's "aesthetic preferences"—also does not alter this conclusion because, like the Sequence, the TA Method "primarily reflects function, not expression." *Bikram*, 803 F.3d at 1040.  Thus, even if TAMB owns valid copyrights in the DVDs that depict exercises of the TA Method, just as Choudhury held a copyright in his book describing the Sequence, TAMB does not have—and cannot obtain—a copyright or any other protectable interest in the TA Method itself.

In fact, Anderson's ownership claim here is far more expansive than Choudhury's in *Bikram*.  In *Bikram*, Choudhury claimed copyright protection for a set of 26 poses and two breathing exercises conducted in the same order.  Here, Anderson purports to claim ownership in *over 200,000 exercise movements* she supposedly "created," some of which are allegedly "substantially similar" to certain unspecified sequences in Defendants' videos.[5]  *See* FAC ¶¶ 25, 49.  But such movements are the building blocks of exercise, and *Bikram* forecloses Plaintiffs'

---

[5] Apparently unwilling to sign up for a free trial or pay $19.99 for a monthly membership to The Sculpt Society, Plaintiffs assert ignorance of the full extent of Defendants' alleged infringement because The Sculpt Society videos are accessible behind a paywall and not downloadable.  FAC ¶ 49.  Plaintiffs instead allege, solely on information and belief, that Defendants have published "hundreds" of additional, infringing videos.  *Id*.  This is insufficient to satisfy Plaintiffs' pleading obligations.  *See Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co*., 149 F. Supp. 3d 1167, 1175 (N.D. Cal. 2015) (granting motion to dismiss copyright infringement claim where plaintiffs failed to provide enough detail for the court to "meaningfully evaluate" the alleged appropriation).

Even for those videos Plaintiffs have apparently examined, they have not sufficiently specified what elements of the TA Method Defendants have allegedly copied, and where such copying specifically appears.  Plaintiffs' conclusory allegations that six of Defendants' videos contain "choreography movements, sequences, and routines" that are "substantially similar" to Plaintiffs' own are plainly insufficient and need not be credited.  *Twombly*, 550 U.S. at 570; *see also Blizzard Ent*., 149 F. Supp. 3d at 1175 (finding general allegations of infringement insufficient to state claim for copyright infringement).

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

11                                  CASE NO. 2:22-CV-04735-RSWL-E
MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND STRIKE PLAINTIFFS' FAC

attempt to monopolize the market for dance-based fitness or any other type of exercise. Because Plaintiffs' movements—whether individually or as a compilation (her "Method")—are unprotectable as a matter of law, the claim cannot be cured by amendment and should be dismissed with prejudice.

### B. Plaintiffs' Lanham Act False Advertising Claim Fails as a Matter of Law

Plaintiffs' Lanham Act claim fares just as poorly, and should also be dismissed with prejudice. A false advertising claim under 15 U.S.C. § 1125(a)(1)(B), as Anderson attempts here, requires "a 'false or misleading representation of fact' 'in commercial advertising or promotion' that 'misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities.'" *Prager Univ. v. Google LLC*, 951 F.3d 991, 999 (9th Cir. 2020). Such claim requires a plaintiff to sufficiently allege and prove the following elements: "(1) defendants' false statement of fact in a commercial advertisement about its own or another's product; (2) the statement actually or tended to deceive a substantial segment of its audience; (3) the deception is material and is likely to influence a purchasing decision; (4) defendants caused the false statement to enter interstate commerce; and (5) the plaintiff is or is likely to be injured due to the false statement, whether through direct diversion of sales or by a lessening of goodwill associated with plaintiff's products." *Cannarella v. Volvo Car USA LLC*, No. CV 16-6195-RSWL-JEMX, 2016 WL 9450451, at *7 (C.D. Cal. Dec. 12, 2016) (Lew, J.) (citing *Skydive Ariz., Inc. v. Quattrocchi,* 673 F.3d 1105, 1110 (9th Cir. 2012)).

The false advertising claim is based on just two sentences in Roup's online biography:

> I knew that there was something missing from the boutique fitness community, so I combined my passion for dance and love for fitness to create The Sculpt Society. I spent years teaching fitness and developing The Sculpt Society method before launching in 2017.

