MANATT, PHELPS & PHILLIPS, LLP
CHRISTOPHER CHATHAM (CA Bar #240972)
  CChatham@manatt.com
NATHANIEL L. BACH (CA Bar #246518)
  NBach@manatt.com
SARAH E. MOSES (CA Bar #291491)
  SMoses@manatt.com
2049 Century Park East
Suite 1700
Los Angeles, California  90067
Telephone:  (310) 312-4000
Facsimile:   (310) 312-4224

Attorneys for Defendants
MEGAN ROUP and THE SCULPT SOCIETY, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACY ANDERSON MIND AND BODY, LLC, a Delaware limited liability company; and T.A. STUDIO NEW YORK LLC, a California limited liability company,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>MEGAN ROUP, an individual; and THE SCULPT SOCIETY, LLC, a California limited liability company,<br><br>　　　　　Defendants. | Case No. 2:22-cv-04735-RSWL-E<br><br>Hon. Ronald S.W. Lew<br><br>**DECLARATION OF NATHANIEL L. BACH IN SUPPORT OF DEFENDANTS MEGAN ROUP AND THE SCULPT SOCIETY, LLC'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT AND SPECIAL MOTION TO STRIKE (ANTI-SLAPP)**<br><br>[*Filed Concurrently with Notice of Motion and Motion to Dismiss Plaintiffs' First Amended Complaint and Special Motion to Strike (Anti-SLAPP); Memorandum of Points and Authorities in Support Thereof; and [Proposed] Order*]<br><br>Hearing Date:　Nov. 1, 2022<br>Hearing Time:　10:00 a.m.<br>Location:　　　TBD<br><br>Complaint Filed:　July 11, 2022<br>FAC Filed:　　　Sept. 13, 2022<br>Trial Date:　　　Not yet set |

Case No. 2:22-cv-04735-RSWL-E
DECLARATION OF NATHANIEL L. BACH IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND STRIKE PLAINTIFFS' FAC

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

# DECLARATION OF NATHANIEL L. BACH

I, Nathaniel L. Bach, declare as follows:

1. I am an attorney duly licensed to practice law in the State of California and before this Court. I am a partner at the law firm Manatt, Phelps and Phillips, LLP, and counsel of record for Defendants Megan Roup ("Roup") and The Sculpt Society, LLC ("The Sculpt Society") (together, "Defendants") in the above-entitled action. I submit this Declaration in support of Defendants' Motion to Dismiss Plaintiffs Tracy Anderson Mind and Body, LLC ("TAMB") and T.A. Studio New York LLC's ("TANY") (together, "Plaintiffs") First Amended Complaint and Special Motion to Strike (Anti-SLAPP). Unless otherwise stated, I have personal knowledge of the matters stated below, and if called upon as a witness, I could and would competently testify as to those facts.

2. Attached hereto as **Exhibit A** is a true and correct copy of the February 28, 2011 "Trainer Agreement" between TANY and Roup that was provided to me by Plaintiffs' counsel on or around July 21, 2022.

3. Attached hereto as **Exhibit B** is a true and correct copy of the June 11, 2011 "Trainer Agreement" between TANY and Roup that was provided to me by Plaintiffs' counsel on or around July 21, 2022.

4. Attached hereto as **Exhibit C** is a true and correct copy of a PDF printout of the "Meet Megan" section of The Sculpt Society's website, which is available at https://thesculptsociety.com/pages/meet-megan (last visited September 27, 2022).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 27th day of September, 2022, at Los Angeles, California.

                                        /s/ *Nathaniel L. Bach*
                                        Nathaniel L. Bach

2   Case No. 2:22-cv-04735-RSWL-E
DECLARATION OF NATHANIEL L. BACH IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND STRIKE PLAINTIFFS' FAC

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Los Angeles

# EXHIBIT A



T.A. Studio New York LLC

February 28, 2011

Dear Megan Roup

    We are pleased to extend to you an offer to train with us. This letter confirms our understanding and agreement with respect to the terms and conditions of your training, and in consideration of receiving confidential and proprietary information of T.A. Studio New York LLC, a California limited liability company (the "*Company*") and its affiliates, you hereby agree as follows:

**Term:** The Company's training program will commence on February 28, 2011 and continue for three months thereafter (the "*Training Period*"). You acknowledge and agree that the training that you will receive during the Training Period is being provided to you to increase your chances of being offered employment by the Company and is not being provided for the benefit of the Company. At the end of the Training Period, if you are offered employment, the terms of such employment will be embodied in a new offer letter which you will be required to sign. This letter does not guarantee any fixed term of training and you and the Company are free to terminate the training relationship at any time, for any reason or for no reason.

