TAMANY VINSON BENTZ (SBN 258600)
tamany.bentz@us.dlapiper.com
JASON T. LUEDDEKE (SBN 279242)
jason.lueddeke@us.dlapiper.com
KRISTINA FERNANDEZ MABRIE (SBN 318315)
kristina.fernandezmabrie@us.dlapiper.com
MICHAEL P. BROWN (SBN 328579)
michael.p.brown@us.dlapiper.com
**DLA PIPER LLP**
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, California 90067
Tel:  310.595.3000
Fax:  310.595.3300

Attorneys for Plaintiffs
TRACY ANDERSON MIND AND BODY, LLC and
T.A. STUDIO NEW YORK LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TRACY ANDERSON MIND AND BODY, LLC, a Delaware limited liability company; and T.A. STUDIO NEW YORK LLC, a California limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>MEGAN ROUP, an individual; and THE SCULPT SOCIETY, LLC, a California limited liability company,<br><br>Defendants. | Case No. 2:22-cv-04735-RSWL-E<br><br>Hon. Ronald S.W. Lew<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND SPECIAL MOTION TO STRIKE (ANTI-SLAPP)**<br><br>Hearing Date:  November 1, 2022<br>Hearing Time:  10:00 a.m.<br><br>Complaint Filed:  July 11, 2022<br>Trial Date;  Not set |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................... 1

II.     FACTUAL BACKGROUND ......................................................................... 3

III.    LEGAL STANDARD ..................................................................................... 5

IV.     ARGUMENT ................................................................................................. 5

     A.    Plaintiffs State a Federal Copyright Infringement Claim (Count I). .......................................................................................... 5

         1.    The TA Method Choreography Is Protectable. ......................... 6

         2.    *Bikram* Is Distinguishable. ..................................................... 8

     B.    Plaintiffs State a Lanham Act Claim (Count II). ............................. 10

         1.    The Statements Are Not Puffery. ............................................ 10

         2.    The Statements Are Material, and False Or Misleading. ........ 12

         3.    *Dastar* Does Not Bar Plaintiffs' Claim. ................................ 14

         4.    The Statements Relate To the TSS Method. ........................... 16

     C.    Plaintiffs State a Breach of Contract Claim (Count III). .................. 17

         1.    Plaintiffs' Claim Does Not Relate to Public Information. ...... 17

         2.    The Confidentiality Provision Is Enforceable. ....................... 18

         3.    The June 2011 Agreement Does Not Defeat Plaintiffs' Claim. ...................................................................................... 19

     D.    Plaintiffs' UCL Claim (Count IV). .................................................. 20

         1.    Plaintiffs State a UCL Claim. ................................................. 20

         2.    Plaintiffs' UCL Claim Survives the Anti-SLAPP Motion. ..... 22

             a.    The Statements Are Exempted Commercial Speech .... 22

             b.    Plaintiffs Are Entitled to Attorneys' Fees .................... 24

V.      CONCLUSION ............................................................................................ 25

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND SPECIAL MOTION TO STRIKE (ANTI-SLAPP)

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aguilar v. Cty. of Riverside*,
    2014 WL 1795204 (C.D. Cal. Apr. 25, 2014).....................................................14

*Albanese v. Menounos*,
    218 Cal. App. 4th 923 (2013)...........................................................................24

*Allergan USA, Inc. v. Prescribers Choice, Inc.*,
    364 F. Supp. 3d 1089 (C.D. Cal. 2019)........................................................11, 13

*AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*,
    28 Cal. App. 5th 923 (2018)............................................................................19

*Bardin v. Daimlerchrystler Corp.*,
    136 Cal. App. 4th 1255 (2006)........................................................................21

*Bikram's Yoga College of India, L.P. v. Evolation Yoga, LLC*,
    803 F.3d 1032 (9th Cir. 2015)....................................................................1, 8, 9

*Brown v. TGS Mgmt. Co., LLC*,
    57 Cal. App. 5th 303 (2020).........................................................................19, 20

*Cannarella v. Volvo Car USA LLC*,
    2016 WL 9450451 (C.D. Cal. Dec. 12, 2016)..................................................16

*Children's Cerebral Palsy Movement, Inc. v. Sawitz*,
    2018 WL 6340754 (C.D. Cal. Nov. 16, 2018)...........................................7, 8, 10

*In re Chrysler-Dodge-Jeep Lit.*,
    295 F. Supp. 3d 927 (N.D. Cal. 2018)..............................................................11

*Conserv. Force v. Salazar*,
    646 F.3d 1240 (9th Cir. 2011)...........................................................................5

*Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv., Inc.*,
    911 F.2d 242 (9th Cir. 1990)...........................................................................12

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
    539 U.S. 23 (2003)......................................................................14, 15, 16, 17

*E.D.C. Techs., Inc. v. Seidel*,
    225 F. Supp. 3d 1058 (N.D. Cal. 2016)......................................................5, 19, 23

*Eden v. Ramirez*,
    2017 WL 5247921 (D. Or. Sept. 6, 2017) ...................................................... 18

*Equilon Enters., LLC v. Consumer Cause, Inc.*,
    29 Cal. 4th 53 (2002) ......................................................................................25

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
    449 U.S. 340 (1991) .......................................................................................... 6

*Focal Point Films, LLC v. Sandhu*,
    2019 WL 7020209 (N.D. Cal. Dec. 20, 2019) .................................................16

*Hollingsworth Solderless Terminal Co. v. Turley*,
    622 F.2d 1324 (9th Cir. 1980) .........................................................................19

*Horgan v. Macmillan, Inc.*,
    789 F.2d 157 (2d Cir. 1986) ..................................................................6, 7, 10

*Inga v. Bellacor.com, Inc.*,
    2020 WL 5769080 (C.D. Cal. July 17, 2020) ..................................................21

*Jay Blahnik Inc. v. WaterRower, Inc.*,
    2022 WL 910929 (D.R.I. Mar. 29, 2022)........................................................ 6

*Kinney v. Oppenheim*,
    2011 WL 13217573 (C.D. Cal. Mar. 3, 2011) .................................................17

*L.A. Taxi Coop., Inc. v. The Indep. Taxi Owners Assn. of Los Angeles*,
    239 Cal. App. 4th 918 (2015) ...............................................................23, 24, 25

*Leoni Fiber Optics, Inc. v. Kaus*,
    2013 WL 12106942 (D. Ariz. June 14, 2013)..................................................18

*Marco Polo, Inc. v. Foster*,
    2018 WL 1456937 (S.D. Cal. Mar. 22, 2018)..................................................18

*Meribear Prods. Inc. v. Vail*,
    2015 WL 12766576 (C.D. Cal. Aug. 11, 2015) ...............................................24

*Nat'l Rural Telecomm. Co-op. v. DIRECTV, Inc.*,
    319 F. Supp. 2d 1059 (C.D. Cal. 2003)............................................................21

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT
AND SPECIAL MOTION TO STRIKE (ANTI-SLAPP)

*Newcal Indus., Inc. v. Ikon Office Solution*,
    513 F.3d 1038 (9th Cir. 2008) ...................................................... 12

*Obesity Research Inst., LLC v. Fiber Research Int'l., LLC*,
    165 F. Supp. 3d 937 (S.D. Cal. 2016) ......................................... 14

*P & P Imports, LLC v. Festival Trading, Inc.*,
    2018 WL 5099723 (C.D. Cal. May 15, 2018) ............................... 5

*Podolsky v. First Healthcare Corp.*,
    50 Cal. App. 4th 632 (1996) ................................................. 21, 23

*Porter v. Jones*,
    319 F.3d 483 (9th Cir. 2003) ........................................................ 5

*R and A Synergy LLC v. Spanx, Inc.*,
    2019 WL 4390564 (C.D. Cal. May 1, 2019) ........................... 12, 22

*Scott v. Citizen Watch Co. of Am., Inc.*,
    2018 WL 1626773 (N.D. Cal. Apr. 4, 2018) ................................ 12

