PMANATT, PHELPS & PHILLIPS, LLP
CHRISTOPHER CHATHAM (CA Bar #240972)
  CChatham@manatt.com
NATHANIEL L. BACH (CA Bar #246518)
  NBach@manatt.com
SARAH E. MOSES (CA Bar #291491)
  SMoses@manatt.com
2049 Century Park East
Suite 1700
Los Angeles, California 90067
Telephone: (310) 312-4000
Facsimile: (310) 312-4224

Attorneys for Defendants
MEGAN ROUP and THE SCULPT SOCIETY, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACY ANDERSON MIND AND BODY, LLC, a Delaware limited liability company; and T.A. STUDIO NEW YORK LLC, a California limited liability company, <br><br> Plaintiffs, <br><br> v. <br><br> MEGAN ROUP, an individual; and THE SCULPT SOCIETY, LLC, a California limited liability company, <br><br> Defendants. | Case No. 2:22-cv-04735-RSWL-E <br><br> Hon. Ronald S.W. Lew <br><br> **DEFENDANTS MEGAN ROUP AND THE SCULPT SOCIETY, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT AND SPECIAL MOTION TO STRIKE (ANTI-SLAPP)** <br><br> Hearing Date: Nov. 1, 2022 <br> Hearing Time: 10:00 a.m. <br> Location: TBD <br><br> Complaint Filed: July 11, 2022 <br> FAC Filed: Sept. 13, 2022 <br> Trial Date: Not yet set |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................. 1

II.    ARGUMENT ..................................................................................... 1

    A.    Anderson's Copyright Claim Fails as a Matter of Law ...................... 1

        1.    The FAC Concedes Anderson's Method and Exercises Are Not Protectable ................................................................ 1

        2.    *Bikram* Forecloses Anderson's Attempt to Label Her Fitness Method as Protectable Choreography ......................... 5

    B.    Anderson's Lanham Act Claim Fails Because She Has Not Alleged Any Actionable False or Misleading Statements ................. 7

        1.    The Statements Are Not Plausibly False, Misleading, or Material .................................................................... 7

        2.    *Dastar* and *Sybersound* Bar Anderson's Claim .................... 11

    C.    Anderson's Contract Claim Fails as a Matter of Law ..................... 12

    D.    Anderson's UCL Claim Fails Because She Has Not Alleged Any Independently Wrongful or Fraudulent Conduct .................... 15

    E.    The Anti-SLAPP Motion Should be Granted ................................ 16

III.    CONCLUSION ................................................................................. 17

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF AUTHORITIES

**Page**

## CASES

*Action Learning Sys., Inc. v. Crowe*,
    2014 WL 12564011 (C.D. Cal. Aug. 11, 2014)............................................. 14

*Albanese v. Menounos*,
    218 Cal. App. 4th 923 (2013)........................................................................ 17

*Bikram's Yoga College of India, L.P. v. Evolation Yoga, LLC*,
    803 F.3d 1032 (2015) ............................................................................. 1, 5, 6

*Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co.*,
    149 F. Supp. 3d 1167 (N.D. Cal. 2015).......................................................... 4

*Bose Corp. v. Linear Design Labs, Inc.*,
    467 F.2d 304 (2d Cir. 1972)............................................................................ 9

*Brown v. TGS Mgmt. Co., LLC*,
    57 Cal. App. 5th 303 (2020)......................................................................... 14

*Cannarella v. Volvo Car USA LLC*,
    2016 WL 9450451 (C.D. Cal. Dec. 12, 2016) ............................................. 11

*Children's Cerebral Palsy Movement, Inc. v. Sawitz*,
    2018 WL 6340754 (C.D. Cal. Nov. 16, 2018)................................................ 6

*Cook, Perkiss and Liehe, Inc. v. Northern Cal. Collection Serv. Inc.*,
    911 F.2d 242 (9th Cir. 1990)................................................................... 8, 10

*Daniels v. Walt Disney Co.*,
    958 F.3d 767 (9th Cir. 2020).......................................................................... 4

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
    539 U.S. 23 (2003) ....................................................................................... 11

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991) ....................................................................................... 4

*FilmOn.com Inc. v. DoubleVerify Inc.*,
    7 Cal. 5th 133 (2019)................................................................................... 16

*Four Navy Seals v. Associated Press*,
    413 F. Supp. 2d 1136 (S.D. Cal. 2005) .......................................................... 3

*Hanagami v. Epic Games Inc.*,
    2022 WL 4007874 (C.D. Cal. Aug. 24, 2022)................................................ 4

*Horgan v. Macmillan, Inc.*,
    789 F.2d 157 (2d Cir. 1986)........................................................................... 6

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

ii

CASE NO. 2:22-CV-04735-RSWL-E

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND STRIKE PLAINTIFFS' FAC

# TABLE OF AUTHORITIES
(continued)

Page

*L.A. Taxi Coop., Inc. v. The Indep. Taxi Owners Assn. of Los Angeles*,
239 Cal. App. 4th 918 (2015)................................................................. 17

*Newcal Indus., Inc. v. Ikon Office Solution*,
513 F.3d 1038 (9th Cir. 2008) ................................................................ 8

*Pellerin v. Honeywell Int'l, Inc.*,
877 F. Supp. 2d 983 (S.D. Cal. 2012) ................................................... 13

*Pilkin v. Google LLC*,
2021 WL 3604677 (N.D. Cal. Aug. 13, 2021)........................................ 4

