'O'

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

TRACY ANDERSON MIND AND
BODY, LLC, et al.,

            Plaintiffs,

    v.

MEGAN ROUP, et al.,

           Defendants.

CV 22-4735-RSWL-Ex

**ORDER re: MOTION TO
DISMISS AND MOTION TO
STRIKE** [15]

    Plaintiffs Tracy Anderson Mind and Body, LLC
("Plaintiff TAMB") and Studio New York LLC ("Plaintiff
TANY") (collectively, "Plaintiffs") brought the instant
Action against Defendants Megan Roup ("Defendant Roup")
and The Sculpt Society ("Defendant TSS") (collectively,
"Defendants") alleging copyright infringement, violation
of the Lanham Act, breach of contract, and violation of
unfair competition law.  Currently before the Court is
Defendants' Motion to Dismiss [15].

1

1      Having reviewed all papers submitted pertaining to
2   this Motion, the Court **NOW FINDS AND RULES AS FOLLOWS:**
3   the Court **GRANTS** Defendants' Motion to Dismiss
4   Plaintiffs' Lanham Act and UCL claims **with leave to**
5   **amend** and **DENIES** Defendant's Motion to Dismiss
6   Plaintiffs' copyright and breach of contract claims.
7                       **I.   BACKGROUND**
8   **A.   <u>Factual Background</u>**
9   Plaintiffs allege the following in their Complaint:
10      Tracy Anderson ("Anderson") developed the Tracy
11  Anderson Method ("TA Method")—routines combining
12  choreography, fitness, and cardiovascular movement—after
13  decades of research, development, testing, and
14  investment.  First Am. Compl. ("FAC") ¶ 1, ECF No. 12.
15  Anderson is the founder and CEO of Plaintiff TAMB, which
16  offers choreography-based fitness and mat movement
17  classes.  <u>Id.</u> ¶ 2.  In turn, Plaintiff TAMB is the owner
18  of registered copyrights to various media, including
19  DVDs created by and featuring Anderson, that express,
20  relate to, or are based on, the TA Method.  <u>Id.</u>
21      In 2011, Plaintiff TANY, a subsidiary under
22  Plaintiff TAMB, which is also owned by Anderson,
23  employed Defendant Roup as a trainer.  <u>Id.</u> ¶ 3.
24  Defendant Roup was required to sign a Trainer Agreement
25  upon employment.  <u>Id.</u>  The Trainer Agreement prohibits
26  trainers from using or disclosing the company's
27  confidential information, which includes "nonpublic
28  business and operation information, training materials

and manuals, and transcribed methods . . . including those comprising the TA Method's proprietary choreography movements." Id.

During Defendant Roup's six-year employment with Plaintiff TANY, Defendant Roup learned and had access to significant confidential information, including "(i) training materials, choreography transcriptions, and custom write-ups related to the performance and teaching of the TA Method, and (ii) business information, customer lists, and operating procedures." Id. ¶ 4.

Later, in or around February 2017, Defendant Roup terminated her employment with Plaintiff TANY and founded Defendant TSS the next month. Id. ¶ 5. Defendant TSS also offers "choreography-based fitness and mat movement classes that directly compete with Plaintiffs[' classes]." Id. In creating and operating Defendant TSS, Defendant Roup neither references her association with Plaintiffs, nor credits Plaintiffs for training, teaching, or developing Defendant Roup. Id. ¶ 7. Plaintiffs thus filed the current Action seeking damages and injunctive relief for copyright infringement, breach of contract, violation of the Lanham Act, and unfair competition. Id. ¶ 10.

**B.   Procedural Background**

Plaintiffs filed their First Amended Complaint [12] on September 13, 2022. Defendants then filed the instant Motion [15] on September 27, 2022. Plaintiffs

opposed [17] the Motion on October 11, 2022, and Defendants replied [18] on October 18, 2022.

## II.   DISCUSSION

### A.   Legal Standard

#### 1.   Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of one or more claims if the pleading fails to state a claim upon which relief can be granted.  A complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation omitted).  Dismissal is warranted for a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 902 F.2d 696, 699 (9th Cir. 1988) (citation omitted).

In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice.  Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007).  A court must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the non-moving party.  Klarfeld v. United States, 944 F.2d 583, 585 (9th Cir. 1991).  The question is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence to

support its claims.  Jackson v. Birmingham Bd. of Educ.,
544 U.S. 167, 184 (2005) (quoting Scheuer v. Rhodes, 416
U.S. 232, 236 (1974)).  While a complaint need not
contain detailed factual allegations, a plaintiff must
provide more than "labels and conclusions" or "a
formulaic recitation of the elements of a cause of
action."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555
(2007).  However, "a well-pleaded complaint may proceed
even if it strikes a savvy judge that actual proof of
those facts is improbable, and 'that a recovery is very
remote and unlikely.'"  Id. at 556 (quoting Scheuer v.
Rhodes, 416 U.S. 232, 236 (1974)).

