MANATT, PHELPS & PHILLIPS, LLP
CHRISTOPHER CHATHAM (CA Bar #240972)
  CChatham@manatt.com
NATHANIEL L. BACH (CA Bar #246518)
  NBach@manatt.com
SARAH E. MOSES (CA Bar #291491)
  SMoses@manatt.com
ANDREA D. GONZALEZ (CA Bar #336134)
  ADGonzalez@manatt.com
2049 Century Park East
Suite 1700
Los Angeles, California  90067
Telephone:   (310) 312-4000
Facsimile:    (310) 312-4224

REDACTED
VERSION OF
DOCUMENT
PROPOSED TO BE
FILED UNDER SEAL

Attorneys for Defendants
MEGAN ROUP and THE SCULPT SOCIETY, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

TRACY ANDERSON MIND AND
BODY, LLC, a Delaware limited
liability company; and T.A. STUDIO
NEW YORK LLC, a California limited
liability company,

             Plaintiffs,

      v.

MEGAN ROUP, an individual; and
THE SCULPT SOCIETY, LLC, a
California limited liability company,

             Defendants.

Case No. 2:22-cv-04735-PSG-E

Hon. Philip S. Gutierrez

**MEMORANDUM OF POINTS
AND AUTHORITIES IN
SUPPORT OF DEFENDANTS
MEGAN ROUP AND THE
SCULPT SOCIETY, LLC'S
MOTION FOR FULL OR
PARTIAL SUMMARY
JUDGMENT**

[*Filed Concurrently with Notice of
Motion and Motion; Statement of
Uncontroverted Facts; Compendium
of Evidence; Request for Judicial
Notice; Notice of Lodging; Sealing
Application; [Proposed] Judgment or
Order*]

Hearing Date:    June 7, 2024
Hearing Time:    1:30 p.m.
Location:        6A

Complaint Filed:    July 11, 2022
FAC Filed:          Sept. 13, 2022
Trial Date:         Nov. 14, 2024

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

CASE NO. 2:22-CV-04735-PSG-E
MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR FULL OR PARTIAL SUMMARY
JUDGMENT

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ............................................................................................. 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ...................................... 2

III.    LEGAL STANDARD ...................................................................................... 4

IV.     ARGUMENT ................................................................................................... 4

    A.    TAMB Cannot Prove Its Copyright Claim. .......................................... 4

        1.    Anderson's Exercises Are Noncopyrightable. ............................ 4

        2.    Anderson's Functional Exercise Movements Are Not
                Protectable Choreography. ........................................................ 10

        3.    TAMB Is Not the Copyright Owner Because No Valid
                Written Assignments Exist. ....................................................... 13

    B.    TANY Cannot Prove Its Breach of Contract Claim. ........................... 14

        1.    Roup Never Used any "Confidential Information" in
                Breach of the Trainer Agreement. ............................................ 14

        2.    TANY's Attempt to Enforce the "Confidential
                Information" Restrictive Covenant Against Roup Violates
                Business and Professions Code Section 16600. ....................... 16

V.      CONCLUSION ............................................................................................. 20

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES
MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR FULL OR PARTIAL SUMMARY
JUDGMENT

1

# TABLE OF AUTHORITIES

2

**Page**

3

4

5

## CASES

6

*Addisu v. Fred Meyer*,
    198 F.3d 1130 (9th Cir. 2000) ...................................................................... 4

7

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1968) ...................................................................................... 4

8

9

*Bikram's Yoga College of India, L.P. v. Evolation Yoga, LLC*,
    803 F.3d 1032 (9th Cir. 2015) .............................................................. passim

10

*Brown v. TGS Mgmt. Co., LLC*,
    57 Cal. App. 5th 303 (2020), review denied (Feb. 24, 2021) ..................... 18

11

12

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ...................................................................................... 4

13

*Dowell v. Biosense Webster, Inc.*,
    179 Cal. App. 4th 564 (2009) ..................................................................... 18

14

15

*Edwards v. Arthur Andersen LLP*,
    44 Cal. 4th 937 (2008) ................................................................................ 16

16

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991) ............................................................................... 5, 12

17

18

*Golan v. Holder*,
    565 U.S. 302 (2012) ...................................................................................... 5

19

*Golden v. California Emergency Physicians Med. Grp.*,
    896 F.3d 1018 (9th Cir. 2018) ................................................................... 16

20

21

*Hanagami v. Epic Games, Inc.*,
    85 F.4th 931 (9th Cir. 2023) ................................................................. 11, 13

22

*Harper v. Wallingford*,
    877 F.2d 728 (9th Cir. 1989) ....................................................................... 4

23

24

*Imax Corp. v. Cinema Technologies, Inc.*,
    152 F.3d 1161 (9th Cir. 1998) ................................................................... 20

25

*Konigsberg v. Rice*,
    16 F.3d 355 (9th Cir. 1994) ....................................................................... 14

26

27

*Lewis v. YouTube, LLC*,
    244 Cal. App. 4th 118 (2015) ..................................................................... 15

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

1

## TABLE OF AUTHORITIES
(continued)

2

**Page**

3

4    *Mattel, Inc. v. MGA Entm't Inc.*,

5        782 F. Supp. 2d 911 (C.D. Cal. 2011) ................................................................. 19

     *Palmer v. Braun*,
6        287 F.3d 1325 (11th Cir. 2002) ........................................................................... 9

7    *Vacco Indus., Inc. v. Van Den Berg*,
         5 Cal. App. 4th 34 (1992) ................................................................................... 16
8

## STATUTES

9

10   17 U.S.C. 501(b) ................................................................................................... 13

     17 U.S.C. § 102(b) ................................................................................ 1, 5, 11, 13
11
     17 U.S.C. § 204(a) ............................................................................................... 14
12
     California Business and Professions Code section 16600 ................. 2, 14, 16, 18, 20
13
     California Civ. Code § 3426.1(d) ........................................................................ 19