FAC ¶ 58.[6]  These innocuous statements, taken from the "Meet Megan" page on TSS's website, Bach Decl., Ex. C, are facially non-actionable for numerous reasons.

### 1.   Plaintiffs Allege No False or Misleading Statement of Fact Upon Which Consumers Would Rely

First, there is no actionable representation of "fact" in the two challenged sentences, as they are classic examples of non-actionable opinions or puffery which are both nonmaterial and unlikely to induce consumer reliance.  The first challenged sentence, "I knew that there was something missing from the boutique fitness community, so I combined my passion for dance and love for fitness to create The Sculpt Society," is a pure statement of opinion that is subjective and not quantifiable, and thus cannot support a false advertising claim.  *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999) ("Statements of opinion are not generally actionable under the Lanham Act.").

The second sentence—"I spent years teaching fitness and developing The Sculpt Society method before launching in 2017"—is also not a subjectively testable statement of fact about Roup's "goods [or] services" (*i.e.*, TSS's classes), and is thus merely biographical background and non-actionable puffery.  *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008) (finding a statement to be nonactionable puffing where it "is not a quantifiable claim and does not describe (or misdescribe) *any specific or absolute characteristic* of [the defendant's] service." (emphasis added)).  Here, too, both challenged sentences are nonactionable puffery, as they do not make or imply objectively testable representations about the characteristics of Defendants' services.  Rather, they are merely a part of Roup's biography, telling her life story, and are unlikely to induce consumer reliance.  *Id.* at 1053 (noting that "[a] statement is considered puffery if the claim is extremely unlikely to induce consumer reliance" and "whether an alleged misrepresentation 'is

---

[6] Plaintiffs suggest that there may be other statements that support their Lanham Act claim, FAC ¶ 58, but do not identify any beyond these two sentences.  Such an allusion to unspecified statements is plainly insufficient to state a claim, and so Defendants address the only two sentences Plaintiffs allege are actionable.

a statement of fact' or is instead 'mere puffery' is a legal question that may be resolved on a Rule 12(b)(6) motion"). Indeed, the rave reviews that Plaintiffs cite from TSS users do not (and cannot) plausibly support the inference that the members based their purchasing decision on these two stray sentences in Roup's biography. FAC ¶ 44 ("Love the workouts so much, Megan makes the sequences so fun and creative"; "Megan is brilliant – don't know how she does it – her reps and routines are genius"); *Universal City Studios, Inc. v. Sony Corp. of America*, 429 F. Supp. 407, 409 (1977) (dismissing Lanham Act claim as "the court simply cannot credit as reasonable the inference plaintiffs claim is implicit in defendants' ads").

*R and A Synergy LLC v. Spanx, Inc.*, on analogous facts, is instructive. There, the court found the plaintiff's (maker of sleeved undergarment product Sleevey) allegations that the defendant's assertion that its similar Spanx product was "unlike any other layering options," that it "invented" Spanx, and its product fills a "white space" in the market, "does not amount to an assertion of fact." 2019 WL 4390564, at *9-10 (C.D. Cal. May 1, 2019) ("Merely advertising a product as being new, invented, filling a white space, and being unlike other layering options does not amount to an assertion of fact."). The court held such statements were "puffery and non-actionable under the Lanham Act" because "[n]o reasonable consumer would rely on those statements as an objective, measurable statement of fact." *Id.* at *11 ("Defendant's statement that Spanx products are 'unlike any other layering options' is an unquantifiable representation about the quality and uniqueness of the Spanx products and also constitutes puffery"). Roup's anodyne biographical statements are non-actionable for the same reasons. *Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990) (citing with approval district court's finding that "it is beyond the realm of reason to assert . . . that a reasonable consumer would interpret this as a factual claim upon which he or she could rely").

### 2.    The Challenged Biographical Quips Are Non-Material

An allegation of consumer deception does not amount to a Lanham Act

violation unless the deception "is material, in that it is likely to influence the purchasing decision." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997). However, as in *R and A Synergy*, because Roup's statements are "mere puffery as a matter of law, [it] *necessarily means* that reasonable consumers would not rely on the statements when making purchasing decisions." 2019 WL 4390564, at *12 (emphasis added).