**Restrictive Covenants:** During your relationship with the Company or any of its affiliates and following any termination thereof, without the prior written consent of a duly authorized representative of the Company, except to the extent required by an order of a court having competent jurisdiction or under subpoena from an appropriate government agency, in which event, you shall use your best efforts to consult with the Company prior to responding to any such order or subpoena, you shall not use or disclose any confidential or proprietary trade secrets, customer and client lists, drawings, designs, marketing plans, sales scripts, training materials or methods (including, but not limited to, workouts, movements, exercise routines, exercise formulas, nutrition advice, content, sequences, prescriptions, dances, muscular structure work and equipment), CRM methods, management organization information (including, but not limited to, data and other information relating to members of the Board of Managers of the Company or any of its affiliates, the Company or any of its affiliates or to the management of the Company or any of its affiliates), operating policies or manuals, business plans, financial records, or other financial, commercial, business or technical information ($x$) that relate to the Company or any of its affiliates; or ($y$) that the Company or any of its affiliates has received that belongs to clients or others who do business with the Company or any of its affiliates (collectively, "*Confidential Information*") to any third Person (defined below) unless such Confidential Information has been previously disclosed to the public generally or is in the public domain (in each case, other than by reason of your breach of this paragraph).

During the period beginning on the date hereof and ending one year after the termination of your relationship with the Company or any of its affiliates (the "*Restriction Period*"), you shall not, directly or indirectly, for your own account or for the account of any other natural person, partnership, limited liability company, association, corporation, company, trust, business trust,



governmental authority or other entity (each, a "*Person*") (a) solicit for employment, employ or otherwise interfere with the relationship of the Company or any of its affiliates with any natural person throughout the world who is or was employed by or otherwise engaged to perform services for the Company or any of its affiliates at any time during your relationship with the Company (in the case of any such activity during such time) or during the one-year period preceding such solicitation, employment or interference (in the case of any such activity during the Restriction Period but after the date of the termination of your relationship with the Company or any of its affiliates) or (b) induce any employee of the Company or any of its affiliates to engage in any activity which you are prohibited from engaging in under this paragraph or to terminate such employee's employment with the Company.

You agree that the Company shall own all right, title and interest (including, but not limited to, patent rights, copyrights, trade secret rights and other rights throughout the world) in any inventions, works of authorship, ideas or information made or conceived or reduced to practice, in whole or in part, by you (either alone or with others) during your relationship with the Company or any of its affiliates (collectively "*Developments*"); *provided, however,* that the Company shall not own Developments for which no equipment, supplies, facility, trade secret information or Confidential Information of the Company was used and which were developed entirely on your time, and (a) which do not relate (i) to the business of the Company or any of its affiliates or (ii) to the actual or demonstrably anticipated research or development of the Company or any of its affiliates, and (b) which do not result from any work performed by you for the Company. Subject to the foregoing provisions of this paragraph, you will promptly and fully disclose to the Company, or any persons designated by it, any and all Developments made or conceived or reduced to practice or learned by you, either alone or jointly with others during your relationship with the Company or any of its affiliates. You hereby assign all right, title and interest in and to any and all of these Developments to the Company. You shall further assist the Company, at the Company's expense, to further evidence, record and perfect such assignments, and to perfect, obtain, maintain, enforce and defend any rights specified to be so owned or assigned. You hereby irrevocably designate and appoint the Company and its agents as attorneys-in-fact to act for and on your behalf to execute and file any document and to do all other lawfully permitted acts to further the purposes of the foregoing with the same legal force and effect as if executed by you. In addition, you acknowledge that all original works of authorship which are made by you (solely or jointly with others) within the scope of your relationship and which are protectable by copyright are "works made for hire," as that term is defined in the United States Copyright Act (17 USC §101). To the extent allowed by law, this paragraph includes all rights of paternity, integrity, disclosure and withdrawal and any other rights that may be known as or referred to "moral rights" (collectively, "*Moral Rights*"). To the extent you retain any such Moral Rights under applicable law, you hereby waive such Moral Rights and consents to any action consistent with the terms of this letter with respect to such Moral Rights, in each case, to the fullest extent of such applicable law. You will confirm any such waivers and consents from time to time as requested by the Company.