*Soukup v. Law Offices of Herbert Hafif*,
    39 Cal. 4th 260 (2006) .............................................................. 25

*Southland Sod Farms v. Stover Seed Co.*,
    108 F.3d 1134 (9th Cir. 1997) .................................................... 10

*SPS Tech., LLC v. Briles Aerospace, Inc.*,
    2019 WL 6841992 (C.D. Cal. Oct. 30, 2019) ..................... 11, 12, 13

*Sybersound Recs., Inc. v. UAV Corp.*,
    517 F.3d 1137 (9th Cir. 2008) .......................... 15, 17, 21, 22

*TYR Sport Inc. v. Warnaco Swimwear Inc.*,
    679 F. Supp. 2d 1120 (C.D. Cal. 2009) .................................. 24

*Universal City Studios, Inc. v. Sony Corp. of Am.*,
    429 F. Supp. 407 (1997) .............................................................. 14

*Vasquez v. L.A. Cnty.*,
    487 F.3d 1246 (9th Cir. 2007) ...................................................... 5

*Williams and Lake LLC v. Genesis Sys. LLC*,
    2017 WL 6418937 (D. Ariz. Sept. 13, 2017) ............................... 16

-iv-

*Zobmondo Entm't LLC v. Imagination Int'l Corp.*,
    2009 WL 8714439 (C.D. Cal. June 23, 2009).......................................11, 15, 16

**Statutes**

15 U.S.C. § 1125(a) .......................................................................................*passim*

17 U.S.C. § 102(a) .......................................................................................... 6

Cal. Bus. & Prof. Code § 1660 ................................................................... 18, 19

Cal. Bus. & Prof. Code § 17200 ................................................................. 2, 20

Cal. Civ. Proc. Code § 425.16(c)(1) ............................................................ 25

Cal. Civ. Proc. Code § 425.16(e)(4) ............................................................ 23

Cal. Civ. Proc. Code § 425.17 ...................................................................... 23

**Other Authorities**

Fed. R. Civ. P. 8(a)(2)..................................................................................... 5

Fed. R. Civ. P. 12(b)(6) .............................................................................. 5, 20

U.S. Copyright Office, Compendium II of Copyright Office
    Practices (1984) ...................................................................................... 6

U.S. Copyright Office, Compendium III of Copyright Office
    Practices (2021) ...................................................................................... 6

U.S. Copyright Office, Copyright Registration of Choreography and
    Pantomime (Circular 52) (Sept. 2017) ................................................. 9

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT
AND SPECIAL MOTION TO STRIKE (ANTI-SLAPP)

## I. **INTRODUCTION**

Tracy Anderson created the Tracy Anderson Method ("TA Method"), a revolutionary choreography protocol that uniquely combines choreography, fitness, and cardiovascular movement, based on years of research, testing, and refinement. Defendant Megan Roup ("Roup") worked for Anderson for over six years at Plaintiff T.A. Studio New York LLC ("TANY"), at which point she quit and founded her own company, Defendant The Sculpt Society, LLC ("TSS," collectively "Defendants"), just one month later. Roup used TANY's confidential information to found TSS and create TSS' choreography-based fitness videos, which copy Anderson's choreography from media in which Plaintiff Tracy Anderson Mind and Body LLC ("TAMB," collectively "Plaintiffs") owns registered copyrights. Plaintiffs sufficiently plead facts establishing that Defendants engaged in misconduct that has allowed them to improperly capitalize on years of Anderson's efforts. Defendants' contrary arguments ignore the facts alleged and conflict with settled pleading standards, and their baseless ad hominem attacks on Anderson serve no purpose but to detract from the infirmities in their legal positions.

First, Plaintiffs state a claim for copyright infringement. The allegations plausibly establish that Defendants infringed, and continue to infringe, TAMB's copyrights in various DVDs related to the TA Method by publishing videos that copy the choreography from the DVDs. Plaintiffs allege facts demonstrating that the choreography comprising the TA Method is protectable, and those factual allegations must be accepted as true at the motion to dismiss stage. Nevertheless, Defendants rely exclusively on *Bikram's Yoga College of India, L.P. v. Evolation Yoga, LLC,* 803 F.3d 1032 (9th Cir. 2015), a summary judgment case, to argue that the choreography at issue instead constitutes functional exercise as a factual matter. But the allegations in the FAC control, not the facts in *Bikram*, which in any event is distinguishable because the TA Method is nothing like the thousand-year-old static poses that comprise Bikram Yoga.

1    Second, Plaintiffs adequately allege a claim for violation of Section

2    43(a)(1)(B) of the Lanham Act based on facts establishing that Defendants made

3    false or misleading representations of fact related to The Sculpt Society Method

4    ("TSS Method"). Defendants' website states that Roup "spent years . . . developing

5    The Sculpt Society method before launching in 2017," following a sentence stating

6    that such development came in response to such a method being "missing" from the

7    market. Defendants' statements falsely imply, among other things, that Roup spent

8    years developing the TSS Method when she did not. While Defendants try to

9    marginalize these statements as "biographical quips," Plaintiffs allege facts, which

10    must be accepted as true, plausibly establishing that the statements are material and

11    deceptive to consumers. Defendants' attempt to paint this claim as a "reverse

12    passing off" authorship claim fails because it is brought under Section 43(a)(1)(B),

13    not (A), and concerns a misrepresentation of fact related to the TSS Method.

14    Third, Plaintiffs adequately allege a claim for breach of contract. The facts

15    alleged show that Roup signed two employment contracts with TANY ("Trainer

16    Agreement," one signed in February 2011 and one signed in June 2011), both of

17    which prohibit use or disclosure of TANY's Confidential Information. The

18    allegations further establish that Defendants used the Confidential Information

19    related to the TA Method and Plaintiffs' business in connection with the founding

20    and operation of TSS. Defendants' argument that all of this information is public

21    misreads the Trainer Agreement, and their argument that the confidentiality

22    provision amounts to an impermissible trade restriction misreads the law.

23    Fourth, Plaintiffs adequately allege a claim for unfair and fraudulent business

24    acts or practices under Cal. Bus. & Prof. Code § 17200 ("UCL"). The facts alleged

25    show that Defendants used Plaintiffs' internal information to form and operate their

26    own competing company and published advertisements that misrepresented facts

27    about Roup's company and misled consumers. In less than two pages, Defendants

28    raise a meritless anti-SLAPP argument that ignores the dispositive statutory

provision exempting Defendants' commercial speech from anti-SLAPP protection. Plaintiffs provided this statute to Defendants before they filed their motion, but they disregarded it. Under such circumstances, an award of Plaintiffs' fees is mandatory.

Defendants' motion should therefore be denied. Should the Court find merit in any of their arguments, then Plaintiffs respectfully request leave to amend.

## II.   FACTUAL BACKGROUND

After years of research, testing, and refinement, Anderson created the TA Method. FAC ¶¶ 19, 20. The TA Method is a choreography protocol made up of specific movements, sequences, and routines that uniquely combines choreography, fitness, and cardiovascular movement to help people create balance in their bodies so they can create balance in their lives. *Id.* ¶ 19. Anderson is CEO of TAMB, which offers choreography-based fitness classes at studios and in online classes. *Id.* ¶ 2. TAMB is the owner of registered copyrights in multiple DVDs based on the TA Method (the "TA Works"). *Id.* ¶¶ 2, 45, 46. Anderson also owns TANY, an entity that was founded to operate certain New York studios. *Id.* ¶ 2.

TANY employed Roup as a trainer from 2011 until her departure in 2017. *Id.* ¶ 27. Roup entered into the Trainer Agreement with TANY on February 28, 2011 (revised in a non-substantive way on June 11, 2011). *Id.* ¶ 29. It prohibits Roup from using or disclosing, either during or following employment, the company's "Confidential Information," which includes, among other things, nonpublic information and materials related to the TA Method and Plaintiffs' business. *Id.*

Roup learned and had access to substantial Confidential Information, including (i) training materials and manuals, choreography transcriptions, and custom write-ups related to the performance and teaching of the TA Method; (ii) outlines of movement sequences and instructions related to performing each of the TA Method programs in circulation during that period; and (iii) Plaintiffs' business practices and protocols. *Id.* ¶¶ 30-31 (listing additional Confidential Information).