*R and A Synergy LLC v. Spanx, Inc.*,
2019 WL 4390564 (C.D. Cal. May 1, 2019) ....................................8, 9, 16

*Simpson Strong-Tie Co., Inc. v. Gore*,
49 Cal. 4th 12 (2010) ........................................................................... 16

*Southland Sod Farms v. Stover Seed Co.*,
108 F.3d 1134 (9th Cir. 1997) ................................................................ 9

*Sybersound Recs., Inc. v. UAV Corp.*,
517 F.3d 1137 (9th Cir. 2008)..........................................................12, 16

*Universal City Studios, Inc. v. Sony Corp. of Am.*,
429 F. Supp. 407 (C.D. Cal. 1977) .................................................... 9, 10

*Zobmondo Ent. LLC v. Imagination Int'l Corp.*,
2009 WL 8714439 (C.D. Cal. June 23, 2009) ...................................... 12

## STATUTES

17 U.S.C. § 102(a)(4).......................................................................... 1, 4

17 U.S.C. § 102(b) ...................................................................... 1, 4, 5, 7

15 U.S.C. § 1125(a), Section 43(a)....................................................11, 12

Cal. Civ. Proc. Code § 425.17(c)......................................................16, 17

## OTHER AUTHORITIES

U.S. Copyright Office, Compendium of U.S. Copyright Office Practices §
805.4(D) ............................................................................................... 3

U.S. Copyright Office, Compendium of U.S. Copyright Office Practices §
805.5(A) ............................................................................................... 3

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- iii -

CASE NO. 2:22-CV-04735-RSWL-E

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND STRIKE PLAINTIFFS' FAC

# TABLE OF AUTHORITIES
(continued)

**Page**

U.S. Copyright Office, Compendium of U.S. Copyright Office Practices §
    805.5(B)................................................................................................ 2

U.S. Copyright Office, Compendium of U.S. Copyright Office Practices §
    805.5(B)(3) ........................................................................................... 3

U.S. Copyright Office, Compendium of U.S. Copyright Office Practices §
    806.5(B)................................................................................................ 3

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- iv -    CASE NO. 2:22-CV-04735-RSWL-E
REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND STRIKE PLAINTIFFS' FAC

## I.     **INTRODUCTION**

Anderson's Opposition contorts the case law, ignores the FAC's fatal concessions, and asks the Court to blindly accept the implausible.  Her protestations notwithstanding, this is an easy case.  Anderson's copyright claim fails because her "Method" is noncopyrightable as an "idea, procedure, process, [or] system" under 17 U.S.C. § 102(b), the FAC does not allege protectable choreography under 17 U.S.C. § 102(a)(4), and it is barred by the Ninth Circuit's holding in *Bikram*.  Her Lanham Act claim targets innocuous, immaterial statements that do not plausibly support the inferences she alleges.  Her contract claim attempts to enforce an oppressive confidentiality covenant in violation of California Business & Professions Code § 16600, even though Anderson has publicly disclosed her "Method."  And her UCL claim fails because it is derivative of these failed Lanham Act and contract claims.

Therefore, all of Anderson's claims should be dismissed with prejudice and the UCL claim struck under California's anti-SLAPP law because it is a meritless attack on Roup's exercise of her free speech rights on a matter of public interest, and is not remotely covered by the inapplicable and narrow commercial speech exemption.  Defendants' Motion should be granted in its entirety.

## II.    **ARGUMENT**

### A.    **Anderson's Copyright Claim Fails as a Matter of Law**

In her Opposition, Anderson argues that her self-described "fitness" protocol contains protectable choreography and that *Bikram's Yoga College of India, L.P. v. Evolation Yoga, LLC*, 803 F.3d 1032 (2015) is distinguishable.  Both arguments fail.

#### 1.    The FAC Concedes Anderson's Method and Exercises Are Not Protectable

A.  Anderson's FAC repeatedly concedes the unprotectable nature of the "TA Method" as fundamentally a "fitness" protocol, marketed to consumers who seek to improve their physical and mental well-being.[1]  For instance, the FAC admits that:

---

[1] A simple visit to Anderson's own website biography confirms the same, touting her as a "Fitness Pioneer" whose "revolutionary method can give anyone—regardless of

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

➢ Anderson is "a pioneer of the choreography-based *fitness* movement" by developing the TA Method. FAC ¶ 1 (emphasis added).

➢ "TAMB . . . offers choreography-based *fitness* and *mat movement classes*." *Id.* ¶ 2 (emphases added); *see also* ¶ 23.

➢ "TANY, part of Anderson's companies that revolutionized choreography-based *fitness*." *Id.* ¶ 7 (emphasis added); *see also* ¶ 41.

➢ "the TA Method has become one of the premier choreography-based *fitness* programs in the world." *Id.* ¶ 23 (emphasis added).

Likewise, the titles of the DVDs upon which Anderson bases her copyright claim include such fitness, exercise, and workout descriptors as "Dance Cardio *Workout* DVD," "Mat *Workout* DVD," "Post-Pregnancy *Workout* DVD," "Metamorphosis by Tracy – *Abcentric*," "Metamorphosis by Tracy – *Glutecentric*," "Total Body Mini-Trampoline *Workout*," and "Precision *Toning*." Dkt. 12, pp. 24-25 (emphases added).

Each of these foundational allegations dooms Anderson's effort to recast her workouts as protectable choreography—a made-for-litigation attempt that collapses under the weight of the FAC's contrary, dispositive concessions.