        2.  Motion to Strike

        California's anti-Strategic Lawsuit Against Public
Participation ("anti-SLAPP") statute provides for a
special motion to strike state law claims brought
"primarily to chill the valid exercise of the
constitutional rights of freedom of speech and petition
for the redress of grievances."  Cal. Civ. Proc. Code
§ 425.16(a).  "A court considering a motion to strike
under the anti-SLAPP statute must engage in a two-part
inquiry."  Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097,
1110 (9th Cir. 2003).  "First, a defendant must make an
initial prima facie showing that the plaintiff's suit
arises from an act in furtherance of the defendant's
rights of petition or free speech."  Id. (internal
quotation marks and citation omitted).  "Second, once
the defendant has made a prima facie showing, the burden

shifts to the plaintiff to demonstrate the probability of prevailing on the challenged claims." Id. (internal quotation marks and citation omitted).

**B.   Analysis**

    1.   Rule 12(b)(6) Motion

        a.   Copyright Infringement

Plaintiffs bring a claim against Defendant for copyright infringement. FAC ¶¶ 50-56. "To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publ'ns., Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 361 (1991). A copyright registration is "prima facie evidence of the validity of the copyright and the facts stated in the certificate." 17 U.S.C. § 410(c). While an "accused infringer can rebut [the] presumption of validity" conferred by a copyright registration, "such a presumption is strong in a motion to dismiss since the court must assume all factual allegations are true." Datastorm Techs., Inc. v. Excalibur Commc'ns, Inc., 888 F. Supp. 112, 115 (N.D. Cal. 1995). To show copying, a plaintiff can rely on circumstantial evidence that the defendant had access to the copyrighted work and that there is substantial similarity between defendant's work and copyrighted work. Swirsky v. Carey, 376 F.3d 841, 844 (9th Cir. 2004).

Here, Plaintiffs adequately pled a prima facie case of copyright infringement. First, Plaintiffs provided a

list of copyright registrations for nineteen "Motion
Picture[s]" for which Plaintiff TAMB is the sole
copyright claimant.  FAC, Attachment A, ECF No. 12-1.
Next, Plaintiffs alleged that Defendants have published
videos that "infringe on [Plaintiff TAMB's] copyrights
by copying the choreography movements, sequences, and
routines depicted in the [copyrighted works];
organizational structure and format of the [copyrighted
works]; and aesthetic elements depicted in the
[copyrighted works]."  FAC ¶ 47.  Moreover, Plaintiffs
contend that Defendants had access to the copyrighted
works through Defendant Roup's employment with
Plaintiffs and specify that at least three of Defendant'
videos are substantially similar to Plaintiff's
copyrighted works.[1]  Id. ¶¶ 3-4, 48-49.  Therefore,

---

[1] Under certain circumstances, a court ruling on a motion to
dismiss may independently assess whether works are not
substantially similar.  See Christianson v. West Pub. Co., 149
F.2d 202, 203 (9th Cir. 1945) ("There is ample authority for
holding that when the copyrighted work and the alleged
infringement are both before the court, capable of examination
and comparison, non-infringement can be determined on a motion to
dismiss.").  Here, however, the Court cannot properly examine and
compare the works to determine non-infringement.  Plaintiffs have
provided three examples broadly describing how Defendants'
"choreography movement, sequences, and routines are substantially
similar" to those depicted in Plaintiffs' copyrighted works.  FAC
¶ 48.  But Plaintiffs did not submit the referenced videos with
their FAC.  See generally FAC.  Moreover, Plaintiffs state that
"[b]ecause Defendants' videos are published behind a paywall,"
Plaintiffs are "unable to review and compare every one of
Defendants' videos" with their own, and therefore, "the full
extent of Defendants' infringement . . . cannot be assessed until
Defendants produce the videos to Plaintiffs in discovery."  Id.
¶ 49.  Consequently, the Court is unable to determine non-
infringement at this stage of litigation.

Plaintiffs have pled a prima facie case of copyright infringement.  See Wake Up & Ball LLC v. Sony Music Ent. Inc., 119 F. Supp. 3d 944, 952 (D. Ariz. 2015) (finding that plaintiff pled a plausible infringement claim by presenting its copyright registration and alleging that defendants published plaintiff's copyrighted work online).