14

## OTHER AUTHORITIES

15

     U.S. Copyright Office, "Registration of Claims to Copyright," 77 Fed. Reg.
16       37607 (June 22, 2012) ....................................................................................... 10

17   U.S. Copyright Office, Circular 52: Copyright Registration of Choreography
         and Pantomime ..................................................................................................... 1
18
     U.S. Copyright Office, Compendium of U.S. Copyright Office Practices
19       805.5(B)(3) (3d ed. 2021) .................................................................................. 11

20   2 Patry on Copyright § 4:22 ......................................................................... 12, 13

## RULES

21

     Fed. R. Civ. P. 56 .................................................................................................. 4

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- iii -                                    CASE NO. 2:22-CV-04735-PSG-E
MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR FULL OR PARTIAL SUMMARY
JUDGMENT

1
**MEMORANDUM OF POINTS AND AUTHORITIES**

2
**I.    INTRODUCTION**

3
This lawsuit is and always has been a frivolous and unprovoked effort to bully

4
a rising competitor.  Tracy Anderson, a self-styled "pioneer" of the dance-fitness

5
industry that long predated her, sued Megan Roup, a popular fitness entrepreneur and

6
former employee, for allegedly using exercise sequences that Anderson asserts she

7
developed (the "TA Method") and other supposed "confidential information" to build

8
Roup's own fitness business, The Sculpt Society, LLC ("TSS").  But Anderson's

9
claims are barred (1) by the Copyright Act and binding Ninth Circuit precedent

10
because no one can copyright exercise routines; and (2) because Roup never used

11
any "confidential information" in building her business, among other reasons.

12
**First**, Tracy Anderson Mind and Body, LLC's ("TAMB") copyright claim is

13
absolutely foreclosed by the Ninth Circuit's opinion in *Bikram's Yoga College of*

14
*India, L.P. v. Evolation Yoga, LLC*, 803 F.3d 1032 (9th Cir. 2015) ("*Bikram*"), which

15
holds that functional exercise sequences—even if aesthetically pleasing or

16
incorporating choreographic elements—are unprotectable ideas or processes under

17
17 U.S.C. § 102(b) and non-copyrightable.  Thus, all movements, routines, and

18
sequences within Plaintiffs' DVDs are not protectable by copyright and TAMB

19
cannot prove its claim, which is based solely on such movements.  Indeed, the

20
Copyright Office has stated that "[a] series of aerobic exercises [or a] complicated

21
routine consisting of classical ballet positions or other types of dance movements

22
*intended for use in a fitness class*" are examples of the types of works that are "*not*

23
copyrightable as choreography."  U.S. Copyright Office, Circular 52: Copyright

24
Registration of Choreography and Pantomime ("Circular 52") at 4, available at

25
https://www.copyright.gov/circs/circ52.pdf (emphases added).  Moreover, TAMB

26
lacks ownership of the copyrights it seeks to enforce because, as it concedes, there

27
are no written assignments from the alleged transferors to TAMB.

28

**Second**, T.A. Studio New York LLC ("TANY") cannot prove its breach of contract claim for the alleged disclosure of confidential information because, among other things, (i) Roup did not use any of TANY's supposedly confidential information after her employment ended, (ii) TANY concedes it has no evidence to the contrary ("I have no idea what she took or what she didn't take," UF 46), and (ii) the supposedly "confidential" information at issue was fully disclosed to the public in any event. Moreover, TANY's effort to wield the confidentiality provision in such oppressively broad ways violates California Business and Professions Code section 16600 as an invalid restriction on trade, including because TANY bases its claim on the unsupported assumption that Roup is using confidential information that is not even visible in her videos, asserting that █████████████████████████████ ████████████████████████████ UF 53; "I believe it's what you ***can't see*** in the video that is confidential to [TANY]," UF50 (emphasis added); and asserting that what's confidential (about publicly disclosed exercises) is "[t]he ***reason*** why Megan is moving the way that she's moving" and the "***ideas*** behind her movements," UF 50 (emphases added). Section 16600 invalidates TANY's effort to enforce its overbroad confidentiality provision in such a vague, oppressive, and anti-competitive manner.

The evidence—including numerous fatal admissions by TAMB and TANY (together "Plaintiffs" or "Anderson") both before and during this litigation—confirms that there are no genuine issues of material fact and that Plaintiffs cannot prove their claims. The Court should grant Defendants' Motion and enter summary judgment on their behalf.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Anderson created the so-called "TA Method," which she describes as a "revolutionary choreography protocol made up of custom and specific movements, sequences, and routines that uniquely combines choreography, fitness, and cardiovascular movement to help people create balance in their bodies so they can

create balance in their lives." UF 1. TAMB alleges it is the owner of various registered copyrights in the "TA Works," which are nineteen "DVDs created by and featuring Anderson, that express, relate to, or are based on the TA Method." UF 2.

Roup worked part time for TANY from 2011 to February 2, 2017. FAC ¶ 3. As part of her employment, Roup signed a contract (the "Trainer Agreement"[1]) which purports to restrict Roup's ability to "use or disclose any [of TANY's] confidential or proprietary trade secrets" including "training materials or methods" and "workouts, movements, exercise routines, exercise formulas, nutrition advice, content, sequences, prescriptions, dances, muscular structure work and equipment . . . unless such Confidential Information has been previously disclosed to the public generally . . . ." UF 44. After quitting TANY, Roup developed and launched TSS, which currently offers on-demand exercise videos and in-person classes. FAC ¶¶ 5-6, 34.