As Judge Wilson noted in *R and A Synergy*, the Supreme Court's ruling in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003) "is instructive for the materiality component" of a false advertising claim. *Id.* In *Dastar*, the Supreme Court noted that a consumer purchasing a particular brand of product "does not automatically assume that the brand-name company is the same entity that came up with the idea for the product, or designed the product—*and typically does not care whether it is*." 539 U.S. at 32 (emphasis added). At bottom, Anderson's claims are premised on the allegation (faulty as it may be) that consumers will believe Roup created the TSS workouts, when, Plaintiffs allege, they actually originate from Anderson's TA Method. *See* FAC ¶ 9 (asserting that "reviews of the TSS app alone are replete with instances of consumer confusion and misattribution that Defendants have caused, including statements such as, '[Roup] is brilliant – don't know how she does it – her reps and routines are genius'"). *Dastar* instructs that this type of claim is non-material, and the Lanham Act "should not be stretched to cover matters that are typically of no consequence to purchasers." *Id.* at 32-33; *R and A Synergy*, 2019 WL 4390564, at *13 ("It is immaterial to consumers whether Plaintiff or Defendant is the original source of the general concept of 'sleeved undergarments'"). Plaintiffs therefore cannot plead materiality as a matter of law.

### 3. Plaintiffs' "False Advertising" Claim Is a Barred "False Designation of Origin" Authorship Claim in Disguise

Plaintiffs' allegations make clear that their true grievance is that Defendants "have never credited Anderson or TANY for training, teaching, or developing Roup,

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

15

CASE NO. 2:22-CV-04735-RSWL-E
MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND STRIKE PLAINTIFFS' FAC

or for creating the choreography movements, sequences, and routines that now comprise the TSS Method." FAC ¶ 41. They then complain that "Defendants do not reference Roup's training from or association with TANY or Anderson on the TSS website, TSS promotional materials, interviews, or appearances." *Id.* In other words, Plaintiffs' true objection (meritless as it is) is that Roup has not given credit to Anderson as the supposed origin (the alleged inventor and author) of the TSS program, making clear that their false advertising claim is actually a disguised false designation of origin authorship claim under 15 U.S.C. § 1125(a)(1)(A). But such claims are foreclosed by *Dastar*, in which the Supreme Court held that the term "origin of goods" in Section 43(a)(1)(A) "refers to the *producer of the tangible goods* that are offered for sale, and *not* to the *author of any idea, concept, or communication* embodied in those goods." 539 U.S. at 37 (emphases added).

Plaintiffs' original Complaint expressly contained a false designation of origin claim based on the allegation that Anderson is the uncredited inventor of Roup's exercises. *See* Dkt. 1 ¶¶ 59, 60 (basing Lanham Act claim on allegation that Defendants' biographical statements "are likely to cause consumer confusion as to the origin of Defendants' services"). After Defendants informed Plaintiffs during their meet and confer that *Dastar* barred such claim, Plaintiffs amended their pleading, dropping the false designation of origin claim. But the vestiges of this claim remain littered throughout the FAC, *see, e.g.*, ¶ 41, making plain the true nature of the Lanham Act claim, which asserts that Defendants have not credited Anderson for allegedly "creating the choreography movements, sequences, and routines that now comprise the TSS Method." *Id.* ¶ 41. These allegations confirm that Plaintiffs' amended false advertising Lanham Act claim is just the same, equally defective, version of their discarded false designation of origin claim.

Other courts have rejected precisely the gambit Plaintiffs attempt—*i.e.*, attempting to plead a false designation of origin claim (under Section 43(a)(1)(A)) as a false advertising claim (under Section 43(a)(1)(B)). For instance, in *Cannarella*,