You agree that you shall neither, directly or indirectly, engage in any conduct or make any statement disparaging or criticizing in any way the Company or any of its affiliates, or any of their personnel, nor engage in any other conduct or make any other statement that could be reasonably expected to impair the goodwill or reputation of the Company or any of its affiliates, in each case, except to the extent required by law, and then only after consultation with the Company to the extent possible.

In the event of the termination of your relationship with the Company, you shall deliver to the Company (a) all property of any of the Company or its affiliates then in your possession; and (b) all documents and data of any nature and in whatever medium of any of the Company or its affiliates, and you shall not take with you any such property, documents or data or any reproduction thereof, or any documents containing or pertaining to any Confidential Information.

005

4/25/14 11:47 AM



The parties to this letter agree not to disclose its terms to any Person, other than their attorneys, accountants, financial advisors or, in your case, to members of your immediate family or, in the Company's case, for any reasonable purpose that is reasonably related to its business operations; *provided*, that this paragraph shall not be construed to prohibit any disclosure required by law or in any proceeding to enforce the terms and conditions of this letter. You acknowledge and agree that the covenants, obligations and agreements contained in this letter relate to special, unique and extraordinary matters and that a violation of any of the terms of such covenants, obligations or agreements will cause the Company and its affiliates irreparable injury for which adequate remedies are not available at law. Therefore, you agree that the Company shall be entitled to an injunction, restraining order or such other equitable relief (without the requirement to post bond) to restrain you from committing any violation of such covenants, obligations or agreements. These injunctive remedies are cumulative and in addition to any other rights and remedies the Company and its affiliates may have.

**Assumption of Risk:**

You, for yourself and your personal representatives, assigns, heirs and next of kin:

Acknowledge, agree and represent that you understand the nature of the training activities that you will be required to perform during the course of your relationship with the Company (the "*Training Activities*") and that you are qualified, in good health, and in proper physical condition to participate in such Training Activities. You also understand that the equipment used in the Training Activities presents risk of injury, and agree to keep any and all equipment used in the Training Activities in good working condition and stored in a safe and secure manner when not in use. You further agree and warrant that if at any time you believe conditions to be unsafe for you, you will immediately discontinue further participation in the Training Activities.

You fully understand that (*a*) the Training Activities and their related equipment involve risks and dangers of serious bodily injury, the aggravation of existing and prior injuries and conditions, illness, paralysis and death ("*Risks*"); (*b*) these Risks and dangers may be caused by your own actions or inactions, the actions or inactions of others participating in the Training Activity, the condition in which the Training Activity takes place, or the negligence of the "Releasees" named below; (*c*) there may be other risk and social and economic losses either not known to you or not readily foreseeable at this time; and you fully accept and assume all such risks and all responsibility for losses, costs and damages you incur as a result of participation in the Training Activities.

You hereby release, discharge, and covenant not to sue the Company or any of its employees, agents, instructors, officers, members, administrators, directors, managers, affiliates, clients, other participants, sponsors, advertisers, and, if applicable, owners and lessors of premises on which the Training Activities take place, (together, the "*Releasees*") from all liability, claims, demands, losses, or damages on your account caused or alleged to be caused in whole or in part by the negligence of the Releasees or otherwise, including negligent rescue operations, and you further agree that if, despite any of the provisions of this letter, you, or anyone on your behalf makes a claim against any of the Releasees, you will indemnify, save and hold harmless each of the Releasees from any litigation expenses, attorney fees, loss, liability, damage, or cost which may be incurred as a result of such claim or otherwise in respect of your relationship with the Company and its affiliates, and you further agree to waive the right to any relief (monetary or otherwise) in any action, suit or proceeding that may arise in connection with your relationship with the Company or any of its affiliates.