In early 2017, Roup quit TANY. *Id.* ¶ 33. Around March 2017—just one

1   month after resigning from TANY—Roup founded TSS, which, like Plaintiffs,

2   offers a choreography-based fitness and mat movement program. *Id.* ¶ 34. Today,

3   TSS offers an online- and app-based subscription program in which paying

4   customers have access to videos of Roup and TSS employees performing

5   choreography routines. *Id.* ¶ 35. Like Anderson named her program "The Tracy

6   Anderson Method," Roup named her program "The Sculpt Society Method." *Id.*

7       Since around late 2019 through the present, including as recently as Spring

8   2022, Defendants have published over 400 videos behind a paywall on the TSS app

9   and website. *Id.* ¶ 37. Plaintiffs allege that Defendants used Confidential

10  Information Roup learned while employed at TANY to create a substantial number

11  of TSS' 400 videos, including the four specifically identified videos listed in the

12  FAC. *Id.* Plaintiffs further allege that Defendants have used Confidential

13  Information for their own benefit related to at least business operations, program

14  structure, and customer intake methods, and that they disclosed Confidential

15  Information to third-parties, including as recently as Spring 2022. *Id.* ¶ 38.

16      On Defendants' website, Roup states, "I knew that there was something

17  missing from the boutique fitness community, so I combined my passion for dance

18  and love for fitness to create The Sculpt Society. I spent years teaching fitness and

19  developing The Sculpt Society method before launching in 2017." *Id.* ¶ 43. Above

20  and below this language are links sign up for the TSS Method. Dkt. 15-2 Ex. C.

21      Defendants' videos infringe TAMB's copyrights by copying the

22  choreography movements, sequences, and routines depicted in the TA Works;

23  organizational structure and format of the TA Works; and aesthetic elements

24  depicted in the TA Works. *Id.* ¶ 47. Plaintiffs provide three specific examples of

25  infringement.[1] *Id.* ¶ 48. Plaintiffs seek damages and injunctive relief. *Id.* ¶ 10.

26  _____

27  [1] Defendants argue that Plaintiffs should have purchased a free trial or subscription
    to TSS to review the videos. MTD at 11 n.5. However, neither the app nor website

28  permits the download of videos onto a computer, and as a result, Plaintiffs cannot
    sufficiently compare all of the videos to the TA Works until discovery. FAC ¶ 49.

-4-

### III.  LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2). *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). On a Rule 12(b)(6) motion, the Court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." *Vasquez v. L.A. Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007). The Court may only grant a Rule 12(b)(6) motion for failure to state a claim where "there is a lack of a cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Conserv. Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011). Leave to amend should be liberally granted unless the court "determines that the pleading could not possibly be cured by the allegation of other facts." *E.D.C. Techs., Inc. v. Seidel*, 225 F. Supp. 3d 1058, 1063 (N.D. Cal. 2016).

### IV.  ARGUMENT

#### A.    Plaintiffs State a Federal Copyright Infringement Claim (Count I).

Plaintiffs allege that Defendants infringed TAMB's copyrights in the TA Works by publishing TSS videos that copy the choreography from the TA Works. FAC ¶ 51. Defendants do not argue that they did not copy the TA Works, but instead that the choreography constitutes unprotectable "functional exercise movements." Motion to Dismiss, Dkt. 15-1 ("MTD") at 7.

However, whether a copyrighted work qualifies for copyright protection is a factual inquiry not appropriate for determination on a motion to dismiss. *See, e.g.*, *P & P Imports, LLC v. Festival Trading, Inc.*, 2018 WL 5099723, at *6 (C.D. Cal. May 15, 2018) ("[A]n argument on a motion to dismiss that copyrighted works do not qualify for copyright protection . . . is 'inappropriate . . . as the Court must accept all material factual allegations as true.'"); *Jay Blahnik Inc. v. WaterRower, Inc.*, 2022 WL 910929 (D.R.I. Mar. 29, 2022) (denying motion for judgment on the pleadings because defendant "asks the Court to completely deconstruct the Indo-Row Works and to find . . . that they contain nothing copyrightable").

Nonetheless, Defendants are incorrect because (1) Plaintiffs have adequately alleged that the choreography in the TA Works is copyrightable, and (2) *Bikram*, upon which Defendants base the entirety of their argument, is distinguishable.

## 1.    The TA Method Choreography Is Protectable.

To state copyright infringement claim, a plaintiff must allege: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 449 U.S. 340, 361 (1991). Plaintiffs have plausibly alleged each element of their claim.

The Copyright Act lists "choreographic works" as eligible for copyright protection. 17 U.S. § 102(a)(4).[2]  The Act does not define choreographic work. But courts have determined that a choreographic work "represents a related series of dance movements and patterns" organized into "an integrated, coherent, and expressive compositional whole."[3] *Horgan v. Macmillan, Inc.*, 789 F.2d 157, 161 (2d Cir. 1986) (quoting U.S. Copyright Office, Compendium II of Copyright Office Practices ("Compendium II") § 450.03(a) (1984). Common elements of choreography are musical accompaniment and a series of rhythmic dance movements. U.S. Copyright Office, Compendium III of Copyright Office Practices ("Compendium III") §§ 805.2(A), (C) (2021).[4]  By contrast, non-expressive physical movements, such as "ordinary motor activities" or "functional physical movements" like "yoga positions" are not "the type of authorship that Congress intended to protect as choreography." *Id.* § 806.5(B). However, "[c]horeographic works that *incorporate . . . athletic exercises may be protected* by copyright, provided that the work as a whole contains a sufficient amount of choreographic authorship." *Id.* §

---

[2] Plaintiffs allege that the choreography comprising the TA Method is fixed in tangible media of expression, including the TA Works, under Section 102. FAC ¶ 45. Defendants' motion does not dispute this allegation.

[3] Compendium II defines "dance" as "static and kinetic successions of bodily movement in certain rhythmic and spatial relationships."  Compendium II § 450.01.

[4] Available at https://www.copyright.gov/comp3/chap800/ch800-performing-arts.pdf.

805.4(D) (emphasis added); *Horgan*, 789 F.2d at 161.

Given the fact-bound definition of choreography, courts have ruled that whether a series of movements qualifies as a protectable choreographic work is a fact-intense inquiry not resolvable at the pleading stage. *See Children's Cerebral Palsy Movement, Inc. v. Sawitz*, 2018 WL 6340754, at *4 (C.D. Cal. Nov. 16, 2018). *Sawitz* is analogous and instructive. In *Sawitz*, the parties developed the Ability Ballet, a "therapeutic dance protocol and choreographic work," and plaintiffs "helped select dance steps, movements, and pacing, based on what would provide the maximum therapeutic benefit for children with cerebral palsy and have the most aesthetic appeal." 2018 WL 6340754, at *1. The choreography protocol was expressed in training materials and videos. *Id.* A university conducted a study on the Ability Ballet and found that it "evoked statistically significant therapeutic benefits in cognition, gait, and feelings of self-worth" in children with cerebral palsy. *Id.* at *2. Plaintiffs filed the action, seeking a declaratory judgment that they were a joint author of the protocol under the Copyright Act. *Id.* Defendants moved to dismiss, claiming there was no copyrightable subject matter alleged. *Id.* at *3.