B. Moreover, Anderson's assertion that hers is a "choreography-based" fitness program is a far cry from the type of actual choreography that Section 102(a) of the Copyright Act protects. The Compendium, which Anderson selectively cites, repeatedly undercuts her argument, confirming the type of art form that Congress sought to protect: "When Congress extended federal copyright protection to choreography, it intended to protect expressive works of authorship, *such as ballet or modern dance*." U.S. Copyright Office, Compendium of U.S. Copyright Office Practices § 805.5(B) (3d ed. 2021) (emphasis added). Indeed, "a work of authorship cannot be registered as a choreographic work unless it is comprised of dance steps,

---

their genetic background—the physical and mental results they desire[,]" and makes no mention of choreography or of Anderson as a choreographer. *See* "The Method," https://tracyanderson.com/about-tracy-anderson/ (last accessed October 17, 2022).

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

1   dance movements, and/or dance patterns." *Id*. § 805.5(B)(3). A single dance step or

2   a short dance routine is not enough to warrant copyright protection. *Id*. § 805.5(A)

3   ("the second position in classical ballet" is not copyrightable). Examples of protected

4   choreography include a "complex dance production" and "complex and intricate"

5   choreography for a music video to be performed by a troupe of professional dancers.

6   *Id*. §§ 805.4(D), 805.5(A).

7   On the other hand, "[n]on-expressive physical movements, such as 'ordinary

8   motor activities' or '***functional physical movements***'—in and of themselves—do not

9   represent the type of authorship that Congress intended to protect as choreography."

10  *Id*. § 805.5(B)(3) (emphasis added). Non-expressive works that are ineligible for

11  copyright include "***exercise routines, aerobic dances, yoga positions, and the like***."

12  *Id*. § 806.5(B) (emphasis added). The TA Method is not remotely or plausibly

13  protectable choreography under these standards. Rather, it is an exercise protocol

14  taught by fitness instructors to be copied by members of the public to improve health

15  outcomes. FAC ¶¶ 1, 19, 20-24.

16  Nor does Anderson even define the supposed choreography in the TA Works

17  that she seeks to protect: is it a dance sequence in one of the DVDs she has

18  copyrighted—not as a choreographic work, but as a "motion picture (DVD)"—that

19  bear titles like "Post-Pregnancy Workout"? If so, which dance steps does the

20  sequence include, which of Defendants' sequences in the more than 400 videos that

21  Anderson cites (FAC ¶ 37) supposedly copies it, and in what way? Or is it all 200,000

22  "movements" Anderson claims to have developed as part of the TA Method?

23  Anderson's FAC sheds no light, and her bare allegations that the TA Method is

24  "choreography-based"—without putting Defendants on notice of what the

25  choreography is, where it appears, and which of Defendants' videos allegedly copies

26  it or how—are woefully insufficient and warrant dismissal.[2] *See Four Navy Seals v.*

27  _____

28  [2] Indeed, the only movement that Anderson has specified in her FAC—which is not
    contained in her videos but is rather a "transcription" for which she has no copyright
    registration—is precisely the type of unprotectable functional movement that can

*Associated Press*, 413 F. Supp. 2d 1136, 1148 (S.D. Cal. 2005) ("Merely asserting that, of 1800 photographs . . . at least one unidentified photograph has been copyrighted . . . and was distributed by Defendants does not put Defendants or the Court on sufficient notice of the copyright claim."); *Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co.*, 149 F. Supp. 3d 1167, 1175 (N.D. Cal. 2015) (granting motion to dismiss copyright infringement claim, as "[a]bsent such representative acts of infringement," general allegations were insufficient for court to "meaningfully evaluate" the alleged appropriation).

Worse still, Anderson has failed to allege that any choreography contained in the TA Works is *original*—a necessary prerequisite to pleading copyright infringement, Mem. p. 7 (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991))—as opposed to standard workout movements or steps borrowed from other dance-cardio instructors. Absent a showing of originality sufficient to put the Court and Defendants on notice of Anderson's claim, her claim fails.

In the face of the FAC's concessions about the true "fitness" nature of Anderson's method, she argues that invoking the word "choreography" is sufficiently talismanic to get her past this Court's scrutiny on a motion to dismiss. Anderson is incorrect. Whether a plaintiff has pleaded a plausibly protectable work or a noncopyrightable system, process, method or idea under Section 102(b) is indeed for the Court to determine as a matter of law on a Rule 12(b)(6) motion. Mem. pp. 8-10 (citing *Daniels v. Walt Disney Co.*, 958 F.3d 767, 771-74 (9th Cir. 2020) (affirming district court's dismissal of complaint for failure to plead copyrightable subject matter); *Pilkin v. Google LLC*, 2021 WL 3604677, at *3 (N.D. Cal. Aug. 13, 2021), *aff'd*, 2022 WL 1223992 (9th Cir. Apr. 26, 2022) (same)). Thus, the TA Method or

never be protectable as choreography under 17 U.S.C. § 102(a)(4): *i.e.*, "Face NW side, W elbow down, resting on knees with shins and feet up. [E]xtend NW leg to high straight back parallel arabesque, return to starting position, lift W leg to side fire hydrant and return to start." FAC ¶ 31; *see Hanagami v. Epic Games Inc.*, 2022 WL 4007874, at *5 (C.D. Cal. Aug. 24, 2022) (dismissing copyright claim where plaintiff failed to allege unlawful appropriation; finding short dance routine not protectible).

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

4                                    CASE NO. 2:22-CV-04735-RSWL-E
REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND STRIKE PLAINTIFFS' FAC

the videos that comprise it are not choreographic works and the Court can so hold as a matter of law.