Defendants, however, argue that Plaintiffs have not pled a prima facie case of copyright infringement because "functional exercise movements are not copyrightable."  Defs.' Mot. to Dismiss ("Mot.") 7:12-14., ECF No. 15.  Plaintiffs counter that (1) whether a copyrighted work qualifies for copyright protection is a factual inquiry not appropriate for determination on a motion to dismiss, and (2) regardless, Plaintiffs' choreographic work is copyrightable.  Plfs.' Opp'n ("Opp'n") 5:21-21, 8:6-8.  The Court agrees that an inquiry into the copyrightability of Plaintiffs' works is not appropriate at this stage of litigation.

As explained, when assessing a motion to dismiss, the Court "must assume all factual allegations [in the Complaint] are true."  Datastorm Techs., Inc., 888 F. Supp. at 115.  Accordingly, motion to dismiss arguments that copyrighted works do not qualify for copyright protection based on a "detailed factual analysis" of the works are "inappropriate . . . as the Court must accept all material factual allegations as true."  Thomson v. HMC Grp., No. CV1303273DMGVBKX, 2014 WL 12589312 at *3

1   (C.D. Cal. Feb. 18, 2014) (holding that motion to
2   dismiss arguments regarding copyrightability are
3   premature and such arguments should instead be asserted
4   at summary judgment); see also P & P Imports, LLC v.
5   Festival Trading, Inc., No. CV171541DOCJCGX, 2018 WL
6   5099723 at *6 (C.D. Cal. May 15, 2018) (declining to
7   assess copyrightability of a copyrighted work on a
8   motion to dismiss); E. W. Sounds, Inc. v. Phoenix,
9   No. CV 12-6143 CAS AJWX, 2012 WL 4003047 at *3
10  (C.D. Cal. Sept. 10, 2012) (same).

11      In Thomson, the defendant asserted that the
12  copyrighted works did not qualify for copyright
13  protection because they were "functional" designs that
14  amounted to "[mere] ideas and concepts." Thomson,
15  2014 WL 12589312 at *3.  There, the court held that
16  determining whether the copyrighted works fell into the
17  specified categories would require "a detailed factual
18  analysis" inappropriate for a motion to dismiss.  Id.
19  Similarly, here, Defendants contend that Plaintiffs'
20  copyrighted works are not copyrightable because they are
21  "functional exercise movements" that are ultimately
22  "unprotectable 'ideas' or 'processes.'"  Mot. 7:12-24.
23  As in Thomson, determining the protectability of
24  Plaintiffs' copyrighted works would require the Court to
25  conduct a detailed factual analysis unfit for ruling on
26  a motion to dismiss.  Thus, Defendants' argument fails,
27  and Plaintiffs have met their burden of pleading
28  copyright infringement.  See Ashcroft, 556 U.S. 662

1   at 678 (holding that a complaint must contain enough

2   factual sufficiency to be plausible on its face to

3   survive a motion to dismiss for failure to plead a

4   claim); see also Lee v. City of Los Angeles, 250 F.3d

5   668, 688 (9th Cir. 2001) ("[F]actual challenges to a

6   plaintiff's complaint have no bearing on the legal

7   sufficiency of the allegations under Rule 12(b)(6).").

8   Accordingly, the Court **DENIES** Defendants' Motion to

9   Dismiss Plaintiffs' copyright infringement claim.

10              b.   Violation of the Lanham Act – False

11                   Advertising

12       To succeed on a Lanham Act claim for false

13   advertising, a plaintiff must establish: (1) a false

14   statement of fact by the defendant in a commercial

15   advertisement about its own or another's product;

16   (2) the statement actually deceived or has the tendency

17   to deceive a substantial segment of its audience;

18   (3) the deception is material, in that it is likely to

19   influence the purchasing decision; (4) the defendant

20   caused its false statement to enter interstate commerce;

21   and (5) the plaintiff has been or is likely to be

22   injured as a result of the false statement, either by

23   direct diversion of sales from itself to defendant or by

24   a lessening of the goodwill associated with its

25   products.  See 15 U.S.C. § 1125.

26       Importantly, district courts in the Ninth Circuit

27   apply a heightened pleading standard for false

28   advertising claims.  See, e.g., EcoDisc Tech. AG v. DVD

Format/Logo Licensing Corp., 711 F. Supp. 2d 1074, 1085 (C.D. Cal. 2010) ("Although the Ninth Circuit has not concluded that Rule 9(b) applies to Lanham Act claims, many district courts have applied this heightened pleading standard to claims that are grounded in fraud, such as misrepresentation claims."). "To satisfy Rule 9(b), Plaintiff must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." EcoDisc Tech., 711 F. Supp. 2d at 1085 (citing Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986)). Plaintiffs must also set forth what is false and misleading about the statement and why it is false. Id. (citing Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir.2003)).