The FAC's two remaining claims are for copyright infringement and breach of the Trainer Agreement.[2] As to copyright, Anderson alleges that Defendants' videos infringe TAMB's copyrights by copying the "choreography movements, sequences, and routines." *Id.* ¶ 51. As to breach, the FAC alleges that Roup used allegedly "Confidential Information" under the Trainer Agreement to develop and launch TSS, including "nonpublic transcriptions of choreography routines" (*id.* ¶ 31), and identifying four of Defendants' videos that supposedly use Plaintiffs' "Confidential Information," *e.g.*, "'24Min Full Body 12 w/ Chair/Stool,' published in or around Spring 2021." *Id.* ¶ 37. TANY also alleges that Roup used and disclosed unspecified "Confidential Information" about TANY's "business operations, customers, program structure, customer intake methods, and employees." *Id.* ¶ 38.

---

[1] The FAC relies on the agreement dated February 28, 2011, but a later version, dated June 11, 2011, expressly supersedes the February 2011 agreement. UF 43.

[2] The Court dismissed Plaintiffs' Lanham Act and California unfair competition claims with prejudice. Dkt. No. 31.

## III.  LEGAL STANDARD

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Where the nonmoving party will have the burden of proof at trial, the movant can satisfy its initial burden by demonstrating that there is an absence of evidence to support the non-moving party's case. *Id.* at 325.  The nonmoving party must then go beyond the pleadings and identify specific facts through admissible evidence that show a genuine issue for trial. *Id.*; Fed. R. Civ. P. 56(c).

A genuine issue of material fact must be more than a scintilla of evidence, or evidence that is merely colorable or not significantly probative. *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000).  A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968).  An issue is "genuine" only if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* "[M]ere disagreement or the bald assertion that a genuine issue of material fact exists" does not preclude summary judgment. *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989).

## IV.  ARGUMENT

### A.    TAMB Cannot Prove Its Copyright Claim.

#### 1.    Anderson's Exercises Are Noncopyrightable.

TAMB cannot prove its copyright claim because the functional exercise movements on which the claim is based are not copyrightable, full stop.  Indeed, TAMB does not allege that Defendants copied the actual video footage contained on

CASE NO. 2:22-CV-04735-PSG-E
MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR FULL OR PARTIAL SUMMARY JUDGMENT

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

Anderson's DVDs; rather, TAMB alleges Defendants copied the "choreography *movements, sequences, and routines*" shown thereon. FAC ¶ 51 (emphasis added); UFs 3, 4. However, controlling Ninth Circuit precedent confirms that the Copyright Act does not protect exercise routines like those in the TA Method, even if Anderson calls them choreography or aesthetically pleasing and fixes them on a DVD. *Bikram*, 803 F.3d at 1036 (rejecting "Choudhury's argument that the [yoga] Sequence is entitled to copyright protection as a choreographic work").

To prevail on a claim for copyright infringement, a plaintiff must prove: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Fundamental to copyright law is the idea/expression dichotomy, codified in Section 102(b) of the Copyright Act—*i.e.*, that copyright protection does not extend to "any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102(b). This idea/expression dichotomy means that "every idea, theory, and fact in a copyrighted work becomes instantly available for public exploitation at the moment of publication." *Bikram*, 803 F.3d at 1037 (quoting *Golan v. Holder*, 565 U.S. 302, 328 (2012)).

A. *Bikram* forecloses Anderson's copyright claim in its entirety. There, yoga pioneer Bikram Choudhury and his company (together, "Choudhury") sued a yoga studio and its two owners (who had taken Choudhury's training course) for allegedly infringing his copyright in a book depicting a compilation of exercises called the "Sequence"—a series of 26 yoga poses and two breathing exercises. 803 F.3d at 1035-36. The Ninth Circuit affirmed the district court's grant of summary judgment against Choudhury, holding that the Sequence is unprotectable because, under Section 102(b) of the Copyright Act, it is "an idea, process, or system designed to improve health" that "primarily reflects function, not expression." *Id*. at 1036, 1040.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

5

CASE NO. 2:22-CV-04735-PSG-E
MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR FULL OR PARTIAL SUMMARY
JUDGMENT

The Court held that Choudhury was improperly attempting to secure copyright protection for a "healing art: a system designed to yield physical benefits and a sense of well-being." *Id*. at 1039. It distinguished between Choudhury's book describing the Sequence, which *was* protectable expression, and the Sequence itself, which was not. *Id*. at 1037-38. That the Sequence reflected Choudhury's "aesthetic preferences" and was "graceful" and "beautiful" did not help Choudhury's claim. *Id*. at 1040 ("[T]he beauty of the process does not permit one who describes it to gain, through copyright, the monopolistic power to exclude all others from practicing it. This is true even where, as here, the process was conceived with at least some aesthetic considerations in mind."). The same is true here. Even if Anderson holds copyrights for her DVDs, such protection does not extend to the noncopyrightable exercise movements and methods depicted therein—and she cannot prevent anyone, whether Roup or any other fitness trainer, from performing exercise movements that Anderson may have used in her DVDs.[3]

The similarities between *Bikram* and this case are striking. Like Anderson, Choudhury developed his method "after many years of research and verification." *Compare Bikram*, 803 F.3d at 1038, *with* UFs 5, 6. Like Anderson, Choudhury called his Sequence a "method." *Compare Bikram*, 803 F.3d at 1035, 1038 *with* UF 7. Like Anderson, in an attempt to claim copyright protection, Choudhury highlighted the aesthetic and choreographic aspects of his Sequence. *Compare Bikram*, 803 F.3d at

---

[3] Because the routines in TAMB's DVDs are non-copyrightable, the question of their originality need not be reached to grant this motion. But they are not original in any event, and the Court need only look to other dance-cardio and aerobics classes that predated Anderson's DVDs to see that there is nothing original about the aerobic exercises depicted therein:

- Jane Fonda's Workout Challenge, https://www.youtube.com/watch?v=fwQ1PrED9IE, including at 8:20 and 42:38 (arms) and 1:14:50 (glutes);
- Jacki Sorensen's Aerobic Dancing, https://www.youtube.com/watch?v=V9atzhzIXqc, including first 17 seconds and at 30:35 (dance-cardio, heel kicks);
- Judi Sheppard Missett - Jazzercise, https://www.youtube.com/watch?v=LD1xSc7oRRk, including at 5:04 (glutes).