this Court dismissed such a claim brought by the alleged inventor of a "green" energy generation system against defendants who used a "nearly identical" system in their car commercials. 2016 WL 9450451 at *1-2. One defendant "falsely" claimed to have invented the system on his Facebook page and in his biography at a keynote address, and was identified in one of the commercials as the system's "Innovation Architect." *Id*. at *8. Dismissing the plaintiff's claim, this Court observed: "[c]ourts have rejected false advertising claims, like Plaintiff's, based on statements that one is the inventor or producer of 'innovative' technology'" and "compelling caselaw foreclos[es] a false advertisement claim on nearly identical arguments." *Id*. at *9. In *Williams & Lake LLC v. Genesis Systems LLC*, the court also rejected such an attempt, noting that "[t]he essence of Plaintiff's argument involves an allegation that Defendants are falsely advertising that they invented the digital brake system and nothing else." No. CV-17-00117-TUC-CKJ, 2017 WL 6418937, at *7-8 (D. Ariz. Sept. 13, 2017) (dismissing false advertising claim, noting that "inventorship is not a cause of action" for false advertising under the Lanham Act); *Focal Point Films, LLC v. Sandhu*, No. 19-CV-02898-JCS, 2019 WL 7020209, at *6 (N.D. Cal. Dec. 20, 2019) (collecting cases). Thus, Plaintiffs' false advertising claim also fails because it is a disguised false designation of origin authorship claim barred by *Dastar*.

### 4. The Biographical Statements Contain No Misrepresentation of the "Nature, Characteristics, Qualities, or Geographic Origin" of Defendants' Services

Nor do Plaintiffs allege a misrepresentation of the "nature, characteristics, qualities, or geographic origin" of Roup's services, as required for a false advertising claim under 15 U.S.C. § 1125(a)(1)(B); *Prager Univ.*, 951 F.3d at 999. In *Sybersound Records, Inc. v. UAV Corp.*, the Ninth Circuit narrowly construed the terms "nature, characteristics, qualities" under Section 43(a)(1)(B) to prohibit false authorship claims, like this one, that attempt an end-run around *Dastar*. 517 F.3d 1137, 1144 (9th Cir. 2008). In *Sybersound,* plaintiff-karaoke record producer brought suit against a competitor under Section 43(a)(1)(B), among other claims,

alleging that defendants misrepresented the "licensing status" of copyrighted karaoke recordings. *Id*. at 1143. The Ninth Circuit affirmed dismissal, holding the licensing status did not describe the "nature, characteristics, or qualities" of a product, which more properly refers to "*characteristics of the good itself*, such as the original song and artist of the karaoke recording, and the quality of its audio and visual effects." *Id*. at 1144 (emphasis added). "[I]t is clear that the identity of the *author* of a play, video, or artwork is not a 'characteristic of the good' itself under the Lanham Act." *Kinney v. Oppenheim*, No. CV-10-6287 SVW (RZX), 2011 WL 13217573, at *11 (C.D. Cal. Mar. 3, 2011) (emphasis in original) (dismissing with prejudice a false advertising claim as a false authorship claim barred under *Dastar*, reasoning that "the Ninth Circuit has narrowly interpreted the terms 'nature, characteristics, and qualities' to prevent the circumvention of *Dastar* that Plaintiff seeks to accomplish").

Here, Plaintiffs challenge Roup's autobiographical statements about her purpose and history in creating TSS. As *Sybersound* and its progeny make clear, these are not statements about the "nature, characteristics, [or] qualities" of Roup's *services*, and thus cannot support a Lanham Act claim as a matter of law.

### C.   Plaintiffs' Breach of Contract Claim Fails as a Matter of Law

Plaintiffs' breach of contract claim is a repackaged attempt to achieve what they cannot under the Copyright or Lanham Acts. To state a claim for breach of contract, a plaintiff must allege: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Lewis v. YouTube, LLC*, 244 Cal. App. 4th 118, 124 (2015) (citations omitted). TANY's breach claim fails because (a) Plaintiffs have failed to identify any actually non-public, protectable confidential information, (b) their attempt to enforce the confidentiality provision in such anti-competitive manner constitutes an unenforceable restriction on trade as a matter of law, and (c) Anderson has cited the wrong, superseded contract.

1.   First, TANY cannot plausibly plead that Roup breached the Trainer Agreement's confidentiality provision, because the Agreement itself contains an express carve out for any publicly disclosed information.  Specifically, the restrictive covenant provides that trainers "shall not use or disclose any ['Confidential Information'] . . . to any third Person . . . *unless such Confidential Information has been previously disclosed to the public generally or is in the public domain*."  Bach Decl., Ex. A, p. 4; *see also id.*, Ex. B, p. 11 (same).  TANY alleges that Roup used TANY's "Confidential Information" to develop the TSS Method and to "plan[ ], record[ ], and publish[ ] videos on the TSS app and website . . ." FAC ¶ 68.  But Plaintiffs did not attach the Trainer Agreement to the Complaint or FAC, and for good reason; their selective quotation of its confidentiality provision (*see id.* ¶ 29) omits the critical exception: "Confidential Information" loses its protected status if it has been previously disclosed to the public.