**Entire Agreement:**

This letter constitutes the entire agreement between the Company and you with respect to your relationship with the Company, and supersedes all undertakings and agreements, whether oral or in writing, previously entered into by the Company and you. All prior correspondence and

006



| | |
|---|---|
| | proposals (including, but not limited to, summaries of proposed terms) and all prior offer letters, promises, representations, understandings, arrangements and agreements (including, but not limited to, those made to or with you by any other person) are merged herein and superseded hereby. |
| Severability: | In the event that any one or more of the provisions of this letter shall be or become invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall not be affected thereby. You and the Company agree that the covenants contained in this letter are reasonable covenants under the circumstances, and further agree that if, in the opinion of any court of competent jurisdiction such covenants are not reasonable in any respect, such court shall have the right, power and authority to excise or modify such provision or provisions of these covenants as to the court shall appear not reasonable and to enforce the remainder of these covenants as so amended. |
| Survival: | The Company and you hereby agree that certain provisions of this letter, including, but not limited to, those listed under the heading "Restrictive Covenants", shall survive the termination of your relationship with the Company in accordance with their terms. |
| Amendment; Governing Law: | This letter may not be amended or modified except by an express written agreement signed by you and the Company. This letter shall be governed by, and construed, interpreted and enforced in accordance with, the laws of the State of New York (excluding any rule or principle of conflict of laws which might refer such construction or interpretation to the laws of another jurisdiction). You consent to the personal and exclusive jurisdiction of the courts of the State of New York (including the United States District Court for the Southern District of New York) in any proceedings hereunder that are not covered by the paragraph entitled "Arbitration", including, but not limited to, any proceeding for equitable relief. You further agree not to interpose any objection for improper venue in any such proceeding. |
| Arbitration: | Except for injunctive relief, or as otherwise required by law, any dispute, claim, question or controversy arising under or relating to this letter, your relationship with the Company or the termination thereof (each such dispute, claim, question or controversy, a "*Dispute*") shall be resolved by submitting such Dispute to binding arbitration administered by JAMS pursuant to its Employment Arbitration Rules and Procedures and subject to its Employment Arbitration Minimum Standards of Procedural Fairness (collectively, the "*Rules*"), and pursuant to the procedures set forth in this paragraph. In the event of any conflict between the Rules and the procedures set forth in this paragraph, the procedures set forth in this paragraph shall control. Any such arbitration shall be brought within any otherwise applicable statute of limitations period, and shall be the sole and exclusive means for resolving such Dispute (other than for injunctive relief or as otherwise required by law). Any arbitration shall be held in New York City in New York State and conducted before a single neutral arbitrator selected by mutual agreement of the parties hereto within 30 days of the initiation of the arbitration or, if they are unable to agree, by JAMS under its rules. The arbitrator shall take submissions and hear testimony, if necessary, and shall render a written decision as promptly as practicable. The arbitrator may grant any legal or equitable remedy or relief that the arbitrator deems just and equitable, to the same extent that remedies or relief could be granted by a state or federal court in the United States. The decision of the arbitrator shall be final, binding and conclusive on all parties and interested persons. It is the intention of the parties hereto that they shall be entitled to fair and adequate discovery in accordance with the Federal Rules of Civil Procedure. The parties hereto shall keep confidential the fact of the arbitration, the dispute being arbitrated and the decision of the arbitrator. Judgment upon the award rendered by the arbitrator may be entered in the courts described above in the paragraph entitled "Amendment; Governing Law". Each party shall be responsible for its own costs and expenses, including attorneys' fees. |

007



\* \* \* \* \*

Please signify your acceptance of the terms hereof by signing below and returning this letter to the undersigned within seven days of the date of this letter.

We look forward to your acceptance and to a mutually beneficial and rewarding relationship.

T.A. Studio New York LLC

By: _____
Name: Stephanie Stahl
Title: Chief Executive Officer

Accepted and Agreed
as of the date first written above:

_____
3/2/11

008

# EXHIBIT B

T.A. Studio New York LLC

May ~~2011~~ June 1, 2011

Name: **Megan Rap**

Dear Tracy Anderson Method Trainer:

We are pleased that you will continue to be a full-time employee of T.A. Studio New York LLC, a California limited liability company (the "*Company*") as Tracy Anderson Method Trainer. This letter confirms our understanding and agreement with respect to the terms and conditions of your employment, effective as of the date of this letter, as follows:

**Services:** As Tracy Anderson Method Trainer, you will have such duties and responsibilities as our Global Manager Training and Prescription Team (the "*Training Manager*") determines from time to time, including, but not limited to, acting as a trainer; ensuring proper implementation of content; continuing training and development; representing the Tracy Anderson Method professionally and consistent with company policies and procedures as determined by Training Manager; trainer training (if and as required); performing evaluations of training and equipment needs; and providing studio member and premise support. You will report directly to the Training Manager (currently, Maria Kelling). You shall devote all of your skill, knowledge and business time to the conscientious performance of your duties and responsibilities.