After acknowledging *Bikram*, the court denied the motion because "Plaintiffs repeatedly refer to Ability Ballet as a choreographic work" and allege "that the dance steps were chosen for their aesthetic appeal." *Id.* at *4. The court explained that "[a]lthough Plaintiffs…discuss Ability Ballet's therapeutic benefits . . . [f]or purposes of surviving a motion to dismiss, Plaintiffs sufficiently allege the existence of a copyright in the expression of an idea, rather than the idea itself." *Id.*

Like in *Sawitz*, Plaintiffs allege that the TA Method expressed in the TA Works contains choreography. *See, e.g.*, FAC ¶¶ 1-5, 7, 19-20, 23, 25, 30-32, 34-35, 41, 46-47. Specifically, Plaintiffs allege that the TA Method is "a choreography . . . made up of custom and specific movements, sequences, and routines." *Id.* ¶ 19. Plaintiffs allege that the movements are "arranged in a designated and continuous choreographed sequence like ballet or contemporary dance; are ***deliberately paced***;

-7-

1  and are **set to music**, which Anderson purposefully selects to fit a given

2  choreography," and that the TA Method "is designed to not only be effective and

3  fun, but also **aesthetically engaging** and appealing, and **capable of being conducted**

4  **as a performance art**." *Id.* (emphasis added). Thus, "each of Anderson's routines

5  constitutes a related series of movements organized into an integrated, coherent, and

6  **expressive** whole." *Id.* (emphasis added). These allegations, which must be treated

7  as true, plausibly establish that the TA Method contains protectable "choreographic

8  works" under the Copyright Act. *See Sawitz*, 2018 WL 6340754, at *4.

9       Plaintiffs further allege that Defendants' videos copy the choreography from

10  the TA Works. FAC ¶ 51. Plaintiffs have stated a copyright infringement claim.

11              **2.    *Bikram* Is Distinguishable.**

12       Defendants urge the Court to ignore Plaintiffs' factual allegations, misapply

13  the pleading standard, and conclude that *Bikram*—a summary judgment case—bars

14  Plaintiffs' claim. The Court should decline the invitation. *Bikram* cannot bar

15  Plaintiffs' claim at the motion to dismiss stage and in any event is factually

16  distinguishable because Bikram Yoga is not expressive. 803 F.3d at 1038.

17       In *Bikram*, plaintiff authored a book that described a process of performing 26

18  static poses (the "Sequence") that have been around for thousands of years. *Id.* at

19  1035. The book instructed that the poses be performed in order to "systematically

20  work every part of the body, to give all internal organs, all the veins, all the

21  ligaments, and all the muscles everything they need to maintain optimum health and

22  maximum function." *Id.* at 1039. When plaintiff sought to use copyright law to

23  prevent defendants from teaching the Sequence in their classes, the court affirmed

24  the district court's grant of summary judgment in favor of defendants because the

25  evidence established that the Sequence was an unprotectable idea, process, or

26  system of "functional physical sequences" "designed to improve health." *Id.* The

27  Sequence was not protectable as choreography for the same reason. *Id.* at 1044.

28       *Bikram* is distinguishable. The TA Method, which is dance-based and set to

-8-

music, is fundamentally different from Bikram Yoga, which the court expressly distinguished from dance. *Id.* at 1043. That makes the TA Method expressive when Bikram Yoga is not. Whereas Bikram Yoga is a functional fitness system, Plaintiffs allege that the TA Method is a choreography protocol made up of "series of movements organized into an integrated, coherent, and expressive whole."[5] *Compare id.* at 1042 *with* FAC ¶ 19. Whereas Bikram Yoga is a sequence of static poses, Plaintiffs allege that the TA Method is a "continuous choreographed sequence of movements like ballet or contemporary dance." *Compare Bikram,* 803 F.3d at 1042 *with* FAC ¶ 19. Whereas Bikram Yoga is performed in response to standardized verbal instructions, Plaintiffs allege that the TA Method is choreographed to music. *Compare Bikram,* 803 F.3d at 1042 *with* FAC ¶ 19. Whereas Bikram Yoga was designed to achieve a state of physical wellbeing, Plaintiffs allege that the TA Method is "designed to not only be effective and fun, but also aesthetically engaging and appealing, and capable of being conducted as a performance art." *Compare Bikram,* 803 F.3d at 1042 *with* FAC ¶ 19. On a motion to dismiss, Plaintiffs' allegations regarding the TA Method being choreographic must be accepted as true. *Sawitz*, 2018 WL 6340754, at *3-4.

Moreover, the mere fact that choreography may also confer physical benefits does not render it functional and unprotectable so long as the work is alleged to contain "a sufficient amount of choreographic authorship." *See Horgan*, 789 F.2d at 161. While Plaintiffs allege that the TA Method was developed to help people find balance in their bodies, FAC ¶ 19, that alone does not make it unprotectable. *See Sawitz*, 2018 WL 6340754, *4 (plaintiff adequately alleged "therapeutic" dance

---

[5] The Copyright Office has stated that "[c]ommon elements of choreography include:  Rhythmic movements of one or more dancers' bodies in a defined sequence and a defined spatial environment, such as a stage; A series of dance movements or patterns organized into an integrated, coherent, and expressive compositional whole; [and] . . . Musical or textual accompaniment." *See* U.S. Copyright Office, Copyright Registration of Choreography and Pantomime (Circular 52) (Sept. 2017), available at https://www.copyright.gov/circs/circ52.pdf.

1   protocol was protectable even though it was developed to improve function of

2   children with health condition). Plaintiffs' allegations show that the TA Method

3   contains a sufficient amount of choreographic authorship to be protectable.

4           **B.      Plaintiffs State a Lanham Act Claim (Count II).**

5           Plaintiffs allege that Defendants' marketing statements violate 15 U.S.C. §

6   1125(a)(1)(B). FAC ¶ 59. Defendants' website states that Roup "spent years . . .

7   developing The Sculpt Society method before launching in 2017," following a

8   sentence stating that the development came in response to such a method being

9   "missing" from the market.[6] *Id.* ¶ 58. Defendants reiterate this statement, or a

10  version of it, in their marketing, including in interviews with Roup. *Id.* ¶ 43.

11          These statements (i) tell consumers that Roup developed the TSS Method

12  over a period of multiple years, when she did not; and (ii) imply to consumers the

13  TSS Method was created through years of science-based research, development,

14  data collection and analysis, and trial and error, when it was not. *Id.* ¶ 59. These

15  statements and their implications are false or misleading.[7] *Id.* ¶ 58. While

16  Defendants make various arguments against Plaintiffs' claim, they completely fail to

17  address the alleged implications of the marketing statements relied on by the FAC.

18          **1.      The Statements Are Not Puffery.**

19          Defendants argue that the statements on their website are "non-actionable

20  opinions or puffery," and therefore are not a statement of fact upon which a Lanham

21

22  [6] Defendants analyze the two sentences at issue separately, one by one. MTD at 13.
    However, the statements must be analyzed "in their full context," as Plaintiffs do.
23  *See Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997)
    ("[I]n determining facial falsity the court must view the face of the statement in its
24  entirety, rather than examining the eyes, nose, and mouth separately and in isolation
    from each other.") (citation omitted).
25
    [7] The parties appear to agree on the pleading standard for a Lanham Act false
26  advertising claim: "(1) the defendant made a false statement of fact in a commercial
    advertisement; (2) the statement actually deceives or has the tendency to deceive its
27  audience; (3) the deception is material; (4) the defendant entered its false statement
    into interstate commerce; and (5) the plaintiff has or is likely to be injured as a
28  result." *Allergan USA, Inc. v. Prescribers Choice, Inc.*, 364 F. Supp. 3d 1089, 1108
    (C.D. Cal. 2019). Defendants do not challenge elements (4) and (5).

1    Act claim can be based. MTD at 13. "[W]hether a statement is deemed puffery is
2    generally considered a question of fact, not law." *See, e.g.*, *In re Chrysler-Dodge-*
3    *Jeep Lit.*, 295 F. Supp. 3d 927, 1005-06 (N.D. Cal. 2018). Nonetheless, based on the
4    allegations in the FAC, Defendants' marketing statements are not puffery.