### 2. *Bikram* Forecloses Anderson's Attempt to Label Her Fitness Method as Protectable Choreography

Having conceded that the TA Method and the works embodying it are fundamentally a "fitness" program, no amount of characterizing them as "choreography" or "choreography-based" can turn them into something protectable. This is the precise holding and lesson of *Bikram*.

The Copyright Act excludes protection for "any idea, procedure, process, system, method of operation, concept, principle, or discovery." 17 U.S.C. § 102(b). In *Bikram*, the Ninth Circuit confronted the precise issue here, where a plaintiff attempted to avoid Section 102(b)'s bar on the noncopyrightability of functional, exercise-related methods and processes via artful labeling. In rejecting Choudhury's attempt to define his Sequence as "choreography" in order to obtain copyright protection over it, the Ninth Circuit concluded that parties like Choudhury and Anderson cannot "obtain monopoly rights over [] functional physical sequences *by describing them in a tangible medium of expression and labeling them choreographic works*." *Bikram*, 803 F.3d at 1044 (emphasis added). Yet this is precisely what Anderson attempts here.

A. In her Opposition, Anderson seeks to establish unspecified portions of the TA Method as "expressive" and asserts that her Method contains protectable choreographic works because "each of Anderson's routines constitutes a related series of movements organized into an integrated, coherent, and expressive whole." Opp. p. 8 (quoting FAC ¶ 19). But these efforts run up against the FAC's inescapable description of her method as fundamentally a "fitness" program, as explained above. *See* FAC ¶¶ 1, 2, 7, 23, 41. Adding the qualifier "choreography-based"—an apparent stand-in for the term "dance cardio" that, unlike "choreography," actually appears in the title of some of the TA Works—merely describes *a type* of fitness program, it

does not plausibly alter it.   Anderson cites no case that permits her to protect any choreography within an unprotectable system, and her attempts to draw parallels to cases about actual choreography, like *Horgan v. Macmillan, Inc.*, 789 F.2d 157 (2d Cir. 1986), do not help her.

Rather, in rejecting Choudhury's effort to label the Sequence a "choreographic work," the Ninth Circuit "recognize[d] that the Sequence may involve 'static and kinetic successions of bodily movement in certain rhythmic and spatial relationships.'  Compendium II, § 450.01, [but s]uch movements do not become copyrightable as 'choreographic works' when they are part and parcel of a process." *Bikram*, 803 F.3d at 1044.  Thus, the Court held, "[e]ven if the Sequence could fit within some colloquial definitions of dance or choreography, it remains a process ineligible for copyright protection." *Id.*  This is what Anderson attempts: to elevate kinetic dance-cardio exercise movements to "choreography" through labeling.  But because the FAC lays bare the true nature of her method as a "fitness" protocol, *Bikram* forecloses her claim.

B.  Anderson attempts to find refuge in *Children's Cerebral Palsy Movement, Inc. v. Sawitz*, 2018 WL 6340754 (C.D. Cal. Nov. 16, 2018), a unpublished case that does not help her.  Specifically, Anderson asserts that merely because she has described portions of the TA Method as choreographic, that is the end of the matter.  But *Sawitz* is both distinguishable and forecloses Anderson's claim all on its own.  The subject matter in *Sawitz* was first and foremost a "Ballet," not an exercise routine; and it was a dispute about potential copyright ownership, not an infringement action based on registered works.  *Id.* at *1-2.  Moreover, the court acknowledged that "copyright protection *does not extend to exercise routines*, which are primarily functional and performed to receive purported health, emotional, or mental benefits." *Id.* at *4 (emphasis added).  Anderson's exercise method is distinguishable from the ballet in *Sawitz*, and equally unprotectable under the reasoning of that case and *Bikram*.  And while decided on summary judgment, *Bikram* instructs that, no matter

the stage of the case, courts must look to the true nature of what the plaintiff seeks to enforce under the copyright laws to determine if it is protectable subject matter.

At bottom, what Anderson attempts is as radical as it is foreclosed by *Bikram*: attempting to skirt 17 U.S.C. § 102(b) through conclusory, implausible pleading that the Court need not accept (and which is contradicted by the FAC in any event). It would elevate dance-based exercise over any other form of exercise by allowing its practitioners to claim protection of choreographic elements through the distribution of instructional workout videos. Nothing in the Copyright Act or the case law permits such a result. To the contrary, the Ninth Circuit recognized the danger of such a monopolistic approach in *Bikram* and foreclosed it.

### B.    Anderson's Lanham Act Claim Fails Because She Has Not Alleged Any Actionable False or Misleading Statements

Anderson bases her Lanham Act claim on two sentences in Roup's online biography in which Roup states that she developed TSS because there was something "missing from the boutique fitness community" and that she "spent years . . . developing The Sculpt Society method." *See* FAC ¶ 43; Dkt. 15-2, Ex. C. Anderson alleges that these statements are misleading because they imply that (i) Roup developed TSS over multiple years "when she did not"; (ii) TSS "was created through years of science-based research, development, data collection and analysis, and trial and error," "when it was not"; and (iii) TSS is significantly different from the TA Method, "when it is not." FAC ¶ 59. In her Opposition, Anderson all but abandons her reliance on the third "implied" inference. But, as Defendants explained in their Motion, the statements in Roup's online biography are opinion, puffery, immaterial, and not susceptible of the inferences alleged; and Anderson's claim is just a barred "false designation of origin" authorship claim in disguise.