Plaintiffs alleged all elements of a Lanham Act violation with sufficient particularity, specifically listing the following "false and/or misleading" statements from Defendant Roup's biography on Defendants' website: "I knew that there was something missing from the boutique fitness community, so I combined my passion for dance and love for fitness to create The Sculpt Society. I spent years teaching fitness and developing The Sculpt Society method before launching in 2017." FAC ¶ 58. Plaintiffs assert that these statements "misrepresent the nature, characteristics, and qualities of Defendants' services" because they "imply" that (1) Defendant Roup developed

the "TSS Method" over a period of multiple years, when she did not; (2) the "TSS Method" was created through years of science-based research, development, data collection, analysis, and trial and error, when it was not; and (3) the "TSS Method" is significantly different from Plaintiffs' "TA Method," when it is not.  Id. ¶ 58, 59.

Defendants counter that these statements are "facially non-actionable" because, amongst other reasons, (1) they are "classic examples of non-actionable opinions or puffery which are both nonmaterial and unlikely to induce consumer reliance," and (2) they are non-material because a reasonable consumer would not rely on the statements when making purchasing decisions.  Mot. 12:22-17:25.

The Court's analysis therefore centers on whether Plaintiff has plausibly alleged a false statement of fact.

### i.  False Statement of Fact

"To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers."  Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1139 (9th Cir. 1997).  The allegedly false statement must be examined in the full context of the advertising or promotional materials in which the statement was made.

1  Id.

2      Importantly, an advertising statement may be non-

3  actionable if it constitutes "puffery," which is defined

4  as "exaggerated advertising, blustering, and boasting

5  upon which no reasonable buyer would rely."  Id. at

6  1145.  Puffery includes "statement[s] of fact

7  [in]capable of being proved false," statements that are

8  not "specific and measurable," or statements that

9  otherwise cannot be "reasonably interpreted as a

10 statement of objective fact."  Coastal Abstract Serv.,

11 Inc. v. First Am. Title Ins. Co., 173 F.3d 725, 731 (9th

12 Cir. 1999); see also Glen Holly Ent., Inc. v. Tektronix

13 Inc., 343 F.3d 1000, 1015 (9th Cir. 2003) (establishing

14 that "generalized, vague, or unspecific assertions"

15 constitute unactionable puffery); Cook, Perkiss & Liehe,

16 Inc. v. N. Cal. Collection Serv., Inc., 911 F.2d 242,

17 246 (9th Cir. 1990) ("[Puffery] has been described by

18 most courts as involving outrageous generalized

19 statements, not making specific claims, that are so

20 exaggerated as to preclude reliance by consumers.").

21     A statement is also considered puffery if the claim

22 is extremely unlikely to induce consumer reliance.

23 Newcal Indus., Inc. v. Ikon Off. Sol., 513 F.3d 1038,

24 1054 (9th Cir. 2008).  Ultimately, the difference

25 between a statement of fact and mere puffery rests in

26 the specificity or generality of the claim.  Cook,

27 Perkiss & Liehe, Inc., 911 F.2d at 246.  "The common

28 theme that seems to run through cases considering

1   puffery in a variety of contexts is that consumer
2   reliance will be induced by specific rather than general
3   assertions." Id.  Thus, a statement that is
4   quantifiable, that makes a claim as to the "specific or
5   absolute characteristics of a product," may be an
6   actionable statement of fact while a general, subjective
7   claim about a product is non-actionable puffery.  Id.

8       Courts may determine at the motion to dismiss stage
9   whether an alleged misrepresentation is a statement of
10  fact or mere puffery as a matter of law.  Newcal Indus.,
11  Inc., 513 F.3d at 1053.  Since Plaintiffs assert that
12  Defendants' statements are "false and/or misleading,"
13  the Court assesses whether the claims are literally
14  false or true but misleading.  FAC ¶ 58.

15                  A.   Literally False
16      To be literally false, a statement must "expressly
17  or impliedly assert a fact that is susceptible to being
18  proved false," and must be able to reasonably be
19  "interpreted as stating actual facts." Weller v.
20  American Broad. Cos., 283 Cal. Rptr. 644, 650 (1991).
21  Claims that a defendant invented a product to fill a gap
22  in the market, and the resulting implications regarding
23  the innovativeness of a defendant's product, constitute
24  puffery rather than an assertion of fact.  See
25  Soilworks, LLC v. Midwest Indus. Supply, Inc., 575 F.
26  Supp. 2d 1118, 1133 (D. Ariz. 2008) (holding that claims
27  that a company was the "innovator" of a product and that
28  the product was the result of "revolutionary state-of-

the-art innovation" constituted puffery because those claims are general, vague, and unmeasurable.); Williams & Lake LLC v. Genesis Systems LLC, No. CV-17-00117-TUC-CKJ, 2017 WL 6418937 at *6-8 (D. Ariz. Sept. 13, 2017) (establishing that "inventorship is not a cause of action" for false advertising under the Lanham Act, and that claims attacking defendant's statements about inventorship do not challenge the nature of the defendant's product even if the statements create a perception that the plaintiff's product is inferior).