1036, *with* UF 8.  Like Anderson, the Copyright Office did not issue to Choudhury a copyright registration for a choreographic work.  *Compare Bikram*, 803 F.3d at 1043 n.11, *with* UFs 30, 31. And like Choudhury, Anderson attempts to protect the unprotectable—functional exercises that are designed to improve physical and mental well being.

    B. TAMB has repeatedly admitted the functional, physical purpose of her exercises and method, thereby dooming its claim.  For example, Maria Kelling, TAMB's head of training, testified that TAMB operates in the "wellness" industry, which includes "fitness" and "mental *health*, emotional *health*, internal *health*, physical *health*."  UF 9 (emphases added).

    Anderson has also repeatedly conceded the health-centered purposes of her fitness method, including on her website and social media (all emphases added):

- "*Fitness* pioneer Tracy Anderson's revolutionary method *can give anyone—regardless of their genetic shape— strong, lean muscles and create balance where there is imbalance in their body*."  UF 10.

- "Tracy has helped countless celebrities *transform their bodies*."  *Id.*

- "she created *custom workouts* and diets … she had figured out *how to harness and deliver the elusive dancer's body*."  *Id.*

- The TA Method is "[a] researched and results-proven *fitness methodology*."  UF 11.

- The TA Method is "a revolutionary *fitness program* designed for *strategic muscle design*."  UF 12.[4]

    Anderson has also repeatedly admitted that the TA Works at issue here are fitness DVDs meant to help achieve weight loss and muscle toning, as advertised on the product pages for the TA Works on Anderson's website (all emphases added):

- ➢ **Metamorphosis Series DVDs**: "There are four different incarnations of Metamorphosis by Tracy, all dedicated to a different body type

---

[4] https://tracyanderson.com/studio/the-way/, last accessed on April 19, 2024.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

7

CASE NO. 2:22-CV-04735-PSG-E
MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR FULL OR PARTIAL SUMMARY
JUDGMENT

(Glutecentric, Hipcentric, Abcentric, Omnicentric). *Each version of this 90-day program includes four discs of muscular structure work* (nine *workouts* in total, to transition through every 10 days) that's *designed to target problem areas and address the imbalances of each specific body shape*. In addition, there's a cardio component, a dynamic eating plan, and *a measuring tape and chart to record your progress*.[5] Tracy asks that you to spend an hour a day, six days per week, *exercising*. Each *workout* includes 30 minutes of muscular structure work, and 30 minutes of cardio." UF 13.

➢ **Glutecentric DVD**: "If you have a shapeless behind and it is your main area of concern, then the Glutecentric *workouts* would help you create the butt you want. Whether it is too flat or needs a lift, this program is geared to tone down any back fat, get rid of cellulite to gain a distinction between your lifted butt and thighs." UF 15.

➢ **Abcentric DVD**: "Abcentric *workouts* are targeted to achieve a flat stomach with *workouts* concentrating on the lower stomach and back area." UF 16.

➢ **Hipcentric DVD**: "the *workouts* chosen for this program are aimed to pull in the hips, lifting your butt and getting rid of cellulite." UF 17.

➢ **Omnicentric DVD**: "the *workouts* Tracy designed for the Omnicentric body are perfect – a full body-skin-tuck. Anything that is droopy or loose about your body will be awakened, firmed and lifted." UF 18.

➢ **Mat Workout DVD**: "Throughout the hour, you will *activate and engage all of your accessory muscles, pull in your larger muscles, and transform your body*." UF 19.

➢ **Perfect Design Series Set (I-III)**: "This three-disc/video set—which includes three 55 minute *workouts* at the beginner, intermediate, and advanced levels—is *designed to create balance and strength in the body*. Each *workout* includes a warmup, along with targeted sequences for the arms, legs, abs, thighs, and butt." UF 20.

➢ **Precision Toning**: "This DVD program *focuses on empowering the smaller accessory muscles as they strengthen and support the larger ones*

---

[5] Ms. Anderson admitted that the measuring tape is "[f]or the purposes of tracking physical progress over the course of the Glutecentric program." UF 14.

*throughout the body* while you learn the basics of the Tracy Anderson Method. *Designed to tone, strengthen and engage every muscle, this is a workout for all skill levels*." UF 21.

Even when Anderson references "dance" as the topic of a DVD, it is still within the exercise context:

> **Unleash Your Inner Pop Star**: "This 50-minute *dance cardio* DVD . . . will *further strengthen your mind and body connection and torch calories*." UF 22. The DVD cover markets the contents: "New Patterns To Target Weight Loss / Connect to Your Body / Learn to Dance While You Workout!" UF 23.

Anderson has admitted that *all* of her DVDs are an embodiment of the TA Method. UF 24.[6] In other words, all of the TA Works are fitness DVDs and therefore the movements therein fundamentally lack protection under the Copyright Act. *Bikram*, 803 F.3d at 1038 ("exercises, while undoubtedly the product of much time and effort, are, at bottom, simply a process for achieving increased consciousness. Such processes, even if original, cannot be protected by copyright") (quoting *Palmer v. Braun*, 287 F.3d 1325 (11th Cir. 2002)).