There is no question that the TA Method, and the movements and routines that comprise it, are made publicly available via in-person classes, DVDs, and streaming videos—a fact that Plaintiffs admit, as they must.  *See id*. ¶¶ 21, 22, 24.  Aside from alleging four TSS videos that supposedly use "Confidential Information" in some unknown, unpleaded way (*id*. ¶ 37), TANY fails to identify any specific "Confidential Information" that Roup obtained that she could not have learned as a member of the public who took Plaintiffs' classes.   Thus, any "Confidential Information" that Roup supposedly used in developing the TSS Method (which Defendants expressly deny) falls within this exception and is not actionable.

2.   Second, TANY's breach of contract claim fails because the Trainer Agreement's confidentiality provisions are unenforceable under California Business & Professions Code § 16600, which provides that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."  Courts "have consistently affirmed that section 16600 evinces a settled legislative policy in favor of open competition and employee mobility."

*Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 946 (2008); *Golden v. California Emergency Physicians Med. Grp*., 896 F.3d 1018, 1024 (9th Cir. 2018) (holding that "a contractual provision imposes a restraint of a substantial character if it significantly or materially impedes a person's lawful profession, trade, or business"). Indeed, the Ninth Circuit has warned that "it will be the rare contractual restraint whose effect is so insubstantial that it escapes scrutiny under section 16600." *Id.*

Overbroad confidentiality provisions such as this one fall squarely within section 16600's prohibition.  For example, in *Brown v. TGS Mgmt. Co., LLC*, 57 Cal. App. 5th 303, 316–17 (2020), review denied (Feb. 24, 2021), the court invalidated under section 16600 a confidentiality provision that prohibited the plaintiff-employee, in perpetuity, from using all "information, in whatever form, used or usable in, or originated, developed or acquired for use in, or about or relating to . . . analyzing, executing, trading and/or hedging in securities and financial instruments and derivatives thereon, securities-related research, and trade processing and related administration . . ."  The court held that "these overly restrictive provisions operate as a de facto noncompete provision . . . [and] are void *ab initio* and unenforceable." *Id*. at 319; *see also AMN Healthcare, Inc. v. Aya Healthcare Services, Inc*., 28 Cal. App. 5th 923, 940 (2018) ("section 16600 precludes an employer from restraining an employee from engaging in his or her 'profession, trade, or business,' even if such an employee uses information that is confidential but not a trade secret").

TANY's claim goes well beyond these invalid efforts, attempting to wield an extraordinarily broad and vague restrictive covenant to state a breach claim based on unspecified allegations.   Indeed, even accepting the false premise that TSS's exercises incorporate portions of the TA Method, nothing in the restrictive covenant could have put Roup on notice that by using publicly disclosed exercises she could still be pursued for allegedly knowing Anderson's "reasoning" behind such exercises. *See* FAC ¶ 30(iv).  Such an effort makes clear the oppressive nature of Anderson's breach claim here.  But Anderson may not misuse such restrictive covenants to gain

a monopoly over the dance-cardio market.  As such, the covenants contained in the Trainer Agreement are unenforceable—on their face and as applied—and cannot form the basis of TANY's contract claim here.

3.   Finally, the FAC alleges that "Roup entered into the Trainer Agreement with TANY on February 28, 2011 (it was revised in a non-substantive way on June 11, 2011)."  *Id.* ¶ 29.  However, the June 11, 2011 agreement is in fact an entirely new contract, stating that it "constitutes the entire agreement between the Company and you with respect to your employment by the Company, and supersedes all undertakings and agreements, whether oral or in writing, previously entered into by the Company and you."  Bach Decl., Ex. B, pp. 13-14.  Thus, TANY fails to state a claim for breach predicated upon the superseded February 28, 2011 contract.[7]  Nor could TANY state a breach claim under the June 2011 contract for the same reasons: that superseding contract also carves out publicly disclosed information from confidentiality protection, and any attempt to apply its restrictive covenant in the manner Anderson attempts in the FAC would also violate Section 16600.