**Compensation:** You will be paid at the appropriate hourly rate reflected on the Company Training Rate Card, payable in periodic installments on the Company's regular payroll dates. Please note that, without duplication, your compensation may be paid, in whole or in part, by one of more affiliates of the Company.

**Benefits:** While the Company and its affiliates currently do not provide any benefits to its employees, we may provide benefits in the future. If we do so, you may be able to participate on the same basis as similarly situated employees and in accordance with the provisions of the benefits. However, you will be able to use the Company's and its affiliates studios in a manner consistent with their Studio Use Policy in effect from time to time. Any expenses incurred by you in the performance of your services must be approved in advance in writing by the Company and otherwise in accordance with the Company's expense policy in effect from time to time.

**Termination:** This letter does not guarantee any fixed term and your employment with the Company is "at will." This means that both you and the Company are free to terminate the employment relationship at any time, for any reason or for no reason at all, with or without good cause; provided, however, that you must give not less than 14 days' prior written notice of your intention to terminate your employment. Upon termination, you will receive any accrued and unpaid salary and, once paid, you shall not be eligible to receive any other compensation or benefits from the Company or any of its affiliates.

**Restrictive Covenants:** During your employment and following any termination thereof, without the prior written consent of a duly authorized representative of the Company, except to the extent required by an order of a court having competent jurisdiction or under subpoena from an appropriate government agency, in which event, you shall use your best efforts to consult

010

with the Company prior to responding to any such order or subpoena, you shall not use or disclose any confidential or proprietary trade secrets, customer and client lists, drawings, designs, marketing plans, sales scripts, training materials or methods (including, but not limited to, workouts, movements, exercise routines, exercise formulas, nutrition advice, content, sequences, prescriptions, dances, muscular structure work and equipment), CRM methods, management organization information (including, but not limited to, data and other information relating to members of the Board of Managers of the Company or any of its affiliates, the Company or any of its affiliates or to the management of the Company or any of its affiliates), operating policies or manuals, business plans, financial records, or other financial, commercial, business or technical information (x) that relate to the Company or any of its affiliates; or (y) that the Company or any of its affiliates has received that belongs to clients or others who do business with the Company or any of its affiliates (collectively, "*Confidential Information*") to any third Person (defined below) unless such Confidential Information has been previously disclosed to the public generally or is in the public domain (in each case, other than by reason of your breach of this paragraph).

During the period beginning on the date hereof and ending one year after the termination of your employment with the Company (the "*Restriction Period*"), you shall not, directly or indirectly, own any interest in, operate, join, control or participate as a partner, shareholder, member, director, manager, officer, or agent of, enter into the employment of, act as a consultant to, or perform any services for any entity that is in competition with the business of the Company or any of its affiliates in any jurisdiction in which the Company or any of its affiliates is engaged, or in which any of the foregoing has documented plans to become engaged of which you have knowledge at the time of your termination of employment.

During the Restriction Period, you shall not, directly or indirectly, for your own account or for the account of any other natural person, partnership, limited liability company, association, corporation, company, trust, business trust, governmental authority or other entity (each, a "*Person*") (a) solicit for employment, employ or otherwise interfere with the relationship of the Company or any of its affiliates with any natural person throughout the world who is or was employed by or otherwise engaged to perform services for the Company or any of its affiliates at any time during your employment (in the case of any such activity during such time) or during the one year period preceding such solicitation, employment or interference (in the case of any such activity during the Restriction Period but after the date of termination of your employment), or (b) induce any employee of the Company or any of its affiliates to engage in any activity which you are prohibited from engaging in under this paragraph or to terminate such employee's employment with the Company.