5         Puffery is "exaggerated advertising, blustering, and boasting upon which no
6    reasonable buyer would rely." *Allergan*, 364 F. Supp. 3d at 1110. A statement is not
7    puffery if the represented fact regarding the defendant's product or services is
8    "quantifiable"—in other words, capable of being tested. *Id.* The amount of time that
9    Roup spent developing the TSS Method is quantifiable: either she spent more than
10   one year developing it or she did not. Plaintiffs allege facts indicating Roup did not
11   spend years developing the TSS Method because she launched it only a month after
12   leaving Plaintiffs' employment. FAC ¶ 34. Also, the means by which Roup
13   developed the TSS Method is quantifiable: either she developed it by the means
14   implied, *i.e.*, research and development, or she did not. *See, e.g.*, *Zobmondo Entm't*
15   *LLC v. Imagination Int'l Corp.*, 2009 WL 8714439, at *5 (C.D. Cal. June 23, 2009)
16   (the term "original" was not puffery because the product "was either the first, or it
17   was not"); *SPS Tech., LLC v. Briles Aerospace, Inc.*, 2019 WL 6841992, at *9 (C.D.
18   Cal. Oct. 30, 2019) ("that the companies have been manufacturing the aerospace
19   fasteners for 'over half a century' is 'quantifiable'").

20        The cases Defendants cite in support of their argument are distinguishable
21   because they involve statements that are not quantifiable or testable, and in any
22   event do not concern statements about the amount of time spent developing a
23   product or service. In *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038,
24   1053 (9th Cir. 2008), defendant's statement that its office supply business "would
25   deliver 'flexibility'" was puffery because it was not quantifiable. In *Cook, Perkiss*
26   *and Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 243 (9th Cir. 1990),
27   defendant's statement that it was "the low cost commercial collection experts" was
28   puffery because it was not quantifiable. And in *R and A Synergy LLC v. Spanx, Inc.*,

2019 WL 4390564, at \*9-10 (C.D. Cal. May 1, 2019), defendant's statements that it "invented" the undergarment at issue, that it was "unlike any other layer options," and that it filled a "white space" in the market were puffery because they were not quantifiable. Here, Plaintiffs' claim is not based on invention, but on Defendants' statements regarding how the TSS Method was developed and for how long.

### 2. The Statements Are Material, and False Or Misleading.

Defendants argue that the statements on their website are "biographical quips," and therefore not false, nonmaterial and unlikely to induce reliance or influence purchasing decision. MTD at 14-15. Here too, Defendants raise issues that are not ripe for determination on a motion to dismiss because materiality and falsity are factual questions. *See Scott v. Citizen Watch Co. of Am., Inc.*, 2018 WL 1626773, at \*11 (N.D. Cal. Apr. 4, 2018) ("Whether Defendants' characterization of the Moon Watch as a 'replica' . . . is a materially false statement that would mislead consumers into buying the watch . . . is a factual question."); *SPS Tech.*, 2019 WL 6841992, at \*9 ("at the pleading stage, the plaintiff need only allege specific misleading statements and explain why they are misleading"). Nonetheless, Defendants' attempt to trivialize the statements is unavailing because the alleged facts show it is plausible that the substance and meaning of the statements regarding the time and work that Roup put into the TSS Method are material to consumers.

Plaintiffs may establish a false statement by showing that it is "literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers." *Allergan*, 364 F. Supp. 3d at 1109-10. Plaintiffs have plausibly alleged falsity. *SPS Tech.* is factually analogous and illustrates this point. There, the false advertising claim was based on a statement on defendant's website: "[Defendant] companies have been valued Manufacturers of High Strength Aerospace Fasteners for over half a century." 2019 WL 6841992, at \*5. Plaintiff argued that the statement was misleading because it implied that defendant (i) has more than 50 years of experience manufacturing aerospace

1    fasteners and (ii) has significant engineering expertise in the aerospace fasteners

2    industry. *Id.* at *9. Defendants there, as here, argued that the statement was puffery

3    and not likely to induce reliance. Denying the motion to dismiss, the court held that

4    (i) the length of time defendant has been in business is quantifiable; (ii) "Plaintiff

5    only needs to plausibly allege that the advertising conveys that [defendant] has been

6    in existence for over 50 years and that it deceived . . . third parties"; and (iii)

7    "drawing all reasonable inferences in favor of Plaintiff, the Court cannot determine

8    as a matter of law that such a statement is not" material and deceptive. *Id.* at *10.

9         Defendants' statements are just like those in *SPS Tech*. While the statements

10   appear on the "Meet Megan" section of Defendants' website, they convey

11   substantive information regarding the development of the TSS Method. Plaintiffs

12   need only plausibly allege that the advertising conveys that Roup spent multiple

13   years developing the TSS Method—like the *SPS Tech.* defendants' advertising

14   conveyed that they had been in business for 50 years—and that it deceived

15   consumers. Plaintiffs make that allegation, and it is plausible because it is

16   reasonable for consumers to place greater value on services and products that took

17   longer to develop, and even more so on services and products that were developed

18   through research and testing over multiple years, because it connotes legitimacy,

19   dependability, and effectiveness. *See, e.g.*, *Obesity Research Inst., LLC v. Fiber*

20   *Research Int'l., LLC*, 165 F. Supp. 3d 937, 951 (S.D. Cal. 2016) (statement that drug

21   was "clinically proven" to aid in weight loss was material to consumers).

22        With no reasoning, Defendants argue that, based on a handful of consumer

23   reviews cited in the FAC, it is not reasonable for consumers at large to rely on

24   Defendants' statements. MTD at 14. Defendants cite *Universal City Studios, Inc. v.*

25   *Sony Corp. of Am.*, 429 F. Supp. 407, 409 (1997), where plaintiffs alleged that

26   defendant's advertisements for its Betamax video recorder, which stated its capacity

27   to copy content, implied that *plaintiffs* consented to their content being recorded

28   from television broadcasts and that such recording was legal. The court dismissed

1   plaintiffs' Lanham Act claim because the alleged inference was so implausible that

2   it was unreasonable as a matter of law. *Id.* Here, Defendants do not even address the

3   inferences Plaintiffs allege, which are based on the language of Defendants'

4   statements and sufficiently reasonable to survive a motion to dismiss.

5               **3.      *Dastar* Does Not Bar Plaintiffs' Claim.**

6           Defendants argue that Plaintiffs' Lanham Act claim is actually a "disguised"

7   false designation of origin claim with respect to authorship and therefore runs afoul

8   of *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003). MTD at

9   15-17. Defendants argue that Plaintiffs' "true grievance" is that "Roup has not given

10  credit to Anderson as the supposed origin (the alleged inventor and author) of the

11  TSS program." *Id.* at 16.[8] *Dastar* does not bar Plaintiffs' Lanham Act claim.

12          *Dastar* holds that the term "origin of good" in Section 43(a)(1)(A) "refers to

13  the producer of the tangible goods that are offered for sale, and not to the author of

14  any idea, concept, or communication embodied in those goods." *Id.* at 37. The

15  Supreme Court noted, however, that if "the producer of a video that substantially

16  copied the [video series created by plaintiff] were, in advertising or promotion, to

17  give purchasers the impression that the video was quite different from that series,

18  then one or more of the [plaintiffs] might have a cause of action—not for reverse

19  passing off under the 'confusion . . . as to the origin' provision of § 43(a)(1)(A), *but*

20  *for misrepresentation under the 'misrepresents the nature, characteristics [or]*

21  *qualities' provision of § 43(a)(1)(B)."* *Id.* at 38 (emphasis added).