### 1.    The Statements Are Not Plausibly False, Misleading, or Material

A. The first challenged sentence—"I knew that there was something missing from the boutique fitness community, so I combined my passion for dance and love

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

7

CASE NO. 2:22-CV-04735-RSWL-E

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND STRIKE PLAINTIFFS' FAC

for fitness to create The Sculpt Society"—is a classic example of nonactionable opinion, and Anderson fails to explain how it could plausibly be anything else. Indeed, she does not even try. *See* Opp. pp. 10-12 (only arguing puffery). Both this and the second sentence are also nonactionable puffery, which covers statements that are "either vague or highly subjective." *Cook, Perkiss and Liehe, Inc. v. Northern Cal. Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990) (citation and internal quotation marks omitted). Only statements that misrepresent "specific or absolute characteristics of a product are actionable." *Id*. at 246 (citation and internal quotation marks omitted).

As explained in Defendants' Motion, an assertion that a defendant's product is "unlike any other layering options," that it "invented" a product, and its product fills a "white space" in the market "does not amount to an assertion of fact" and is both non-material and puffery as a matter of law. *R and A Synergy LLC v. Spanx, Inc.*, 2019 WL 4390564, at *9-10 (C.D. Cal. May 1, 2019) (collecting cases). *R and A Synergy* is squarely on point, and Anderson's failure to explain why Roup's statements, like Spanx's, are non-material speaks volumes. Indeed, Roup's statement that she created TSS because something was "missing" in the market, is virtually indistinguishable from Spanx's nonactionable statement that its product filled a "white space" in the market.[3]

This leaves Anderson to argue that Roup's statement that she developed TSS over "years" is not puffery because it is quantifiable. But even if it were quantifiable and false, Anderson fails to plausibly explain how it is *material*. Even accepting the premise that "years" refers to the allegedly short period after she left TANY—as opposed to the actual years Roup spent training, dancing, and teaching, as set forth

---

[3] Contra Anderson, Courts routinely vet allegedly false statements at the pleading stage to determine whether they are susceptible of supporting a false advertising claim or not as a matter of law, including assessing whether statements are puffery. *R and A Synergy*, 2019 WL 4390564, at *10 ("The court may determine at the motion to dismiss stage whether an alleged misrepresentation is a statement of fact or mere puffery as a matter of law.") (citing *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008)).

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

CASE NO. 2:22-CV-04735-RSWL-E

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND STRIKE PLAINTIFFS' FAC

in her bio—Anderson does not explain how a potential customer would care if Roup spent one month or twenty-four months developing TSS, particularly where Roup makes no assertion that she engaged in years of testing or research (contrary to Anderson's implausible suggested inference). *See Bose Corp. v. Linear Design Labs, Inc.*, 467 F.2d 304, 310-11 (2d Cir. 1972) (finding defendant's claim that its "countless hours of research" led to the superior quality of its stereo speakers to be largely puffing). And because Roup's statements are "mere puffery as a matter of law, [it] *necessarily means* that reasonable consumers would not rely on the statements when making purchasing decisions"—a determination that can indeed be made as a matter of law. *R and A Synergy*, 2019 WL 4390564, at *12 (emphasis added); *see also Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997) (dismissing claim finding nonactionable puffery as "precisely the type of generalized boasting upon which no reasonable buyer would rely").

B. Here, there is no plausible link—and Anderson alleges none—between Roup's innocent biographical statements and consumer reliance in connection with the decision to try TSS's classes. The only allegations Anderson makes that nod in this direction are the rave user reviews of Roup and TSS, but those show no plausible link between the statements at issue (including the reference to "years") and consumers' decision to purchase TSS classes. *See* FAC ¶ 44. Unsurprisingly, then, in her Opposition, Anderson utterly fails to discuss these reviews or how they could evidence reliance; and she points to nothing else in the FAC that could plausibly support consumer reliance.

C. Anderson ascribes unsupported and implausible meanings to Roup's statements that need not be accepted on a motion to dismiss. She asserts that the two biographical sentences "imply" that TSS is backed by science and is "significantly different" than the TA Method. Again, Anderson alleges no basis to plausibly conclude Roup implies these wild inferential leaps, or that the statements at issue are literally false. *Universal City Studios, Inc. v. Sony Corp. of Am.*, is instructive. 429

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND STRIKE PLAINTIFFS' FAC

F. Supp. 407, 409 (C.D. Cal. 1977) (noting that "conclusions of law and unwarranted deductions of fact may not be drawn from the facts alleged in order to preclude dismissal"). There, producers brought a Lanham Act claim against entities involved in manufacturing and distributing the Betamax, which allowed consumers to record plaintiffs' shows and movies. *Id.* at 408. These advertisements stated that the Betamax had the capacity to copy the broadcasted content. *Id.* at 408-09. The plaintiffs alleged the ads were false and misleading because they implied that the copying was done with plaintiffs' consent and was legal. *Id.* at 409. But the court refused to "credit as reasonable the inference plaintiffs claim is implicit in defendants' ads[,]" reasoning that "[s]ome inferences simply cannot be supported" and "[t]o say that 'this product is capable of copying television shows' is simply not the same as saying 'when you use this product to copy television shows you are acting legally.'" *Id.*

Here, too, Roup's statements simply do not support the implausible inferential leaps that Anderson suggests. Roup does not mention or allude to the TA Method, and nothing about stating that she developed TSS over "years" supports the far-fetched conclusion that she therefore must have created it through "science-based research, development, data collection and analysis, and trial and error." FAC ¶ 59. Rather, the more immediate, plausible (and non-false, non-misleading) meaning is exactly what Roup's bio states before it: that she has been passionate about dance her whole life, studied dance at NYU's Tisch School of the Arts, and then lived and worked as a dancer in New York where she worked for the Brooklyn Nets Dance Team. Dkt. 15-2, Ex. C.