Here, Defendant Roup's statements constitute non-actionable puffery.  First, her statement that "[she] knew something was missing from the boutique fitness community, so [she] combined [her] passion for dance and love for fitness to create The Sculpt Society" conveys a general, vague, and unmeasurable assertion regarding inventorship and the innovativeness of Defendants' products.  See Soilworks, LLC, 575 F. Supp. 2d at 1133; Williams & Lake LLC, 2017 WL 6418937 at *6-8.  Next, Defendant Roup's statement that she "spent years teaching fitness and developing The Sculpt Society method before launching in 2017" is another general and vague assertion of inventorship.  While Plaintiffs appear to primarily take issue with Defendant Roup's statement about her development of The Sculpt Society method, it is worth noting that Plaintiffs offer evidence proving the truth of Defendant Roup's claim that she "spent years teaching fitness."  FAC ¶¶ 58-59;

1   *Id.* ¶ 3 ("[Plaintiff] TANY employed [Defendant] Roup as
2   a trainer from 2011 to 2017."). Moreover, it is
3   unlikely a reasonable consumer would rely on these
4   statements as an objective, measurable statement of
5   fact. See R & A Synergy LLC v. Spanx, Inc., No. 2:17-
6   CV-09147-SVW-AS, 2019 WL 4390564 at * 11 (C.D. Cal.
7   May 1, 2019) (holding that a CEO's representations that
8   she invented a product and that it filled a "white
9   space" in the market were puffery that would not induce
10  consumer reliance).

                    B.   True But Misleading

12      If an advertising claim is not literally false, a
13  plaintiff may still satisfy the first element of a
14  Lanham Act false advertising claim by establishing that
15  the representations of fact in advertising statements
16  were literally true but otherwise misled, confused, or
17  deceived the public. Southland Sod, 108 F.3d at 1140.
18  A plaintiff generally relies on consumer surveys to
19  assess whether consumers were misled. Id.

20      Plaintiffs argue that Defendant Roup's statements
21  may mislead the public to wrongly believe that
22  (1) Defendant Roup developed the "TSS Method" over a
23  period of multiple years, when she did not; (2) the "TSS
24  Method" was created through years of science-based
25  research, development, data collection, analysis, and
26  trial and error, when it was not; and (3) the "TSS
27  Method" is significantly different from Plaintiffs' "TA
28  Method," when it is not. FAC ¶ 58, 59. As explained

1   above, Defendant Roup's statements are non-actionable

2   puffery, meaning that reasonable consumers are unlikely

3   to rely on these statements to make purchasing decisions

4   regardless of whether the statements may be misleading.

5   Thus, Defendant Roup's statements cannot be considered

6   true but misleading as a matter of law.

7       Therefore, Plaintiffs have not adequately pled that

8   Defendants have made a false statement of fact and the

9   Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's

10  Lanham Act claim.

11      Since the Court resolves Defendants' Motion to

12  Dismiss Plaintiff's Lanham Act claim on these grounds,

13  it need not address the remaining false advertising

14  factors or parties' arguments.

15          c.   Breach of Contract

16      Plaintiff TANY alleges that Defendant Roup breached

17  her employment contract with Plaintiff TANY.  FAC ¶ 65.

18  To plead a cause of action for breach of contract, a

19  plaintiff must show (1) the existence of a contract;

20  (2) plaintiff's performance or excuse for

21  nonperformance; (3) defendant's breach; and (4) that

22  plaintiff sustained damages resulting from the breach.

23  See Zamora v. Solar, No. 2:16-CV-01260-ODW-KS, 2016 WL

24  3512439, at *3 (C.D. Cal. June 27, 2016) (citing CDF

25  Firefighters v. Maldonado, 70 Cal. Rptr. 3d 667, 680

26  (2008)).

27      Plaintiff TANY has sufficiently alleged a breach of

28  contract claim.  Plaintiff TANY states that it entered

into and performed its obligations under a "Trainer
Agreement" with Defendant Roup.  FAC ¶¶ 3, 29, 65-66.
The Trainer Agreement prohibited trainers, including
Defendant Roup, from "using or disclosing company
'Confidential Information,' which includes its nonpublic
business and operational information, training materials
and manuals, and the transcribed methods taught to
trainers, including those comprising the TA Method's
proprietary choreography movements, sequences, and
routines" during and after their employment with
Plaintiff TANY.  Id. ¶ 3, 29.