Even Anderson's FAC repeatedly concedes the health-based purposes of the DVDs and TA Method (all emphases added):

o The TA Method "combines choreography, *fitness, and cardiovascular movement to help people create balance in their bodies so they can create balance in their lives*." UF 25.

o TAMB "offers *choreography-based fitness and mat movement classes*." *Id.*

o "Anderson began developing the TA Method in the late 1990s *to achieve for herself the elusive 'dancer's body,' which emphasizes a long and lean frame*." *Id.*

o Anderson "adapted the TA Method *so that it was effective in conferring*

---

[6] The other DVDs at issue are described on Anderson's website, and similarly describe health-based workouts focused on weight loss and toning. https://tracyanderson.com/product-category/digital-dashboard/dvds/, last accessed on April 19, 2024.

Manatt, Phelps &
Phillips, LLP
Attorneys at Law
Los Angeles

*physical and mental benefits to anybody* and creating balance where imbalance existed in their bodies." *Id*.; 26.

The videos cited in the FAC as alleged examples of copyrighted and infringing works also plainly show that TAMB's copyright claim is based on Anderson's and Roup's instruction of functional exercises, including dance-cardio, sculpting, and weights-based movements. UF 27.[7] All of these admissions and the plain nature of the exercises depicted in TAMB's and TSS's videos (*see, e.g.*, Not. of Lodging, Exhs. 21-25) doom the copyright claim, and Anderson can point to no other original protectable elements that Roup copied.[8] *See* Registration of Claims to Copyright, 77 Fed. Reg. 37607 (June 22, 2012) ("Exercise is not a category of authorship in section 102 and thus a compilation of exercises would not be copyrightable subject matter.").

## 2.    Anderson's Functional Exercise Movements Are Not Protectable Choreography.

A.    Anderson's references to "choreography" change none of this.  This is the lesson of *Bikram*, and why Anderson's claim was doomed to fail from the moment she filed this ill-conceived lawsuit.  As the Ninth Circuit held, one cannot "obtain monopoly rights over [] functional physical sequences by describing them in a tangible medium of expression and labeling them choreographic works." *Bikram*, 803 F.3d at 1044.  Yet this is precisely what Anderson tries here.  Rejecting Choudhury's argument that his Sequence was protectable choreography, the Ninth

---

[7] Notably, by asserting that TSS is a *direct* competitor and describing TSS as a "Sculpt and Dance Cardio workout" and an "athletic approach to dance-based fitness," FAC ¶ 35, TAMB only confirms this copyright claim is fundamentally about exercise movements. *See also* FAC ¶ 34 ("TSS, like Plaintiffs, offers a choreography-based fitness and mat movement program.").  In other words, if TAMB was actually engaged in creating protectable performance art, its "direct" competitor would not be a fitness business like TSS.

[8] TAMB concedes that its copyright claim is not based on anything except the alleged copying of movements depicted in the TA Works and the "ideas that those movements represent." UFs 3, 4.  Illustrating the lack of protectable elements in the TA Works, TAMB has also failed to identify in discovery any specific portions of TSS's videos that allegedly infringe the TA Works, notwithstanding that Defendants' interrogatories expressly sought such information.  UF 28.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

CASE NO. 2:22-CV-04735-PSG-E

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR FULL OR PARTIAL SUMMARY JUDGMENT

1    Circuit held that "[e]ven if the Sequence could fit within some colloquial definitions
2    of dance or choreography, it remains a process ineligible for copyright protection."
3    *Id*.

4    In *Bikram*, the Court looked to the U.S. Copyright Office's Compendium of
5    U.S. Copyright Office Practices (the "Compendium"), which states that "dance
6    movements" must be more than "mere exercises."[9]  *Id*. at 1043.  Ultimately, though,
7    the Court found that determining whether Choudhury's Sequence fit within a
8    definition of choreography was unnecessary to its holding because "all categories of
9    works eligible for copyright protection, including choreographic works, are subject
10   to the critical requirements and limitations of Section 102."  *Id*.  Thus, it held, "[t]he
11   Sequence is not copyrightable as a choreographic work for the same reason that it is
12   not copyrightable as a compilation: it is an idea, process, or system to which
13   copyright protection may '[i]n no case' extend."  *Id*. at 1044 (quoting 17 U.S.C. §
14   102(b)).  The Court continued, "'successions of bodily movement' often serve basic
15   functional purposes," but "***[s]uch movements do not become copyrightable as***
16   ***'choreographic works' when they are part and parcel of a process***."  *Id*. (citation
17   omitted) (emphasis added).

18   Just like Choudhury's method, the TA *Method* is also a "process for improving
19   well-being in [its] clients," UF 29, and thus a "system, *method* of operation, concept,
20   [and] principle" under Section 102(b) (emphasis added).    Indeed, Anderson
21   advertises the TA Method as a "results proven *fitness methodology*."    UF 11.

22

23   _____

24   [9] The current version of the Compendium confirms the same.  "Non-expressive
     physical movements, such as 'ordinary motor activities' or 'functional physical
25   movements' — in and of themselves — do not represent the type of authorship that
     Congress intended to protect as choreography."  U.S. Copyright Office,
26   Compendium of U.S. Copyright Office Practices § 805.5(B)(3) (3d ed. 2021)
     (internal citations omitted), available at
27   https://www.copyright.gov/comp3/chap800/ch800-performing-arts.pdf; *Hanagami
     v. Epic Games, Inc.*, 85 F.4th 931, 940 n.10 (9th Cir. 2023) ("we defer to the
28   Copyright Office when its interpretation [] has the 'power to persuade'") (citation
     omitted).