**D.   Plaintiffs' UCL Claim Is Derivative of Their Failed Lanham Act and Contract Claims, and Thus Also Fails as a Matter of Law**

Plaintiffs' UCL claim is derivative of its Lanham Act and contract claims and fails for the same reasons and others.  Specifically, Plaintiffs' UCL claim (brought under its "unfair" and "fraudulent" prongs), alleges that Defendants used TANY's "confidential information" in violation of the Trainer Agreement, and made false and/or misleading statements (the same biographical statements upon which the Lanham Act claim is based) that led consumers to believe false facts (the same inferences upon which the Lanham Act claim is based).

First, Plaintiffs cannot bootstrap their failed contract claim into a UCL claim because they have not alleged any independent wrongful conduct other than a breach

---

[7] Both agreements provide that New York law governs disputes and also provide for arbitration.  Plaintiffs have waived such provisions by filing suit in this Court and seeking relief under California law.  Defendants reserve their rights to compel arbitration pertaining to any remaining claims.

(which they have not alleged in any event, for the reasons explained in Section IV.C, *supra*).  *See Sybersound*, 517 F.3d at 1152 (affirming dismissal of UCL claim based on breach of contracts without "independently unlawful, unfair, or fraudulent" conduct); *Nat'l Rural Telecomm. Co–op. v. DIRECTV, Inc*., 319 F. Supp. 2d 1059, 1074 (C.D. Cal. 2003) (a breach of contract may only form the basis of a UCL claim "provided [the breach] also constitutes conduct that is 'unlawful, or unfair, or fraudulent" (internal citation and emphasis omitted)).  Here, Plaintiffs allege that Defendants used and disclosed TANY's allegedly "Confidential Information" to form TSS and create its videos—the same conduct they allege constitutes a contract breach—but Plaintiffs do not allege any independent wrongful conduct, and therefore cannot state a duplicative UCL claim for such conduct.

Second, because Plaintiffs' Lanham Act claim fails, so too does their UCL claim based on the same conduct.  The Ninth Circuit "has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code §§ 17200 *et seq.* are 'substantially congruent' to claims under the Lanham Act."  *Cleary v. News Corp*., 30 F.3d 1255, 1262–63 (9th Cir. 1994).  And courts in this circuit have repeatedly dismissed derivative UCL claims as a result.  *See Sybersound*, 517 F.3d at 1153 (affirming dismissal of UCL claim where plaintiff could not state a claim under the Lanham Act, among other grounds); *Japan Telecom., Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 866, 875 (9th Cir. 2002) (plaintiff's "California unfair competition claim fails because its related Lanham Act claims fail"); *R and A Synergy*, 2019 WL 4390564, at *15 (dismissing UCL claim where "Plaintiff's state law claim for unfair competition realleges the same facts and reasserts the same arguments as embodied by Plaintiff's Lanham Act claims").  Here, because Plaintiffs' Lanham Act claim fails, so too does their UCL claim.

### E.    Plaintiffs' UCL Claim Should Be Struck Under California's Anti-SLAPP Statute

California's anti-SLAPP law, Code of Civil Procedure § 425.16, permits early dismissal of meritless claims "aimed at chilling expression through costly, time-consuming litigation." *See Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 839 (9th Cir. 2001). "To achieve this purpose, courts are directed to 'construe[]' the anti-SLAPP statute 'broadly.'" *Herring Networks v. Maddow*, 8 F.4th 1148, 1155 (9th Cir. 2021). Plaintiffs' UCL claim is subject to the anti-SLAPP statute because it is based in part on Defendants' right to free speech and lacks even minimal merit as a matter of law per Rule 12(b)(6), as demonstrated above.[8]

**Prong One:** ***Roup's Biographical Statements Constitute Protected Speech on a Matter of Public Interest***. Plaintiffs allege Defendants violated the UCL by "making false and/or misleading descriptions or representations of fact" in Roup's biography on TSS's website. Such written statements on a public website trigger the anti-SLAPP law because they are both "(3) a[] written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." Cal. Code Civ. Proc. § 425.16(e); *Barrett v. Rosenthal*, 40 Cal. 4th 33, 41 n.4 (2006) (websites that are accessible to the public are "public forums" for purposes of the anti-SLAPP statute).