During the Restriction Period, you shall not, directly or indirectly, for your own account or for the account of any other Person, solicit, interfere with, or otherwise attempt to establish any business relationship of a nature that is competitive with the business or relationship of the Company or any of its affiliates with any Person throughout the world which is or was a client of or another Person who does business with the Company or any of its affiliates at any time during your employment (in the case of any such activity during such time) or during the one-year period preceding such activity (in the case of any such activity during the Restriction Period but after the date of termination of your employment).

You agree that the Company shall own all right, title and interest (including, but not limited to, patent rights, copyrights, trade secret rights and other rights throughout the world) in any inventions, works of authorship, ideas or information made or conceived or reduced to

011

practice, in whole or in part, by you (either alone or with others) during the period you are employed (collectively "*Developments*"); *provided, however,* that the Company shall not own Developments for which no equipment, supplies, facility, trade secret information or Confidential Information of the Company was used and which were developed entirely on your time, and (a) which do not relate (i) to the business of the Company or any of its affiliates or (ii) to the actual or demonstrably anticipated research or development of the Company or any of its affiliates, and (b) which do not result from any work performed by you for the Company. Subject to the foregoing provisions of this paragraph, you will promptly and fully disclose to the Company, or any persons designated by it, any and all Developments made or conceived or reduced to practice or learned by you, either alone or jointly with others during the period you are employed by the Company. You hereby assign all right, title and interest in and to any and all of these Developments to the Company. You shall further assist the Company, at the Company's expense, to further evidence, record and perfect such assignments, and to perfect, obtain, maintain, enforce and defend any rights specified to be so owned or assigned. You hereby irrevocably designate and appoint the Company and its agents as attorneys-in-fact to act for and on your behalf to execute and file any document and to do all other lawfully permitted acts to further the purposes of the foregoing with the same legal force and effect as if executed by you. In addition, you acknowledge that all original works of authorship which are made by you (solely or jointly with others) within the scope of your employment and which are protectable by copyright are "works made for hire," as that term is defined in the United States Copyright Act (17 USC §101). To the extent allowed by law, this paragraph includes all rights of paternity, integrity, disclosure and withdrawal and any other rights that may be known as or referred to "moral rights" (collectively, "*Moral Rights*"). To the extent you retain any such Moral Rights under applicable law, you hereby waive such Moral Rights and consents to any action consistent with the terms of this letter with respect to such Moral Rights, in each case, to the fullest extent of such applicable law. You will confirm any such waivers and consents from time to time as requested by the Company.

You agree that you shall neither, directly or indirectly, engage in any conduct or make any statement disparaging or criticizing in any way the Company or any of its affiliates, or any of their personnel, nor engage in any other conduct or make any other statement that could be reasonably expected to impair the goodwill or reputation of the Company or any of its affiliates, in each case, except to the extent required by law, and then only after consultation with the Company to the extent possible.

In the event of your termination, you shall deliver to the Company (a) all property of any of the Company or its affiliates then in your possession; and (b) all documents and data of any nature and in whatever medium of any of the Company or its affiliates, and you shall not take with you any such property, documents or data or any reproduction thereof, or any documents containing or pertaining to any Confidential Information.

The parties to this letter agree not to disclose its terms to any Person, other than their attorneys, accountants, financial advisors or, in your case, to members of your immediate family or, in the Company's case, for any reasonable purpose that is reasonably related to its business operations; provided, that this paragraph shall not be construed to prohibit any disclosure required by law or in any proceeding to enforce the terms and conditions of this letter.

You acknowledge and agree that the covenants, obligations and agreements contained in this letter relate to special, unique and extraordinary matters and that a violation of any of the terms of such covenants, obligations or agreements will cause the Company and its affiliates

012

irreparable injury for which adequate remedies are not available at law. Therefore, you agree that the Company shall be entitled to an injunction, restraining order or such other equitable relief (without the requirement to post bond) to restrain you from committing any violation of such covenants, obligations or agreements. These injunctive remedies are cumulative and in addition to any other rights and remedies the Company and its affiliates may have.