22          Plaintiffs' claim is based on the "misrepresents the nature, characteristics [or]

23

24  _____

25  [8] Defendants point to the allegation that Roup concealed her past employment with
    TANY and that Plaintiffs' original complaint contained language related to "origin,"
26  and "vestiges" of it remain in the FAC. MTD at 16. Defendants' attempt to divine
    what Plaintiffs' "true grievance" is and whether they can spot "vestiges" of the
27  original complaint are immaterial. The FAC's allegations plausibly establish that
    Defendants' statements contain misrepresentations of fact related to the TSS
    Method. FAC ¶ 58; *see Aguilar v. Cty. of Riverside*, 2014 WL 1795204, at *7 (C.D.
28  Cal. Apr. 25, 2014) ("[T]he Court will not consider any material that was in the
    original complaint but has not been included in the amended complaint.").

qualities" provision of § 43(a)(1)(B), not the "confusion . . . as to the origin" provision of § 43(a)(1)(A). *See* FAC ¶¶ 58, 59. Plaintiffs allege that Defendants' statements "misrepresent the nature, characteristics, and qualities of the TSS Method because they imply" that the TSS Method was developed for multiple years through research and development and is therefore significantly different from the TA Method. *Id.* ¶ 59. This allegation reflects the scenario contemplated by the Supreme Court as permissible and therefore their claim is not barred by *Dastar*. *See Sybersound Recs., Inc. v. UAV Corp.*, 517 F.3d 1137, 1144 (9th Cir. 2008) ("[I]f the film company [in *Dastar*] had misrepresented . . . that the contents of the video were significantly different from the series that it copied, it would have a Lanham Act claim for misrepresenting the 'nature, characteristics [or] qualities.'").

*Zobmondo* further illustrates why Plaintiffs' claim is not barred by *Dastar*. Plaintiff made the first board game based on the conversational game, "would you rather." 2009 WL 8714439, at *1. Thereafter, defendant made its own "would you rather" board game called Justin & David's Original Would You Rather? *Id.* Plaintiff sued defendant under § 43(a)(1)(B), claiming that defendant's use of "original" misrepresented the fact that its board game was the original "would you rather" game because plaintiff made its game first. *Id.* at *1. Defendant argued that *Dastar* barred plaintiff's claim because it was based on the theory that plaintiff originated the "would you rather" concept in a board game. *Id.* at *3. The court rejected that argument, reasoning that *Dastar* was inapplicable because it (i) "does not prohibit a claim for an alleged misrepresentation as to the production of the physical good"; and (ii) concerned (a)(1)(A)," and plaintiff's claim was brought under (a)(1)(B). *Id.* Denying the motion to dismiss, the court held that plaintiff, "as the master of its complaint, centered its claim" on the production of the game rather than origination of the concept, and whether defendant's game was the first was a "specific fact that is not subjective": "[it] was either the first, or it was not." *Id.*

Here, Plaintiffs' claim is also brought under Section 43(a)(1)(B) and is

-15-

1   "centered" on the development of the TSS Method—the process by which it was

2   created, akin to the production of the game—not its idea origination. *Zobmondo*

3   instructs that on a motion to dismiss, Plaintiffs' construction must be accepted. The

4   three cases Defendants cite in support of their disguised false designation of origin

5   argument reflect a core misunderstanding of Plaintiffs' claim. The cases are

6   distinguishable because the false advertising claims at issue were not based on

7   misrepresentations regarding the good or service—like Plaintiffs' claim here—but

8   on "inventorship" or failure to credit with respect to the good or service. *See*

9   *Cannarella v. Volvo Car USA LLC*, 2016 WL 9450451, at *8 (C.D. Cal. Dec. 12,

10  2016) (who invented electric car charging system); *Williams and Lake LLC v.*

11  *Genesis Sys. LLC*, 2017 WL 6418937, at *6 (D. Ariz. Sept. 13, 2017) (who invented

12  "fully-digital braking system"); *Focal Point Films, LLC v. Sandhu*, 2019 WL

13  7020209 at *2 (N.D. Cal. Dec. 20, 2019) (failure to credit author of film).

14               **4.      The Statements Relate To the TSS Method.**

15       Defendants argue that Plaintiffs do not allege a misrepresentation of the

16  "nature, characteristics, qualities, or geographic origin" of the TSS Method itself,

17  but instead "challenge Roup's autobiographical statements about her purpose and

18  history in creating TSS." MTD at 18. This is a variation of its *Dastar*-based

19  argument—that Plaintiffs' grievance concerns authorship, not misrepresentation of

20  fact related to the TSS Method—and fails for the same reasons set forth above.

21       Defendants' reliance on *Sybersound* and *Kinney* again reflects Defendants'

22  misunderstanding of this issue. In *Sybersound*, plaintiff karaoke record producer

23  sued defendant karaoke record producers under § 43(a)(1)(B), alleging that

24  defendants falsely claimed to have obtained the proper licensing for the copyrighted

25  music used on their records. 517 F.3d at 1143. Relying on *Dastar*, the Ninth Circuit

26  would not construe the licensing status of a good as part of the nature,

27  characteristics, or qualities of the good because to do so would conflate the

28  Copyright Act and the Lanham Act by allowing competitors "to litigate the

-16-

1  underlying copyright infringement." *Id.* at 1144. In *Kinney v. Oppenheim,* 2011 WL
2  13217573, at *9 (C.D. Cal. Mar. 3, 2011), plaintiff director sued defendant
3  producers under § 43(a)(1)(B), alleging that defendants made misrepresentations
4  regarding the "nature" of plaintiff's script of a stage production because defendants
5  used the contents in their performances of the production. Relying on *Sybersound,*
6  the court found that a failure to attribute authorship is not a misrepresentation of the
7  nature, characteristics, or qualities of goods. *Id.* Neither case is applicable because
8  Plaintiffs' claim is based on a factual misrepresentation regarding the development
9  of the TSS Method and whether the TSS Method is significantly different from the
10 TA Method, neither of which involve copyright or authorship issues.

11           **C.       Plaintiffs State a Breach of Contract Claim (Count III).**

12          Plaintiffs allege that Roup breached, and continues to breach, the Trainer
13 Agreement by using and disclosing Confidential Information related to the TA
14 Method and Plaintiffs' business to create TSS' videos and to found and operate TSS.
15 FAC ¶ 68. Defendants incorrectly argue that Plaintiffs cannot establish breach.

16           **1.       Plaintiffs' Claim Does Not Relate to Public Information.**

17          Defendants argue that Roup did not breach the Trainer Agreement's
18 confidentiality provision because it excludes publicly disclosed information and
19 Plaintiffs do not identify any specific Confidential Information Roup obtained that
20 could not have been learned from Plaintiffs' public classes. MTD at 19. Defendants
21 misconstrue this claim and ignore allegations dispositive of their position.

22          Paragraphs 30, 31, and 38 specifically allege the Confidential Information
23 that Plaintiffs used and disclosed, including nonpublic information and documents
24 related not only to the TA Method but also to Plaintiffs' business. On its face,
25 Defendants' argument addresses only information related to the TA Method and
26 ignores the information related to Plaintiffs' business. MTD at 19. Defendants make
27 no argument as to how Plaintiffs' internal business information ever became public.
28 Thus, Defendants have failed to carry their burden to show Plaintiffs lack a

-17-

1  cognizable claim. *Marco Polo, Inc. v. Foster*, 2018 WL 1456937, at *9 (S.D. Cal.

2  Mar. 22, 2018) (denying motion to dismiss breach of confidentiality agreement);

3  *Eden v. Ramirez*, 2017 WL 5247921 (D. Or. Sept. 6, 2017) (denying motion to

4  dismiss breach of contract claim by defendant who contracted to "never teach or

5  instruct any of the advanced protocols . . . learned" at plaintiff's healing program).

6        Nonetheless, Plaintiffs are not claiming that their choreography movements,

7  sequences, and routines are themselves confidential to the extent they are performed

8  in Plaintiffs' classes. Rather, Plaintiffs allege that the information upon which the

9  choreography movements, sequences, and routines are based is confidential.[9]  In any

10  event, whether information has maintained its "confidential" status is a question of

11  fact not determined on a motion to dismiss. *See Leoni Fiber Optics, Inc. v. Kaus*,

12  2013 WL 12106942 at *4 (D. Ariz. June 14, 2013) (denying motion to dismiss

13  because whether information was confidential is a question of fact).