Because Defendants' statements are immaterial opinion and puffery on which no reasonable consumer would rely, and not capable of plausibly supporting the inferences advanced, Anderson's Lanham Act claim fails and should be dismissed with prejudice. *Cook, Perkiss & Liehe, Inc.,* 911 F.2d at 247 (affirming district court's dismissal with prejudice; "[b]ecause it found that the advertisement was not

1  a factual representation and therefore not actionable, no amendment would have been

2  able to cure this defect").

3  ## 2. *Dastar* and *Sybersound* Bar Anderson's Claim

4  Anderson insists that she does not bring a false authorship claim under Section

5  43(a)(1)(A) for the simple reason that she has brought her claim under Section

6  43(a)(1)(B). But false authorship claims are barred when brought under either

7  section, and mere labeling cannot overcome the substance of the claim. Indeed, the

8  FAC plainly confirms that Anderson's Lanham Act claim is based, at least in part,

9  on the allegation that Defendants have misrepresented that they, and not Anderson,

10  are the creators of TSS's sequences. *See, e.g.*, FAC ¶ 41 (alleging that Defendants

11  have not credited Anderson for allegedly "creating the choreography movements,

12  sequences, and routines that now comprise the TSS Method" and "do not reference

13  Roup's training or association with TANY or Anderson on the TSS website, TSS

14  promotional materials, interviews, or appearances"); ¶ 42 ("Defendants purposefully

15  conceal Roup's training from and association with TANY from the public so that

16  Roup can claim . . . the TSS Method is significantly different from the TA Method.").

17  As explained in Defendants' Motion, a plaintiff may not circumvent *Dastar*'s bar on

18  Section 43(a)(1)(A) false authorship claims by labeling the claim as brought under

19  Section 43(a)(1)(B). Mem. pp. 16-17. As Defendants' cases show, that gambit has

20  been repeatedly tried (as it is here), seen through by the courts (including this Court

21  in *Cannarella v. Volvo Car USA LLC*, 2016 WL 9450451, at *7 (C.D. Cal. Dec. 12,

22  2016)), and rejected.

23  Anderson asserts that even if her Lanham Act claim is a false authorship claim

24  in disguise (which it is), it is nevertheless valid under *Dastar*. In so doing, Anderson

25  relies on non-binding dicta in *Dastar* and ignores Ninth Circuit authority to the

26  contrary. But *Dastar* entirely eliminated false authorship claims as a basis for

27  liability. *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003).

28  In dicta, the Supreme Court opined that if a video producer who copied defendant's

11

work "were, in advertising or promotion, to give purchasers the impression that the video was quite different from that series" then that plaintiff "*might*" have a misrepresentation claim under Section 43(a)(1)(B). *Id.* at 38 (emphasis added). Instructed by *Dastar*'s reasoning, the Ninth Circuit narrowly construed the "nature, characteristics, qualities" language in Section 43(a)(1)(B) to refer only to "*characteristics of the good itself*, such as the original song and artist of the karaoke recording, and the quality of its audio and visual effects." *Sybersound Recs., Inc. v. UAV Corp.*, 517 F.3d 1137, 1144 (9th Cir. 2008) (emphasis added). Other courts in this circuit have since followed suit. Mem. pp. 17-18.

Anderson twists herself into knots in attempts to distinguish *Dastar*, *Sybersound*, and their progeny, relying on an unpublished case, *Zobmondo Ent. LLC v. Imagination Int'l Corp.*, 2009 WL 8714439 (C.D. Cal. June 23, 2009). But *Zobmondo* only further proves Defendants' point, as the court permitted the claim to proceed on limited grounds, going to great lengths to explain that *Dastar* and *Sybersound* did not bar that particular claim because "[t]he only question is who physically manufactured the first such board game." *Id.* at *4 (emphasis added). Anderson's claim does not fall into such a narrow lane. Rather, her Lanham Act claim concerns who created the exercises in TSS's classes—Anderson or Roup, a quintessential false authorship claim barred by *Dastar*. And because Anderson does not allege that Defendants have mischaracterized the "nature, characteristics, qualities" of any goods or services (which are narrowly defined under *Sybersound*)— as opposed to their source or Roup's purpose and history in creating TSS—the Lanham Act claim fails as a matter of law.

## C.    Anderson's Contract Claim Fails as a Matter of Law

1. There is no question that the TA Method, and the exercise movements and routines that comprise it, are available to the public via in-person classes, DVDs, and streaming videos—a fact that Anderson freely admits. FAC ¶¶ 21-24. Thus, any information that Roup learned while employed at TSS that was publicly disclosed in

1    any manner cannot form the basis for a confidentiality breach claim, *see* Dkt. 15-2,

2    Ex. A, p. 4; Ex. B, p. 11. For example, the allegation that Roup had access to

3    "nonpublic transcriptions of choreography routines," which allegedly detailed "how

4    to perform them," FAC ¶ 31, does not help Anderson because TANY's routines were

5    publicly performed to its clients, and the "choreography" thus lost any confidential

6    protection. Anderson has no answer to this obvious bar to her claim except to state

7    that it is for another day. Opp. p. 18. But the question of public disclosure is readily

8    admitted in the FAC and the contract incorporated by reference; the issue is therefore

9    appropriate for determination on a motion to dismiss.