Next, Plaintiff TANY contends Defendant Roup
breached the Trainer Agreement by "using and disclosing
to [third parties] the Confidential Information after
the termination of her employment [with Plaintiff]
TANY."  Id. ¶ 68.  Specifically, Plaintiff TANY asserts
that Defendant Roup (1) used the Confidential
Information "with developing the TSS Method and with
planning, recording, and publishing videos on the TSS
app and website"; (2) used the Confidential Information
"related to customers, operations, program structure,
customer intake methods, and employees"; and
(3) "disclosed the Confidential Information to third
parties, including employees, affiliates, and/or
customers of TSS."  Id.  Finally, Plaintiff TANY
contends that as a result of Defendant Roup's alleged
breach, Plaintiff TANY "has suffered, and will continue
to suffer, substantial monetary damages in an amount to

1    be determined at trial." Id. ¶ 69.  Thus, Plaintiff

2    TANY has alleged a plausible breach of contract claim.

3    The Court therefore **DENIES** Defendants' Motion to Dismiss

4    Plaintiffs' breach of contract claim.

5              d.   Violations of California Unfair Competition

6                   Law

7         Plaintiffs argue that Defendants violated

8    California's Unfair Competition Law ("UCL" or "section

9    17200") because they engaged in unfair and/or fraudulent

10   business acts and practices including: (1) taking,

11   using, and continuing to use Plaintiffs' confidential

12   information to form and operate TSS, which competes with

13   Plaintiffs, and (2) making false and/or misleading

14   descriptions or representations of fact by setting forth

15   the statements addressed in Plaintiffs' false

16   advertisement claim.  FAC ¶ 71.

17        California's UCL prohibits "any unlawful, unfair or

18   fraudulent business act or practice and unfair,

19   deceptive, untrue or misleading advertising."  Cal. Bus.

20   & Prof. Code § 17200.  Each UCL prong—unlawful, unfair,

21   and fraudulent—provides a separate and distinct theory

22   of liability.  Lozano v. AT&T Wireless Servs., Inc.,

23   504 F.3d 718, 731 (9th Cir. 2007).

24        Since Plaintiffs alleged Defendants participated in

25   "unfair and/or fraudulent business acts," they are

26   required to plead their claims under the unfair and

27   fraud prongs of the UCL.  See Lozano, 504 F.3d at 731.

28   ///

1   ///

2                    i.   "Unfair" Prong

3        The "unfair" prong of the UCL prohibits a business

4   practice that "violates established public policy

5   or . . . is immoral, unethical, oppressive or

6   unscrupulous and causes injury to consumers which

7   outweighs its benefits."  McKell v. Wash. Mut., Inc.,

8   49 Cal. Rptr. 3d 227, 240 (2006).  The California

9   Supreme Court has held that "[w]hen a plaintiff who

10  claims to have suffered injury from a direct

11  competitor's 'unfair' act or practice invokes

12  section 17200, the word 'unfair' in that section means

13  conduct that threatens an incipient violation of an

14  antitrust law, or violates the policy or spirit of one

15  of those laws because its effects are comparable to or

16  the same as a violation of the law, or otherwise

17  significantly threatens or harms competition."  Cel-Tech

18  Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal.

19  4th 163, 187 (1999).

20       Although Plaintiffs allege that Defendants are

21  competitors, Plaintiffs do not argue that Defendants'

22  alleged misconduct threatens an incipient violation of

23  an antitrust law or has effects comparable to a

24  violation of an antitrust law.  See generally FAC.

25  Accordingly, Plaintiffs have not sufficiently alleged a

26  plausible claim for relief under the UCL's unfair prong.

27                   ii. "Fraud" Prong

28       "To state a claim under the 'fraud' prong of

[section] 17200, a plaintiff must allege facts showing that members of the public are likely to be deceived by the alleged fraudulent business practice." Antman v. Uber Techs., Inc., No. 3:15-cv-1175-LB, 2015 WL 6123054, at *6 (N.D. Cal. Oct. 19, 2015). "Claims under the fraud prong of the UCL are subject to the particularity requirements of Federal Rule of Civil Procedure 9(b)." In re Anthem, Inc. Data Breach Litig., No. 15-MD-2617-LHK, 2016 WL 3029783, at *34 (N.D. Cal. May 27, 2016); see also Kearns v. Ford Motor Co., 567 F.3d 1120, 1122, 1126-27 (9th Cir. 2009) ("[If] the [UCL] claim is said to be 'grounded in fraud' . . . the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)."). A plaintiff, therefore, must plead the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby. See Fed. R. Civ. P. 9(b).