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

11                      CASE NO. 2:22-CV-04735-PSG-E
MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR FULL OR PARTIAL SUMMARY
JUDGMENT

(emphasis added).  And TAMB also asserts that what Roup allegedly copied in her videos are Anderson's "ideas"—which are unprotectable by copyright.  UF 4; *Feist*, 499 U.S. at 344-45 ("The most fundamental axiom of copyright law is that no author may copyright his ideas or the facts he narrates.") (internal quotation marks and citation omitted).  Therefore, no matter how creative she may believe herself to be, Anderson's own admissions of the functional nature of her movements coupled with *Bikram*'s strict holding absolutely bars her claim.

In fact, Anderson's ownership claim here is far more expansive than what the Ninth Circuit rejected in *Bikram*.  There, Choudhury claimed copyright protection for a sequence of 26 poses and two breathing exercises.  *Bikram*, 803 F.3d at 1035.  Here, Anderson purports to claim ownership of over *200,000 movements* that she asserts are part of the TA Method and that she has used in various workout routines and DVDs.  *See* FAC ¶¶ 25, 49.  But *Bikram* forecloses Plaintiffs' attempt to monopolize the market for dance-based fitness or any other type of exercise via copyright.

In an uncannily prophetic rejection of the type of copyright protection Anderson attempts here, the Copyright Office has concluded that "[e]xamples of compilations that are <u>not</u> copyrightable as choreography or pantomimes include: *A series of aerobic exercises*; A yoga sequence; [and] A *complicated routine* consisting of classical ballet positions *or other types of dance movements intended for use in a fitness class*."  Circular 52 at 4 (emphases added).  Thus, no matter how allegedly creative, complicated, or dance-based, once a routine is intended for use in a fitness class or to confer health benefits—like the TA Works here—it cannot obtain copyright protection.  *See also* 2 Patry on Copyright § 4:22 ("athletic routines possess a characteristic that is fatal to a claim of choreography: a functional purpose").

B.  The TA Works are not choreographic works in any event.  TAMB admits it has no copyright registration that contains the term "choreography" or

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

"choreographic work" (UF 30), as its registrations are only for the "Motion Picture" DVD (UF 31). Neither Anderson nor Kelling has ever trained any professional dancers to "perform" the TA Method (UF 32), and members of the public do not come to watch TAMB classes for purposes of observing others engage in movement (UF 33). Neither Anderson nor Kelling has ever publicly described the TA Method as a "performance art." UF 34. Anderson also admits that she has no dance degrees, no dance certifications, and no fine arts degrees, and that "she abandoned her dreams of becoming a professional dancer." UF 35. Thus, works depicting Anderson's method cannot qualify as "choreographic works." *See Hanagami*, 85 F.4th at 940 (citing *Bikram* with approval, adopting the Compendium's definitions of "choreography" and "dance," and noting distinction between "copyrightable choreography and uncopyrightable dance"); 2 Patry on Copyright § 4:22 ("Choreography is concerned with the aesthetic expression of ideas, whether of a storytelling or abstract nature. Exercises are functional: If you do these routines, purported health, emotional, or mental benefits will result. Some routines may be more pleasing to look at than others, but that is unrelated to their purpose.").

### 3. TAMB Is Not the Copyright Owner Because No Valid Written Assignments Exist.

Even if TAMB's claim were not completely barred by *Bikram* and Section 102(b), it must fail because TAMB is not now, and has never been, the copyright owner of the TA Works because no written agreements exist by which it purportedly obtained its ownership.

Only copyright owners may maintain a claim for copyright infringement. 17 U.S.C. 501(b). Here, TAMB alleges it is the copyright owner for the nineteen TA Works. UF 2. The copyright registrations for those works state that TAMB acquired its ownership rights "by written agreement" from nonparties Bubi and Babe Exercise, Inc. ("B&B") (12 DVDs) and Tracy Anderson Private Training, LLC ("TAPT") (7 DVDs). UFs 36, 37. However, TAMB now admits that ***no written agreements exist***

1  with either of the supposed transferors.  UF 38.[10]  Because "a transfer of copyright is

2  simply 'not valid' without a writing," TAMB never obtained copyright ownership of

3  the TA Works.  *Konigsberg v. Rice*, 16 F.3d 355 (9th Cir. 1994) (quoting 17 U.S.C.

4  § 204(a)).

5        TAMB's failure to comply with Section 204(a)'s writing requirement is

6  incurable because "the writing in question must, at the very least, be executed more

7  or less contemporaneously with the agreement and must be a product of the parties'

8  negotiations."  *Rice*, 16 F.3d at 357.  In *Rice*, the Ninth Circuit held that a later

9  writing, made "three and a half years" after an alleged oral agreement "and 6 months

10  into a contentious" lawsuit "was not substantially contemporaneous with the oral

11  agreement," and could not satisfy Section 204(a)'s strict requirements.  *Id.*  TAMB's

12  copyright claim therefore fails for this reason as well.

13        **B.    TANY Cannot Prove Its Breach of Contract Claim.**

14        TANY's contract claim fares no better.  It fails because (i) Roup did not have

15  in her possession and never used any "Confidential Information" after quitting

16  TANY or in creating TSS—and TANY concedes it has no evidence to the contrary,

17  and (ii) TANY's attempt to enforce the Confidential Information provision in such

18  an oppressively vague and anti-competitive manner—based on unseen "ideas" in

19  TSS videos and unsupported assumptions of what's in Roup's head—renders it

20  unenforceable as an impermissible restriction on trade under Business and

21  Professions Code sections 16600 *et seq.*

22        **1.    Roup Never Used any "Confidential Information" in Breach
              of the Trainer Agreement.**

23

24        To prevail on a claim for breach of contract, a plaintiff must prove: "(1) the

25  existence of the contract, (2) plaintiff's performance or excuse for nonperformance,

26

27  [10] Defendants sought all such agreements relating to the copyright ownership and
    transfer of the TA Works in discovery.  UF 39.  However, TAMB produced no such
    documents in discovery and Plaintiffs' counsel confirmed they searched for but did