As a celebrity fitness trainer and influencer, Roup is a public figure and her life and biography are an issue of public interest. *Stewart v. Rolling Stone LLC*, 181 Cal. App. 4th 664, 677–78 (2010), *as modified on denial of reh'g* (Feb. 24, 2010) (applying anti-SLAPP law as "there is a public interest which attaches to people who, by their accomplishments, mode of living, professional standing or calling, create a

---

[8] Defendants bring their anti-SLAPP motion as a facial 12(b)(6) challenge. *See Herring Networks*, 8 F.4th at 1156.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

legitimate and widespread attention to their activities" (citation omitted)).  Indeed, the FAC concedes Roup's and TSS's widespread popularity, including among celebrities.  FAC ¶ 40 (noting Defendants "have achieved a substantial number of customers (including celebrities), a significant social media following (i.e., 300,000 followers of @meganroup and 150,000 followers of @thesculptsociety on Instagram), and press coverage").  Because Roup's biographical statements are a "written statement" made in a "public forum in connection with an issue of public interest" and also "any other conduct in furtherance of the exercise of . . . the constitutional right of free speech in connection with a public issue or an issue of public interest," prong one of the anti-SLAPP law is satisfied.

**Prong Two:** *Plaintiffs Cannot Establish a Probability of Prevailing on the UCL Claim*.  Because Plaintiffs cannot carry their burden to show a likelihood of prevailing on the portion of their UCL claim based on Roup's biographical statements—as it is derivative of Plaintiffs' failed Lanham Act claim, as set forth in Section IV.D, *supra*—it should be struck with prejudice under the anti-SLAPP law and Defendants awarded their attorneys' fees.  *Baral v. Schnitt*, 1 Cal. 5th 376, 395 (2016) (when claim being challenged is "mixed"—meaning it involves both constitutionally protected and unprotected activity—the anti-SLAPP law is available to excise offending portions of the claim); Cal. Code Civ. Proc. § 425.16(c) ("[A] prevailing defendant on a special motion to strike shall be entitled to recover that defendant's attorney's fees and costs.").

**F.**     **Because Plaintiffs Have No Viable Federal Claim, the Court Should Decline to Exercise Supplemental Jurisdiction Over Any Surviving State-Law Claim**

Even if a state-law claim might survive via amendment—and none can, for the reasons set forth above—because Plaintiffs' federal claims fail as a matter of law, the Court should decline to exercise supplemental jurisdiction over any state-law claims pursuant to 28 U.S.C. 1367(c)(3) ("The district courts may decline to exercise

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

24

CASE NO. 2:22-CV-04735-RSWL-E
MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND STRIKE PLAINTIFFS' FAC

supplemental jurisdiction . . . [where] the district court has dismissed all claims over which it has original jurisdiction"). The U.S. Supreme Court has made clear that when "the federal-law claims have dropped out of [a] lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988), *superseded on other grounds by* 28 U.S.C. § 1447(c).

Here, Plaintiffs' copyright and Lanham Act claims fail as a matter of law and cannot be cured, as described above. Because this case is still in the earliest stages—it was filed approximately two-and-a-half months ago—and California (or New York) offers an adequate forum in which Plaintiffs can bring their claims, which (between the two states) is also where all of the parties reside, the "balance of factors" weighs in favor of this Court declining to exercise supplemental jurisdiction over Plaintiffs' state-law claims for breach of contract and UCL violations, even if they could be saved via amendment (which, as explained above, they cannot).

## V.   **CONCLUSION**

For all the foregoing reasons, Plaintiffs' FAC should be dismissed with prejudice and the UCL claim struck pursuant to California's anti-SLAPP law.

Dated: September 27, 2022      MANATT, PHELPS & PHILLIPS, LLP


By:  /s/ *Nathaniel L. Bach*
       Nathaniel L. Bach

*Attorneys for Defendants*
MEGAN ROUP and THE SCULPT
SOCIETY, LLC

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

25

CASE NO. 2:22-CV-04735-RSWL-E
MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND STRIKE PLAINTIFFS' FAC