**Assumption of Risk:** You, for yourself and your personal representatives, assigns, heirs and next of kin:

Acknowledge, agree and represent that you understand the nature of the training activities that you will be required to perform during the course of your employment with the Company (the "*Training Activities*") and that you are qualified, in good health, and in proper physical condition to participate in such Training Activities. You also understand that the equipment used in the Training Activities presents risk of injury, and agree to keep any and all equipment used in the Training Activities in good working condition and stored in a safe and secure manner when not in use. You further agree and warrant that if at any time you believe conditions to be unsafe for you, you will immediately discontinue further participation in the Training Activities.

You fully understand that (a) the Training Activities and their related equipment involve risks and dangers of serious bodily injury, the aggravation of existing and prior injuries and conditions, illness, paralysis and death ("*Risks*"); (b) these Risks and dangers may be caused by your own actions or inactions, the actions or inactions of others participating in the Training Activity, the condition in which the Training Activity takes place, or the negligence of the "Releasees" named below; (c) there may be other risk and social and economic losses either not known to you or not readily foreseeable at this time; and you fully accept and assume all such risks and all responsibility for losses, costs and damages you incur as a result of participation in the Training Activities.

You hereby release, discharge, and covenant not to sue the Company or any of its employees, agents, instructors, officers, members, administrators, directors, managers, affiliates, clients, other participants, sponsors, advertisers, and, if applicable, owners and lessors of premises on which the Training Activities take place, (together, the "*Releasees*") from all liability, claims, demands, losses, or damages on your account caused or alleged to be caused in whole or in part by the negligence of the Releasees or otherwise, including negligent rescue operations, and you further agree that if, despite any of the provisions of this letter, you, or anyone on your behalf makes a claim against any of the Releasees, you will indemnify, save and hold harmless each of the Releasees from any litigation expenses, attorney fees, loss, liability, damage, or cost which may be incurred as a result of such claim.

**Taxes:** All amounts payable and benefits provided to you shall be subject to any and all applicable taxes, as required by applicable federal, state, local and foreign laws and regulations.

**Entire Agreement:** This letter constitutes the entire agreement between the Company and you with respect to your employment by the Company, and supersedes all undertakings and agreements, whether oral or in writing, previously entered into by the Company and you with respect to any services you may have provided or will provide in the future. All prior correspondence and proposals (including, but not limited to, summaries of proposed terms) and all prior offer letters, promises, representations, understandings, arrangements and agreements

(including, but not limited to, those made to or with you by any other person) are merged herein and superseded hereby. You acknowledge and agree that, as of the date of this letter, you are not owed any compensation or benefits from the Company or any of its affiliates.

**Severability:** In the event that any one or more of the provisions of this letter shall be or become invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall not be affected thereby. You and the Company agree that the covenants contained in this letter are reasonable covenants under the circumstances, and further agree that if, in the opinion of any court of competent jurisdiction such covenants are not reasonable in any respect, such court shall have the right, power and authority to excise or modify such provision or provisions of these covenants as to the court shall appear not reasonable and to enforce the remainder of these covenants as so amended.

**Survival:** The Company and you hereby agree that certain provisions of this letter, including, but not limited to, those listed under the heading "Restrictive Covenants", shall survive the termination of your employment in accordance with their terms.

**Amendment; Governing Law:** This letter may not be amended or modified except by an express written agreement signed by you and the Company. This letter shall be governed by, and construed, interpreted and enforced in accordance with, the laws of the State of New York (excluding any rule or principle of conflict of laws which might refer such construction or interpretation to the laws of another jurisdiction). You consent to the personal and exclusive jurisdiction of the courts of the State of New York (including the United States District Court for the Southern District of New York) in any proceedings hereunder that are not covered by the paragraph entitled "Arbitration", including, but not limited to, any proceeding for equitable relief. You further agree not to interpose any objection for improper venue in any such proceeding.