14              **2.       The Confidentiality Provision Is Enforceable.**

15        Defendants argue that the confidentiality provision is unenforceable because

16  it violates Cal. Bus. & Prof. Code § 1660. MTD at 19. Defendants misconstrue both

17  the provision and the law. Confidentiality provisions in employment contracts are

18  regularly found to not fall within Section 16600's purview when they are not invalid

19  restrictions on trade, but valid protections of an employer's business interests.

20  "Requiring an employee to sign an agreement not to disclose confidential

21  information of the employer or solicit customers dealing with the employer is

22  clearly not per se illegal in California." *Hollingsworth Solderless Terminal Co. v.

23  Turley*, 622 F.2d 1324, 1338-39 (9th Cir. 1980) (confidentiality provision was

24  enforceable and plaintiff could state a claim for breach of employment agreement).

25  Thus, "[c]ourts have found an exception to section 16600 . . . where the agreement

26

27  _____

28  [9] Plaintiffs allege that while it is possible for someone to watch one of Anderson's online videos or attend one of her classes, the reasoning behind the choreography sequencing decisions is confidential and proprietary. FAC ¶ 26.

1   is necessary to protect the employer's trade secrets or confidential information."

2   *Seidel*, 216 F. Supp. 3d at 1015-16 (plaintiff stated claim that employee breached

3   employment agreement provision barring employee's use of "intellectual property

4   and confidential information"). That very exception applies in this case.

5          Defendants rely principally on *Brown v. TGS Mgmt. Co., LLC*, 57 Cal. App.

6   5th 303 (2020), but it is inapplicable because the employment agreement's

7   confidentiality provision was so "strikingly broad" that it was tantamount to a

8   perpetual noncompete provision in violation of Section 16600. *Id.* at 316. The

9   confidentiality provision stated that "confidential information" included any and all

10  information relating to the "Business," which was defined not as the *plaintiff's*

11  business—statistical arbitrage—but as, essentially, "all aspects of working in the

12  securities industry at large." *Id.* at 316-17. The court agreed with the employee that

13  the provision had the effect of preventing him from "trading in securities at all—

14  even if just for his own benefit—for the remainder of his life." *Id.*[10]

15         Whereas the confidentiality provision in *Brown* defined confidential

16  information to include all information related to the employee's industry, the Trainer

17  Agreement defines Confidential Information as only information related to the TA

18  Method and Plaintiffs' business *specifically*. FAC ¶ 29. The confidentiality

19  provision therefore does not have the effect of prohibiting former employees from

20  working in the industry at all, like the one in *Brown* did. Former employees, like

21  Roup, are free to establish and conduct their own choreography-based fitness

22  companies; they just cannot use Plaintiffs' Confidential Information in doing so.

23  The confidentiality provision is thus a valid protection of Plaintiffs' rights.

24         **3.    The June 2011 Agreement Does Not Defeat Plaintiffs' Claim.**

25         Defendants argue that the February 28, 2011 Trainer Agreement that Roup

26

27  _____

28  [10] Defendants also cite *AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*, 28 Cal.
    App. 5th 923 (2018), which is inapposite because it involves defendant's solicitation
    of plaintiff's employees and Defendants make no argument about solicitation here.

-19-

signed was superseded by a June 11, 2011 Trainer Agreement that Roup signed, and therefore Plaintiffs have not stated a breach of contract claim under the former agreement. MTD at 21. Defendants ignore two important details. First, Plaintiffs allege that the February 2011 Trainer Agreement was updated in a non-substantive way. FAC ¶ 29. Second, the confidentiality provision in both agreements prohibit the use or disclosure of the same information, documents, and materials. *Compare* Dkt. 15-2 Ex. A at 4 *with* Dkt. 15-2 Ex. B at 10-11. If the Court finds the breach of contract claim deficient as plead, it can be easily cured with a simple amendment that asserts the same breach of contract claim under the June agreement.

### D.    Plaintiffs' UCL Claim (Count IV).

#### 1.    Plaintiffs State a UCL Claim.

Plaintiffs sufficiently allege that the following conduct by Defendants constitutes unfair and fraudulent business acts or practices under the UCL statute: Roup worked for TANY, took Plaintiffs' internal business information, formed her own competing company just one month after quitting, used Plaintiffs' confidential information to found and operate her company, and then made advertisements that misrepresented facts about her company and misled consumers. FAC ¶ 71. "Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires consideration and weighing of evidence from both sides and which usually cannot be made on a motion to dismiss." *Inga v. Bellacor.com, Inc.*, 2020 WL 5769080, at *3-4 (C.D. Cal. July 17, 2020). Nevertheless, Defendants' arguments that these allegations are insufficient fail for the following reasons.

*First*, Defendants argue that Plaintiffs' UCL claim is based only on Roup's breach of the Trainer Agreement, and that a contract breach alone is not unfair or fraudulent. MTD at 21-22. Defendants misconstrue Plaintiffs' allegations because their UCL claim is not limited to Defendants' conduct constituting breach of contract. While some of the alleged conduct would also constitute a breach of the Trainer Agreement, it independently constitutes wrongful and fraudulent business

-20-

1   acts or practices. The conduct alleged is unfair because it is "immoral, unethical,

2   oppressive, unscrupulous, or substantially injurious to consumers" for Roup to take

3   her former employer's confidential information to form a competing business and to

4   make false or misleading representations about the TSS Method. *Bardin v.*

5   *Daimlerchrystler Corp.*, 136 Cal. App. 4th 1255, 1260 (2006); FAC ¶ 71. The

6   conduct is fraudulent because "members of the public are likely to be deceived" by

7   Defendants' misrepresentations about the TSS Method as detailed herein. *Podolsky*

8   *v. First Healthcare Corp.*, 50 Cal. App. 4th 632, 647-48 (1996); FAC ¶ 71.

9       Defendants cite two inapposite cases in support of their argument. In *Nat'l*

10   *Rural Telecomm. Co-op. v. DIRECTV, Inc.*, 319 F. Supp. 2d 1059, 1074-75 (C.D.

11   Cal. 2003), plaintiffs could not establish the unlawful prong because it was based on

12   defendant's breach of contract *alone* and not on any independently wrongful

13   conduct. Similarly, in *Sybersound*, 517 F.3d at 1152, the court granted defendants'

14   motion to dismiss plaintiff's UCL claim because all three prongs were based on

15   defendants' alleged breaches of contract *alone*. This case is distinguishable because

16   it concerns the unfair and fraudulent prongs—rather than the unlawful prong at issue

17   in *DIRECTV*—and, in any event, Plaintiffs allege unfair and fraudulent conduct

18   above and beyond conduct constituting breach of the Trainer Agreement unlike the

19   plaintiffs in *Sybersound* and *DIRECTV*.

20       *Second*, Defendants argue that because Plaintiffs' Lanham Act claim fails, so

21   too does their UCL claim because the statutes are "substantially congruent" and

22   Plaintiffs' UCL claim is based on the same allegations as their Lanham Act claim.

23   MTD at 22. Defendants' argument fails in the first instance because it assumes that

24   Plaintiffs' Lanham Act claim should be dismissed. As set forth above, Plaintiffs

25   have sufficiently stated a Lanham Act claim. Defendants' argument also fails

26   because Plaintiffs allege that Defendants engaged in a course of unfair and

27   fraudulent conduct, only some of which relates to their false advertising. The

28   allegations that do not relate to false advertising take the UCL claim out of the

-21-

1  purview of the cases Defendants cite, which dismiss UCL claims premised on only

2  the same conduct as a dismissed Lanham Act claim. *See, e.g.*, *Sybersound*, 517 F.3d

3  at 1153 (plaintiff "cannot meet the unlawful conduct prong of the UCL" because it

4  "has not pled any other unlawful acts under which this claim would fall"); *Spanx*,

5  2019 WL 4390564, at *15 (dismissing UCL claim that "realleges the same facts and

6  reasserts the same arguments as embodied by Plaintiff's Lanham Act claims").