10      TANY attempts to circumvent this public-disclosure obstacle by pointing to

11   the FAC's allegation that "the full benefit of the TA Method cannot be realized"

12   simply by watching the videos or attending a class; rather, she asserts, "knowing the

13   proprietary reasoning and methodology behind the movements and how and why to

14   sequence them in a certain way" is necessary. FAC ¶ 26; Opp. p. 18 n.9. This

15   allegation is as nonsensical as it is illustrative of TANY's failure to state a claim.

16   Indeed, Anderson fails to allege facts explaining how this supposed "reasoning"

17   cannot be learned by simply watching her videos or taking her classes. Does the

18   individual taking Anderson's class not realize its full benefit because she was not

19   made privy to the same "proprietary reasoning" as TANY's trainers? Anderson does

20   not allege how that could be so.

21      At bottom, TANY's breach claim attempts to rewrite the plain public-

22   disclosure carve-out by asserting that there is some secret reasoning behind the TA

23   Method and that, once having been provided such "reasoning," Roup may not operate

24   a competing fitness business lest she happen to use, consciously or not, even a

25   fragment of that "reasoning" in some unspecified way. Such a theory utterly fails to

26   meet the plausibility pleading standard, and Anderson's other unspecified,

27   "information and belief" allegation that Defendants used "Confidential Information"

28   relating to TANY's business operations, customers, program structure, customer

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

13

CASE NO. 2:22-CV-04735-RSWL-E

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND STRIKE PLAINTIFFS' FAC

intake methods, and employees (FAC ¶ 38) fails for this same reason. *See, e.g.,
Pellerin v. Honeywell Int'l, Inc.,* 877 F. Supp. 2d 983, 990-91 (S.D. Cal. 2012)
(dismissing breach of contract claim where counterclaimant failed to plead "what the
'trade secrets and/or confidential information' are or whether the confidential
information falls within the terms of the agreements") (collecting cases).

　　2.　Anderson's attempt to enforce the Trainer Agreement in this manner, as
described above, is proof positive that the confidentiality covenant is a facial and as-
applied invalid restriction on trade under California Business & Professions Code
§ 16600.　Contra Anderson, there is nothing "narrowly tailored" about the
confidentiality provision to protect legitimate interests, particularly given the manner
in which she attempts to enforce it here.　That covenant and Anderson's attempted
use of it plainly violate Section 16600 as a matter of law.

　　Despite TANY's assurance that "[f]ormer employees, like Roup, are free to
establish and conduct their own choreography-based fitness companies; they just
cannot use Plaintiffs' Confidential Information in doing so" (Opp. p. 19), there would
be no distinction between a former TANY trainer who replicates standard, unoriginal
movements that Anderson publicly uses in her workouts (admittedly non-confidential
information) and the same trainer who replicates those standard movements but
"knows" in her head the supposed "reasoning" behind those movements.　Thus, the
confidentiality provision here has the same effect as the overly broad provision in
*Brown v. TGS Mgmt. Co., LLC,* 57 Cal. App. 5th 303, 316-17 (2020), review denied
(Feb. 24, 2021), and would substantially restrain Roup from ever creating her own
dance-based fitness business, including by placing her under the fear that Anderson
might attempt to enforce the provision based on nothing but unsupported allegations
that Roup had previously learned proprietary methods.　*See* Mem. pp. 19-21.
Anderson's attempt to distinguish *Brown* therefore fails and only proves Defendants'
point that, like in *Brown,* the provision at issue is "strikingly broad" and
unenforceable.　*See also Action Learning Sys., Inc. v. Crowe,* 2014 WL 12564011, at

*12 (C.D. Cal. Aug. 11, 2014) ("These [confidentiality] provisions, read literally, would include nearly everything related to the educational field that Defendants saw, learned, observed, or had access to during their nearly 10-year employment with [plaintiff]. As Defendants point out . . . they would essentially need a lobotomy in order to continue working in the educational field without violating these restrictions.").

3.    Finally, in opposition, Anderson effectively concedes Defendants' point that she has brought a claim based on a superseded contract. Thus, even if she could state a claim—and she cannot for the reasons stated—amendment would be required to allege breach of the June 2011 Trainer Agreement.

### D.    Anderson's UCL Claim Fails Because She Has Not Alleged Any Independently Wrongful or Fraudulent Conduct

Anderson's UCL claim fails because it is based on three allegedly unfair or fraudulent practices, each of which is derivative of other failed claims: *i.e.*, allegations that Defendants (1) used "confidential information" to form and operate TSS; (2) continued to use the confidential information to create TSS videos; and (3) made the same supposed misstatements as in the Lanham Act claim. FAC ¶ 71. Aside from a vague statement that Roup's unfair and fraudulent business acts "include, but are not limited to" these acts, Anderson identifies no other allegedly wrongful business act upon which she bases her UCL claim. Thus, her claim is based on Roup's alleged use of confidential information in breach of the Trainer Agreement and misrepresentations that violate the Lanham Act, both which fail on their own terms and therefore doom Anderson's UCL claim. Mem. pp. 12-22.