To have standing under the UCL's fraud prong, a claim must plead "actual reliance by the [party] seeking relief under [the statute]." Morgan v. AT&T Wireless Servs., Inc., 177 Cal. App. 4th 1235, 1235 (2009). No California state court has addressed whether "competitor plaintiffs must plead their own reliance or whether pleading consumer reliance is sufficient for fraudulent business practice claims brought by competitors." 23andMe, Inc. v. Ancestry.com DNA, LLC, 356 F. Supp. 3d 889, 911 (N.D. Cal. 2018). As a result, there is a

1    split of authority in the California district courts
2    with a majority view that a plaintiff must allege its
3    own reliance and not the reliance of third parties.
4    Id.; see also ConsumerDirect, Inc. v. Pentius, LLC, No.
5    821CV01968JVSADSX, 2022 WL 16949657 at *8 (C.D. Cal.
6    Aug. 25, 2022) (adopting the majority approach that a
7    plaintiff must allege its own reliance).  But see
8    Jerome's Furniture Warehouse v. Ashley Furniture Indus.,
9    Inc., No. 20CV1765-GPC(BGS), 2021 WL 1541649 at *7-8
10   (S.D. Cal. Apr. 20, 2021) (adopting the minority
11   approach based on some courts' perception that the
12   "broad, sweeping language" of the UCL indicates
13   California legislative intent that the substantive reach
14   of UCL claims be "expansive") (internal quotations and
15   citations omitted).
16        Plaintiffs fail to plead with specificity that they
17   actually relied upon Defendant Roup's alleged
18   misrepresentations.  Therefore, Plaintiffs fail to state
19   a UCL claim under the fraud prong.
20        Since Plaintiffs have not sufficiently alleged a
21   UCL claim under either relevant prong, the Court **GRANTS**
22   Defendants' Motion to Dismiss Plaintiffs' UCL claim.
23                    e.   Leave to Amend
24        "Where a motion to dismiss is granted, a district
25   court must decide whether to grant leave to amend."
26   Winebarger v. Pennsylvania Higher Educ. Assistance
27   Agency, 411 F. Supp. 3d 1070, 1082 (C.D. Cal. 2019).
28   "The court should give leave [to amend] freely when

1   justice so requires."  Fed. R. Civ. P. 15(a)(2).  In the

2   Ninth Circuit, "Rule 15's policy of favoring amendments

3   to pleadings should be applied with 'extreme

4   liberality.'"  United States v. Webb, 655 F.2d 977, 979

5   (9th Cir. 1981).  Against this extremely liberal

6   standard, the Court may consider "the presence of any of

7   four factors: bad faith, undue delay, prejudice to the

8   opposing party, and/or futility."  Owens v. Kaiser

9   Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir.

10  2001).

11      Here, leave to amend Plaintiffs' claims should be

12  granted because Plaintiffs can cure their Complaint by

13  pleading additional facts that support their claims.

14  There is no evidence of bad faith or undue delay by

15  Plaintiff, or potential prejudice to Defendant by

16  allowing amendment.  The Court therefore **GRANTS**

17  Defendants' Motion to Dismiss Plaintiff's Lanham Act and

18  UCL claims **with leave to amend.**

19      2.  Motion to Strike

20      Defendants move to strike the portion of

21  Plaintiffs' UCL claim asserting that Defendants engaged

22  in unfair and/or fraudulent business acts and practices

23  by making false or misleading statements in advertising.

24  See Mot. 23:1-24:21; White v. Lieberman, 103 Cal. App.

25  4th 210, 220 (2002) (holding that the trial court erred

26  as a matter of law when it denied the defendant's anti-

27  SLAPP motion to strike as moot because it granted the

28  defendant's demurrer on the same claim); Thornbrough v.

1  <u>West Placer Unified Sch. Dist.</u>, 2010 WL 2179917, at *11

2  (E.D. Cal. May 27, 2010) ("Since a defendant who

3  prevails on an anti-SLAPP motion is entitled to recover

4  mandatory attorney's fees, the dismissal of Plaintiff's

5  claims against [defendant] does not moot [defendant's]

6  anti-SLAPP motion.").

7       As described, a court considering whether claims

8  are barred by the "anti-SLAPP statute must engage in a

9  two-part inquiry." <u>Vess v. Ciba-Geigy Corp. USA</u>,

10  317 F.3d 1097, 1110 (9th Cir. 2003).  "First, a

11  defendant must make an initial prima facie showing that

12  the plaintiff's suit arises from an act in furtherance

13  of the defendant's right of petition or free speech."

14  <u>Id.</u> (internal quotation marks omitted).  Under the anti-

15  SLAPP statute, free speech includes "'any written or

16  oral statement or writing made in a place open to the

17  public or a public forum in connection with an issue of

18  public interest,' and 'any other conduct in furtherance

19  of the exercise of the constitutional right of petition

20  or the constitutional right of free speech in connection

21  with a public issue or an issue of public interest.'"