28  not locate any.  UFs 40, 41.  ▇▇▇▇▇▇▇▇▇▇▇▇▇.  UF 42.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

14                                    CASE NO. 2:22-CV-04735-PSG-E
MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR FULL OR PARTIAL SUMMARY
JUDGMENT

1    (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Lewis v.*
2    *YouTube, LLC*, 244 Cal. App. 4th 118, 124 (2015) (citations omitted). TANY's
3    contract claim is based on the "Confidential Information" restrictive covenant of the
4    Trainer Agreement, which states:

> During your employment and following any termination thereof . . . you
> shall not use or disclose any confidential or proprietary trade secrets,
> customer and clients lists, drawings, designs, marketing plans, sales
> scripts, training materials or methods (including, but not limited to,
> workouts, movements, exercise routines, exercise formulas, nutrition
> advice, content, sequences, prescriptions, dances, muscular structure
> work and equipment), CRM methods, management organization
> information…, operating policies and manuals, business plans,
> financial records, or other financial, commercial, business or technical
> information (x) that relate to the Company or any of its affiliates; or (y)
> that the Company or any of its affiliates has received that belongs to
> clients or others who do business with the Company or any of its
> affiliates (collectively "Confidential Information") to any third Person
> [], *unless such Confidential Information has been previously disclosed
> to the public generally or is in the public domain…*

16    UF 44.

17        TANY's claim fails for the simple reason that Roup never used any so-called
18    "Confidential Information" after she left TANY, nor did she use any to create,
19    develop, or operate TSS. UF 45. TANY admits that it has no evidence that Roup
20    took or used any Confidential Information after she left TANY. UF 46. Thus, TANY
21    cannot prove that Roup breached the Trainer Agreement—an essential element of its
22    contract claim.

23        Moreover, TANY's grievance is its belief that Roup is performing exercise
24    movements similar to those depicted in Anderson's classes. UF 47. But this is no
25    basis for a breach claim because, as TANY concedes, all of the routines that make
26    up the so-called TA Method have been publicly performed. UF 48. Similarly, any
27    class write-ups that TANY provides to its trainers reflect exercise movements that
28    are performed in public classes. UF 49. Both the plain terms of the Trainer

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

15                                CASE NO. 2:22-CV-04735-PSG-E
MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR FULL OR PARTIAL SUMMARY
JUDGMENT

Agreement—which exempts information "disclosed to the public"—and black letter law confirm this cannot form a basis for breach of the "Confidential Information" provision. *Vacco Indus., Inc. v. Van Den Berg*, 5 Cal. App. 4th 34, 50 (1992) ("[i]f a so-called trade secret is fully disclosed by the products produced by use of the secret then the right to protection is lost").

Thus, not only has Roup not used any Confidential Information (to the extent any actually exists), TANY also cannot prove its claim because it is based on information that has been publicly disclosed.

### 2.    TANY's Attempt to Enforce the "Confidential Information" Restrictive Covenant Against Roup Violates Business and Professions Code Section 16600.

The true nature of TANY's contract claim—attempting to prevent Roup from performing unprotectable exercises that have long been in the public domain—shows that Anderson is attempting to crush a competitive threat by wielding the Trainer Agreement in oppressive ways that violate Business and Professions Code Section 16600.  Section 16600 provides that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."  Courts "have consistently affirmed that section 16600 evinces a settled legislative policy in favor of open competition and employee mobility." *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 946 (2008); *Golden v. California Emergency Physicians Med. Grp.*, 896 F.3d 1018, 1024 (9th Cir. 2018) (holding that "a contractual provision imposes a restraint of a substantial character if it significantly or materially impedes a person's lawful profession, trade, or business").  Indeed, the Ninth Circuit has warned that "it will be the rare contractual restraint whose effect is so insubstantial that it escapes scrutiny under section 16600." *Id.*

Here, TANY is wielding the confidentiality provision as a de facto non-compete that would prevent Roup from engaging in basic operations in the dance-

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

cardio fitness industry, rendering it an impermissible restraint on trade.[11] This is illustrated by the provision's extraordinary breadth, which makes no distinction between confidential information and trade secrets (and identifies none), and purports to cover nearly everything involving the dance-cardio and aerobics industry, including "training materials or methods (including, but not limited to, workouts, movements, exercise routines, exercise formulas, nutrition advice, content, sequences, prescriptions, dances, muscular structure work and equipment), [] management organization information [], operating policies and manuals, [and] business plans." UF 44.

TANY's interpretation of the provision is even worse. When asked to identify what confidential information Roup used in performing TSS's exercise routines, TANY's witness Maria Kelling conceded that she could not see any of TANY's confidential information but stated, "I believe it's what you *can't see* in the video that is confidential to [TANY]," explaining that it's "[t]he *reason* why Megan is moving the way that she's moving" and the "*ideas* behind her movements," UF 50 (emphases added).

Kelling conceded that she has no way of knowing what Roup is thinking during such videos—and so could not actually know whether Roup is thinking about any information that TANY believes is confidential. UF 51. Indeed, TANY only *assumes* that Roup has used confidential information because Roup is performing exercises that it believes look similar to Anderson's publicly performed exercises, (UF 52), and asserts that ██████████████████████████████████ ██████████████ (UF 53). But Roup has none of TANY's confidential information in her thoughts when she is instructing TSS classes. UF 54.

Asserting a breach for use of confidential information that *can't be seen* and pertains to *thoughts* that TANY assumes are in Roup's head is the epitome of a

---

[11] Roup is therefore not only entitled to summary judgment on TANY's contract claim but also on her Fifth Affirmative Defense. Dkt. No. 25. at 14.