**Arbitration:** Except for injunctive relief, or as otherwise required by law, any dispute, claim, question or controversy arising under or relating to this letter, your employment with the Company or the termination thereof (each such dispute, claim, question or controversy, a "*Dispute*") shall be resolved by submitting such Dispute to binding arbitration administered by JAMS pursuant to its Employment Arbitration Rules and Procedures and subject to its Employment Arbitration Minimum Standards of Procedural Fairness (collectively, the "*Rules*"), and pursuant to the procedures set forth in this paragraph. In the event of any conflict between the Rules and the procedures set forth in this paragraph, the procedures set forth in this paragraph shall control. Any such arbitration shall be brought within any otherwise applicable statute of limitations period, and shall be the sole and exclusive means for resolving such Dispute (other than for injunctive relief or as otherwise required by law). Any arbitration shall be held in New York City in New York and conducted before a single neutral arbitrator selected by mutual agreement of the parties hereto within 30 days of the initiation of the arbitration or, if they are unable to agree, by JAMS under its rules. The arbitrator shall take submissions and hear testimony, if necessary, and shall render a written decision as promptly as practicable. The arbitrator may grant any legal or equitable remedy or relief that the arbitrator deems just and equitable, to the same extent that remedies or relief could be granted by a state or federal court in the United States. The decision of the arbitrator shall be final, binding and conclusive on all parties and interested persons. It is the intention of the parties hereto that they shall be entitled to fair and adequate discovery

in accordance with the Federal Rules of Civil Procedure. The parties hereto shall keep confidential the fact of the arbitration, the dispute being arbitrated and the decision of the arbitrator. Judgment upon the award rendered by the arbitrator may be entered in the courts described above in the paragraph entitled "Amendment; Governing Law". Each party shall be responsible for its own costs and expenses, including attorneys' fees.

\* \* \* \* \*

Please signify your acceptance of our offer of employment by signing below and returning this letter to the undersigned within seven days of the date of this letter.

We look forward to your acceptance and to a mutually beneficial and rewarding relationship.

T.A. Studio New York LLC

By: _____
Name:  Maria Kelling
Title:  Global Manager Training & Prescription Team

Accepted and Agreed
as of the date first written above:

_____  Signature

Print name:  Megan Roup   6/11/11

015

# EXHIBIT C

JOIN THE TSSFAM! CLICK TO START YOUR 7-DAY FREE TRIAL!

THE SCULPT SOCIETY   TSS METHOD ▾   SHOP ▾   EVENTS ▾   BLOG   TESTIMONIALS   REFER A FRIEND



THE SCULPT SOCIETY

Home  ›  Meet Megan

MEET MEGAN

Hi everyone!
I am Megan Roup and I am so happy you're here! I'd love to share a little about myself and introduce The Sculpt Society to you!



017

My entire life, I have been passionate about dance. I moved to New York City by way of Santa Barbara, California to attend the Dance Program at NYU's Tisch School of the Arts. Post-graduation I lived and worked in New York City as a dancer which led me to a dream-job working for the NBA's Brooklyn Nets Dance Team. I was always hustling in the city- juggling my career with the Nets, teaching fitness classes and working in fashion. I quickly fell in love with teaching and the connections and impact I was having on other women and knew it was something I wanted to do forever.

I knew that there was something missing from the boutique fitness community, so I combined my passion for dance and love for fitness to create The Sculpt Society. I spent years teaching fitness and developing The Sculpt Society method before launching in 2017. I wanted to create a program that would help women reach their goals and would still be fun. My mission with The Sculpt Society workout app is to empower women through movement, to stand in their bodies with confidence and strength, and to feel their best self.

As someone who has struggled with body confidence in my early twenties, I understand what most women have felt at some point in their life. I am you; I've been there, and I can relate to knowing what it feels like to be uncomfortable in your own body, overwhelmed, unmotivated or a bit lost when it comes to working out. After years of torturing myself in the gym, it wasn't until I found dance-based fitness that things shifted. I truly began to gain a sense of strength and freedom within myself, I was finally having FUN working out.

If you're like me and are searching for a fun, empowering and effective workout, The Sculpt Society is for you! Come join TSS and experience this amazing community!

**START WORKING OUT WITH ME**

Follow TSS on Instagram where I share secrets behind The Sculpt Society and so much more!



## Sign Up For TSS Updates

We promise to only send you the good stuff!

Enter email

**Contact**

**General Inquires**: info@thesculptsociety.com

**Tech support for TSS App**: Please log into the app and contact tech support by clicking on "profile" and then clicking "contact support"

018

**Links**

REFER A FRIEND

TSS Method

Shop

FAQ

Blog

Testimonials

Login

Shipping, Returns & Exchange Policies

Privacy

**Newsletter**

email@example.com

SUBSCRIBE

**Get Connected**

XML Sitemap

© 2022, The Sculpt Society        |    Powered by Shopify