7      **2.    Plaintiffs' UCL Claim Survives the Anti-SLAPP Motion.**

8          **a.    The Statements Are Exempted Commercial Speech.**

9      Defendants' anti-SLAPP motion targets only the portion of Plaintiffs' UCL

10  claim that alleges Defendants engaged in unfair and fraudulent business acts or

11  practices by making false or misleading statements in advertising. MTD at 24. The

12  motion does not target the remaining allegations of unfair and fraudulent business

13  acts or practices which are not based on advertisements, and thus, even if successful

14  (which it is not), it would not dispense with Plaintiffs' UCL claim.

15      Courts use a two-prong inquiry to determine if a claim is subject to an anti-

16  SLAPP motion. Under prong 1, the moving party has the burden of showing that the

17  claim arises from its "free speech in connection with a public issue or an issue of

18  public interest." Cal. Civ. Proc. Code § 425.16(e)(4). Under prong 2, if the moving

19  party meets its burden, the burden shifts to the nonmoving party to demonstrate a

20  probability of prevailing on the claim. *L.A. Taxi Coop., Inc. v. The Indep. Taxi*

21  *Owners Assn. of Los Angeles*, 239 Cal. App. 4th 918, 925-26 (2015) (denying anti-

22  SLAPP motion because commercial speech was not protected by statute).

23      Commercial speech is not entitled to anti-SLAPP protection under the

24  exemption codified in Cal. Civ. Proc. § 425.17. The exemption applies if (1)

25  Defendants are "primarily engaged in the business of selling . . . services"; (2) the

26  challenged claims arise "from a statement or conduct by [Defendants] consisting of

27  representations of fact about [Defendant's] . . . services"; (3) Defendants' statements

28  were made "for the purpose of obtaining approval for, promoting, or securing sales"

-22-

1   of its services; and (4) Defendants' intended audience was "an actual or potential

2   buyer or customer." *Seidel*, 225 F. Supp. 3d at 1065. Defendants' statements satisfy

3   these criteria for the reasons below, and therefore Plaintiffs' UCL claim is not

4   subject to the anti-SLAPP statute and the motion should be denied.

5       *First*, TSS is a business that sells choreography-based fitness subscriptions,

6   and Roup is face of the company. Dkt. 15-2 Ex. C. *Second*, as set forth in

7   connection with Plaintiffs' Lanham Act claim, the statements on Defendants'

8   website are representations of fact about the TSS Method. *See* Section IV.B.1,

9   *supra*. *Third*, Defendants' statements are meant to convince potential customers to

10  purchase subscriptions for the TSS Method, which is marketed on the same

11  webpage as "fun, empowering and effective," different from others in the industry,

12  and having taken years to develop—all of which are "inherently commercial

13  elements." Dkt. 15-2 Ex. C; *Seidel*, 255 F. Supp. 3d at 1066. *Fourth*, Defendants'

14  intended audience is potential customers. This is apparent by the fact that above the

15  statements, there is a hyperlink stating, "Join the TSSFAM! Click to start your 7-

16  day free trial!" and below the statements, there is a hyperlink stating, "Start

17  Working Out With Me." Dkt. 15-2 Ex. C. Defendants' statements are therefore

18  exempted commercial speech and the anti-SLAPP motion must be denied. *See TYR*

19  *Sport Inc. v. Warnaco Swimwear Inc.*, 679 F. Supp. 2d 1120, 1143 (C.D. Cal. 2009)

20  (denying anti-SLAPP motion as to UCL claim based on commercial speech).

21      Even if the Court found that Defendants' speech was not commercial, the

22  anti-SLAPP motion should be denied. Defendants argue that the statements are in

23  connection with an issue of public interest because Roup is a "celebrity trainer and

24  influencer," and thus the public has an interest in her "biographical statements."

25  MTD at 22-23. Courts have rejected this argument, holding that where, as here, the

26  issue is not of interest to the public at large, but rather "to only a private group,

27  organization, or community, the protected activity must occur in the context of an

28  ongoing controversy, dispute, or discussion." *Albanese v. Menounos*, 218 Cal. App.

4th 923, 934 (2013) (rejecting Maria Menounos' argument that statements written by or about her were of public interest because of her celebrity status); *see also Meribear Prods. Inc. v. Vail*, 2015 WL 12766576, at *3 (C.D. Cal. Aug. 11, 2015) (statements by or about celebrity designer were not of public interest because there was no evidence that she was "involved in a 'public controversy'").

To the extent Roup has achieved notoriety, it is within a limited subset of the population that is interested in choreography-based fitness. Roup is not a public figure "at large" who is widely and instantly recognizable such that her statements garner public interest by virtue of the fact that she is the one saying them. Thus, because Defendants' statements were not made in the context of an "ongoing controversy, dispute, or discussion," Defendants cannot satisfy prong 1.[11]

Even if Defendants' statements were found to satisfy prong 1, Plaintiffs have met the very low prong 2 burden, which "require[es] the court to determine only if the plaintiff has stated and substantiated a legally sufficient claim." *Equilon Enters., LLC v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 63 (2002); *see also Soukup v. Law Offices of Herbert Hafif*, 39 Cal. 4th 260, 291 (2006) ("plaintiff need only establish that his or her claim has 'minimal merit'"). For the reasons set forth above in Section IV.D.1, *supra*, Plaintiffs' UCL allegations satisfy this standard.

### b.    Plaintiffs Are Entitled to Attorneys' Fees.

If the Court denies Defendants' motion, then it should award Plaintiffs their attorneys' fees for defending this portion of the motion. Courts "shall" award fees to the prevailing party on an anti-SLAPP motion if the court finds that the motion was "frivolous or is solely intended to cause unnecessary delay." Cal. Civ. Proc. Code § 425.16(c)(1). Here, the motion was frivolous because Defendants' arguments completely ignore the statutory exemption for commercial speech.

Courts have awarded plaintiffs fees under similar circumstances. In *L.A. Taxi*,

---

[11] Courts have held that commercial speech does not satisfy prong 1, independently of the commercial speech exemption. *See, e.g.*, *L.A. Taxi*, 239 Cal. App. 4th at 927.

1   the court denied defendants' anti-SLAPP motion because "it was well-established

2   when defendants filed their motion" that the anti-SLAPP statute does not protect

3   commercial speech. 239 Cal. App. 4th at 933. Before the defendants filed their

4   motion, plaintiff informed them that their commercial speech is not protected under

5   the statute, and provided supporting authority. *Id.* Defendants filed their motion but

6   "failed even to address this authority" and failed to "provide any reasonable basis

7   for arguing" that the speech was not commercial. *Id.* The court found the motion

8   frivolous and awarded plaintiff attorneys' fees as a result. *Id.*

9        This case is exactly like *L.A. Taxi* and an award of Plaintiffs' fees is

10  mandatory. Defendants' motion refers to statements made in the meet and confer

11  process preceding the motion. MTD at 16. Plaintiffs informed Defendants in writing

12  that the contemplated anti-SLAPP motion was meritless specifically because the

13  statutory commercial speech exemption applied. Defendants filed their motion,

14  failed to address the clearly applicable exemption, and failed to provide any

15  argument why the speech at issue is not commercial. Plaintiffs' fees are warranted.

16  **V.    CONCLUSION**

17       Plaintiffs respectfully request that the Court deny Defendants' Motion.

18

19  Dated:  October 11, 2022          DLA PIPER LLP (US)

20                                    By: */s/ Tamany Vinson Bentz*

21                                    TAMANY VINSON BENTZ

22                                    JASON T. LUEDDEKE
                                      KRISTINA FERNANDEZ MABRIE

23                                    MICHAEL P. BROWN

24                                    Attorneys for Plaintiffs

25

26

27

28

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT
AND SPECIAL MOTION TO STRIKE (ANTI-SLAPP)