In opposition, Anderson attempts to create daylight between her UCL claim and the Lanham Act and contract claims, arguing that somewhere in the FAC are UCL allegations that are distinct from her underlying contract and Lanham Act claims. Opp. p. 21. But Anderson's Opposition fails to identify these mystery allegations and the FAC fails to plead plausible facts to support such argument, and

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

15

CASE NO. 2:22-CV-04735-RSWL-E

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND STRIKE PLAINTIFFS' FAC

the cases she relies on merely set forth general standards for UCL claims and do not support her claim specifically.  Here, the UCL claim is plainly derivative of the Lanham Act and contract claims and, as a result, fails as a matter of law because those predicate claims fail.[4]

### E.    The Anti-SLAPP Motion Should be Granted

In their Motion, Defendants established that the anti-SLAPP law applies to the speech-based portion of the UCL claim (prong 1); thus, the burden shifted to Anderson to establish a likelihood of prevailing (prong 2).  But Anderson failed to carry that burden for the reasons explained in the Motion and above:  *i.e.*, the UCL claim based on Roup's speech is derivative of her failed Lanham Act claim.

Anderson erroneously argues that the commercial speech exemption of Cal. Civ. Proc. Code § 425.17(c) applies to Roup's autobiographical statements. Anderson carries the burden to establish the applicability of this exemption, which is to be "narrowly construed,"[5] but she cannot do so, as the California Supreme Court has confirmed that this provision "exempts 'only a subset of commercial speech'—specifically, comparative advertising." *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133, 147 (2019).  Plaintiffs do not assert that Roup's statements are comparative advertising, nor could they, and their argument fails for this reason alone.

Moreover, even if the exemption could somehow reach Roup's non-covered statements, her two biographical sentences do not meet the exemption's required elements.  First, Roup's biographical statements are not "representations *of fact* about that person's or a business competitor's business *operations, goods, or services*,"

---

[4] Anderson again erroneously states that the UCL claim may not be decided on the pleadings, but courts routinely dismiss UCL claims in similar circumstances. *Sybersound*, 517 F.3d at 1153 (affirming dismissal of UCL claim where plaintiff could not state a claim under the Lanham Act, among other grounds); *R and A Synergy*, 2019 WL 4390564, at *15 (dismissing UCL claim where "Plaintiff's state law claim for unfair competition realleges the same facts and reasserts the same arguments as embodied by Plaintiff's Lanham Act claims").

[5] *Simpson Strong-Tie Co., Inc. v. Gore*, 49 Cal. 4th 12, 22 (2010).  Anderson, as the party seeking the benefit of the commercial speech exemption, has the burden of proof on each element. *Id.* at 26.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

16

CASE NO. 2:22-CV-04735-RSWL-E
REPLY IN SUPPORT OF DEFENDANTS'  MOTION TO DISMISS AND STRIKE PLAINTIFFS' FAC

Cal. Civ. Proc. Code § 425.17(c)(1) (emphases added)—one of the same reasons the Lanham Act claim fails—but rather about her life story and personal views. Nor were Roup's statements made "for the purpose of obtaining approval for, promoting, or securing sales." Cal. Civ. Proc. Code § 425.17(c)(1). Rather, the statements are autobiographical and contain Roup's personal take on issues of women's body image and physical fitness, including her explanation that her goal "is to empower women through movement, to stand in their bodies with confidence and strength, and to feel their best self," and noting her own journey "[a]s someone who has struggled with body confidence in my early twenties, I understand what most women have felt at some point in their life." Dkt. 15-2, Ex. C. The statements and their characteristics (made by a fitness celebrity about public issues) thus establish both that the narrow commercial speech exemption does not apply and that prong 1 of the anti-SLAPP statute is met.[6]

Even if the commercial speech exemption could be said to apply, Defendants' motion is facially meritorious and miles apart from the egregious facts that established frivolousness in *L.A. Taxi Coop., Inc. v. The Indep. Taxi Owners Assn. of Los Angeles*, where the defendants had purchased "search advertising" to divert internet traffic away from plaintiff's services towards defendants' own. 239 Cal. App. 4th 918, 921 (2015). Here, Roup simply provides biographical details and her take on public issues. Thus, rather than support Anderson, her reliance on *L.A. Taxi* only underscores the non-commercial nature of Roup's speech, and the frivolousness of Anderson's attack on it. The Motion to Strike should therefore be granted.

## III.    CONCLUSION

For all the foregoing reasons, Plaintiffs' FAC should be dismissed with prejudice and the speech-based portion of the UCL claim struck with prejudice

---

[6] Anderson's cases that seek to disprove prong 1 are distinguishable as they were about a "private dispute," even if they involved public people. *See, e.g.*, *Albanese v. Menounos*, 218 Cal. App. 4th 923, 936 (2013).

1  pursuant to California's anti-SLAPP law.  Because Plaintiffs have not suggested any

2  manner in which their claims might be saved by amendment, and they could not be

3  as a matter of law, leave to amend should be denied.[7]

4

5  Dated: October 18, 2022                    MANATT, PHELPS & PHILLIPS, LLP

6

7                                            By:  /s/ *Nathaniel L. Bach*
                                                  Nathaniel L. Bach

8                                            *Attorneys for Defendants*
9                                            MEGAN ROUP and THE SCULPT
                                             SOCIETY, LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27  _____
    [7] Should the Court dismiss the federal claims but permit amendment on any state law

28  claim, it should nevertheless decline to exercise supplemental jurisdiction over such
    claim(s) and dismiss the action.  *See* Mem. pp. 24-25.  Plaintiffs do not contest this.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

CASE NO. 2:22-CV-04735-RSWL-E
REPLY IN SUPPORT OF DEFENDANTS'  MOTION TO DISMISS AND STRIKE PLAINTIFFS' FAC