22  <u>Id.</u>

23       Generally, if a defendant makes an initial prima

24  facie showing, "the burden shifts to the plaintiff to

25  demonstrate a probability of prevailing on the

26  challenged claims."  <u>Id.</u>  But "when an anti-SLAPP motion

27  to strike challenges only the legal sufficiency of a

28  claim," as here, a court considers instead "whether a

1   claim is properly stated." <u>Planned Parenthood Fed'n of</u>
2   <u>Am., Inc. v. Ctr. for Med. Progress</u>, 890 F.3d 828, 834
3   (9th Cir.), <u>amended</u>, 897 F.3d 1224 (9th Cir. 2018); <u>see</u>
4   <u>also</u> <u>Day v. California Lutheran Univ.</u>, No.
5   821CV01286JLSDFM, 2022 WL 17037433 at *12 (C.D. Cal.
6   Aug. 30, 2022) (assessing whether defendants made a
7   prima facie showing that the activities at issue in
8   their anti-SLAPP motion were protected conduct).

9       As to the first part of the anti-SLAPP inquiry, the
10  Court finds that the Defendants have sufficiently made a
11  prima facie showing that the activities at issue are
12  protected conduct.  Defendants pled that the challenged
13  written statements are publicly available on a website,
14  and that they regard an issue of public interest because
15  of Defendant Roup's public persona.  Mot. 23:1-24:21.

16      The California appellate courts have developed
17  multiple tests to determine whether a defendant's
18  activity is in connection with a public issue.  <u>Hilton</u>
19  <u>v. Hallmark Cards</u>, 599 F.3d 894 906 (9th Cir. 2010).
20  Relevant here is the <u>Rivero</u> test, where the Court of
21  Appeal for the First District of California surveyed the
22  appellate cases and established three categories of
23  public issues: (1) statements "concern[ing] a person or
24  entity in the public eye"; (2) "conduct that could
25  directly affect a large number of people beyond the
26  direct participants"; (3) "or a topic of widespread,
27  public interest."  <u>Rivero v. American Federation of</u>
28  <u>State, County, & Municipal Employees</u>, 130 Cal. Rptr. 2d

1  81, 89-90 (2003).

2       Here, Defendants have adequately pled that

3  Defendant Roup is person or entity in the public eye by

4  stating that she is a "celebrity fitness trainer and

5  influencer" with a substantial number of customers and a

6  significant social media following.  Mot. 23:21-24:5.

7  Further, Defendants contend that Defendant Roup's

8  statements are biographical, and therefore Defendants

9  have shown that the statements concern a person or

10  entity in the public eye.  Id. 24:6-10.

11       As to the second part of the analysis, Defendants

12  argue that "Plaintiffs cannot carry their burden to show

13  a likelihood of prevailing on the portion of their UCL

14  claim" based on Defendant Roup's biographical

15  statements.  Id. 24:12-16.  And the Court has already

16  established that Plaintiffs have not pled a plausible

17  UCL claim.  But "granting a defendant's anti-SLAPP

18  motion to strike a plaintiff's [] complaint without

19  granting the plaintiff leave to amend would directly

20  collide with Fed. R. Civ. P. 15(a)'s policy favoring

21  liberal amendment."  Verizon Delaware, Inc. v. Covad

22  Commc'ns Co., 377 F.3d 1081, 1091 (9th Cir. 2004); see

23  also Day, 2022 WL 17037433 at *12 (granting plaintiffs'

24  leave to amend their first amended complaint despite

25  defendants' anti-SLAPP motion).

26       The purpose of the anti-SLAPP statute would still

27  be served if Plaintiffs eliminate meritless claims or

28  plead them adequately.  See id.  If, after amendment,

the Complaint still contains legally insufficient
claims, Defendants continue to have anti-SLAPP remedies
available to them.  See Day, 2022 WL 17037433 at *12
(declining to rule on defendants' anti-SLAPP motion
since the court dismissed plaintiffs' claims with leave
to amend and defendants could reassert the motion once
plaintiffs filed an amended complaint).  Accordingly,
the Court will defer its final ruling on Defendants'
anti-SLAPP request until after Plaintiffs have amended
their complaint in light of this Order.

<b>III.   CONCLUSION</b>

Based on the foregoing, the Court **GRANTS**
Defendants' Motion to Dismiss Plaintiffs' Lanham Act and
UCL claims **with leave to amend** and **DENIES** Defendant's
Motion to Dismiss Plaintiffs' copyright and breach of
contract claims.

**IT IS SO ORDERED.**

DATED: December 12, 2022        /S/ RONALD S.W. LEW
                         _____
                         **HONORABLE RONALD S.W. LEW**
                         Senior U.S. District Judge