Section 16600 violation.  In *Action Learning Sys., Inc. v. Crowe*, the court noted that a similar a confidentiality provision was so broad that, "after leaving ALS, [former employees] would essentially need a lobotomy in order to continue working in the educational field without violating these restrictions."  2014 WL 12564011, at *12 (C.D. Cal. Aug. 11, 2014); *see also Dowell v. Biosense Webster, Inc.*, 179 Cal. App. 4th 564, 578 (2009) ("Given such an inclusive and broad list of confidential information, it seems nearly impossible that employees . . . would not have possession of such information.").  This is the same unlawful effort that TANY attempts against Roup, and equally violates Section 16600.

Likewise, TANY bases its contract claim on the grievance that Roup supposedly used "the same cueing, write-ups, and video technique to communicate routines to her trainers—virtually mirroring Plaintiffs' business model."  UF 55.  But the use of cueing (*i.e.*, vocally instructing the participants) and exercise write-ups (*i.e.*, basic outlines for exercise routines) is both routine and fundamental to the fitness industry.  UF 56 ("business practices that are common in the fitness industry—including creating write-ups"; "most fitness instructors" verbally cue).  And by "video technique," ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████.  UF 57.  Anderson cannot prevent Roup from engaging in these core industry functions via a contractual restraint on trade.  *See Brown v. TGS Mgmt. Co., LLC*, 57 Cal. App. 5th 303, 319 (2020), review denied (Feb. 24, 2021) ("these overly restrictive provisions operate as a de facto noncompete provision . . . [and] are void *ab initio* and unenforceable").

Finally, when asked if TANY has any trade secrets, Anderson could not actually identify one, asserting only unprotectable generalities.  Specifically, Anderson said that TANY's trade secrets are,

████████████████████████████████████████████ ████████████████████████████████████████████

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR FULL OR PARTIAL SUMMARY JUDGMENT

1
2
3

UF 58.  Anderson then said that TANY's protected "processes" include,

5
6
7
8
9

10    UF 59.

11          This is nothing more than nonsensically vague hand waving about topics that

12    stretch across the entirety of TANY's business and only confirm that TANY has not

13    articulated anything remotely protectable as confidential or trade secret.[12]  *Mattel,*

14    *Inc. v. MGA Entm't Inc.*, 782 F. Supp. 2d 911, 968 (C.D. Cal. 2011) (granting

15    summary judgment on several "vague and self-congratulatory descriptions of . . .

16    categories of trade secret information," including "forecasting process[es]," "demand

17    planning process [consisting of undefined ']inputs and outputs,'" and undefined

18    "customiz[ations]" to a commercially-available product).  Indeed, when asked to

19    explain how Roup is supposed to know which movements she can perform and which

20    she cannot, Anderson responded "I do believe that Megan knows which [movements]

21    matter and what doesn't."  UF 60.  None of this specifically defines any confidential

22    information or trade secrets and TANY admits it never provided its trainers with any

23    key, legend, or index to help them understand which materials were confidential.  UF

24    61.    The contractual provision therefore could not put Roup on notice of any

25    _____

26    [12] California law defines a trade secret as "information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (1) Derives independent economic value, actual or potential, from *not being generally*

27    *known to the public* or to other persons who can obtain economic value from its disclosure or use; and (2) Is the subject of efforts that are reasonable under the

28    circumstances to maintain its secrecy."  Civ. Code § 3426.1(d)(emphasis added).

legitimate restrictions. *Imax Corp. v. Cinema Technologies, Inc.*, 152 F.3d 1161, 1164-65 (9th Cir. 1998) (a restrictive covenant must "describe the subject matter of the trade secret with *sufficient particularity* to separate it from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade") (emphasis in original).

If all of this were not bad enough, both the February 2017 exit letter and March 2018 cease and desist letter that TANY sent Roup misleadingly and selectively quoted the Trainer Agreement to make it seem like Roup could not perform even basic workout movements—omitting the language that such movements lose their confidential, trade secret status when publicly disclosed. UF 62. And when Roup responded to the March 2018 letter by noting that she has remained in compliance with her contract and asked TANY for specifics of any alleged violations, TANY never responded. UFs 63, 64. Indeed, this has been precisely TANY's anticompetitive playbook of sending baseless cease and desist letters to former TANY trainers who are competing in the fitness industry. UF 65.

Anderson's unlawful and anti-competitive campaign against Roup could not be plainer. The Trainer Agreement's confidentiality provision is a facial and as-applied violation of Section 16600, and TANY's contract claim fails.

## V.    **CONCLUSION**

For all the foregoing reasons, Defendants' Motion should be granted and summary judgment entered on their behalf.

Manatt, Phelps &
Phillips, LLP
Attorneys at Law
Los Angeles

20                          CASE NO. 2:22-CV-04735-PSG-E
MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR FULL OR PARTIAL SUMMARY
JUDGMENT

Dated: April 19, 2024

MANATT, PHELPS & PHILLIPS, LLP

By: /s/ *Nathaniel L. Bach*
Christopher Chatham
Nathaniel L. Bach
Sarah E. Moses
Andrea Del-Carmen Gonzalez

*Attorneys for Defendants*
MEGAN ROUP and THE SCULPT
SOCIETY, LLC

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR FULL OR PARTIAL SUMMARY
JUDGMENT

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Defendants Megan Roup and The Sculpt Society, LLC, certifies that this brief contains 6,445 words, which complies with the word limit of L.R. 11-6.1.

Dated: April 19, 2024

MANATT, PHELPS & PHILLIPS, LLP


By: /s/ *Nathaniel L. Bach*
Christopher Chatham
Nathaniel L. Bach
Sarah E. Moses
Andrea Del-Carmen Gonzalez

*Attorneys for Defendants*
MEGAN ROUP and THE SCULPT SOCIETY, LLC