MANATT, PHELPS & PHILLIPS, LLP
CHRISTOPHER CHATHAM (CA Bar #240972)
 CChatham@manatt.com
NATHANIEL L. BACH (CA Bar #246518)
 NBach@manatt.com
SARAH E. MOSES (CA Bar #291491)
 SMoses@manatt.com
ANDREA D. GONZALEZ (CA Bar #336134)
 ADGonzalez@manatt.com
2049 Century Park East
Suite 1700
Los Angeles, California  90067
Telephone:  (310) 312-4000
Facsimile:   (310) 312-4224

Attorneys for Defendants
MEGAN ROUP and THE SCULPT SOCIETY, LLC

REDACTED
VERSION OF
DOCUMENT
PROPOSED TO
BE FILED
UNDER SEAL

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACY ANDERSON MIND AND BODY, LLC, a Delaware limited liability company; and T.A. STUDIO NEW YORK LLC, a California limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>MEGAN ROUP, an individual; and THE SCULPT SOCIETY, LLC, a California limited liability company,<br><br>Defendants. | Case No. 2:22-cv-04735-PSG-E<br><br>Hon. Philip S. Gutierrez<br><br>**COMPENDIUM OF EXHIBITS IN SUPPORT IN SUPPORT OF DEFENDANTS' MOTION FOR FULL OR PARTIAL SUMMARY JUDGMENT**<br><br>[*Filed Concurrently with Notice of Motion and Motion; Memorandum of Points and Authorities; Statement of Uncontroverted Facts; Request for Judicial Notice; Notice of Lodging;[Proposed] Judgment or Order*]<br><br>Hearing Date:    June 7, 2024<br>Hearing Time:    1:30 p.m.<br>Courtroom:        6A |

Defendants Megan Roup ("Roup") and The Sculpt Society, LLC ("TSS") (collectively, "Defendants") submit this Compendium of Evidence in support of their Motion for Full or Partial Summary Judgment.

| DESCRIPTION | EXHIBIT |
|---|---|
| **Declaration of Nathaniel L. Bach** | |
| First Amended Complaint ("FAC") in this action | 1 |
| Excerpts of the February 16, 2024 deposition transcript of Tracy Anderson (in her individual and representative capacities for Plaintiffs TAMB and TANY) | 2 |
| Excerpts of the February 15, 2024 deposition transcript of Maria Kelling (in her representative capacities for Plaintiffs TAMB and TANY) | 3 |
| Exhibit 89 to the February 16, 2024 deposition of Tracy Anderson (webpage titled "Fitness Pioneer" from Anderson's website) | 4 |
| Exhibit 82 to the February 16, 2024 deposition of Tracy Anderson (webpage titled "Metamorphosis 90 Day – Glutecentric") | 5 |
| Exhibit 83 to the February 16, 2024 deposition of Tracy Anderson (webpage titled "Understanding Your Body Type") | 6 |
| Exhibit 84 to the February 16, 2024 deposition of Tracy Anderson (webpage titled "Mat Workout") | 7 |
| Exhibit 85 to the February 16, 2024 deposition of Tracy Anderson  (webpage titled "Perfect Design Series Set (I-III Sequences)) | 8 |
| Exhibit 87 to the February 16, 2024 deposition of Tracy Anderson (webpage titled "Precision Toning) | 9 |
| Exhibit 86 to the February 16, 2024 deposition of Tracy Anderson (webpage titled "Unleash Your Inner Pop Star") | 10 |

| Screenshot of the Instagram biography page for the account @tracyandersonmethod | 11 |
| TAMB's responses to Roup's Requests for Admission Nos. 3, 5, 13 and 14 with verification | 12 |
| TAMB's Second Supplemental Response to Interrogatory No. 1 (no verification was provided) | 13 |
| Plaintiffs' response to Defendants' Request for Production No. 7 | 14 |
| TANY's response to Roup's Requests for Admission No. 1 with verification | 15 |
| TANY's response to Roup's Interrogatory No. 23 with verification | 16 |
| 17 copyright registration certificates for the DVDs of TA Works listed in Attachment A of the FAC (produced by Plaintiffs) | 17 |
| 2 copyright registration certificates for the DVDs of TA Works listed in Attachment A of the FAC (not produced by Plaintiffs) | 18 |
| Summary Chart of U.S. Copyright Registration Certificates of TA Works (pursuant to Federal Rule of Evidence 1006) | 19 |
| Exhibit 55 to the February 8, 2024 deposition of Eugene Eskin (an organization chart) | 20 |
| Exhibit 80 to the February 16, 2024 deposition of Tracy Anderson (a TSS exercise video titled "30 Min Sculpt 07") (Lodged) | 21 |
| Exhibit 61 placeholder to the February 15, 2024 of Maria Kelling—a TSS exercise video titled "Five-Minute Dancing Arms 7 with Arielle Charnas" (Lodged) | 22 |
| Exhibit 62 to the February 15, 2024 of Maria Kelling—a TSS exercise video titled "Ten Minute Dancing Arms" (Lodged) | 23 |

| Representative examples of portions of the TA Works, i.e., the 19 DVDs named in Exhibit A of the FAC (Lodged) | 24 |
| --- | --- |
| TSS videos cited by Plaintiffs in the FAC (Lodged) | 25 |
| **Declaration of Megan Roup** | |
| TANY Trainer Agreement dated February 2011 | A |
| TANY Trainer Agreement dated June 11, 2011 | B |
| TANY "exit letter" to Roup following end of employment | C |
| TANY Cease and Desist letter dated March 13, 2018 | D |
| Roup's response letter to TANY's Cease and Desist letter, dated March 29, 2018 | E |

Dated: April 19, 2024                    MANATT, PHELPS & PHILLIPS, LLP


By: /s/ *Nathaniel L. Bach*
_____
Christopher Chatham
Nathaniel L. Bach
Sarah E. Moses
Andrea Del-Carmen Gonzalez

*Attorneys for Defendants*
MEGAN ROUP and THE SCULPT
SOCIETY, LLC

Manatt, Phelps &
Phillips, LLP
Attorneys at Law
Los Angeles

5                    CASE NO. 2:22-CV-04735-PSG-E
COMPENDIUM OF EVIDENCE IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

MANATT, PHELPS & PHILLIPS, LLP
CHRISTOPHER CHATHAM (CA Bar #240972)
  CChatham@manatt.com
NATHANIEL L. BACH (CA Bar #246518)
  NBach@manatt.com
SARAH E. MOSES (CA Bar #291491)
  SMoses@manatt.com
ANDREA D. GONZALEZ (CA Bar #336134)
  ADGonzalez@manatt.com
2049 Century Park East
Suite 1700
Los Angeles, California  90067
Telephone:   (310) 312-4000
Facsimile:    (310) 312-4224

Attorneys for Defendants
MEGAN ROUP and THE SCULPT SOCIETY, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACY ANDERSON MIND AND BODY, LLC, a Delaware limited liability company; and T.A. STUDIO NEW YORK LLC, a California limited liability company,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>MEGAN ROUP, an individual; and THE SCULPT SOCIETY, LLC, a California limited liability company,<br><br>　　　　　Defendants. | Case No. 2:22-cv-04735-PSG-E<br><br>Hon. Philip S. Gutierrez<br><br>**DECLARATION OF NATHANIEL L. BACH IN SUPPORT OF DEFENDANTS' MOTION FOR FULL OR PARTIAL SUMMARY JUDGMENT**<br><br>Hearing Date:　June 7, 2024<br>Hearing Time:　1:30 p.m.<br>Courtroom:　　6A |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

CASE NO. 2:22-CV-04735-PSG-E
DECLARATION OF NATHANIEL L. BACH IN SUPPORT OF DEFENDANTS' MOTION FOR FULL OR PARTIAL SUMMARY JUDGMENT

## <u>DECLARATION OF NATHANIEL L. BACH</u>

I, Nathaniel L. Bach, hereby declare as follows:

1.      I am an attorney duly licensed to practice law in the State of California and before this Court.  I am a partner at the law firm of Manatt, Phelps & Phillips, LLP, counsel of record in this action for Defendants Megan Roup ("Roup") and The Sculpt Society, LLC ("TSS") (together "Defendants").  I submit this Declaration in support of Defendants' Motion for Full or Partial Summary Judgment.  The following facts are within my personal knowledge, and if called upon as a witness, I could and would testify competently thereto.

2.      Attached hereto as **<u>Exhibit 1</u>** is a true and correct copy of the First Amended Complaint ("FAC") in this action.

3.      Attached hereto as **<u>Exhibit 2</u>** is a true and correct copy of excerpts of the transcript of the deposition of Tracy Anderson (in her individual and representative capacities for Plaintiffs TAMB and TANY), which I took in this action on February 16, 2024.  (While the exhibit transcript reflects a "Highly Confidential – AEO" designation, Plaintiffs subsequently redesignated the transcript non-confidential except for certain portions designated as confidential or highly confidential.)

4.      Attached hereto as **<u>Exhibit 3</u>** is a true and correct copy of excerpts of the transcript of the deposition of Maria Kelling (in her representative capacities for Plaintiffs TAMB and TANY), which I took in this action on February 15, 2024.

5.      Attached hereto as **<u>Exhibit 4</u>** is a true and correct copy of Exhibit 89 to the February 16, 2024 deposition of Tracy Anderson – webpage titled "Fitness Pioneer" from Anderson's website (excluding the last, mostly blank ten pages).

6.      Attached hereto as **<u>Exhibit 5</u>** is a true and correct copy of Exhibit 82 to the February 16, 2024 deposition of Tracy Anderson – webpage titled "Metamorphosis 90 Day – Glutecentric" from Anderson's website.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

2    CASE NO. 2:22-CV-04735-PSG-E
DECLARATION OF NATHANIEL L. BACH IN SUPPORT OF DEFENDANTS' MOTION FOR FULL OR PARTIAL SUMMARY JUDGMENT

7. Attached hereto as **Exhibit 6** is a true and correct copy of Exhibit 83 to the February 16, 2024 deposition of Tracy Anderson – webpage titled "Understanding Your Body Type" from Anderson's website.

8. Attached hereto as **Exhibit 7** is a true and correct copy of Exhibit 84 to the February 16, 2024 deposition of Tracy Anderson – webpage titled "Mat Workout" from Anderson's website.

9. Attached hereto as **Exhibit 8** is a true and correct copy of Exhibit 85 to the February 16, 2024 deposition of Tracy Anderson – webpage titled "Perfect Design Series Set (I-III Sequences)" from Anderson's website.

10. Attached hereto as **Exhibit 9** is a true and correct copy of Exhibit 87 to the February 16, 2024 deposition of Tracy Anderson – webpage titled "Precision Toning" from Anderson's website.

11. Attached hereto as **Exhibit 10** is a true and correct copy of Exhibit 86 to the February 16, 2024 deposition of Tracy Anderson – webpage titled "Unleash Your Inner Pop Star" from Anderson's website.

12. Attached hereto as **Exhibit 11** is a true and correct copy of a screenshot of the Instagram biography page for the account @tracyandersonmethod (https://www.instagram.com/tracyandersonmethod/?hl=en). This page was accessed by my law firm on April 3, 2024.

13. Attached hereto as **Exhibit 12** is a true and correct copy of TAMB's responses to Roup's Requests for Admission Nos. 3, 5, 13 and 14 with verification.

14. Attached hereto as **Exhibit 13** is a true and correct copy of TAMB's Second Supplemental Response to Interrogatory No. 1 (no verification was provided).

15. Attached hereto as **Exhibit 14** is a true and correct copy of Plaintiffs' response to Defendants' Request for Production No. 7.

16. Attached hereto as **Exhibit 15** is a true and correct copy of TANY's

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

3

CASE NO. 2:22-CV-04735-PSG-E
DECLARATION OF NATHANIEL L. BACH IN SUPPORT OF DEFENDANTS' MOTION FOR FULL OR
PARTIAL SUMMARY JUDGMENT

1    response to Roup's Requests for Admission No. 1 with verification.

2           17.    Attached hereto as **Exhibit 16** is a true and correct copy of TANY's

3    response to Roup's Interrogatory No. 23 with verification.

4           18.    Attached hereto as **Exhibit 17** are true and correct copies of 17

5    copyright registration certificates for the DVDs of TA Works listed in Attachment

6    A of the FAC that Plaintiffs produced in discovery.

7           19.    Attached hereto as **Exhibit 18** are true and correct copies of copyright

8    registration certificates for two of the DVDs of TA Works listed in Attachment A

9    of the FAC  (PA0001938799 and PA0001938802) that were accessed and

10   downloaded from the United States Copyright Office.  (Plaintiffs did not produce

11   these two registrations in discovery.)  Defendants' Request for Judicial Notice of

12   these exhibits has been concurrently filed.

13          20.    Attached hereto as **Exhibit 19** is a true and correct copy of a summary

14   chart of information prepared pursuant to Federal Rule of Evidence 1006 reflecting

15   information from the U.S. copyright registration certificates for the nineteen "TA

16   Works"—*i.e.*, the DVDs that are the subject of TAMB's copyright claim, as reflected

17   on Attachment A to the FAC.

18          21.    I am familiar with the contents of Plaintiffs' document production in this

19   action.   Despite Defendants seeking and Plaintiffs agreeing to produce them,

20   Defendants have not located in Plaintiffs' production any written agreement that

21   purports to transfer ownership of the copyrights in the TA Works to TAMB.

22          22.    Attached hereto as **Exhibit 20** is a true and correct copy of Exhibit 55

23   (an organization chart, Bates numbered PLTFS0003054) to the February 8, 2024

24   deposition of Eugene Eskin, Plaintiffs' CFO, which I took in this action.

25          23.    Attached hereto as **Exhibit 21** is a true and correct copy of Exhibit 80

26   to the February 16, 2024 deposition of Tracy Anderson—a TSS exercise video

27   titled "30 Min Sculpt 07."  This video exhibit has been concurrently lodged with a

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

DECLARATION OF NATHANIEL L. BACH IN SUPPORT OF DEFENDANTS' MOTION FOR FULL OR
PARTIAL SUMMARY JUDGMENT

separately filed Notice of Lodging.

24.    Attached hereto as **Exhibit 22** is a true and correct copy of Exhibit 61 to the February 15, 2024 deposition of Maria Kelling—a TSS exercise video titled "Five-Minute Dancing Arms 7 with Arielle Charnas."  This video exhibit has been concurrently lodged with a separately filed Notice of Lodging.

25.    Attached hereto as **Exhibit 23** is a true and correct copy of Exhibit 62 to the February 15, 2024 deposition of Maria Kelling—a TSS exercise video titled "Ten Minute Dancing Arms."  This video exhibit has been concurrently lodged with a separately filed Notice of Lodging.

26.    Attached hereto as **Exhibit 24** are true and correct copies of representative examples of portions of the TA Works (*i.e.*, the 19 DVDs named in Exhibit A of the FAC, excluding "Tracy Anderson Mat Workout for Beginners" that was not produced) as produced by Plaintiffs in discovery.  These videos have been concurrently lodged with a separately filed Notice of Lodging.

27.    Attached hereto as **Exhibit 25** are true and correct copies of the TSS videos cited by Plaintiffs in the FAC.  These videos have been concurrently lodged with a separately filed Notice of Lodging.

28.    On April 3, 2024, I met and conferred with Plaintiffs' counsel regarding Defendants' intention to file this Motion and its bases.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 18th day of April, 2024, at Los Angeles, California.


By: /s/ *Nathaniel L. Bach*
Nathaniel L. Bach

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

5                                                         CASE NO. 2:22-CV-04735-PSG-E
DECLARATION OF NATHANIEL L. BACH IN SUPPORT OF DEFENDANTS' MOTION FOR FULL OR PARTIAL SUMMARY JUDGMENT

# EXHIBIT 1

1  **DLA PIPER LLP**
   TAMANY VINSON BENTZ (SBN 258600)
2  *tamany.bentz@dlapiper.com*
   JASON T. LUEDDEKE (SBN 279242)
3  *jason.lueddeke@dlapiper.com*
   MICHAEL P. BROWN (SBN 328579)
4  *michael.p.brown@dlapiper.com*
   2000 Avenue of the Stars
5  Suite 400 North Tower
   Los Angeles, California 90067
6  Tel: 310.595.3000
   Fax: 310.595.3300
7
   Attorneys for Plaintiffs
8  TRACY ANDERSON MIND AND BODY, LLC and
   T.A. STUDIO NEW YORK LLC
9

10                  **UNITED STATES DISTRICT COURT**

11                  **CENTRAL DISTRICT OF CALIFORNIA**

12

13

| | |
|---|---|
| TRACY ANDERSON MIND AND BODY, LLC, a Delaware limited liability company; and T.A. STUDIO NEW YORK LLC, a California limited liability company, | Case No. 2:22-cv-04735-RSWL-E **FIRST AMENDED COMPLAINT** |
| Plaintiffs, | 1. **Federal Copyright Infringement, 17 U.S.C. §§ 106, 501** 2. **Violation of Lanham Act, 15 U.S.C. § 1125(a)** 3. **Breach of Contract** 4. **Violation of Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*** |
| v. | |
| MEGAN ROUP, an individual; and THE SCULPT SOCIETY, LLC, a California limited liability company, | |
| Defendants. | **DEMAND FOR JURY TRIAL** |

# FIRST AMENDED COMPLAINT

Plaintiffs Tracy Anderson Mind and Body, LLC ("TAMB") and T.A. Studio New York LLC ("TANY," and collectively, "Plaintiffs"), by and through their undersigned attorneys, bring this suit against Defendants Megan Roup ("Roup") and The Sculpt Society, LLC ("TSS") (collectively, "Defendants").  Plaintiffs allege:

## INTRODUCTION

1.      Tracy Anderson ("Anderson"), a pioneer of the choreography-based fitness movement, developed The Tracy Anderson Method ("TA Method") after decades of research, development, testing, and investment.  The TA Method is a revolutionary choreography protocol made up of custom and specific movements, sequences, and routines that uniquely combines choreography, fitness, and cardiovascular movement to help people create balance in their bodies so they can create balance in their lives.  Anderson's inventive and rigorous approach to, and brand of, choreography has cemented her as an international icon and authority in the industry for more than 20 years, revered by A-list celebrities, the media, and wellness enthusiasts alike.

2.      Anderson founded and is CEO of TAMB, which offers choreography-based fitness and mat movement classes at state-of-the-art studios around the world and in online classes, as well as lifestyle products related to wellness, nutrition, and apparel, among others.  TAMB is the owner of registered copyrights to various media, including DVDs created by and featuring Anderson, that express, relate to, or are based on the TA Method.  Anderson also owns TANY, a company under the TAMB umbrella that was founded to operate certain of her New York studios.

3.      TANY employed Roup as a trainer from 2011 until 2017.  Because it is necessary for Plaintiffs to disclose nonpublic information related to their business and the TA Method to trainers so that they can instruct the TA Method to clients, all trainers, including Roup, sign a Trainer Agreement.  The Trainer Agreement prohibits trainers, including Roup, from using or disclosing company "Confidential

FIRST AMENDED COMPLAINT

1  Information," which includes its nonpublic business and operational information,

2  training materials and manuals, and the transcribed methods taught to trainers,

3  including those comprising the TA Method's proprietary choreography movements,

4  sequences, and routines.  This obligation expressly survives a trainer's termination

5  of employment.  The Trainer Agreement Roup signed is dated February 28, 2011.

6       4.      During her six-plus year tenure at TANY, Roup learned, was exposed

7  to, and had access to significant Confidential Information, such as (i) training

8  materials, choreography transcriptions, and custom write-ups related to the

9  performance and teaching of the TA Method, including its specialized programs,

10  like those for pre- and postnatal customers, and those on apparatuses such as chairs

11  or stools; and (ii) business information, customer lists, and operating procedures,

12  such as specialized customer intake methods.  In short, Roup had access to all

13  material necessary to replicate the TA Method and related business, and she wasted

14  no time in doing so.

15       5.      Roup quit TANY in or around February 2017.  Just one month later in

16  March 2017, she founded TSS, which also offers choreography-based fitness and

17  mat movement classes and directly competes with Plaintiffs.  TSS began with Roup

18  teaching in-person classes, but as of late 2019, became primarily an online- and app-

19  based membership service, where paying customers access videos of Roup and TSS

20  employees performing routines that they can perform at home.  Just as Anderson

21  emphasizes her dance background as the foundation of her program, Defendants

22  also emphasize Roup's dance background as the foundation of their program, and

23  even brand it similarly to Anderson's.  For instance, Anderson branded her program

24  "The Tracy Anderson Method" or the "TA Method," and Defendants branded their

25  program as "The Sculpt Society Method" or "TSS Method."

26       6.      Since late 2019 through the present, Defendants have published over

27  400 videos on the TSS app and website behind a paywall, including as recently as

28  Spring 2022, which remain accessible to paying customers as of the date of this

-2-

FIRST AMENDED COMPLAINT

1    filing.  On information and belief, Plaintiffs allege that a significant number of the
2    videos infringe TAMB's copyrights in Anderson's DVDs, and a significant number
3    of the videos were created using Confidential Information Roup learned, accessed,
4    or was exposed to while employed at TANY in breach of the Trainer Agreement.
5    On information and belief, Plaintiffs allege that Defendants have also used, and still
6    use, Confidential Information related to Plaintiffs' business to found and facilitate
7    the continued operation and growth of their own business, and that Roup has
8    disclosed Confidential Information to third-parties, including employees, affiliates,
9    and/or customers of TSS in further breach of the Trainer Agreement.

10        7.    Defendants have since achieved a considerable social media presence
11   and customer base.  But despite Roup's six-plus year employment at TANY, part of
12   Anderson's companies that revolutionized choreography-based fitness, Defendants
13   have never credited Anderson or Plaintiffs for training, teaching, or developing
14   Roup, or for creating the choreography movements, sequences, and routines that
15   now comprise the TSS Method.  Defendants do not reference Roup's association
16   with Plaintiffs or Anderson on the TSS website, TSS promotional materials,
17   interviews, or appearances.  In fact, Defendants purposefully conceal it from the
18   public.  For instance, in recent interviews, Roup stated only that she "worked for a
19   local studio" and "taught for six and a half years" in New York before founding
20   TSS.  Her LinkedIn similarly omits her employment at TANY despite listing other
21   employments during the years she worked at TANY.

22        8.    Defendants have capitalized on the years of research, money, and sweat
23   equity Anderson and Plaintiffs put into developing the TA Method and the business
24   surrounding it to the detriment of Plaintiffs.  Defendants' false and/or misleading
25   public statements and advertising create the false impression that (i) Roup
26   developed the TSS Method over a period of multiple years, when she did not; (ii)
27   the TSS Method was created through years of science-based research, development,
28   data collection and analysis, and trial and error, when it was not; and (iii) the TSS

-3-
FIRST AMENDED COMPLAINT

1  Method is significantly different from the TA Method, when it is not.

2      9.      Defendants' conduct, and representations in advertising and promotion,

3  have created a likelihood of consumer confusion as to the nature, characteristics, and

4  qualities of the TSS Method, which is further compounded by Defendants' naming

5  convention that looks like and imitates Plaintiffs' naming convention.  For example,

6  reviews of the TSS app alone are replete with instances of consumer confusion and

7  misattribution that Defendants have caused, including statements such as, "[Roup] is

8  brilliant – don't know how she does it – her reps and routines are genius," "[Roup's]

9  movements are unique and better than I could have ever thought of," and "I am a

10  fellow instructor and her movements/choreography blow me away.  How does she

11  come up with such fun and creative workouts?"

12      10.     Defendants' misconduct constitutes federal copyright infringement

13  under 17 U.S.C. §§ 106 and 501; violation of the Lanham Act, 15 U.S.C. § 1125(a);

14  breach of contract; and violation of Cal. Bus. & Prof. Code § 17200.  Defendants

15  have caused significant harm to Plaintiffs, which seek, among other remedies,

16  damages and injunctive relief to enjoin Defendants' false and/or misleading

17  descriptions or representations of fact in commerce, use of Plaintiffs' Confidential

18  Information, and infringement of TAMB's copyrights.

19                          **JURISDICTION AND VENUE**

20      11.     This Court has jurisdiction over the subject matter of this action

21  pursuant to 28 U.S.C. § 1331.  The Court has supplemental jurisdiction over the

22  remaining state law claims under 28 U.S.C. § 1367(a) because those claims are so

23  related to Plaintiffs' federal claims that they form part of the same case or

24  controversy and derive from a common nucleus of operative facts.

25      12.     This Court has personal jurisdiction over Roup because she is a resident

26  of Los Angeles, California.  This Court has personal jurisdiction over TSS because

27  it conducts business in Los Angeles, California.

28      13.     Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because

-4-

FIRST AMENDED COMPLAINT

1   Roup resides in this District and TSS conducts business in this District.  Venue is

2   also proper in this District under 28 U.S.C. § 1391(b)(2) because acts, liabilities, and

3   events giving rise to this action occurred within this District.

**THE PARTIES**

5        14.     Plaintiff TAMB is a Delaware limited liability company with its

6   principal place of business in the County of New York, New York.

7        15.     Plaintiff TANY is a California limited liability company with its

8   principal place of business in the County of New York, New York.

9        16.     Defendant Roup is an individual residing in the County of Los Angeles,

10  California.

11       17.     Defendant TSS is a California limited liability company with its

12  principal place of business in the County of Los Angeles, California.

**FACTUAL BACKGROUND**

14  **Anderson Creates the TA Method After Years of Research and Development**

15       18.     Trained as a dancer, Anderson began developing the TA Method in the

16  late 1990s to achieve for herself the elusive "dancer's body," which emphasizes a

17  long and lean frame.

18       19.     After years of research, testing, and refinement, Anderson created the

19  TA Method, a choreography protocol made up of custom and specific movements,

20  sequences, and routines that uniquely combines choreography, fitness, and

21  cardiovascular movement to help people create balance in their bodies so they can

22  improve their lives by further connecting to their primal right to move through

23  specifically tailored choreography that took a significant amount of study to

24  develop.  Rooted in research, dance and the elements of choreography, the TA

25  Method is designed to not only be effective and fun, but also aesthetically engaging

26  and appealing, and capable of being conducted as a performance art.  The

27  movements are inventive, nuanced, and complex; are arranged in a designated and

28  continuous choreographed sequence like ballet or contemporary dance; are

-5-
FIRST AMENDED COMPLAINT

1  deliberately paced; and are set to music, which Anderson purposefully selects to fit a
2  given choreography.  In short, each of Anderson's routines constitutes a related
3  series of movements organized into an integrated, coherent, and expressive whole.

4      20.    After developing the TA Method for herself, Anderson sought to apply
5  it to others, regardless of genetic background or body type.  To do so, in 2003, she
6  conducted a study in which she spent five years working with 150 women, all with
7  different genetic backgrounds and body types, using the TA Method.  Anderson
8  took measurements of the women every ten days, which amounted to over 27,000
9  measurements over the course of the study and customized the choreographed
10 movements and sequences to each woman based on her progress.  Anderson tracked
11 and studied the results, and following the study, adapted the TA Method so that it
12 was effective in conferring physical and mental benefits to anybody and creating
13 balance where imbalance existed in their bodies.

14     21.    Thereafter, in 2003, Anderson released her first DVD called *The Tracy*
15 *Anderson Method Dance Cardio Workout*, in which Anderson performed the TA
16 Method for customers to follow along with at home.  Following the success of the
17 DVD, Anderson opened her first studio in Los Angeles in 2005, where she offered
18 in-person classes.

19     22.    In or about 2008, Anderson founded TANY to operate certain studios
20 in New York and employ trainers in those studios.  In or about 2010, Anderson
21 founded a related entity, TAMB, to operate the entirety of Anderson's business.
22 Anderson is CEO of TAMB, which has since become the umbrella company under
23 which others, like TANY, operate.

24     23.    Over the past 15-plus years since then, the TA Method has become one
25 of the premier choreography-based fitness programs in the world.  Today, TAMB
26 offers members choreography-based fitness and mat movement classes at state-of-
27 the-art studios around the world as well as online classes.  TAMB has also expanded
28 into developing lifestyle products related to wellness, nutrition, and apparel, among

-6-

FIRST AMENDED COMPLAINT

others.  Due to the popularity of the TA Method and TAMB's expansion into various wellness spheres, Anderson has amassed a substantial social media following as an influencer and entrepreneur.  Thus, the TA Method has become synonymous with Anderson.

24.     Anderson's content output is significant as well.  In addition to *The Tracy Anderson Method Dance Cardio Workout* DVD, Anderson has released DVDs titled *The Metamorphosis*, *The Pregnancy Project*, *The Post Pregnancy 2*, *The Perfect Design*, *Unleash Your Inner Popstar*, and *Total Teen*.  Anderson has authored two books, *Tracy Anderson's 30-Day Method* and *Total Teen*.  She also regularly records and releases new videos for subscribing TAMB members to stream online.

25.     Anderson has invested significant funds and countless hours into developing, refining, and inventing choreography movements, sequences, and routines, and continues to do so.  In total, Anderson has created over 200,000 movements as part of the TA Method, and spends at least 30 hours each week refining the movements and sequencing them, and developing new ones.

26.     While it is possible for an individual to watch one of Anderson's online videos or attend one of her classes and replicate certain of the movements, or even sequences, in isolation, doing so is insufficient to achieve the benefits intended by Anderson because without knowing the proprietary reasoning and methodology behind the movements and how and why to sequence them in a certain way, the full benefit of the TA Method cannot be realized.

**Roup Learns Confidential Information as an Employee of TANY**

27.     Due to the expansion and popularity of the TA Method, Plaintiffs employ trainers who are taught the TA Method so they can themselves instruct the TA Method to customers.  TANY employed Roup as a trainer from 2011 until her departure in 2017.

28.     As set forth above, Anderson worked relentlessly for years to develop

FIRST AMENDED COMPLAINT

1  the TA Method and materials that express or relate to it.  Because it is necessary for

2  Plaintiffs to disclose nonpublic information related to the companies and the TA

3  Method to trainers so that they can instruct the TA Method to customers, Plaintiffs

4  condition their employment of all trainers, including Roup, on their agreement not to

5  use or disclose such information.

6       29.    Therefore, upon being hired, Roup entered into the Trainer Agreement

7  with TANY on February 28, 2011 (it was revised in a non-substantive way on June

8  11, 2011).  The Trainer Agreement prohibits Roup from using or disclosing the

9  company's "Confidential Information":

10         During your employment and following any termination
    thereof, . . . you shall not use or disclose any confidential or
11         proprietary . . . training materials or methods (including, but
    not limited to, workouts, movements, exercise routines,
12         exercise formulas, nutrition advice, content, sequences,
    prescriptions, dances, muscular structure work and
13         equipment), . . . operating policies or manuals, business
    plans, financial records, or other financial, commercial,
14         business or technical information . . . that relate to the
    Company or any of its affiliates . . . (collectively,
15         "Confidential Information") to any third Person . . . .

16       The obligation not to use or disclose the Confidential Information explicitly

17  survives the termination of a trainer's employment.

18       30.    As part of their training, and by virtue of being employees of TANY,

19  all trainers, including Roup, learn, are exposed to, and have access to the

20  Confidential Information.  During her six-plus year tenure at TANY, Roup:

21       (i) received nonpublic training materials and manuals, choreography

22  transcriptions, and custom write-ups related to the performance and teaching of the

23  TA Method;

24       (ii) had access to outlines of movement sequences and instructions related to

25  performing each of the TA Method programs in circulation during that period,

26  including specialized programs, like those for pre- and postnatal customers, and

27  those on apparatuses such as chairs or stools;

28       (iii) learned how to structure, organize, and compile Anderson's

-8-
FIRST AMENDED COMPLAINT

1 | choreographed routines—including Anderson's unique warmup routine, how and
2 | when to use light weights, the number of repetitions for specific movements, and
3 | how to progress from one sequence to the next—and why Anderson's
4 | choreographed routines were structured, organized, and compiled the way they
5 | were;

6 |     (iv) was informed of Anderson's research and findings, and the reasoning
7 | behind her sequencing decisions; and

8 |     (v) learned Plaintiffs' business practices and protocols, such as Anderson's
9 | one-on-one customer consultation and intake methodology, and the process by
10 | which those customers are evaluated for imbalances.

11 |     31.    For instance, Roup received or had access to TANY's nonpublic
12 | transcriptions of choreography routines. The transcriptions lay out, from start to
13 | finish, entire choreography routines, including detailed descriptions of how to
14 | position the body, how to perform them, and the order and sequence in which to
15 | perform them (i.e., "Face NW side, W elbow down, resting on knees with shins and
16 | feet up. [E]xtend NW leg to high straight back parallel arabesque, return to starting
17 | position, lift W leg to side fire hydrant and return to start."). The purpose of the
18 | transcriptions is not only to document choreography routines, but to teach trainers
19 | and save time by serving as reference materials. TANY invested time, labor, and
20 | money into developing and drafting each transcription, each of which has
21 | independent value to the company.

22 |     32.    On information and belief, Plaintiffs allege that Roup, while still
23 | employed by TANY, began using the Confidential Information, and access thereto,
24 | to plan or create the choreography routines, business plan and structure, and
25 | promotional materials that would form the foundation of and help launch TSS.
26 | TSS' website currently states, "[R]oup *spent years* teaching fitness and *developing*
27 | *The Sculpt Society method* before launching in 2017" (emphasis added). Roup was
28 | employed by TANY for the six-plus years immediately preceding TSS' launch in

FIRST AMENDED COMPLAINT

1   2017.  Moreover, Roup took photographs with Plaintiffs' celebrity clientele with

2   TANY's upscale facilities in the background before quitting TANY and then later

3   used those photographs on the TSS website to give her fledgling company an air of

4   legitimacy and establishment at Plaintiffs' expense.

5         33.     In or about early 2017, Roup informed TANY that she was terminating

6   her employment.  On or about February 2, 2017, TANY provided Roup with a

7   termination letter, which stated in relevant part:

8       *Preservation of Confidential Information for the benefit of*
    *the Company*.  You have agreed not to use or disclose any

9       Confidential Information of the Company.  This includes (a)
    the Tracy Anderson methods, including the exercise routines,

10      formulas, sequences, and movements and CRM Methods, (b)
    nutritional recipes, components and materials, and (c)

11      customer lists and private information concerning customers
    provided to the Company.

12      . . .

13      The Company's willingness to train and employ you on the
    terms of your employment, and the willingness to share its

14      Confidential Information with you during the tenure of your
    employment, was expressly conditioned upon your

15      agreement to the terms of your Trainer Agreement.

16               **Roup Launches the TSS Method, Which Improperly Uses**

17                            **Confidential Information**

18        34.     In or about March 2017—just one month after resigning from TANY—

19  Roup founded Defendant TSS.  TSS, like Plaintiffs, offers a choreography-based

20  fitness and mat movement program.  TSS began with Roup teaching in-person

21  classes before launching its app in or around late 2019.  With the launch of the app,

22  TSS began publishing videos on its app, which also were and are available on its

23  website.  TSS is a competitor of Plaintiffs.

24        35.     Today, TSS offers an online- and app-based subscription program in

25  which paying customers have access to videos of Roup and other TSS employees

26  performing choreography routines that can be performed at home.  TSS describes

27  itself as "the #1 Sculpt and Dance Cardio workout designed to empower women

28  through movement" and "an athletic approach to dance-based fitness."

36. Like Anderson, Roup attributes her approach to her background and training in dance. And, like Anderson named her program "The Tracy Anderson Method" or "TA Method," Roup named her program "The Sculpt Society Method" or "TSS Method." Roup even structured the TSS Method like the TA Method. For instance, certain of the TSS Method programs are structured on 28-day or 30-day calendars, like Anderson's 30-Day Method. The TSS Method also offers pre- and postnatal programs, and programs that focus on certain body parts, such as the hips or glutes, just like the TA Method does.

37. Since around late 2019 through the present, including as recently as Spring 2022, Defendants have regularly and repeatedly published videos behind a paywall on the TSS app and website. TSS boasts that a subscription grants a customer access to over 400 of its videos. On information and belief, Plaintiffs allege that Defendants used Confidential Information Roup learned, accessed, or was exposed to while employed at TANY to create a substantial number of TSS' 400 videos in breach of the Trainer Agreement. The videos remain accessible to paying members on TSS' app and website as of the date of this filing. Examples of such videos include:

- "24Min Full Body 12 w/ Chair/Stool," published in or around Spring 2021;
- "20Min Standing Legs + Butt 13 w/ Chair or Stool," published in or around early 2020;
- "10Min Quickie Dancing Arms 02, published in or around early 2020;
- "5Min Dancing Arms 07 w/ Arielle Charnas," published in or around early 2020.

38. On information and belief, Plaintiffs allege that Defendants have also used Confidential Information for their own benefit related to business operations, customers, program structure, customer intake methods, and employees at various times, including as recently as Spring 2022. On information and belief, Plaintiffs allege that Defendants have disclosed Confidential Information to third parties,

-11-

FIRST AMENDED COMPLAINT

1  including employees, affiliates, and/or customers of TSS at various times, including

2  as recently as Spring 2022.

3       39.    Defendants' use of the Confidential Information has benefitted

4  Defendants by, among other things, saving them time, resources, money, and effort

5  in planning, teaching, and testing or recording choreography movements, sequences,

6  and routines, and in forming and operating TSS.  By using the Confidential

7  Information, Defendants were able to hit the ground running upon Roup's departure

8  from TANY.  Defendants' ongoing use of the Confidential Information facilitates

9  the continued operation, growth, and success of their business.

10       40.    Roup took the Confidential Information, founded TSS with it, based

11  TSS on it, and based the TSS Method on it.  In doing so, Defendants have

12  capitalized on years of Anderson's research, development, and investment to enrich

13  themselves at the expense and to the detriment of Plaintiffs.  As a result of

14  Defendants' misconduct, they have achieved a substantial number of customers

15  (including celebrities), a significant social media following (i.e., 300,000 followers

16  of @meganroup and 150,000 followers of @thesculptsociety on Instagram), and

17  press coverage.  Defendants' misconduct has also diverted customers, business, and

18  employees from Plaintiffs to Defendants.

19  **Defendants Mislead Consumers Regarding the Development of the TSS Method**

20       41.    Despite Roup's six-plus year employment at TANY, part of

21  Anderson's companies that revolutionized choreography-based fitness, Defendants

22  have never credited Anderson or TANY for training, teaching, or developing Roup,

23  or for creating the choreography movements, sequences, and routines that now

24  comprise the TSS Method.  In fact, Defendants do not reference Roup's training

25  from or association with TANY or Anderson on the TSS website, TSS promotional

26  materials, interviews, or appearances.

27       42.    To the contrary, Defendants purposefully conceal Roup's training from

28  and association with TANY from the public so that Roup can claim that (i) she

**FIRST AMENDED COMPLAINT**

developed the TSS Method over a period of multiple years; (ii) the TSS Method was created through years of science-based research, development, data collection and analysis, and trial and error; and (iii) the TSS Method is significantly different from the TA Method.

43. For instance, under the "About Megan" section of the TSS website, it states that "I knew that there was something missing from the boutique fitness community, so I combined my passion for dance and love for fitness to create The Sculpt Society. I spent years teaching fitness and developing The Sculpt Society method before launching in 2017." On Roup's LinkedIn page, Roup omits her employment at TANY despite listing other employments during the period she worked there. Notably, the period between 2014 and 2017—when she worked at TANY—is empty. During an interview on a December 9, 2021 podcast called *ILYSM*, when asked about how she started TSS, Roup stated only that she "taught for six and a half years and then launched [TSS] in New York in 2017." During an interview on a March 29, 2022 podcast called *Lipstick on the Rim*, Roup stated only that she "worked for a local studio" in New York City for six years before founding TSS.

44. Users' reviews of the TSS app on the Google Play and Apple App Store platforms demonstrate consumer confusion and misattribution that Defendants' conduct has caused:

- "I am a fellow instructor and her movements/choreography blow me away. How does she come up with such fun and creative workouts?"
- "I really love the workouts that Megan has created"
- "Love the workouts so much, Megan makes the sequences so fun and creative"
- "Megan's movements are unique and better than I could have ever thought of"
- "Her workouts never get old, and your body never gets bored of them

-13-
FIRST AMENDED COMPLAINT

1   because she constantly switches it up every time adding in new movements"

2   • "Megan is brilliant – don't know how she does it – her reps and routines are

3   genius"

4   • "What you get is a completely thought out, well planned, and perfectly

5   executed workout Every. Single. Time."

6   **Defendants Infringe TAMB's Copyrights**

7   45.   TAMB is the owner of registered copyrights in various media, each of

8   which expresses, relates to, or is based on the TA Method.  Specifically, TAMB

9   owns copyright registrations in multiple DVDs (collectively referred to as the "TA

10   Works").  These copyright registrations are included in **Attachment A**.

11   46.   The TA Works depict Anderson performing a compilation of

12   choreographed movements and sequences she designed and curated.  Her

13   performances are done in a studio and set to music she specifically selected.

14   47.   Since around late 2019 through the present, including as recently as

15   Spring 2022, Defendants have regularly, repeatedly, and intentionally published

16   videos on the TSS app and website behind a paywall that infringe TAMB's

17   copyrights in the TA Works as listed in Attachment A.  Defendants' videos infringe

18   TAMB's copyrights by copying the choreography movements, sequences, and

19   routines depicted in the TA Works; organizational structure and format of the TA

20   Works; and aesthetic elements depicted in the TA Works.

21   48.   Examples of Defendants' copyright infringements of the TA Works

22   include:

23   • Defendants' videos titled "30Min Sculpt 07,"[1] "30Min Sculpt 08,"[2]

24

25

26

---

27   [1] Published behind a paywall online at https://app.thesculptsociety.com/30min-sculpt-2/videos/30min-sculpt-07 and on the TSS app.

28   [2] Published behind a paywall online at https://app.thesculptsociety.com/30min-sculpt-2/videos/30min-sculpt-08 and on the TSS app.

-14-

FIRST AMENDED COMPLAINT

1 "30Min Sculpt 09,"[3] and "30Min Sculpt w/ Matt 22,"[4] in which Roup and or TSS

2 employees perform choreography movements, sequences, and routines that are

3 substantially similar to those depicted in the Day 21-30 portion of the DVD titled

4 "Metamorphosis: Glutecentric" (Registration No. PA0001938799).

5 •      Defendants' video titled "30Min Full Body 16 (no cardio) w/ Katy,"[5] in

6 which Katy Schuele (a former employee of TAMB) performs choreography

7 movements, sequences, and routines that are substantially similar to those depicted

8 in the Day 1-10 portion of the DVD titled "Metamorphosis: Hipcentric"

9 (Registration No. PA 1-929-100).

10 •      Defendants' video titled "30Min Sculpt (no cardio) w/ Katy,"[6] in which

11 Schuele performs choreography movements, sequences, and routines that are

12 substantially similar to those depicted in the Day 1-10 portion of the DVD titled

13 "Metamorphosis: Hipcentric" (Registration No. PA 1-929-100).

14      49.     Because Defendants' videos are published behind a paywall on the TSS

15 app and website, they cannot be downloaded onto a computer.  As a result, Plaintiffs

16 are unable to review and compare every one of Defendants' videos to the TA

17 Works.  Therefore, the full extent of Defendants' infringement and improper use of

18 Confidential Information cannot be assessed until Defendants produce the videos to

19 Plaintiffs in discovery.  At the pleading stage, Plaintiffs have conducted as extensive

20 of an analysis as they can, given the accessibility restrictions created by Defendants.

21 On information and belief, Plaintiffs allege that Defendants have published

22 hundreds of additional videos that include Roup or TSS employees performing

23 choreography movements, sequences, and routines that are substantially similar to

24

25 [3] Published behind a paywall online at https://app.thesculptsociety.com/30min-sculpt-2/videos/new-30min-sculpt-09 and on the TSS app.

26 [4] Published behind a paywall online at https://app.thesculptsociety.com/30min-sculpt-2/videos/matt-new-30min-sculpt and on the TSS app.

27 [5] Published behind a paywall online at https://app.thesculptsociety.com/30min-full-body/videos/katy-30min-full-body and on the TSS app.

28 [6] *Id.*

those depicted in the TA Works, and therefore constitute copyright infringements.

## FIRST CAUSE OF ACTION

### Federal Copyright Infringement, 17 U.S.C. §§ 106, 501

### (By TAMB Against All Defendants)

50. Plaintiffs incorporate the preceding allegations as though fully set forth herein.

51. Defendants have infringed TAMB's copyrights in the TA Works in violation of Sections 106 and 501 of the Copyright Act, 17 U.S.C. §§ 106 and 501, by publishing videos, including those set forth in Paragraph 49 herein, that copy the TA Works as listed in Attachment A. Specifically, Defendants' videos copy the choreography, movements, sequences, and routines from the TA Works.

52. Defendants' acts of infringement are willful, intentional, continuous, and purposeful, in disregard of and with indifference to TAMB's rights.

53. As a direct and proximate result of said infringement by Defendants, TAMB is entitled to damages in an amount to be proven at trial.

54. TAMB is also entitled to Defendants' profits attributable to the infringement, pursuant to 17 U.S.C. § 505 and otherwise according to law.

55. TAMB is entitled to injunctive relief and redress for Defendants' willful, intentional, continuous, and purposeful use and exploitation of the TA Works for their own financial benefit with full knowledge that such use constituted infringement of, and was in disregard of, TAMB's rights. Defendants' conduct is causing and, unless immediately enjoined, will continue to cause enormous and irreparable harm to TAMB.

56. As a direct and proximate result of the foregoing acts and conduct, TAMB has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. On information and belief, TAMB alleges that unless enjoined and restrained by this Court, Defendants will continue to infringe TAMB's rights in the TA Works. TAMB is

-16-

1  entitled to permanent injunctive relief to restrain and enjoin Defendants' continuing

2  infringing conduct.

### SECOND CAUSE OF ACTION

#### Violation of Lanham Act, 15 U.S.C. § 1125(a)

#### (By Plaintiffs Against All Defendants)

6      57.    Plaintiffs incorporate the preceding allegations as though fully set forth

7  herein.

8      58.    Defendants willfully and intentionally made, and continue to willfully

9  and intentionally make, false and/or misleading descriptions or representations of

10  fact in commercial advertising or promotion that misrepresent the nature,

11  characteristics, and qualities of Defendants' services, including but not limited to,

12  the following statements on TSS' website:  "I knew that there was something

13  missing from the boutique fitness community, so I combined my passion for dance

14  and love for fitness to create The Sculpt Society.  I spent years teaching fitness and

15  developing The Sculpt Society method before launching in 2017."

16      59.    Defendants' statements misrepresent the nature, characteristics, and

17  qualities of Defendants' services because they imply that (i) Roup developed the

18  TSS Method over a period of multiple years, when she did not; (ii) the TSS Method

19  was created through years of science-based research, development, data collection

20  and analysis, and trial and error, when it was not; and (iii) the TSS Method is

21  significantly different from the TA Method, when it is not.

22      60.    Defendants caused their statements to enter interstate commerce by,

23  among other things, publishing them on at least the TSS website or in promotional

24  interviews, which constitute commercial advertisement or promotion.

25      61.    Defendants' statements are material because they are likely to influence

26  the purchasing decision of a choreography-based fitness consumer who is deciding

27  between competing services.  Choreography-based fitness consumers have opted to

28  purchase TSS' services over Plaintiffs', and are likely to continue to do so, based on

-17-

1   TSS' false and/or misleading descriptions or representations of fact related to the
2   development of the TSS Method.

3       62.    Plaintiffs have been directly and proximately injured as a result of
4   Defendants' statements by a diversion of sales and customers from Plaintiffs to
5   Defendants and/or by a lessening of the goodwill associated with Plaintiffs and their
6   services.

7       63.    Plaintiffs are therefore entitled to (i) treble damages sustained by
8   Plaintiffs, including those resulting from lost profits from sales and customers
9   diverted to TSS, in an amount to be determined at trial, pursuant to 15 U.S.C. §
10  1117(a); (ii) injunctive relief enjoining Defendants from continuing to advertise,
11  promote, or publish false and/or misleading descriptions or representations of fact
12  related to the development of the TSS Method; and (iii) reasonable attorneys' fees
13  pursuant to 15 U.S.C. § 1117(a).

14  **THIRD CAUSE OF ACTION**
15  **Breach Of Contract**
16  **(By TANY Against Roup)**

17      64.    Plaintiffs incorporate the preceding allegations as though fully set forth
18  herein.

19      65.    TANY and Roup entered into the Trainer Agreement, which is a valid
20  contract.

21      66.    TANY performed all or substantially all of its obligations under the
22  Trainer Agreement.

23      67.    Under the Trainer Agreement, Roup was under a continuing and
24  recurring obligation to not use or disclose to third-parties the Confidential
25  Information (as defined therein) during and after the termination of her employment
26  at TANY.

27      68.    Roup breached, and continues to breach, the Trainer Agreement by
28  using and disclosing to third-parties the Confidential Information after the

1   termination of her employment at TANY.  On information and belief, Plaintiffs

2   allege that Roup used the Confidential Information in connection with developing

3   the TSS Method and with planning, recording, and publishing videos on the TSS

4   app and website on various dates during 2019 through the present, including as

5   recently as Spring 2022.  The videos remain accessible to paying members on TSS'

6   app and website behind a paywall as of the date of this filing.  On information and

7   belief, Plaintiffs allege that Roup has also used Confidential Information related to

8   customers, operations, program structure, customer intake methods, and employees

9   at various times, including as recently as Spring 2022.  On information and belief,

10  Plaintiffs allege that Roup has also disclosed the Confidential Information to third

11  parties, including employees, affiliates, and/or customers of TSS at various times,

12  including as recently as Spring 2022.

13      69.    As a direct and proximate result of Roup's breach of the Trainer

14  Agreement, TANY has suffered, and will continue to suffer, substantial monetary

15  damages in an amount to be determined at trial.

16                  **FOURTH CAUSE OF ACTION**

17              **Violations of California Unfair Competition Law,**

18              **Cal. Bus. & Prof. Code § 17200 *et seq.***

19                  **(By Plaintiffs Against All Defendants)**

20      70.    Plaintiffs incorporate the preceding allegations as though fully set forth

21  herein.

22      71.    Defendants have engaged in unfair and/or fraudulent business acts and

23  practices which constitute unfair competition within the meaning of Section 17200

24  of the California Business and Professions Code, and which have harmed Plaintiffs

25  and the public.  Defendants' unfair and fraudulent business acts or practices include,

26  but are not limited to: (a) taking and using the Confidential Information to form and

27  operate TSS, a business which competes with Plaintiffs; (b) continuing to use the

28  Confidential Information to create their videos, which compete with Plaintiffs'

-19-

FIRST AMENDED COMPLAINT

1    services and which are available to customers who pay for memberships to TSS; and

2    (c) making false and/or misleading descriptions or representations of fact in

3    advertisements and promotions that misrepresent the nature, characteristics, and

4    qualities of Defendants' services because they imply that (i) Roup developed the

5    TSS Method over a period of multiple years, when she did not; (ii) the TSS Method

6    was created through years of science-based research, development, data collection

7    and analysis, and trial and error, when it was not; and (iii) the TSS Method is

8    significantly different from the TA Method, when it is not.

9          72.    As a direct and proximate result of Defendants' unfair and fraudulent

10    business acts and practices, Plaintiffs have suffered injury to their business,

11    including irreparable harm to their goodwill and reputation.  Defendants' unfair and

12    fraudulent business acts and practices have also caused Plaintiffs damages,

13    including but not limited to, loss of sales and customers.  Plaintiffs have no adequate

14    remedy at law and will suffer further injury and damage unless Defendants'

15    wrongful conduct is enjoined.

16          73.    Plaintiffs therefore seek (i) an injunction pursuant to California

17    Business & Professions Code § 17203 prohibiting Defendants from engaging in the

18    unfair and fraudulent business acts and practices set forth herein; and (ii) restitution

19    pursuant to California Business & Professions Code § 17203 as a result of

20    Defendants' unfair and fraudulent business acts and practices.

21                          **PRAYER FOR RELIEF**

22          WHEREFORE, Plaintiffs pray for judgment and relief against Defendants as

23    follows:

24          1.    For judgment in favor of Plaintiffs and against Defendants on all causes

25    of action in the Complaint;

26          2.    For an Order permanently enjoining Defendants from advertising,

27    promoting, or publishing false and/or misleading descriptions or representations of

28    fact related to the development of the TSS Method;

1        3.      For an Order permanently enjoining Defendants from using or

2  disclosing to third-parties the Confidential Information;

3        4.      For an Order permanently enjoining Defendants from engaging in

4  future acts of infringement of TAMB's copyrights;

5        5.      For an Order awarding Plaintiffs damages, multiplied by three, in an

6  amount to be proven at trial, but at least in excess of the jurisdictional minimum;

7        6.      For an Order awarding Plaintiffs restitution, in an amount to be proven

8  at trial, but at least in excess of the jurisdictional minimum;

9        7.      For reasonable attorneys' fees and costs incurred herein; and

10       8.      For any other and further relief that the Court may deem just and

11  proper.

12                            **JURY DEMAND**

13      Plaintiffs demand a trial by jury.

14

15

16  Dated:  September 13, 2022       DLA PIPER LLP (US)

17

18

19                          By:  */s/ Tamany Vinson Bentz*

20                             TAMANY VINSON BENTZ
                                 JASON T. LUEDDEKE

21                             MICHAEL P. BROWN

22

23                             Attorneys for Plaintiffs
                             TRACY ANDERSON MIND & BODY,

24                             LLC and T.A. STUDIO NEW YORK LLC

25

26

27

28

# ATTACHMENT A

## Attachment A
## List of Tracy Anderson Mind and Body, LLC's Copyright Registrations

| Registration No. | Effective Date | First Publication | Copyright Claimant | Title of Work | Type of Work |
|---|---|---|---|---|---|
| PA 1-929-090 | 10/31/2014 | 04/01/2008 | Tracy Anderson Mind and Body, LLC | The Tracy Anderson Method Presents Dance Cardio Workout DVD | Motion Picture (DVD) |
| PA 1-929-015 | 10/31/2014 | 04/01/2008 | Tracy Anderson Mind and Body, LLC | The Tracy Anderson Method Presents Mat Workout DVD | Motion Picture (DVD) |
| PA 1-929-092 | 10/31/2014 | 04/01/2008 | Tracy Anderson Mind and Body, LLC | The Tracy Anderson Method Presents Post-Pregnancy Workout DVD | Motion Picture (DVD) |
| PA 1-929-096 | 10/31/2014 | 04/01/2010 | Tracy Anderson Mind and Body, LLC | Tracy Anderson Dance Cardio II | Motion Picture (DVD) |
| PA0001930682 | 10/31/2014 | 10/01/2010 | Tracy Anderson Mind and Body, LLC | Tracy Anderson: The Perfect Design Series | Motion Picture (DVD) |
| PA 1-929-100 | 10/31/2014 | 01/03/2011 | Tracy Anderson Mind and Body, LLC | Metamorphosis by Tracy – Hipcentric | Motion Picture (DVD) |
| PA0001930680 | 10/31/2014 | 01/03/2011 | Tracy Anderson Mind and Body, LLC | Metamorphosis by Tracy – Abcentric | Motion Picture (DVD) |
| PA0001930683 | 10/31/2014 | 01/03/2011 | Tracy Anderson Mind and Body, LLC | Metamorphosis by Tracy – Omnicentric | Motion Picture (DVD) |
| PA0001938799 | 10/31/2014 | 01/03/2011 | Tracy Anderson Mind and Body, LLC | Metamorphosis by Tracy – Glutecentric | Motion Picture (DVD) |
| PA 1-929-094 | 10/31/2014 | 02/01/2012 | Tracy Anderson Mind and Body, LLC | Tracy Anderson's Total Body Mini-Trampoline Workout | Motion Picture (DVD) |
| PA0001938802 | 10/31/2014 | 02/01/2013 | Tracy Anderson Mind and Body, LLC | Tracy Anderson: The Pregnancy Project | Motion Picture (DVD) |

**Attachment A**
# List of Tracy Anderson Mind and Body, LLC's Copyright Registrations

| Registration No. | Effective Date | First Publication | Copyright Claimant | Title of Work | Type of Work |
|---|---|---|---|---|---|
| PA0001930681 | 10/31/2014 | 04/01/2013 | Tracy Anderson Mind and Body, LLC | Tracy Anderson Teen Meta | Motion Picture (DVD) |
| PA 1-929-098 | 10/31/2014 | 05/01/2013 | Tracy Anderson Mind and Body, LLC | Tracy Anderson Post-Pregnancy 2 Workout Series | Motion Picture (DVD) |
| PA 1-929-013 | 10/31/2014 | 08/06/2013 | Tracy Anderson Mind and Body, LLC | Tracy Anderson The Method for Beginners | Motion Picture (DVD) |
| PA 1-929-097 | 10/31/2014 | 09/03/2013 | Tracy Anderson Mind and Body, LLC | Tracy Anderson Precision Toning | Motion Picture (DVD) |
| PA 1-929-093 | 10/31/2014 | 12/01/2013 | Tracy Anderson Mind and Body, LLC | Tracy Anderson Dance + Cardio | Motion Picture (DVD) |
| PA 1-929-095 | 10/31/2014 | 05/01/2014 | Tracy Anderson Mind and Body, LLC | Tracy Anderson Unleash Your Inner Popstar | Motion Picture (DVD) |
| PA 1-929-011 | 10/31/2014 | 10/01/2014 | Tracy Anderson Mind and Body, LLC | Tracy Anderson Cardio Dance Workout | Motion Picture (DVD) |
| PA 1-929-012 | 10/31/2014 | 10/01/2014 | Tracy Anderson Mind and Body, LLC | Tracy Anderson Mat Workout for Beginners | Motion Picture (DVD) |

2

# EXHIBIT 2

# REDACTED VERSION OF DOCUMENT PROPOSED TO BE
# FILED UNDER SEAL

1                    UNITED STATES DISTRICT COURT

2                    CENTRAL DISTRICT OF CALIFORNIA

3

   TRACY ANDERSON MIND AND BODY,    )
4  LLC, a Delaware limited          )
   liability company; and T.A.      )
5  STUDIO NEW YORK LLC, a           )
   California limited liability     )   Case No.
6  company,                         )   2:22-cv--04735-PSG-E
                                     )
7            Plaintiffs,             )
                                     )
8       vs.                         )
                                     )
9  MEGAN ROUP, an individual; and   )
   THE SCULPT SOCIETY, LLC, a       )
10 California limited liability     )
   company,                         )
11                                   )
             Defendants.            )
12                                   )
   _____)

13

14

15

16        HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

17        VIDEOTAPED DEPOSITION OF TRACY ANDERSON

18                 LOS ANGELES, CALIFORNIA

19               FRIDAY, FEBRUARY 16, 2024

20                 9:49 A.M. - 4:27 P.M.

21

22

23

   STENOGRAPHICALLY REPORTED BY:
24 CHERYL ASADA
   CA CSR NO. 13496
25 JOB NO. J10918452



```
 1          HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

 2          VIDEOTAPED DEPOSITION OF TRACY ANDERSON,

 3          TAKEN AT 2000 AVENUE OF THE STARS, SUITE 400,

 4          LOS ANGELES, CALIFORNIA, COMMENCING AT

 5          9:49 A.M. AND CONCLUDING AT 4:27 P.M., ON

 6          FRIDAY, FEBRUARY 16, 2024, BEFORE CHERYL

 7          ASADA, CALIFORNIA CERTIFIED SHORTHAND

 8          REPORTER NO. 13496.

 9

10                           *  *  *

11

12   A P P E A R A N C E S:

13

14      FOR THE PLAINTIFFS TRACY ANDERSON MIND AND BODY,
        LLC, AND T.A. STUDIO NEW YORK LLC:
15
             DLA PIPER (US)
16           By:  GINA DURHAM, Esq.
             555 Mission Street, Suite 2400
17           San Francisco, California  94105
             (415) 836-2500
18           gina.durham@us.dlapiper.com

19               -and-

20
             DLA PIPER (US)
21           By:  KRISTINA FERNANDEZ MABRIE, Esq.
                  MATTHEW GRUENBERG, Esq.
22                (Appearing via videoconference)
             2000 Avenue of the Stars, Suite 400
23           Los Angeles, California  90067
             (310) 595-3000
24           kristina.fernandezmabrie@us.dlapiper.com
             matthew.gruenberg@dlapiper.com
25
```



```
 1   A P P E A R A N C E S (CONTINUED):

 2

 3        FOR THE DEFENDANT MEGAN ROUP AND THE SCULPT
          SOCIETY, LLC:
 4
               MANATT, PHELPS, & PHILLIPS, LLP
 5             By:  NATHANIEL L. BACH, Esq.
                    ANDREA D. GONZALEZ, Esq.
 6                  (Appearing via videoconference)
               2049 Century Park East, Suite 1700
 7             Los Angeles, California 90067
               (310) 312-4000
 8             nbach@manatt.com
               adgonzalez@manatt.com
 9

10

11        ALSO PRESENT:

12             BRIAN KIELHACK, VIDEOGRAPHER
               MORGAN HUMPHREY, THE SCULPT SOCIETY
13             (Appearing via videoconference)

14

15

16

17

18

19

20

21

22

23

24

25
```



1  so I don't -- I'm not comfortable being on the record

2  in that way.

3      Q    Do you have any dance degrees?

4      A    No.

5      Q    Do you have any fine arts degrees?                    10:26AM

6      A    Now, I don't know what the American Musical

7  and Dramatic Academy calls the end of the school, I

8  don't remember.

9      Q    Do you have any other dance-related

10  certifications?                                               10:27AM

11     A    No.

12     Q    Do you have any choreographer-related

13  certifications?

14     A    No.

15     Q    Have you ever performed any fine arts in a          10:27AM

16  formal setting?

17         MS. DURHAM:  Objection.  Vague.

18         THE WITNESS:  Yes.

19  BY MR. BACH:

20     Q    When?                                                10:27AM

21     A    Well, my mother owns a ballet school and

22  still owns a ballet school to this day.  I have been

23  in many performing arts productions and I've

24  choreographed many things.  I've choreographed for

25  schools and all kinds of things, so...                       10:27AM



```
 1              THE WITNESS:  Absolutely.
 2    BY MR. BACH:
 3         Q    Do you believe that you operate in the same
 4    industry as Martha Graham?
 5         A    I believe that I choreograph.            10:52AM
 6         Q    Do you believe that you and Martha Graham are
 7    doing the same thing in your respective professions?
 8         A    I believe that -- that I am -- I believe that
 9    Martha Graham is Martha Graham and Tracy Anderson is
10    Tracy Anderson.                                   10:52AM
11              MR. BACH:  You want to take a break?
12              MS. DURHAM:  Yeah.  Thank you, Counsel.
13              THE VIDEOGRAPHER:  The time is
14    10:53 a.m., and we're off the record.
15              (Recess.)                               11:05AM
16              THE VIDEOGRAPHER:  The time is
17    11:06 a.m., and we are back on the record.
18    BY MR. BACH:
19         Q    Ms. Anderson, did you create the T.A. Method
20    so that it was effective in conferring physical and    11:06AM
21    mental benefits to anybody in creating balance where
22    imbalance exists in clients' bodies?
23         A    Yes, creating balance where there's imbalance
24    is a -- a -- a driving question in my mind, always.
25         Q    A driving purpose of the T.A. Method?        11:06AM
```



1      A     Yes.  It's something that -- that has always

2   been -- has always remained intriguing to me, yes.

3      Q     Will you turn to Paragraph 48 of the first

4   amended complaint that is in front of you, please?

5      A     Uh-huh.  48?                                    11:06AM

6      Q     Forty-eight.  It's on Page 14.

7      A     All right.  Yeah.  Uh-huh.  48, yes.

8   Correct.

9      Q     All right.  This paragraph states, quote:

10             "Examples of Defendants' copyright            11:07AM

11             infringements of the T.A. works

12             include"...

13     A     Uh-huh.

14     Q     And then there are several Sculpt Society

15   classes listed, and it states that in those videos,     11:07AM

16   quote:

17             "Roup or TSS employees performed

18             choreography movements, sequences, and

19             routines that are substantially similar

20             to those depicted in the Day 21 to 30         11:07AM

21             portion of the DVD entitled

22             'Metamorphosis - Glutecentric.'"

23             And then it gives the copyright

24   registration number.  Do you see that?

25     A     Yes.                                            11:07AM



1    Q    Do you believe that to be true?

2    A    Yes.

3    Q    Do you know, sitting here, what the Day 21 to

4  30 portion of the DVD entitled

5  "Metamorphosis - Glutecentric" depicts?                    11:07AM

6    A    Not off the top of my head, but I know that

7  we were careful with it.

8    Q    You reviewed those DVDs and videos of The

9  Sculpt Society before finalizing this paragraph.  Is

10  that fair to say?                                          11:08AM

11    A    Maria reviewed them.

12         MR. BACH:  I'm going to introduce a

13  document, which is a video, which will be marked

14  Exhibit 80.  I'm just going to show it on the

15  screen so we can all take a...                             11:08AM

16         And I'll represent to you that this is

17  the video -- the first of the TSS videos called

18  "30MIN SCULPT 07" that's listed in the first

19  bullet point of Paragraph 48.

20         (Exhibit 80 was marked for                          11:08AM

21         identification.)

22         MS. DURHAM:  So open the backup because I

23  think that way you can see the video.  Just click

24  on --

25         THE WITNESS:  Click on the Zoom icon?           11:09AM



1      Q     Her movements?

2      A     Her movements are what she learned from me.

3      Q     Her movements, to you, look indistinguishable

4  from what she was teaching --

5      A     There's no --                                    11:11AM

6      Q     Just -- just a minute.  I'm sorry.

7      A     Yeah.

8      Q     -- look indistinguishable from what she was

9  teaching at Tracy Anderson.  Correct?

10     A     Correct.  There is not a substantial            11:11AM

11 creative -- any -- there is not any substantial

12 creativity that has been added on or changed from what

13 I do here.

14     Q     What -- what movements have you seen in that

15 first minute that you believe copy what are contained   11:11AM

16 in your DVDs?

17     A     Yeah, so it took me a very long time to come

18 up with my opening arm sequences with no weights and

19 then with small weights, and the way that I layer the

20 movements and the -- the creative process behind that,  11:11AM

21 she learned that in our training program.

22     Q     So the arm movements that she was doing at

23 the beginning of this --

24     A     All of --

25     Q     -- video -- I'm sorry.                          11:11AM



```
 1   movements like this performed in any Tracy Anderson

 2   classes?

 3       A    I have done similar things, but, again, this

 4   is not something I'm -- I would never say I'm going to

 5   court over somebody for this move.  Never.              12:24PM

 6       Q    How is Megan supposed to know which of the

 7   movements that she might have taught while she was

 8   working for you are your special movements that she

 9   should not use and which movements like this one

10   she's --                                                12:24PM

11       A    Yeah.

12       Q    -- permitted to use?

13       A    I think --

14            MS. DURHAM:  Objection --

15            THE WITNESS:  I actually think that's a       12:24PM

16   good question.

17            I'm sorry, go ahead, Gina.

18            THE COURT REPORTER:  I'm sorry, what was

19   the objection?

20            MS. DURHAM:  Lack of foundation.              12:24PM

21            THE WITNESS:  I think it's a good

22   question.  One of the reasons why I cared very

23   much about this is I have so many incredible

24   teachers who have been with me for so many years,

25   and -- LaShonna, for one, who danced with Beyonce;    12:25PM
```



1   Courtney, for one, who went to La Guardia High

2   School, and -- and they undeniably know and

3   celebrate what makes my choreography special.  I

4   mean, there are many of them.  Right.

5          And I believe that Megan knows what she       12:25PM

6   was doing.  I can't speak for her, of course, but

7   I believe that she knows what makes me special,

8   and I do think that -- that it's unfortunate when

9   people know that they love it and they can't get

10  it out of their system and when they want to try   12:25PM

11  and discredit me as an artist or reduce me as an

12  artist so that they can keep doing it and then to

13  go so far as to charge less money for it and take

14  from this line of energy, creation, choreography

15  that I have created throughout my entire life.  I   12:26PM

16  do believe that Megan knows which ones matter and

17  what doesn't.

18  BY MR. BACH:

19     Q    How would she know that?

20          MS. DURHAM:  Objection.  Lacks              12:26PM

21  foundation.

22          THE WITNESS:  Because she is -- she is

23  not going to any great length to create on top of,

24  create from, create in some way that is original.

25  She's -- she's not, like, she's -- it's like the   12:26PM



 1  lists of choreography that Megan had access to

 2  that she is profiting off of today.

 3  BY MR. BACH:

 4     Q    The company's workout write-ups.  Correct?

 5     A    Correct.                                          12:30PM

 6     Q    You don't know that she has any of those

 7  write-ups in her possession after she left the

 8  company.  Correct?

 9     A    I have no idea what she took or what she

10  didn't take.  I know that she did things that did not   12:30PM

11  display good character or core values before leaving,

12  so...

13     Q    That's why we're here.  Correct?

14     A    One of the reasons.

15     Q    The -- would it be impossible, in your view,   12:30PM

16  to come up with a full list of movements that former

17  trainers are not allowed to perform after they leave

18  the company because you are creating so often?

19     A    It would not be impossible.

20     Q    It would not be impossible.                     12:31PM

21          You could update it every single week with

22  the new movements, if you wanted to.  Correct?

23     A    Of course.  We do, we do do the write-ups

24  every single week.

25     Q    You've never created one master list of all   12:31PM



```
1                   LOS ANGELES, CALIFORNIA

2                 FRIDAY, FEBRUARY 16, 2024

3                  1:30 P.M. - 4:27 P.M.

4                         * * *

5                    TRACY ANDERSON,

6    HAVING PREVIOUSLY BEEN DULY ADMINISTERED AN OATH,

7        WAS EXAMINED AND TESTIFIED AS FOLLOWS:

8

9         THE VIDEOGRAPHER:  The time is 1:30 p.m.

10   and we are back on the record.                      01:30PM

11

12                  EXAMINATION (resumed)

13   BY MR. BACH:

14      Q   Ms. Anderson, I'm going to introduce what

15   will be marked as Exhibit 82.                       01:30PM

16      A   Okay.

17          (Exhibit 82 was marked for

18          identification.)

19          MR. BACH:  Also share my screen, if it's

20   easier.                                             01:31PM

21          THE WITNESS:  Okay.

22   BY MR. BACH:

23      Q   This is a printout of a portion of the

24   TracyAnderson.com website.  Is that what this appears

25   to be?                                              01:31PM
```



 1        A      It appears to be that.

 2        Q      Do you recognize this product listing?

 3        A      Yes.   This is a -- one of my DVDs.

 4        Q      It's the Metamorphosis 90 Day - Glutecentric

 5   DVD.   Correct?                                          01:31PM

 6        A      Correct.

 7        Q      Is that one of the DVDs that is at issue in

 8   the lawsuit for your copyright claim?

 9        A      I don't know specifically.

10        Q      Do you have any other DVDs that are called   01:31PM

11   "Metamorphosis - Glutecentric," other than the one

12   that is shown here?

13        A      Well, the Glutecentric program has DVDs that

14   change -- the content changes every 10 days, so there

15   are many routines that -- that lie within the          01:32PM

16   Glutecentric Metamorphosis program.

17        Q      Are those continually updated?

18        A      We -- I can't remember how many years we

19   dedicated to Metamorphosis, but once we went to

20   streaming, we encouraged the Metamorphosis DVD users   01:32PM

21   to go to streaming, but there are still many people

22   that do use the Metamorphosis program.

23        Q      And it says here in the write-up of the

24   program, it says, quote:

25              "Each Metamorphosis workout in this         01:32PM



```
 1                90-day body-specific program includes

 2                30 min of muscular structure work and

 3                30 minutes of the cardio; the muscular

 4                structure component changes every

 5                10 days."                                    01:32PM

 6           Is that accurate, to your knowledge?

 7      A    Yes.

 8      Q    Is that the changing it every 10 days that

 9   you were just referring to a moment ago?

10      A    Correct.                                          01:33PM

11      Q    Do you agree that that accurately describes

12   the Glutecentric DVD program?

13      A    I believe that that is a way to describe it.

14      Q    That's the way that you and the company have

15   chosen to describe it on your website marketing it to  01:33PM

16   the public.  Correct?

17           MS. DURHAM:  Objection.  Mischaracterizes

18   the exhibit.

19           THE WITNESS:  If that's what's on our

20   website, then, yes.                                      01:33PM

21   BY MR. BACH:

22      Q    It goes on to say:

23                "In addition, there's a dynamic

24                eating plan, a measuring tape, and a

25                chart to record your progress."             01:33PM
```



1           Do you see that?

2       A    I do see that.

3       Q    What is the purpose of the dynamic eating

4   plan, as you understand it?

5       A    We don't offer the eating plan anymore, but                    01:33PM

6   it was giving people guidelines to eat in a more

7   healthful way.

8       Q    In a more healthful way?

9       A    Yes.

10      Q    For the purposes of improving their bodies?                    01:33PM

11      A    Well, that depends.  I'm not saying that it

12  would do that for every single person, but the

13  intention was to help people have an eating guide to

14  help them perform optimally with their bodies.

15      Q    And with their wholistic health.  Correct?                     01:34PM

16          MS. DURHAM:  Objection.  Form.

17          THE WITNESS:  Yes, but I've always been

18  very careful surrounding food, but, yeah, that's

19  the intention of it.

20  BY MR. BACH:                                                            01:34PM

21      Q    What is the intention behind the inclusion of

22  the measuring tape for this program?

23      A    The -- when you're asking people to

24  participate in complicated movements and complex

25  choreography, they tend to need a physical                              01:34PM



1    incentivization, so the inclusion of the measurement

2    tape is to show them that if they move in this way,

3    they can see results that would signal a body becoming

4    more like a machine that uses his energy better.

5        Q    The measuring tape is to measure the body.          01:35PM

6    Correct?

7        A    It's to measure the body.  Correct.

8        Q    For the purposes of tracking physical

9    progress over the course of the Glutecentric program.

10   Correct?                                                     01:35PM

11       A    Yes.

12       Q    In the next sentence, the product listing

13   states:

14            "The revolutionary Metamorphosis by

15            Tracy program is the at-home translation        01:35PM

16            of the Tracy Anderson Method.  It's the

17            perfect solution for devotees who do not

18            live near a Tracy Anderson studio."

19            Did I read that accurately?

20       A    I wasn't following along word-for-word,         01:35PM

21   but...

22       Q    Do you agree that that's what the

23   Glutecentric program is intended to be?

24       A    This came out many years ago, and I do -- the

25   objective of Metamorphosis was to bring what I do to     01:36PM



 1  choreography, to the mat choreography.  I had to be

 2  very creative and intentional about that so that I

 3  could include all of those things that the fitness

 4  industry leaves on the table.

 5      Q    You were filling a gap in the fitness          01:41PM

 6  industry when you started focusing on those types of

 7  movements and accessory muscles.  Is that fair to say?

 8          MS. DURHAM:  Objection.  Misstates the

 9  witness' testimony.

10          THE WITNESS:  I think that my purpose          01:41PM

11  wasn't to fill a gap in the fitness industry, my

12  purpose wasn't even to be entrepreneurial and

13  start a business.  My purpose was to create for

14  the purpose of, can I bring all of these things

15  together that make the human experience that much    01:41PM

16  more realized.

17  BY MR. BACH:

18      Q    At the bottom of this product listing in the

19  second paragraph it says, quote:

20          "If you follow Tracy's lead, she will          01:42PM

21          give you a body you never believed you

22          could have."

23      A    Yeah.

24      Q    End quote.

25          Do you believe that?                            01:42PM



1        A     Yes, I do.

2        Q     Is that one of the purposes of the

3   Glutecentric program?

4        A     It's one of the purposes of everything.  Yes.

5        Q     The title "Glutecentric," that is accompanied          01:42PM

6   by other programs for other body types that you've

7   labeled "Hipcentric," "Abcentric," and "Omnicentric."

8   Is that right?

9        A     Yes.  Correct.

10       Q     And are these programs designed for women of          01:42PM

11  different body shapes?

12       A     Yes.  One of my biggest struggles, as I said

13  to you in the beginning is:  How do you make the weird

14  normal?  And I have had to pull upon all different

15  kinds of -- and also entrust my -- my work with          01:42PM

16  different writers and people, you know, across

17  industries that are trying to get people to move, and

18  it's very difficult to get people to want to move.

19            So we -- we wanted people to identify -- we

20  wanted people to say, "Well, what do you -- what do          01:43PM

21  you identify with," like, "What body type do you

22  identify with," so that they could choose the

23  choreography that's going to create balance where

24  there's imbalance in them, that's the best that we

25  could do.  Right?  So it was a starting point, like,          01:43PM



1   do -- and we laid it out for people so that they could

2   understand who they -- they could kind of cast

3   themselves, if you will, like, "Oh, this is the

4   program for me."

5           MR. BACH:  Let's go off the record for            01:43PM

6   one second.

7           THE VIDEOGRAPHER:  Absolutely.

8           The time is 1:44 p.m., and we are off the

9   record.

10          (Recess.)                                          01:44PM

11          THE VIDEOGRAPHER:  The time is 1:45 p.m.,

12   and we are back on the record.

13   BY MR. BACH:

14      Q   Ms. Anderson, we were talking about the body

15   types that you tailor your workouts to a second ago.     01:44PM

16   Here on the product listing it states, quote:

17              "Tracy customizes workouts for

18          specific body types.  Our bodies aren't

19          all the same, so our workouts shouldn't

20          be either."                                        01:44PM

21          Do you agree with that?

22      A   Yes.

23      Q   The Abcentric workout states, quote:

24              "If you tend to gain weight in your

25          midsection or have a thick waist, you are         01:45PM



1              Abcentric.  The Abcentric workouts are

2              targeted to achieve a flat stomach with

3              workouts concentrating on the lower

4              stomach and back area," end quote.

5              Do you agree that that's the purpose of          01:45PM

6      the Abcentric workouts?

7         A    Yeah.  Well, let me go back.  At this time

8      when I created this program, I -- this was very much a

9      theme of this moment and of this works.  Today, I

10     don't -- that's not the way that I'm creating today,     01:45PM

11     so --

12        Q    This program is for sale, though.  Is that

13     right?

14        A    It is still for sale, but -- but I have --

15     this chapter is complete in me, so this -- this work     01:45PM

16     is a complete works for me.  So I just wanted to -- to

17     specify that that language is not language that I'm

18     using today, it's not what I'm creating off of today

19     because I'm better and faster and smarter at what I

20     do, quite frankly, so...                                 01:45PM

21             But, yes, at this time, it was very helpful

22     for me to identify where people and why people had

23     become weak here and then work them up to that

24     balanced place from there.

25        Q    Does the company still design workouts for       01:46PM



 1   BY MR. BACH:

 2       Q    So please just do try to focus on my

 3   question --

 4       A    Of course.  Well, you did say by the coffee

 5   thing that if -- that we would be here if I -- if I --    01:48PM

 6   if I answer more, so --

 7       Q    Just --

 8       A    -- I'm just trying to let you have it.

 9   Whatever you need.

10       Q    Just so long as we understand that the         01:48PM

11   long -- the longer -- I have a certain number of

12   questions that I'm going to ask you today.

13       A    Okay.  Okay.

14       Q    And the longer your response is, the longer

15   we'll be here.                                            01:48PM

16       A    Oh, you want shorter responses.  Oh, I

17   thought he was saying I wasn't -- okay.  Understood.

18       Q    You can -- I just want accurate responses,

19   but just so you know, the longer the response --

20       A    Got it.                                         01:49PM

21       Q    -- the longer it takes me to get through my

22   questions.

23            Thank you.

24       A    Understood.

25       Q    For the Glutecentric paragraph that's here on   01:49PM



1    this product listing states, quote:

2              "If you have a shapeless behind and

3              it is your main area of the concern, then

4              the Glutecentric workouts would help you

5              create the butt you want.  Whether it's

6              too flat or needs a lift, this program is

7              geared to tone down any back fat, get rid

8              of cellulite to gain a distinction

9              between your lifted butt and thighs."

10             Is that the purpose of the Glutecentric

11   program?

12        A    That -- those are some purposes of it.  Those

13   are some things that if you perform the movements, if

14   you perform the choreography and if you perform it

15   well, knowing, yeah, that's -- that's it, yeah, some

16   of them.

17        Q    There's nothing else listed there that are

18   other purposes of the Glutecentric program.  Correct?

19        A    Not listed there.

20             MS. DURHAM:  Objection.  Document speaks

21   for itself.

22   BY MR. BACH:

23        Q    For the Omnicentric program that is described

24   next, it states, quote:

25             "If you gain weight all over, then



1              you are Omnicentric.  This body type
2              sometimes makes it difficult to choose
3              one specific area to focus on, so the
4              workouts Tracy designed for the
5              Omnicentric body are perfect - a full          01:50PM
6              body-skin-tuck.  Anything that is droopy
7              or loose about your body will be
8              awakened, firmed and lifted," end quote.
9              Was that the purpose of the Omnicentric
10   program?                                                 01:50PM
11       A    Those are some purposes.
12       Q    You don't see any other purposes listed here
13   in --
14       A    Not written there.
15       Q    -- this right now.  Correct?                    01:50PM
16       A    Correct.  Not written there.
17            MR. BACH:  I'm going to introduce another
18   exhibit, Number 83.
19            (Exhibit 83 was marked for
20            identification.)                                01:51PM
21   BY MR. BACH:
22       Q    Okay.  You see this document, Ms. Anderson?
23       A    Yes.
24       Q    All right.  Does this appear to be the image
25   that describes the four body types that we've just       01:51PM



1      Q    Let me share my screen.

2      A    Okay.  Thank you.

3           Okay.  Yes.

4      Q    Do you see it now?

5      A    Yes, I see that.                                       01:52PM

6      Q    Does that appear to be the Mat Workout

7   product listing from your website?

8      A    Yes, it appears to be that.

9      Q    Okay.  And you used the phrase "workout" in

10  the title of this DVD.  Correct?                              01:52PM

11     A    Correct.

12     Q    Why did you use that word?  What -- what are

13  you working out?

14     A    Well, again, when you're trying to get

15  everyone to move, you have to try many different ways         01:52PM

16  of explaining it.  So we meant that people can move

17  and work their bodies.

18     Q    In the product description here it states,

19  quote:

20           "This 60-minute DVD program - the                    01:53PM

21           first one that Tracy ever released to the

22           public - offers an ideal introduction to

23           the Tracy Anderson Method.  Throughout

24           the hour, you will activate and engage

25           all of your accessory muscles, pull in           01:53PM



1              your larger muscles, and transform your

2              body," end quote.

3              Do you see that?

4       A      Uh-huh.

5       Q      Is that an accurate way to describe what you        01:53PM

6    intended to do by this Mat Workout program?

7       A      Yes, that's a way to describe what we were

8    trying to do.  We were trying to -- yes.  Correct.

9       Q      The second sentence of the special note from

10   Tracy on this product listing states, quote:               01:54PM

11             "I have dedicated over a decade to

12             creating the tools, movements, and

13             prescriptions to keep your muscles awake

14             and alert and be able to give you the

15             body you desire," end quote.               01:54PM

16             Do you see that?

17      A      Yeah.

18      Q      Is that an accurate --

19      A      Well, I hear it.  I'm sorry, I'm not

20   following it with my eyes, but I hear you.               01:54PM

21      Q      Is that an accurate statement as I read it?

22      A      Sorry, can you say that again?

23             (Reading):

24             "I have dedicated over a decade to

25             creating the tools, movements, and               01:54PM



TRACY ANDERSON  Highly Confidential - AEO                February 16, 2024
Tracy Anderson Mind and Body vs Megan Roup                            160

 1  there to Metamorphosis, but today we -- we really try

 2  and encourage people to just go right into the online

 3  studio.

 4          MR. BACH:  I'm going to introduce what

 5  will be marked as Exhibit 84.                            01:57PM

 6          THE COURT REPORTER:  I'm sorry, 85?

 7          MR. BACH:  Eighty-five, thank you.

 8          (Exhibit 85 was marked for

 9          identification.)

10  BY MR. BACH:                                             01:57PM

11      Q    Can you see this document, Ms. Anderson?

12      A    Yes.

13      Q    Does this appear to be the "Perfect Design

14  Series Set (I-III Sequences)" from your website?

15      A    Yes, it does.                                   01:58PM

16      Q    And it says here in the product listing that,

17  quote:

18              "This three disc-video set - which

19          includes three 55 minute workouts at the

20          beginning, intermediate, and advanced         01:58PM

21          levels - is designed to create balance

22          and strength in the body," end quote.

23          Do you agree with that?

24      A    Yes.  It's very basic.

25      Q    Is that statement accurate as to this        01:58PM



1  particular DVD series?

2      A    This DVD series was really exciting for me

3  because it was as I was able to get heard and move

4  from the one DVD to giving them three in a sequence,

5  and I introduced the chair as part of the -- as part          01:58PM

6  of my choreography in these.  So actually this series

7  is fond -- I'm fond of this series.  It does a lot

8  more than that, but, again, we're just trying to

9  communicate to get people to know that they can -- to

10  encourage people to try it, yeah.                            01:59PM

11      Q    By indicating that they should hope and

12  expect to receive balance and strength in their body.

13  Correct?

14      A    Yes.

15      Q    The chair that you mentioned as a prop for          01:59PM

16  some of these workouts --

17      A    Yeah.

18      Q    -- is that a signature part of your workouts,

19  in your view?

20      A    Yes, the way that I choreographed with the          01:59PM

21  chair was very, very groundbreaking and unique.

22      Q    In what way?

23      A    In so many ways.  Nobody was using a chair

24  like that.

25      Q    How do you use a chair that is                      01:59PM



TRACY ANDERSON  Highly Confidential - AEO                        February 16, 2024
Tracy Anderson Mind and Body vs Megan Roup                       164

1   should use a chair.

2        Q    Is that a fixed chair without wheels?

3        A    I would hope so.

4        Q    That's important so it doesn't move around.

5   Correct?                                                    02:02PM

6        A    I would hope that people see that I'm using a

7   fixed chair and that they would use a fixed chair.

8        Q    The next sentence of this product listing

9   states, quote:

10            "Each workout includes a warmup,                  02:02PM

11            along with targeted sequences for the

12            arms, legs, abs, thighs, and butt," end

13            quote.

14            Does that accurately describe the

15   contents of this DVD series?                               02:02PM

16       A    It -- again, it's us being willing to

17   minimize what we do to encourage people to do it.

18   We're, like, speaking the language of the time --

19       Q    Well, do you --

20       A    -- to get people to want to move.                 02:02PM

21       Q    Do you believe it's accurate?

22       A    I do believe that they will improve their

23   arms legs, abs, thighs, and butt.

24       Q    That's how this was marketed and currently

25   still is marketed to the public.  Correct?                 02:02PM



1    BY MR. BACH:

2        Q    Does this appear to be the Unleash Your Inner

3    Pop Star product offering on your website?

4        A    Yes, it does.

5        Q    Do you believe that is one of the works that          02:03PM

6    is referenced in your complaint against the

7    defendants?

8        A    I don't know what they've pulled.

9        Q    Do you have any other workouts or DVDs that

10   are entitled, "Unleash Your Inner Pop Star" other than     02:04PM

11   this one, to the best of your knowledge?

12       A    No, this is the only one.

13       Q    And this product listing states, quote:

14            "This 50-minute dance cardio DVD

15            includes sequences that are unlike             02:04PM

16            anything you find in Metamorphosis - they

17            will further strengthen your mind and

18            body connection and torch calories," end

19            quote.

20            Is the second part of that sentence,           02:04PM

21   "they will further strengthen your mind and body

22   connection and torch calories" accurate, to the

23   best of your knowledge?

24       A    You're really dancing in this one, like a pop

25   star.                                                        02:04PM



1      Q    So that's accurate.  Correct?

2      A    Yeah.

3      Q    That's how this is marketed to the public.

4   Correct?

5      A    It's -- you're dancing.                          02:04PM

6      Q    "Yes" or "no"?

7      A    Yes.

8      Q    The cover of this DVD here underneath the

9   title "Unleash Your Inner Pop Star" says, quote:

10              "All new dances - New patterns to         02:05PM

11              target weight loss.  Connect to your

12              body - Learn to dance while you workout!"

13              Is that an accurate description of what

14   this DVD contains, in your view?

15     A    I think it's fine.                              02:05PM

16     Q    Well, is that an accurate description of what

17   it contains?

18     A    Again, like, I've always struggled with

19   marketing language compared to --

20     Q    This -- this is the marketing language to the  02:05PM

21   public, though.  Correct?

22     A    Yeah.  It -- it must be if you got this

23   picture here, yeah.

24     Q    Do you recognize this cover of --

25     A    I haven't looked at this cover in so many      02:05PM



1  constantly evolving and growing.  So, yeah, of course

2  I would if I really didn't like something.  Like, I've

3  revoked protein bars that I've said I liked in the

4  past because I don't like them at all anymore and

5  learned something more.  But with my movement and all        02:08PM

6  of my choreography, I really -- I really have never

7  had that where I was just like, "Oh, I don't love what

8  I created."

9        Q    You stick by the movements you created since

10  the time that you created the T.A. Method.  Is that        02:09PM

11  correct?

12            MS. DURHAM:  Objection.  Mischaracterizes

13  the witness' testimony.

14            THE WITNESS:  Yeah.  I'm proud of my

15  journey.  I'm proud of my journey.                         02:09PM

16  BY MR. BACH:

17        Q    The product listing for -- excuse me, the

18  product description for this listing states, quote:

19            "This DVD program focuses on

20            empowering the smaller accessory muscles        02:09PM

21            as they strengthen and support the larger

22            ones through the body while you learn the

23            basics of the Tracy Anderson Method.

24            Designed to tone, strengthen, and engage

25            every muscle, this is a workout for all         02:09PM



1              skill levels."

2              Do you agree that that's an accurate

3   description of the contents of this DVD series?

4        A    Well, we've -- yeah, but to -- to my last

5   question and to this question, we've really earned the     02:09PM

6   ability to have a much deeper conversation with

7   people.  I have really helped move the market along to

8   be much more open to receiving much more than this.

9              So I'm fine with that being there as that

10  description, but I don't speak like that anymore.          02:10PM

11  Also, "accessory muscles" was just a way to help

12  people that realize that are there are more things

13  to -- you know, more to your body.  So yeah, it's

14  fine.

15       Q    It's accurate, in your view.  Correct?          02:10PM

16       A    It -- it's fine for -- for the time and for

17  the DVD.  I don't need to go back and rewrite off

18  those moments.

19       Q    You don't believe that that paragraph is

20  inaccurate as to the contents of the Precision Toning      02:10PM

21  DVD program.  Correct?

22            MS. DURHAM:  Objection.  Asked and

23  answered.

24  BY MR. BACH:

25       Q    Nothing in this product listing uses the word    02:10PM



1      Q     Do you believe that -- have you ever seen

2   this before?

3      A     I've seen that photo.

4      Q     Have you ever seen this description, "Fitness

5   pioneer, Tracy Anderson's revolutionary method can          02:17PM

6   give anyone - regardless of their genetic

7   background - the physical and mental results they

8   desire"?

9      A     I believe that sounds like something we had

10  on our website.                                             02:17PM

11     Q     Do you believe that's accurate?

12     A     Yeah, I believe -- yeah.

13     Q     You wouldn't put it on your website if it

14  wasn't accurate.   Correct?

15     A     I wouldn't.                                         02:17PM

16     Q     The second paragraph of this page states,

17  quote:

18              "Tracy has helped countless

19           celebrities transform their bodies," and

20           then it lists a number of individuals.             02:18PM

21           Is that what you believe you've done for

22  those individuals, transform their bodies?

23     A     I struggle with this kind of language again,

24  but I believe that I have deepened their connection to

25  their bodies in ways that they are very grateful to me      02:18PM



 1  for.

 2      Q    Well, it's on the website and it would be

 3  accurate if you put on it your website, you just

 4  testified.  Correct?

 5          MS. DURHAM:  Objection.  Asked and                    02:18PM

 6  answered.

 7          THE WITNESS:  Yes, I -- I have another

 8  president of the company who was my chief

 9  communications officer who I trust very much, and

10  I don't like to micromanage, so he knows me very        02:18PM

11  well, so yeah.

12  BY MR. BACH:

13      Q    That's how you're marketing your method to

14  the public.  Correct?

15      A    Correct.                                          02:18PM

16          Many people call what they feel

17  transformative, so yes.

18      Q    Do you believe that that is inaccurate?

19      A    I don't believe it's inaccurate.  I'm just

20  kind of more of a humble personality than like that, I    02:19PM

21  guess, so...

22      Q    Do you believe that celebrities come to you

23  to help transform their bodies?

24      A    I believe that celebrities are just like

25  anybody else and they come to me for many different       02:19PM



 1  performance art, to the best of your knowledge?

 2      A    Well, like, in -- I have called it

 3  performance art.  I don't know exactly where I've

 4  called it performance art.  Also, I have done many,

 5  many interviews where I say all kinds of things that          02:32PM

 6  don't get put in and get misconstrued.

 7      Q    Can you give me any example of an interview

 8  or a public statement that you've made in which you've

 9  described the Tracy Anderson Method as a, quote,

10  "performance art"?                                            02:32PM

11      A    I think I have described what performance art

12  is in terms of describing my method.

13      Q    Okay.  Can you give me an example of the time

14  you said that?

15      A    Well, I think I talk about it all the time          02:32PM

16  about the experience and the choreography and how --

17  and that it's my life's work and I created it and all

18  of the reasons, you know, why my creative process has

19  been so key to it.  I mean, all kinds of ways.

20      Q    That's not my question.  My question's not          02:33PM

21  about the choreography, it's about whether you've ever

22  used the phrase "performance art" in a public setting

23  to describe your method.

24      A    I don't know.

25           MS. DURHAM:  Objection.  Asked and                  02:33PM



1    answered.

2            THE WITNESS:  I don't know.

3    BY MR. BACH:

4        Q    You -- you can't recall an instance, sitting

5    here today.  Correct?                                    02:33PM

6        A    I can't give you a specific instance.  I

7    don't know.

8            MR. BACH:  Why don't we take five

9    minutes.

10           THE WITNESS:  Okay.                               02:33PM

11           THE VIDEOGRAPHER:  The time is 1- --

12   2:33 p.m.  We are off the record.

13           (Recess.)

14           THE VIDEOGRAPHER:  The time is 2:41 p.m.,

15   and we are back on the record.                            02:40PM

16           THE WITNESS:  I thought that was my only

17   camera.

18           MS. DURHAM:  It'll be the only official

19   one.

20           THE WITNESS:  Oh, okay.                           02:40PM

21           THE VIDEOGRAPHER:  Only one recording.

22           THE WITNESS:  Okay.  Got it.

23   BY MR. BACH:

24       Q    Ms. Anderson --

25       A    Yes.                                             02:40PM



TRACY ANDERSON  Highly Confidential - AEO                    February 16, 2024
Tracy Anderson Mind and Body vs Megan Roup                              192

1       Q      -- have you ever trained any professional

2   dancers to perform any of your exercises that are part

3   of the T.A. Method as a performance art?

4            MS. DURHAM:  Objection.  Mischaracterizes

5   the witness' prior testimony.                              02:41PM

6            THE WITNESS:  It's interesting.  I don't

7   think -- I don't know.

8   BY MR. BACH:

9       Q     Not to your knowledge.  Correct?

10      A     I've had so many different moments.  I don't    02:41PM

11  know.

12      Q     You can't recall any instance of that,

13  sitting here today.  Correct?

14            MS. DURHAM:  Objection.

15            THE WITNESS:  No, not right now.                 02:41PM

16            It could be one of those things where I

17  walk out and I go, "Oh."

18  BY MR. BACH:

19      Q     You stated that there are more than 200,000

20  movements that are part of your method.  Correct?        02:42PM

21      A     Oh, gosh.  I don't have a running count.

22      Q     Do you believe that's a -- well, strike that.

23            That's what you said publicly, that there

24  are more than 200,000 movements that are part of

25  the T.A. Method.  Correct?                               02:42PM



1      A    Well, assuming I was captured correctly, we

2   would've been -- we would've calculated that before I

3   said that.

4      Q    That's what's contained in your complaint.

5   Correct?                                                      02:42PM

6      A    If that is, then it's been calculated.

7      Q    Do you believe that it sounds roughly

8   accurate to you?

9      A    I think it sounds like probably too little,

10  but I don't know.  I -- I don't know.                         02:42PM

11     Q    Do you believe that there are at least

12  200,000 movements that are a part of your method?

13     A    I believe that there very well could be.

14     Q    How many of them have been performed

15  publicly?                                                     02:42PM

16     A    Well, they all would've been performed.

17     Q    Publicly.  Correct?

18     A    I would think so, yes.

19     Q    Are any of those 200,000-plus movements that

20  are part of your method confidential, in your view?          02:43PM

21     A    I don't -- I don't know what you mean by

22  "confidential."

23     Q    Do you believe that any of the 200,000

24  movements are proprietary information to the company?

25     A    I believe --                                          02:43PM



1    that way, with what I learned there.

2         But the movements, of course, to me,

3    that's just -- that's basic, like, kindergarten

4    knowledge.

5    BY MR. BACH:                                              02:47PM

6       Q    What is?

7       A    That you can't steal other people's art, you

8    can't plagiarize, you can't steal choreography, you

9    can't steal music, you can't come out with something

10   that is -- like, I can't take a -- well, I mean, like,   02:47PM

11   Olivia Rodrigo, she took a little line from Taylor

12   Swift and then she apologized, then she gave Taylor

13   credit for it and now -- then she went on to create

14   her own unique things and they were side-by-side at

15   the awards.                                               02:47PM

16        I -- I believe that -- that you can't -- you

17   can't take somebody else's art, you can't take someone

18   else's choreography.

19      Q    Do you believe that the movements that you

20   create are equally protectable as music that a musical   02:47PM

21   artist creates?

22      A    Yes, I believe that it is very, very vital

23   that all art forms and all mediums of art are equally

24   protected.  I believe that it is what the laws are

25   there for and I believe that it is vital to the future   02:48PM

1    of creativity.

2        Q    Do you believe that the movements that you

3    create are equally protectable as fine art paintings

4    that someone like Jackson Pollock might make?

5        A    Yes.  I believe that I am an artist, I          02:48PM

6    believe that my artistic process is -- and my life

7    experiences and all of the things that I bring to my

8    art are as significant as the next artist.

9        Q    Do you believe that the movements that you

10   create as part of your exercises are equally            02:48PM

11   protectable as Martha Graham's choreography?

12            MS. DURHAM:  Objection.  You're

13   misstating the witness' prior testimony.

14            THE WITNESS:  I absolutely believe that

15   the way that I come up with my movements and           02:48PM

16   sequences is choreography and that I approach it

17   from the same kind of choreographical process,

18   choreographical innovation as a Martha Graham.

19   BY MR. BACH:

20       Q    That wasn't my question.                       02:49PM

21       A    Oh, okay.

22       Q    My question is whether you believe that the

23   exercise movements you create as part of the Tracy

24   Anderson Method are equally protectable as the fine

25   art dances that Martha Graham has created.              02:49PM



 1    inside of me.  I know that -- that I was wildly made

 2    fun of.  I think that it was largely thanks to the

 3    very highly influential people who were willing to do

 4    this crazy thing that I created early on that made

 5    people even want to attempt it, but I was certainly --     02:57PM

 6    certainly made fun of in the beginning.  I have gone

 7    through all of the stages of any great pioneer, quite

 8    frankly, of being made fun of, being accepted, and

 9    then being imitated.

10         Q    Do you credit Jacki Sorensen for any of the     02:58PM

11    movements that are included in the T.A. Method?

12         A    I'm so sorry, I don't know who that is.

13         Q    Do you credit Olivia Newton-John for any of

14    the methods that are -- any of the movements that are

15    part of the T.A. Method?                                  02:58PM

16         A    No.  I loved her in Grease, but I never even

17    knew she did any kind of choreography.

18         Q    Do you credit the creator of the Jazzercise

19    program, Ms. -- Ms. Missett for any of the movements

20    or inspiration for the T.A. Method?                       02:58PM

21         A    No.  I think I might have taken a handful of

22    Jazzercise classes during my high school years with,

23    like, our moms or something, but no.

24         Q    Do you believe that Jane Fonda could prevent

25    others from teaching aerobics that she performs in her    02:58PM



1  classes?

2          MS. DURHAM:  Objection.  Calls for a

3  legal conclusion.

4          THE WITNESS:  I absolutely believe that

5  if someone was mimicking Jane Fonda's movements in        02:59PM

6  any one of her DVDs, she could.

7  BY MR. BACH:

8     Q    Do you believe that Richard Simmons could

9  prevent others from performing the same aerobic

10  movements in his workout DVDs?                           02:59PM

11     A    I do --

12          MS. DURHAM:  Let me just --

13          THE WITNESS:  Oh, sorry.

14          MS. DURHAM:  Let me get my objection in.

15          Objection.  Calls for a legal conclusion,        02:59PM

16  also, poses an incomplete hypothetical.

17          THE WITNESS:  Well, I should say that

18  I -- I haven't reviewed either one of their DVDs,

19  any, like -- I mean, I don't -- I can't even

20  remember the last time I saw any work or DVD from        02:59PM

21  either one of them, but I do remember seeing

22  enough of Richard Simmons to know that he was very

23  creative in his approach, and I would hope that he

24  would protect any -- if he was dancing to

25  anything, I would hope that he would protect it.         02:59PM



1          But, again, I don't know.  I never

2    watched their -- I have seen their videos, but I

3    don't have them fresh enough in my mind to say if

4    I feel like -- if I feel that way.

5    BY MR. BACH:                                          03:00PM

6        Q    Are all of your DVDs an embodiment of your

7    method?

8             MS. DURHAM:  Objection.  Vague.

9             THE WITNESS:  I created the content in

10   all of my DVDs, except for in TA VA, I brought       03:00PM

11   Tony Gonzalez, who's a choreographer who cast me

12   in the movie Blue Chips when I was young dancer.

13   And I would never take credit for somebody else's

14   choreography, and so I -- I did ask him to create

15   some movements on that.  And I -- I always give      03:00PM

16   anyone credit who's ever created anything.

17   BY MR. BACH:

18       Q    So setting Mr. Gonzalez's contributions --

19       A    Yeah.

20       Q    -- for the TA VA DVD, are all of your DVDs an   03:00PM

21   embodiment of the T.A. Method?

22       A    Yes.

23             MS. DURHAM:  Objection.  Vague.

24             THE WITNESS:  I don't -- I don't --

25   ///



```
 1  and watch.

 2       Q     They don't come and pay in order to watch?

 3       A     No.  Our experience is interactive.

 4       Q     You're not selling any sort of product that

 5  enables people to come and observe the classes.        04:05PM

 6  Correct?

 7       A     Correct.

 8             Well, when I do vitality weeks, though, they

 9  do sit and observe me talking, though, I guess.

10       Q     Who -- who is "they"?                        04:06PM

11       A     Like, participants would not be moving, they

12  would be listening to me in lecture form.

13       Q     What -- what is vitality week?

14       A     It's when I'll travel and -- and move with

15  people, like, in a destination kind of way.            04:06PM

16             MR. BACH:  Why don't we take a little

17  break.  I'm getting close to being finished, then

18  we can wrap up.

19             THE VIDEOGRAPHER:  The time is

20  4:06 p.m. --                                            04:06PM

21             THE WITNESS:  I can just stay here.  I

22  don't need to --

23             THE VIDEOGRAPHER:  -- and we are off the

24  record.

25             (Recess.)                                    04:14PM
```



1   we always did, plus we were just learning as I -- as

2   we went.  Gwyneth just believed in my -- in what I do,

3   so...

4        Q    Were the videos that were created for Bubi &

5   Babe later transferred over to anybody else?          04:16PM

6             MS. DURHAM:  Objection.  Vague.

7   BY MR. BACH:

8        Q    Sorry.  Let me restate that.

9        A    Yeah.

10       Q    Was the ownership of the videos that were     04:16PM

11  created for Bubi & Babe ever then transferred over to

12  anybody else?

13       A    They would have just come back to me if they

14  were.

15       Q    How?                                          04:17PM

16       A    I don't know.  I don't even know if they

17  were.  So I probably just, like -- I -- I don't -- I

18  thought that you were asking me a question because you

19  knew something that I should know, so that's why I was

20  like, I'm not sure, but if there was, it would have     04:17PM

21  been hers, but, no.

22       Q    So there were no contracts between Bubi &

23  Babe and your company?

24       A    I don't --

25            MS. DURHAM:  Objection.  Calls for            04:17PM



TRACY ANDERSON  Highly Confidential - AEO                February 16, 2024
Tracy Anderson Mind and Body vs Megan Roup                            262

```
 1   speculation.

 2             THE WITNESS:  Yeah.

 3   BY MR. BACH:

 4        Q    You don't know --

 5        A    I don't -- I don't -- I don't know.        04:17PM

 6        Q    You're not aware of any contract that

 7   exists --

 8             MS. DURHAM:  Objection.

 9             MR. BACH:  Gina, just let me finish my

10   question, please.                                    04:17PM

11             MS. DURHAM:  You're asking and answering

12   the same question over and over again and you're

13   just calling for speculation.  It's a ridiculous

14   exercise, Counsel.

15   BY MR. BACH:                                         04:17PM

16        Q    Sitting here today, you're not aware of any

17   contracts between Bubi & Babe and your company

18   transferring the rights in the DVDs.  Correct?

19        A    I --

20             MS. DURHAM:  Objection.  Asked and         04:17PM

21   answered.

22             THE WITNESS:  I'm not sure of any of

23   that.  I am not sure of it, but I'm also not

24   concerned about it either.

25   ///                                                  04:17PM
```



```
 1   BY MR. BACH:
 2       Q     Why not?
 3       A     Because I have a great relationship with
 4   Gwyneth, so it would only be between -- it -- they
 5   wouldn't be in any -- any -- nothing would be anywhere
 6   that -- where it would be unsafe territory, if that's
 7   what you're asking.
 8           MR. BACH:  Counsel, have there been any
 9   contracts produced from Bubi & Babe to the
10   plaintiff that you were able to locate?
11           MS. FERNANDEZ MABRIE:  Counsel, we
12   reached out to previous copyright counsel, we did
13   our best to try and track them down.  Previous
14   counsel no longer has the file.  So we did our
15   best.  Whether or not they exist, we -- we just
16   can't -- we don't know, but what -- what we
17   produced is what we have.
18           THE WITNESS:  Yeah, I don't think there
19   are.
20   BY MR. BACH:
21       Q     You're not aware of any such contracts --
22       A     No.
23       Q     -- correct.
24       A     No.
25   ███████████████████████████████████████
```



264

1  ███████████████

2  ████████████████████████████

3  ███████████.

4  █████████████████████████

5  ██████████████████████████

6  ██████

7  ███████████████████

8  █████████████████████████

9  ████████████.

10  ████████████████████████

11  ████████████████████████████

12  ███████████████.

13  BY MR. BACH:

14      Q    Oh.

15          MS. DURHAM:  Oh, yes.  So --

16          THE WITNESS:  I mean, I think that our

17  processes --

18          MR. BACH:  I can ask -- I can ask

19  Mr. Humphrey to leave the deposition.

20          MS. DURHAM:  Yeah, let's do that, to be

21  safe.

22          Thank you, Ms. Anderson.

23          MR. BACH:  Morgan, if you're on, if you

24  can hear me, could you leave the deposition for

25  the moment, please?





1    █████████████████████████████.

2    ████████████████████████

3    █████████████████████████

4    ████████████████████████████

5    ███████████████████████████

6    ██████████████████████████████

7    █████████████████████████████

8    ███████████████████████████

9    ███████████████████████████

10   ██   ███████████████████████

11   ███████████████████████████

12   ███████████████████████████

13   ██████████████████████████████

14   ████████████████████████████

15   ██████████████████████████

16   ████████████████

17    █████████████████████████████

18   ██████████████████████████████

19   █████████████████.

20   BY MR. BACH:

21      Q    Do you think that one of the reasons that the

22   company is successful is because customers come to

23   learn the information that reflects your trade

24   secrets?

25        MS. DURHAM:  Objection.  Vague --



1   understanding, like, the definition of "trade

2   secrets."

3        Q    Well, do you have an independent -- do you

4   have an understanding of what that means, sitting here

5   today?

6        A    Well, I'm -- I believe I do.

7        Q    Okay.   What is your understanding?

8   ████████████████████████████████████████████████

9   ████████████████████████████████████████████████

10  ██████████████████████████████████████████████████

11  █████████████████████████████

12    ███████████████████████████████████████████

13    ████████████████████████████████████████

14    ████████

15    ██████████████████████████████████████████

16  ██████████████████████████████████████████████████

17    ███████████

18       ████████████████████████████████████████

19    ███████████████████████████████████

20    ███████████████████████████████████████████████

21    ████████████████████████████████████

22    ██████████████████████████████████████████

23    ██████████████████████████████████

24    ██████████████████████████████████

25    █████████████████████████████████████████



1

2    STATE OF CALIFORNIA     )
                            )   ss.
3    COUNTY OF LOS ANGELES  )

4

5           I, CHERYL ASADA, CSR No. 13496, certify: That

6    the foregoing proceedings were taken at the time and

7    place herein set forth; at which time the witness was

8    duly sworn; and that the transcript is a true record

9    of the testimony so given.

10          The dismantling, unsealing, or unbinding

11   of the original transcript will render the

12   reporter's certificate null and void.

13          I further certify that I am not financially

14   interested in the action, and I am not related to any

15   of the parties in this case.

16          Witness review, correction, and signature was

17   ( ) By Code  (X) Requested  ( ) Not requested.

18

19

20          Dated this 26TH day of FEBRUARY, 2024.

21

22                        _____

23                        CHERYL ASADA, CSR 13496

24

25



# EXHIBIT 3

# REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1                UNITED STATES DISTRICT COURT

2              CENTRAL DISTRICT OF CALIFORNIA

3

4   TRACY ANDERSON MIND AND BODY,    )
    LLC, a Delaware limited          )
5   liability company; and T.A.      )
    STUDIO NEW YORK LLC, a           )
6   California limited liability     )
    company,                         )
7                                    )
                       Plaintiff,    )
8                                    )
            vs.                      ) Case No. 2:22-cv-04735-
9                                    )          PSG-E
    MEGAN ROUP, an individual; and   )
10  THE SCULPT SOCIETY, LLC, a       )
    California limited liability     )
11  company,                         )
                                     )
12                     Defendants.   )
    _____ )

13

14

15       VIDEOTAPED DEPOSITION OF MARIA KELLING

16                   TAKEN ON

17           THURSDAY, FEBRUARY 15, 2024

18

19

20

21

22

23

24

25  Adele Frazier, CSR No. 9690, RPR, CRR, RMR



```
 1                   UNITED STATES DISTRICT COURT

 2                   CENTRAL DISTRICT OF CALIFORNIA

 3

 4  TRACY ANDERSON MIND AND BODY,    )
    LLC, a Delaware limited         )
 5  liability company; and T.A.     )
    STUDIO NEW YORK LLC, a          )
 6  California limited liability    )
    company,                        )
 7                                  )
                        Plaintiff,  )
 8                                  )
            vs.                     ) Case No. 2:22-cv-04735-
 9                                  )          PSG-E
    MEGAN ROUP, an individual; and  )
10  THE SCULPT SOCIETY, LLC, a      )
    California limited liability    )
11  company,                        )
                                    )
12                      Defendants. )
    _____)

13

14

15  VIDEOTAPED DEPOSITION OF MARIA KELLING, taken on behalf of

16  the Defendants, at 2049 Century Park East, Suite 1700, Los

17  Angeles, California, commencing at 9:48 a.m. and terminating

18  at 6:04 p.m. on Thursday, February 15, 2024, before Adele C.

19  Frazier, Certified Shorthand Reporter No. 9690 for the State

20  of California, pursuant to Notice.

21

22                         ---o0o---

23

24

25
```



```
 1  APPEARANCES OF COUNSEL:

 2

 3  For Plaintiffs:

 4          DLA PIPER LLP (US)
            BY: GINA DURHAM
 5          555 Mission Street, Suite 2400
            San Francisco, California 94105-2933
 6          gina.durham@us.dlapiper.com
                 AND
 7          DLA PIPER LLP (US)
            BY:  KRISTINA FERNANDEZ MABRIE
 8          2000 Avenue of the Stars
            Suite 400 North Tower
 9          Los Angeles, California 90067-4735
            kristina.fernandezmabrie@us.dlapiper.com
10

11

12  For Defendants:

13          MANATT, PHELPS & PHILLIPS, LLP
            BY:  NATHANIEL L. BACH
14              ANDREA D. GONZALEZ (Remote Appearance)
            2049 Century Park East, Suite 1700
15          Los Angeles, California 90067
            nbach@manatt.com
16          adgonzelez@manatt.com

17

18

19

20

21

22

23

24

25
```



MARIA KELLING                                    February 15, 2024
TRACY ANDERSON V. MEGAN ROUP                                    32

1      Q.   Do you have any equity in the company?

2      A.   No.

3      Q.   Have you ever asked for any equity in the

4   company?

5      A.   No.                                          10:45

6      Q.   Have you ever been offered any?

7      A.   No.

8      Q.   Do you have any other sources of income?

9      A.   No.

10     Q.   How would you describe the business of the    10:45

11  company of Tracy Anderson Mind and Body?

12     A.   Can you ask that any different way?

13     Q.   Sure.

14          In what industry does the company operate?

15     A.   Wellness.                                     10:45

16     Q.   Does the wellness industry encompass

17  fitness, in your view?

18     A.   Yeah.

19     Q.   What else does wellness encompass, in your

20  view?                                                 10:45

21     A.   Mental health, emotional health, internal

22  health, physical health.

23     Q.   Anything else that the wellness community

24  encompasses, in your view, or is that a fair

25  description?                                          10:46



1    A.    I think that's a fair description.

2    Q.    Do you have an understanding of who the

3  company's competitors are?

4    A.    Yes.

5    Q.    And who do you understand those competitors    10:46

6  to be?

7    A.    I believe the competitors are those that

8  selling products that are mimicking what we're

9  offering.

10    Q.    So, for example, which customers -- excuse    10:46

11  me -- which companies do you have in mind?

12    A.    Well, The Sculpt Society.

13    Q.    How long have you considered The Sculpt

14  Society to be a competitor of the company?

15    A.    For a few years.    10:47

16    Q.    Approximately when did you believe that The

17  Sculpt Society became a competitor?

18    A.    I would say I'm not exactly sure, maybe

19  2018.

20    Q.    When was the first time you had heard about    10:47

21  The Sculpt Society?

22    A.    I don't remember if it was exactly 2017 or

23  2018.

24    Q.    Other than The Sculpt Society, who are the

25  other competitors of the company?    10:47



MARIA KELLING                                    February 15, 2024
TRACY ANDERSON V. MEGAN ROUP                                    37

1   look very similar to the footage that we've put out.

2       Q.    That the company's released publicly?

3       A.    Yes.

4       Q.    Has the company ever taken legal action

5   against any of the five entities that you                10:51

6   just mentioned Resnick; the studio in Turkey, Anna

7   Kaiser, Body By Simone or Annieconcepts?

8       A.    Yes.

9       Q.    Which?

10      A.    I know I believe Body By Simone, Resnick, I    10:51

11  can't remember everything else.

12      Q.    What was the legal action taken against

13  Body By Simone?

14      A.    Cease and desist letters.

15      Q.    One letter or multiple letters?            10:52

16      A.    I can't remember.

17      Q.    When did the company send its first cease

18  and desist letter to Body By Simone?

19      A.    I can't remember.

20      Q.    Was it before or after this lawsuit was    10:52

21  filed in approximately July of 2022?

22      A.    Before.

23      Q.    About how many years before, would you say?

24      A.    I really do not remember.

25      Q.    Was it before the pandemic?              10:52



MARIA KELLING
TRACY ANDERSON V. MEGAN ROUP

February 15, 2024
38

1        A.    Yes.

2        Q.    Ten years before the pandemic?

3        A.    I don't remember.

4        Q.    What was the result of that cease and

5    desist letter that was sent by the company to Body                10:52

6    by Simone?

7        A.    I'm not --

8              MS. DURHAM:   Objection.   Vague.

9              THE WITNESS:   I'm not sure.

10   BY MR. BACH:                                                       10:52

11       Q.    Did the company ever file a lawsuit against

12   Body by Simone?

13       A.    Not to my knowledge.

14       Q.    Did the company ever file an arbitration

15   against Body by Simone?                                            10:53

16       A.    Not to my knowledge.

17       Q.    Did Body by Simone ever respond to the

18   cease and desist letter from the company?

19       A.    I'm not sure.

20       Q.    Did Body by Simone ever alter its                       10:53

21   operations in any way in response to the company's

22   cease and desist letter, to the best of your

23   knowledge?

24       A.    I'm unsure.

25       Q.    You're not aware of anything that Body by               10:53



1    Simone did to alter its behavior after the cease and

2    desist letter, correct?

3            MS. DURHAM:  Objection.  Lacks foundation.

4            THE WITNESS:  Correct.

5    BY MR. BACH:                                    10:53

6        Q.   For -- you said the company also took

7    action -- legal action against Resnick; is that

8    right?

9        A.   Yes.

10       Q.   What was the action?                   10:53

11       A.   Cease and desist.

12       Q.   Do you know when that cease and desist

13   letter was sent to Resnick?

14       A.   I don't remember.

15       Q.   Was it before the pandemic?            10:54

16       A.   I don't recall if it was before or after

17   the pandemic.

18       Q.   You think it was after the cease and desist

19   letter that the company sent to Body by Simone?

20       A.   Yes.                                    10:54

21       Q.   Do you think it was before this lawsuit?

22       A.   Yes.

23       Q.   How many cease and desist letters were sent

24   on behalf of the company to Resnick?

25       A.   I can't remember.                       10:54



1  action that Resnick took to alter its behavior?

2         MS. DURHAM:  Objection.  Asked and answered.

3         THE WITNESS:  I don't recall what she did or didn't

4  do.

5  BY MR. BACH:                                          10:56

6     Q.   You have no understanding of that here

7  today, correct?

8     A.   Correct.

9     Q.   Did -- has the company entered into any

10  settlements with either Body by Simone or Resnick?    10:56

11     A.   Not to my knowledge.

12     Q.   Are there any other agreements between Body

13  by Simone and Resnick and the company other than

14  Simone's employment agreement?

15     A.   Not to my knowledge.                          10:56

16     Q.   Other than Body by Simone and Resnick, has

17  the company sent cease and desist letters to any of

18  its other former trainers or competitors?

19     A.   Yes.

20     Q.   To whom?                                      10:56

21     A.   Like you're asking for a complete list?

22     Q.   I'm asking for those that you can remember

23  here, yes.

24     A.   We've sent, as I mentioned before, to I

25  believe the studio in Turkey.  We've sent them to    10:57



MARIA KELLING                                                February 15, 2024
TRACY ANDERSON V. MEGAN ROUP                                              43

1    other former employees.  We've sent them to, you

2    know, other people that we've been made aware of

3    that are mimicking what Tracy's created.

4        Q.   Has the company ever filed a lawsuit

5    against any of those other recipients of cease and          10:57

6    desist letters?

7        A.   Not to my knowledge.

8        Q.   Has the company ever filed an arbitration

9    proceeding against any of those other recipients of

10   cease and desist letters?                                    10:57

11       A.   Not to my knowledge.

12       Q.   Do you know why?

13            MS. DURHAM:  Objection.  Calls for attorney-client

14   communication.  Instruct the witness not to answer.

15   BY MR. BACH:                                                 10:57

16       Q.   Do you have any understanding separate and

17   apart from any conversations with any attorneys?

18       A.   Excuse me?

19       Q.   Do you have any understanding of why the

20   company has never sued any of its other competitors         10:57

21   that you've mentioned separate and apart from your

22   conversations with legal counsel?

23       A.   No.

24       Q.   So is it your understanding that the first

25   legal action that the company ever took against any         10:58



1   of its competitors or former trainers was against

2   Ms. Roup?

3            MS. DURHAM:  Objection.  Mischaracterizes

4   testimony.

5            THE WITNESS:  I'm sorry.  Can you say that again?   10:58

6   BY MR. BACH:

7       Q.   Is it your understanding that the first

8   lawsuit that the company ever filed against any of

9   its competitors or former trainers was

10  against Ms. Roup and her company?                          10:58

11      A.   I think so.

12      Q.   Has the company filed any lawsuits against

13  any competitors or former trainers since filing this

14  lawsuit against Ms. Roup?

15      A.   Not to my knowledge.                              10:58

16      Q.   Who are the other former employees that you

17  were referring to a minute ago who have received

18  cease and desist letters from the company?

19      A.   Oh, Anna Kaiser, Whitney Hoover, I can't

20  recall everybody at this time.                             10:59

21      Q.   You don't have to give me everybody.  Who

22  else do you recall right now?

23      A.   I'm not sure other than the names that I've

24  given you already.

25      Q.   For Anna Kaiser, did the company -- strike        10:59



MARIA KELLING                                  February 15, 2024
TRACY ANDERSON V. MEGAN ROUP                              45

```
 1   that.
 2        When did the company send a cease and
 3   desist letter to Anna Kaiser?
 4        A.   I don't recall.
 5        Q.   Was it before the pandemic?          10:59
 6        A.   Yes.
 7        Q.   Was it five years before the pandemic?
 8        A.   Possibly.
 9        Q.   Was it fewer than five years before the
10   pandemic?                                      10:59
11        A.   I don't recall.
12        Q.   Around five years before the pandemic.
13   Does that sound like the right timeframe?
14        A.   I'm unsure.
15        Q.   How many cease and desist letters did the  11:00
16   company send to Anna Kaiser?
17        A.   I don't know.
18        Q.   Were you involved in the preparation of
19   that letter?
20        A.   I don't believe so.                  11:00
21        Q.   Who instructed the company to send that
22   cease and desist letter?
23        A.   I'm not sure.
24        Q.   Would it have been Tracy?
25        A.   I don't know.                        11:00
```



MARIA KELLING                                      February 15, 2024
TRACY ANDERSON V. MEGAN ROUP                                    46

1      Q.   Was it you?

2      A.   No.

3      Q.   What was the result of the cease and desist

4   letter that was sent to Anna Kaiser?

5      A.   I'm not sure.                              11:00

6      Q.   Did Ms. Kaiser ever respond?

7      A.   I don't know.

8      Q.   Did the company ever enter into any

9   settlement agreement with Ms. Kaiser?

10     A.   Not to my knowledge.                       11:00

11     Q.   Did Ms. Kaiser ever alter her operations in

12   any way in response to the cease and desist letter?

13     A.   I'm not sure.

14     Q.   Not to your knowledge, correct?

15     A.   Not to my knowledge.                       11:00

16     Q.   The cease and desist letter that the

17   company sent to Whitney Hoover, that was another

18   former employee of the company, correct?

19     A.   Yes.

20     Q.   When do you recall that that cease and      11:01

21   desist letter was sent?

22     A.   Before the pandemic.

23     Q.   Approximately how long before the pandemic?

24     A.   I really -- I don't know.

25     Q.   Were you involved in the preparation of     11:01



MARIA KELLING                                              February 15, 2024
TRACY ANDERSON V. MEGAN ROUP                                            74

```
 1   you see that?
 2       A.   Yes, I see that.
 3       Q.   Did you review those videos before the
 4   filing of the complaint?
 5       A.   I believe so.                                    11:48
 6            MR. BACH:  I'm going to introduce what will be
 7   marked as Exhibit 61.
 8            (Exhibit No. 61 identified.)
 9            MR. BACH:  This is going to be on the screen as
10   well, Counsel.                                            11:49
11   BY MR. BACH:
12       Q.   This is a video, Bates stamped -- that was
13   produced by defendants in this action, Bates stamped
14   MR-TSS_008463 entitled 5 Minute Dancing Arms 7 with
15   Arielle Charnas.                                          11:49
16            Have you seen this video before do you
17   believe?
18       A.   I think so.
19       Q.   Why don't we watch this video, and I'd like
20   you to tell me which parts of the video were created     11:49
21   using confidential information that Roup learned,
22   accessed, or was exposed to while employed at TANY.
23            (Video played.)
24   BY MR. BACH:
25       Q.   I'm stopping it after one minute.  Have you     11:50
```



1    seen any parts of this video so far that used

2    confidential information of the company?

3        A.    Yes.

4        Q.    What parts?

5        A.    The way she's starting her workout or    11:51

6    movement using free arms or what is being called

7    dancing arms, moving rhythmically to music, the

8    positioning of some of her fingers and her hands and

9    the rotations of her arms.

10       Q.    That's confidential information to the    11:51

11   company?

12       A.    Yes.

13       Q.    Why?

14       A.    Because that is specifically designed and

15   created by Tracy to do in a certain way.            11:51

16       Q.    Tracy performs those movements for her

17   customers, correct?

18       A.    Correct.

19       Q.    Those movements are contained in videos

20   that are streamed on the TS -- excuse me -- on the   11:51

21   company's website, correct?

22       A.    Correct.

23       Q.    And also contained in the company's DVDs,

24   correct?

25       A.    Correct.                                   11:52



MARIA KELLING                                February 15, 2024
TRACY ANDERSON V. MEGAN ROUP                              76

1        Q.   So they're disclosed to the public,

2    correct?

3        A.   Correct.

4        Q.   Do you understand that confidential

5    information includes materials that are disclosed to    11:52

6    the public?

7        A.   Excuse me?

8        Q.   Yeah.

9             Is it your understanding that confidential

10   information can include materials that are publicly     11:52

11   disclosed?

12       A.   No.

13       Q.   Is there anything else that you saw in that

14   first minute that you believe is confidential to the

15   company?                                                11:52

16       A.   That I saw in the video?

17       Q.   Correct.

18       A.   Not I can think of.

19       Q.   Okay.  Let's continue to play.

20            (Video played.)                                11:52

21   BY MR. BACH:

22       Q.   I'll stop it there at two minutes.  Have

23   you seen anything else in this last minute that you

24   believe is confidential information proprietary to

25   the company?                                            11:53



MARIA KELLING                                February 15, 2024
TRACY ANDERSON V. MEGAN ROUP                              77

1          MS. DURHAM:  Objection.

2          THE WITNESS:  I believe it's what you can't see in

3    the video that is confidential to the company.

4    BY MR. BACH:

5       Q.   What is that?                              11:53

6       A.   The reason why Megan is moving the way that

7     she's moving.

8       Q.   The ideas behind her movements, correct?

9       A.   Yeah.  Yes.

10      Q.   Do you believe that -- well, strike that.     11:54

11           Is the customer who might be viewing this

12    video receiving those ideas from Ms. Roup in this

13    video?

14           MS. DURHAM:  I'm sorry.  Can I hear that question

15    back?                                             11:54

16           (Record read.)

17           MS. DURHAM:  Objection.  Lacks foundation.  Also

18    vague and ambiguous.

19           THE WITNESS:  Indirectly, they're getting some of

20    those ideas unknowingly.                          11:54

21    BY MR. BACH:

22      Q.   Looking at this video, you have no way of

23    knowing what Ms. Roup is thinking about when she is

24    performing these movements, correct?

25      A.   Correct.                                   11:55



MARIA KELLING                                          February 15, 2024
TRACY ANDERSON V. MEGAN ROUP                                      78

1       Q.    You don't know what idea she has in her

2    head when she's performing these movements, correct?

3       A.    Correct.

4       Q.    You don't know if she is thinking about the

5    company's ideas when she's performing these              11:55

6    movements, correct?

7       A.    Correct.

8       Q.    Okay.  So how do you know, sitting here,

9    that she is using the confidential ideas of the

10   company?                                                 11:55

11      A.    I believe she's using the confidential

12   ideas of the company because she's mimicking what

13   she learned by working with our company.

14      Q.    So is it the company's position that a

15   former trainer could be in breach of their             11:55

16   employment agreement if they perform movements that

17   the company, in its view, believes reflect ideas

18   that the company created?

19      A.    Can you ask that question again, please?

20          (Record read.)                                    11:56

21          MS. DURHAM:  Objection.  Compound.  Poses an

22   incomplete hypothetical.

23          THE WITNESS:  I think it would have to do with the

24   intent behind why that former employee is doing those things.

25   BY MR. BACH:                                             11:56



MARIA KELLING                                                February 15, 2024
TRACY ANDERSON V. MEGAN ROUP                                              84

```
 1   MR-TSS_008462 entitled 10 Minute Dancing Arms.

 2           THE REPORTER:  That's Exhibit 62.

 3           MR. BACH:  Thank you.

 4           (Exhibit No. 62 identified.)

 5           MR. BACH:  Exhibit 62.                          12:04

 6           (Video played.)

 7   BY MR. BACH:

 8       Q.   Ms. Kelling, I'm going to ask you a similar

 9   question, we'll watch a little bit of this video,

10   and I'd like you to tell me what, if anything,         12:04

11   reflects confidential information of the company's.

12           (Video played.)

13   BY MR. BACH:

14       Q.   We'll stop here at one minute, one second.

15   Have you seen anything in this exhibit so far that     12:05

16   contains confidential information of the company?

17           MS. DURHAM:  Objection.  Form.

18           THE WITNESS:  Again, I believe it's what's not seen

19   in the video.

20   BY MR. BACH:                                           12:05

21       Q.   So it's the ideas behind the movements that

22   Ms. Roup is performing; is that correct?

23       A.   Correct.

24       Q.   Anything else?

25       A.   No.                                           12:05
```



MARIA KELLING                                           February 15, 2024
TRACY ANDERSON V. MEGAN ROUP                                          86

```
 1  BY MR. BACH:

 2      Q.   Yes.

 3      A.   The theme was to bring what our studios

 4  provided to clients -- to people at home that

 5  couldn't access the studios.                        12:07

 6      Q.   And do you know why the word Metamorphosis

 7  was chosen?

 8      A.   No, I don't.

 9      Q.   What is your understanding of why the word

10  Metamorphosis is used for this particular series of  12:07

11  videos?

12          MS. DURHAM:  Objection.  Lacks foundation.

13          THE WITNESS:  I'm not sure, but understanding what

14  metamorphosis is, I would believe it would be to help people

15  continue to grow in their own personal journey.      12:07

16  BY MR. BACH:

17      Q.   A process of change, correct?

18      A.   Yes.

19      Q.   That change could be physical, emotional,

20  spiritual, correct?                                 12:08

21      A.   Correct.

22      Q.   Any other types of change that you think

23  metamorphosis might refer to here?

24      A.   Not that I can think of at this time.

25      Q.   Why don't we watch a little more of this  12:08
```



MARIA KELLING                                      February 15, 2024
TRACY ANDERSON V. MEGAN ROUP                                      87

1    video.

2              (Video played.)

3    BY MR. BACH:

4       Q.    We'll stop here at two minutes.   Did you

5    see anything different in this last minute that we          12:09

6    reviewed here that contains any other different

7    confidential information of the company?

8              MS. DURHAM:   Objection.   Mischaracterizes

9    testimony.

10             THE WITNESS:   No, it's just a continuation of    12:09

11   before.

12   BY MR. BACH:

13      Q.    So, again, you believe that this reflects

14   the ideas -- the proprietary ideas of the company in

15   Ms. Roup's movements, correct?                              12:09

16      A.    Correct.

17      Q.    Any other confidential information that you

18   see exhibited here?

19      A.    Not that you can see.

20      Q.    If you were Ms. Roup, how would you know           12:09

21   whether by performing certain movements, you are

22   using the company's confidential information?

23      A.    If I were Ms. Roup, I would know because I

24   had gone through the company's training process and

25   worked as a trainer for the company.                        12:10



MARIA KELLING                                          February 15, 2024
TRACY ANDERSON V. MEGAN ROUP                                        88

1      Q.   Isn't Ms. Roup supposed to unlearn what she

2   learned from her time at the company, in your view?

3      A.   I'm sorry, is she supposed to?

4      Q.   Is she supposed to unlearn what she learned

5   at the company, in your view, in order to operate in     12:10

6   this industry?

7      A.   No.

8      Q.   She's just supposed to not have that

9   particular idea in her mind when she's performing

10  exercises, correct?                                       12:10

11         MS. DURHAM:   Objection.   Vague.

12         THE WITNESS:   She's --

13         MS. DURHAM:   Poses an incomplete hypothetical.

14         THE WITNESS:   She's supposed to create her own

15  ideas and perform her own ideas.                          12:10

16  BY MR. BACH:

17     Q.   How do you know she's not performing her

18  own ideas here?

19     A.   I don't know, but from what I can see, I

20  believe she is using some ideas that she got from         12:11

21  the company.

22     Q.   Again, you don't know what's in her mind

23  when she's performing these videos, correct?

24     A.   Correct, I don't know what's in her mind.

25     Q.   Do you believe you've watched this           12:11



MARIA KELLING                                    February 15, 2024
TRACY ANDERSON V. MEGAN ROUP                                    96

1    without the attorneys.

2        Q.   Were you talking to your attorneys about

3    Ms. Roup launching the app in 2019?

4             MS. DURHAM:   I'm just going to --

5             MR. BACH:   It's just a yes or no.            12:19

6             MS. DURHAM:   If it's yes or no, that's fine, but

7    don't disclose any communications, please.

8             THE WITNESS:   I don't remember.

9    BY MR. BACH:

10       Q.   Approximately when was the first time you       12:20

11   had a conversation with the company's attorneys

12   about Ms. Roup's videos on her app?

13       A.   I don't know when that would have taken

14   place.

15       Q.   Do you think it would have been before the    12:20

16   pandemic began?

17       A.   Possibly.

18       Q.   During the pandemic, did you have those

19   discussions?

20       A.   Possibly.  I don't really remember.           12:20

21       Q.   Of all of the approximately 30 to 50 The

22   Sculpt Society videos that you ever watched, in

23   whole or in part, is there -- is it your view that

24   all such videos contain the company's confidential

25   information?                                            12:20



MARIA KELLING                                February 15, 2024
TRACY ANDERSON V. MEGAN ROUP                          97

1        A.    Yes.

2              MS. DURHAM:  Objection.  Mischaracterizes

3    testimony.

4              THE WITNESS:  I think they do.

5    BY MR. BACH:                                    12:20

6        Q.    And, again, that confidential information

7    is that they reflect the ideas and reasoning behind

8    the company's methods and movements, correct?

9        A.    Correct.

10       Q.    Anything else?                         12:21

11       A.    Not that I can think of.

12       Q.    In your view, do all of The Sculpt Society

13   videos that you've ever watched, in whole or in

14   part, contain material that is in the company's

15   copyrighted DVDs?                               12:21

16       A.    I believe so.

17       Q.    What is the material in the company's

18   copyrighted DVDs that is reflected in those TSS

19   videos that you've watched?

20       A.    The different sequence of movements that  12:21

21   are put together.

22       Q.    And including the ideas that those

23   movements represent, correct?

24       A.    Correct.

25       Q.    Would you characterize Ms. Roup as an    12:21



MARIA KELLING                                          February 15, 2024
TRACY ANDERSON V. MEGAN ROUP                                        108

```
 1   question pending.

 2         THE WITNESS:  In the choreographed movements

 3   and sequences that we have in our videos.

 4   BY MR. BACH:

 5      Q.   Other than the sequence of movements in the        12:35

 6   Anderson videos that is the subject of the copyright

 7   claim, are there any other aspects of those videos

 8   that you believe have been copied by the defendants'

 9   works?

10      A.   Can you say that again, please?                    12:35

11      Q.   Other than the physical movements and

12   sequences of physical movements in the DVDs that

13   make up your copyright claim, are there any other

14   aspects of TSS's videos that infringe your works?

15         MS. DURHAM:  Objection.  Vague.  Compound.  Calls    12:36

16   for a legal conclusion.  Also poses an incomplete

17   hypothetical.

18         THE WITNESS:  In terms of our copyright?

19   BY MR. BACH:

20      Q.   Yes.                                               12:36

21      A.   Not that I can think of at this time.

22      Q.   The company's not making a claim that the

23   background of the videos is identical or

24   substantially similar to the background in

25   Ms. Anderson's videos, for example, correct?          12:36
```



1          MS. DURHAM:  Let me put my objection on the record.

2    So objection.  Calls for a legal conclusion.  Vague.

3    Compound.  Poses an incomplete hypothetical.

4          THE WITNESS:  Correct.

5    BY MR. BACH:                                              12:36

6       Q.   You're not aware that Ms. Roup has ever

7    taken the actual video footage from your DVDs and

8    copied it and shown it anywhere else, correct?

9          MS. DURHAM:  Objection.  Lacks foundation.

10         THE WITNESS:  I don't know if she has or not.     12:37

11   BY MR. BACH:

12      Q.   You've never seen that, correct?

13      A.   Correct.

14      Q.   That doesn't make up any part of your

15   copyright claim as you understand it, correct?         12:37

16      A.   Correct.

17      Q.   Do you believe that Defendants' videos are

18   equally problematic, whether it's Ms. Roup

19   performing the sequences or any of her employees or

20   trainers?                                               12:37

21      A.   Yes.

22      Q.   Why is that?

23      A.   Because I believe Ms. Roup is teaching them

24   or instructing them on what to do.

25      Q.   And she's telling them the movements to       12:37



MARIA KELLING                                    February 15, 2024
TRACY ANDERSON V. MEGAN ROUP                                  113

1    Q.   How would you describe the Tracy Anderson

2    Method or the T.A. Method?

3    A.   It's a sequence -- sequences of different

4    movements put together to create a connection with

5    your mind and body through movement.                    12:42

6    Q.   Is that a fair encapsulation of what the

7    T.A. Method is?

8    A.   I think so.

9    Q.   Is the T.A. Method a researched and a

10   results proven fitness methodology?                      12:42

11   A.   Yes.

12   Q.   That's what it says in the biography of the

13   Tracy Anderson Instagram account, correct?

14   A.   I believe so.

15   Q.   Is the T.A. Method a revolutionary fitness      12:42

16   program designed for strategic muscle design?

17   A.   It can be.

18   Q.   That's from the Tracy Anderson website,

19   correct?

20   A.   I think so.                                          12:42

21   Q.   Is the goal of the T.A. Method to

22   consistently create balance where there is imbalance

23   in the body while preserving physical longevity?

24   A.   One of them.

25   Q.   That's one of the goals of the T.A. Method,      12:42



1  they enjoy about the T.A. Method other than what

2  you've mentioned already?

3      A.   They enjoy sweating.  They enjoy moving to

4  music.  There are many different people that do The

5  Method.  There could be that many reasons why          12:44

6  they're doing it.

7      Q.   In terms of reasons that have been

8  expressed to you, is that all you can think of right

9  now, or are there any other reasons why people have

10  told you they attend T.A. Method classes?             12:44

11      A.   They enjoy the health benefits.

12      Q.   What else?

13      A.   I think that's pretty much it.

14      Q.   Nothing else you can think of, sitting here

15  today, correct?                                        12:45

16      A.   Correct.

17      Q.   Is it fair to say that the T.A. Method is a

18  process for improving well-being in your clients?

19      A.   I'm sorry.  Can you say that again?

20      Q.   Yeah.                                         12:45

21          Is it fair to say that the T.A. Method is a

22  process for improving well-being in your clients?

23      A.   Sure.  Yes.

24      Q.   Would you agree that the T.A. Method is a

25  system designed to improve health of your clients?     12:45



MARIA KELLING                                    February 15, 2024
TRACY ANDERSON V. MEGAN ROUP                              122

1      Q.    Does it help clients stay on beat or in

2   rhythm?

3      A.    Sure.

4      Q.    In T.A. classes that might use similar

5   movements to other T.A. classes, is it always the      12:53

6   same music that accompanies those sequences?

7      A.    No.

8      Q.    The music changes even if the sequences are

9   similar?

10     A.    Yes.                                           12:54

11     Q.    Why is that?

12     A.    To allow different opportunities for

13   different expression.

14     Q.    To get different results by working the

15   body in different ways as well?                        12:54

16     A.    No, I don't think that's it.

17     Q.    It's about expression to you?

18     A.    The music, yes.

19     Q.    Does different types of music result in a

20   different type of physical workout for T.A. clients?   12:54

21     A.    It can.

22     Q.    How so?

23     A.    Well, if you put a faster song on, maybe

24   you're moving faster.

25     Q.    And you might select a faster song for that    12:54



1           THE REPORTER:  Counsel, are we getting close to a

2  break?

3           MR. BACH:  Yes.  We can take one now.

4           THE VIDEOGRAPHER:  The time 1:03 p.m., and we are

5  off the record.                                           01:03

6           (Lunch recess.)

7           THE VIDEOGRAPHER:  The time is 2:09 p.m., and we

8  are back on the record.

9  BY MR. BACH:

10      Q.   Ms. Kelling, have you ever said at any time       02:09

11   that the T.A. Method is meant to be performed as a

12   performance art?

13      A.   I think so.

14      Q.   When?

15      A.   Possibly during training when I'm training       02:09

16   other trainers how to lead the content.

17      Q.   Have you ever said that publicly, to your

18   knowledge?

19      A.   Before leading classes, we talk a lot about

20   performing the moves, but I don't know if I've said     02:10

21   it in that exact way.

22      Q.   You don't ever recall having publicly

23   stated that the T.A. Method is meant to be performed

24   as an artwork, correct?

25      A.   No, I don't remember that.                       02:10



MARIA KELLING                                                    February 15, 2024
TRACY ANDERSON V. MEGAN ROUP                                                  132

1     Q.   And you don't recall ever having seen the

2   company advertise the fact that its services are

3   meant to be performed as a performance art, correct?

4     A.   Correct.

5     Q.   Have you ever worked with any                         02:10

6   choreographers?

7     A.   Yes.

8     Q.   Who?

9     A.   I've worked with Ana Maria Alvarez of

10  Contra-Tiempo.  In college, I worked with different      02:10

11  visiting artists that came for the dance program.

12    Q.   Where did you attend college?

13    A.   Arizona State University.

14    Q.   Did you get a degree?

15    A.   Yes, I did.                                            02:11

16    Q.   What was that degree?

17    A.   Bachelor of Fine Arts and Dance

18  Choreography.

19    Q.   Have you ever worked as a choreography?

20    A.   Yes.                                                   02:11

21    Q.   When was that?

22    A.   In the company Contra-Tiempo, we

23  collaborate with different choreographers to create

24  the content and the material, and I was a dance

25  teacher, so I was creating my own choreography for      02:11



1           MS. DURHAM:  Objection.  Vague.

2           THE WITNESS:  Professional dancers have come to the

3    studio to take class or, you know, work with us.

4    BY MR. BACH:

5           Q.   Have you ever trained any of those                02:12

6      professional dancers to perform the T.A. Method

7      before an audience?

8           MS. DURHAM:  Objection.  Vague.  Also

9    mischaracterizes testimony as to T.A. Method.

10          THE WITNESS:  I mean, to me, if they're in class        02:13

11   and they're a professional dancers and we're asking people to

12   perform the movement that we're doing and the other clients

13   are there watching them, that would be them performing in

14   front of an audience.

15   BY MR. BACH:                                                   02:13

16          Q.   Other than in the context of a T.A. class,

17     have you ever trained any professional dancers to

18     perform any T.A. Method movements specifically as a

19     performance art?

20          A.   No.                                                02:13

21          MR. BACH:  I'm going to introduce a document which,

22   again, has probably been previously marked, but we're going

23   to give it a new number here today.

24          THE REPORTER:  Which is 63.

25          MR. BACH:  Exhibit 63.                                  02:14



MARIA KELLING                                          February 15, 2024
TRACY ANDERSON V. MEGAN ROUP                                        142

1    BY MR. BACH:

2        Q.   Can you point to any instances of Ms. Roup

3    using non-public confidential trainer materials

4    since she left the company?

5            MS. DURHAM:   Objection.   Asked and answered.        02:24

6            THE WITNESS:   Outside of -- I mean, I couldn't say

7    right now specifically what she used.

8    BY MR. BACH:

9        Q.   You don't have any such example in mind,

10   sitting here today, correct?                                  02:25

11           MS. DURHAM:   Objection.   Asked and answered.

12           THE WITNESS:   I mean, I would say that any of the

13   training materials we give our trainers are not public

14   regardless of whether they're performing it in the class

15   publicly.   The material that they're using are not made     02:25

16   public.

17   BY MR. BACH:

18       Q.   You're not aware of Ms. Roup using any such

19   materials after she left the company, correct?

20       A.   Correct.                                             02:25

21           MS. DURHAM:   Objection.   Mischaracterizes

22   testimony.

23           THE WITNESS:   I'm not sure what she has used or has

24   not used exactly.

25   BY MR. BACH:                                                  02:25



MARIA KELLING                                    February 15, 2024
TRACY ANDERSON V. MEGAN ROUP                                  144

1   how is the trainer supposed to know what movements

2   from which of the two sets of materials is

3   confidential and which is not confidential?

4       A.   I believe they would know based on

5   the contract that they signed that states that          02:27

6   training materials are confidential.  So regardless

7   of if they performed them publicly or not, it is

8   still a training material, which would be

9   confidential.

10      Q.   You're not aware of Ms. Roup ever using a      02:27

11  TANY training material after she left the company,

12  correct?

13          MS. DURHAM:  Objection.  Asked and answered.

14          THE WITNESS:  I don't know what she has or has not

15  used.                                                    02:27

16  BY MR. BACH:

17      Q.   Sitting here today, you can't point to any

18  such example, correct?

19          MS. DURHAM:  Objection.  Asked and answered.

20          THE WITNESS:  Correct.                           02:27

21  BY MR. BACH:

22      Q.   Are there more than 200,000 movements in

23  the T.A. Method?

24      A.   Possibly.  I know there's a lot.

25      Q.   Well, that's the position the company has      02:28



MARIA KELLING
TRACY ANDERSON V. MEGAN ROUP

February 15, 2024

150

1      Q.   Sitting here today, you can't identify any

2    of the more than 200,000 movements that are

3    allegedly part of the T.A. Method that have never

4    been performed publicly, correct?

5      A.   No.  Correct.                                    02:34

6      Q.   Are the company's trainers ever provided a

7    list to show them what is a specific confidential

8    material that they have received?

9           MS. DURHAM:  Objection.  Vague.

10          THE WITNESS:  They have it outlined in their   02:34

11   contract.

12   BY MR. BACH:

13     Q.   Other than this provision in their

14   contract, are the trainers ever provided with any

15   key, legend, or index to help them understand which  02:34

16   of the company's materials are confidential?

17          MS. DURHAM:  Objection.  Compound, vague.

18          THE WITNESS:  I'm not sure.  I can't think of

19   anything today.

20   BY MR. BACH:                                           02:34

21     Q.   You're not aware of any such list, sitting

22   here today, correct?

23     A.   Correct.

24     Q.   Hypothetically, it's possible that a

25   trainer is provided a workout write-up, and then two  02:35



MARIA KELLING                                    February 15, 2024
TRACY ANDERSON V. MEGAN ROUP                                  166

1  correct?

2          MS. DURHAM:  Objection.  Vague.

3          THE WITNESS:  I'm sorry.  Say that again.

4          (Record read.)

5          THE WITNESS:  I believe Ms. Roup contacted our          02:52

6  clients that she met through the Tracy Anderson company.  How

7  she got their contact information, I don't know.

8  BY MR. BACH:

9     Q.  You're not aware of her ever taking any

10  contact information from any confidential customer          02:53

11  lists, correct?

12          MS. DURHAM:  Objection.  Vague.  Mischaracterizes

13  testimony.  Asked and answered.

14          THE WITNESS:  I don't know how she got the contact

15  information.                                                02:53

16  BY MR. BACH:

17     Q.  You're not aware of any time when she took

18  confidential information from a confidential

19  customer list to contact a T.A. customer, correct?

20          MS. DURHAM:  Objection.  Vague.  Mischaracterizes     02:53

21  testimony.  Asked and answered.

22          THE WITNESS:  Correct.  I don't know how she

23  obtained contact information.

24  BY MR. BACH:

25     Q.  The company doesn't have any reason to              02:53



MARIA KELLING                                February 15, 2024
TRACY ANDERSON V. MEGAN ROUP                              167

1    believe that Ms. Roup took anything that it had

2    designated confidential when she left the company,

3    correct?

4            MS. DURHAM:  Objection.  Asked and answered.

5    Vague.                                                02:54

6            THE WITNESS:  I'm sorry.  Say that again, please.

7            (Record read.)

8            THE WITNESS:  I think the company does have reason

9    to believe that she took confidential information when she

10   left the company.                                     02:54

11   BY MR. BACH:

12       Q.   What are those reasons?

13       A.   The fact that she is mimicking our

14   expressive creative movement and creating a product

15   and selling it as her own.                            02:54

16       Q.   You're not aware of any materials that she

17   took with her when she left the company, correct?

18           MS. DURHAM:  Objection.  Mischaracterizes

19   testimony.  Asked and answered.

20           THE WITNESS:  I'm not aware of what material she --  02:54

21   what tangible material she took, but I do believe she has

22   taken confidential, proprietary information with her.

23   BY MR. BACH:

24       Q.   Proprietary ideas, correct?

25           MS. DURHAM:  So objection.  Mischaracterizes   02:55



 1  testimony.

 2          THE WITNESS:  The expression of the ideas and how

 3  to develop that expression is what she took.

 4  BY MR. BACH:

 5     Q.  You don't have any reason to believe --                  02:55

 6    well, strike that.

 7          The company does not have any documentation

 8    showing that Ms. Roup took confidential information

 9    from its systems when she left the company, correct?

10          MS. DURHAM:  Objection.  Vague.  Compound.  Also         02:55

11  mischaracterizes testimony.

12          THE WITNESS:  Correct.

13  BY MR. BACH:

14     Q.  In your view, what is the company's most

15    important confidential information?                            02:56

16          MS. DURHAM:  Objection.  Vague.

17          THE WITNESS:  I don't know if I could say the most

18  important thing.  I think it's all important.  I think it's

19  all necessary to deliver what our company is delivering.

20  BY MR. BACH:                                                     02:56

21     Q.  Do you have a belief as to what the

22    company's most valuable confidential information is?

23          MS. DURHAM:  Objection.  Vague as to valuable.

24          THE WITNESS:  I wouldn't know how to make one worth

25  more than another.  I think it's all valuable.                   02:57



MARIA KELLING                                      February 15, 2024
TRACY ANDERSON V. MEGAN ROUP                              209

1  BY MR. BACH:

2      Q.    You mentioned a moment ago that you thought

3  that she was taking everything from the beginning to

4  the end of the T.A. Works, correct?

5      A.    Yes.                                       03:57

6      Q.    What are some of those other things she was

7  taking from the beginning to the end other than the

8  movement and the sequence?

9      A.    The layout of her videos.

10     Q.    What do you mean the layout?               03:57

11     A.    How she starts her videos to how she ends

12  her videos.

13     Q.    How she introduces the workout?

14     A.    The movements that she starts with.

15     Q.    Such as?                                   03:57

16     A.    How she begins her videos with her dancing

17  arms.

18     Q.    What else?

19     A.    How she then would potentially add some

20  sort of resistance or weights or equipment, how she  03:57

21  then would go into working or what she potentially

22  is referring to as legs.

23     Q.    What else?

24     A.    Again, without seeing a specific video, I

25  can't really give you any more information other     03:58



220



11    Q.    How would a trainer reviewing this document

12    know whether that movement is or is not

13    confidential?

14    A.    It's part of the training materials which

15    we highlight in the restrictive covenants in the

16    contract.

17    Q.    Okay.  After that is performed -- that

18    movement is performed, it loses its confidential

19    nature, correct?

20    A.    The write-up and the training materials

21    wouldn't lose its confidential.

22    Q.    Well, the write-up is describing what is

23    publicly performed, correct?

24    A.    Correct.

25    Q.    I don't understand the difference between



1      Q.   Write-up.

2           Is the act of creating this write-up, the

3    methodology to create the write-up, is

4    that confidential to the company?

5      A.   If you're asking if anybody can write down

6    moves or dance sequences or exercises, then, no,

7    that's not confidential to our company.  Anybody can

8    write down whatever they want to write down.  ███

9    ████████████████████████████████████████████████

10   ██████████████████████████████████████████████████

11   ████████████████████████████████████████████████

12   ███████████████████████████████████████████████████

13   █████████████████████████████████████████████████

14   ████████████████████████████████████████████

15   █████████████████████████████████████████████████

16   █████████████████████████████

17     Q.   When did Ms. Roup ever use that information

18   that you described that process?

19     A.   She would have used it the entire six years

20   she was working for us.

21     Q.   When did she use it after she left the

22   company?

23   ███████████████████████████████████████████

24   ███████████████████████████████████████████████████

25   ██████████████████████████████████████████



223



ESQUIRE
DEPOSITION SOLUTIONS



252



15  BY MR. BACH:

16      Q.   Anything else?

17          MS. DURHAM:  Objection.  Asked and answered.

18          THE WITNESS:  I'm not sure I could answer it any

19  differently than I already have.

20  BY MR. BACH:

21      Q.   Nothing else comes to mind, correct?

22          MS. DURHAM:  Objection.  Asked and answered.

23          THE WITNESS:  She's replicating what she learned at

24  our company for her own business.

25  BY MR. BACH:


ESQUIRE
DEPOSITION SOLUTIONS

MARIA KELLING                                          February 15, 2024
TRACY ANDERSON V. MEGAN ROUP                                        253

1       Q.   Is there any other specific business

2    information in terms of documents that you're

3    referring to when you say that?

4           MS. DURHAM:  Objection.  Vague.  Asked and

5    answered.                                                 05:10

6           THE WITNESS:  She has all the documents in her

7    brain after working here for six years.  She would know

8    exactly what she learned.  She wouldn't need a tangible piece

9    of paper to remember everything that she had been trained on

10   for months and years and continued education, to the        05:10

11   bi-monthly staff meetings and teaching the content and

12   learning the content and seeing how it's delivered to her.

13   BY MR. BACH:

14      Q.   Anything else that falls under business

15   information?                                                05:10

16      A.   Not that I can think of at this time.

17      Q.   Next is customer lists, which we've

18   discussed previously.  Do you believe, sitting here,

19   that Ms. Roup misused customer lists of the company?

20      A.   I think she had access to customer lists.    05:11

21      Q.   Did she misuse customer lists?

22      A.   Potentially.

23      Q.   Are you aware of any instances occurring

24   misusing a customer list, sitting here today?

25      A.   Not that I can think of at this time.        05:11



```
 1                     C E R T I F I C A T I O N

 2

 3

 4

 5          I, ADELE C. FRAZIER, Certified Shorthand Reporter,

 6   License No. 9690, for the State of California, do hereby

 7   certify:

 8

 9          That, prior to being examined, the witness named in

10   the foregoing deposition, to wit, MARIA KELLING, was by me

11   duly sworn to testify the truth, the whole truth and nothing

12   but the truth;

13

14          That said deposition was taken down by me in shorthand

15   at the time and place therein named and thereafter reduced to

16   computer-aided transcription under my direction.

17

18          I further certify that I am not interested in the

19   event of the action.

20

21          Witness my hand the 22nd of February, 2024

22                                      Adele C. Frazier
                                 _____
23                                  ADELE C. FRAZIER, CSR, CRR, RMR, RPR

24

25
```



# EXHIBIT 4



ONLINE STUDIO    FREE TRIAL    MYMODE    HEARTSTONE    SIGN IN

**Fitness Pioneer**

Tracy Anderson's revolutionary method can give anyone—regardless of their genetic background—the physical and mental results they desire.

T. ANDERSON
02/16/2024
**EX 89**
Cheryl Asada, CSR 13496

## RESEARCHER. CONTENT DEVELOPER. FITNESS PIONEER.

Fitness pioneer Tracy Anderson's revolutionary method can give anyone—regardless of their genetic shape— strong, lean muscles and create balance where there is imbalance in their body. Tracy knows this, because she's done it to herself—and thousands of others with more than two decades of scientific research and content development.

Tracy has helped countless celebrities transform their bodies, including Gwyneth Paltrow, Jennifer Lopez, Tracee Ellis Ross, Alessandra Ambrosio, Victoria Beckham, Nicole Richie, Robert Downey Jr, Olivia Palermo, Hilary Rhoda, and even Miss Piggy. The beauty of the Tracy Anderson Method, though, is that people everywhere can get access to the same training, and the same perpetually evolving regimens as the red carpet's biggest stars, either in one of the Tracy Anderson studios—or in their own living rooms.

### THE GENESIS OF THE METHOD

After moving to New York City on a dance scholarship when she was 18, Tracy gained 40 pounds, which she could not shake from her 5' frame. While her mother is built like a ballerina, her father has battled obesity his entire life, and it was this genetic predisposition—coupled with hormonal shifts—that undermined all of her efforts at the ballet bar. Despite over-exercising and under-eating, she could not budge the weight. Despairing, she abandoned her dreams of becoming a professional dancer.

At the time she put her dance dreams on hold, Tracy was married to a pro basketball player who was participating in a rehabilitation league in Puerto Rico for his ailing back. There, she met a doctor who was attempting to ease the strain on the large muscle groups in athletes by strengthening the small, accessory muscles. The concept resonated deeply with Tracy, and she threw herself into her research: While the proof was crystal clear, activating the small muscles—and keeping them consistently challenged—was a huge task. Thanks to her background in movement, Tracy knew she could find a way.

### THE FORMATION OF THE METHOD

After years of research, self-testing, and refinement, Tracy had completely transformed her own body—and given shape to an early version of the Tracy Anderson Method. She took her findings to Indiana, where she assembled a test group of 100s of women. Over five years, she created



custom workouts and diets—which she overhauled every 10 days to keep the accessory muscles consistently engaged—and tracked and graphed her findings. While all of the women came to her with wildly different genetic backgrounds and body types, Tracy gave each and every one of them long, lean muscles.

In short, she had figured out how to harness and deliver the elusive dancer's body.

### THE BRAND EVOLUTION

In 2006, after the birth of her second child, Moses, Gwyneth Paltrow found herself lugging around an extra 20 pounds: While she had always been fit and health-conscious, she couldn't lose the weight, despite turning to all the exercise regimens that had worked for her in the past. While filming the first Iron Man movie in 2006, Gwyneth began working with Tracy—and lost 11 inches in the first 10 days. Stunned, Gwyneth determined that every woman should have access to Tracy's method, and the two became business partners.

Over the past two decades, the Tracy Anderson Method has grown and evolved, though the basic premise remains the same: Tracy continues to develop thousands of new routines to ensure that no client ever plateaus.



## Tracy's Evolution at a Glance
































# EXHIBIT 5

ONLINE STUDIO  FREE TRIAL  MYMODE  HEARTSTONE                                SIGN IN                 0

HOME / SHOP / DIGITAL DVD LIBRARY / METAMORPHOSIS / METAMORPHOSIS 90 DAY – GLUTECENTRIC



Tracy Anderson Products

# METAMORPHOSIS 90 DAY – GLUTECENTRIC

**$89.97**

Buy with **affirm** on orders over $150. Check your purchasing power

CHOOSE TYPE

| Choose an option |
|---|

| 1 |   ADD TO CART |

EACH METAMORPHOSIS WORKOUT IN THIS 90-DAY, BODY-SPECIFIC PROGRAM INCLUDES 30 MIN OF MUSCULAR STRUCTURE WORK AND 30 MINUTES OF CARDIO; THE MUSCULAR STRUCTURE COMPONENT CHANGES EVERY 10 DAYS. IN ADDITION, THERE'S A DYNAMIC EATING PLAN, A MEASURING TAPE, AND A CHART TO RECORD YOUR PROGRESS.

The revolutionary Metamorphosis by Tracy program is the at-home translation of the Tracy Anderson Method: It's the perfect solution for devotees who do not live near a Tracy Anderson studio. Through this intensive DVD series, you will defy your genetics and completely transform your body by doing the same workouts that are created for clients in the studios. And like in the studio, the routines change completely every 10 days to ensure that the accessory muscles are consistently challenged and that you never plateau. While the Tracy Anderson Method is far from easy, it's wildly effective and efficient—and that's as it should be. This program is one where the effort is commensurate with the results, where there are no empty promises. If you follow Tracy's lead, she will give you a body you never believed you could have.

Once you have completed Metamorphosis, you can enroll in Continuity, which ensures that your muscular structure workout will continue to evolve every 10 days.

PROGRAM DETAILS

Preview Video



There are four different incarnations of Metamorphosis by Tracy, all dedicated to a different body type (Glutecentric, Hipcentric, Abcentric, Omnicentric). Each version of this 90-day program includes four discs of muscular structure work (nine workouts in total, to transition through every 10 days) that's designed to target problem areas and address the imbalances of each specific body shape. In addition, there's a cardio component, a dynamic eating plan, and a measuring tape and chart to record your progress. Tracy asks that you to spend an hour a day, six days per week, exercising. Each workout includes 30 minutes of muscular structure work, and 30 minutes of cardio.

## WHATS YOUR BODY TYPE?

Tracy customizes workouts for specific body types. Our bodies aren't all the same, so our workouts shouldn't be either.

### ABCENTRIC

If you tend to gain weight in your midsection or have a thick waist, you are Abcentric. The Abcentric workouts are targeted to achieve a flat stomach with workouts concentrating on the lower stomach and back area.

### HIPCENTRIC

If you are pear-shaped, a small waist with larger hips and thighs, you are Hipcentric. Excess fat tends to store in your thighs so the workouts chosen for this program are aimed to pull in the hips, lifting your butt and getting rid of cellulite.

### GLUTECENTRIC

If you have a shapeless behind and it is your main area of concern, then the Glutecentric workouts would help you create the butt you want. Whether it is too flat or needs a lift, this program is geared to tone down any back fat, get rid of cellulite to gain a distinction between your lifted butt and thighs.

### OMNICENTRIC

If you gain weight all over, then you are Omnicentric. This body type sometimes makes it difficult to choose one specific area to focus on, so the workouts Tracy designed for the Omnicentric body are perfect – a full body-skin-tuck. Anything that is droopy or loose about your body will be awakened, firmed and lifted.

### SUGGESTED EQUIPMENT

One set of 3lb hand weights and one Method Mat are required for this program. We also suggest installing the CardioFly® Super G Floor for your cardio workouts. As you progress through Metamorphosis Continuity, which is the next phase of the program, you'll need a few additional tools.

HOW TO ACCESS YOUR DIGITAL PURCHASES & DASHBOARD

Visit the "Digital DVD Library" page after you have logged in.

# TRACY ANDERSON

| THE METHOD | SHOP | STUDIOS | WORKOUT PROGRAMS | COMMUNITY |
|---|---|---|---|---|
| The Method | Heartstone | Studio Membership | Online Studio | Instagram |
| Sign In | Heartstone Song | Private Personal Training | Free Trial | Facebook |

| Press | Gift Guide | Book a Class | HeartStone | Twitter |
|---|---|---|---|---|
| Blog | Tracy's Obsessions | New York City | MYMODE | YouTube |
| Move to Cure | Apparel | Los Angeles | MYMODE Elect | Spotify |
| Frequently Asked Questions | Beauty | Hamptons / Water Mill | Virtual Personal Training | Giphy |
| Contact Us | Workout Programs | Madrid | TA LIVE | |
| | Equipment | London | Teen Stream | |
| | Digital DVDs & Downloads | TA X THE COLONY PALM BEACH | Per4mance | |
| | Books and Magazines | | Digital Dashboard | |
| | Gift Cards | | DVDs & Downloads | |
| | Home | | Metamorphosis | |
| | Return Policy | | | |

© 2024 TRACY ANDERSON. ALL RIGHTS RESERVED.

PRIVACY POLICY / TERMS OF USE

# EXHIBIT 6





# Understanding Your **BODY** TYPE

Tracy customizes workouts for specific body types. Our bodies aren't all the same, so our workouts shouldn't be either.









### **OMNI**CENTRIC

If you gain weight all over, then you are Omnicentric. This body type sometimes makes it difficult to choose one specific area to focus on, so the workouts Tracy designed for the Omnicentric body are perfect – a full body-skintuck. Anything that is droopy or loose about your body will be awakened, firmed and lifted.

### **GLUTE**CENTRIC

If you have a shapeless behind and it is your main area of concern, then the Glutecentric workouts would help you create the butt you want. Whether it is too flat or needs a lift, this program is geared to tone down any back fat, get rid of cellulite to gain a distinction between your lifted butt and thighs.

### **HIP**CENTRIC

If you are pear-shaped, a small waist with larger hips and thighs, you are Hipcentric. Excess fat tends to store in your thighs so the workouts chosen for this program are aimed to pull in the hips, lifting your butt and getting rid of cellulite.

### **AB**CENTRIC

If you tend to gain weight in your midsection or have a thick waist, you are Abcentric. The Abcentric workouts are targeted to achieve a flat stomach with workouts concentrating on the lower stomach and back area.





your body by doing the same workouts that are created
studio, the routines change completely every 10 days t
consistently challenged and that you never plateau. Wh
easy, it's wildly effective and efficient—and that's as it sh
effort is commensurate with the results, where there are



T. ANDERSON
02/16/2024
**EX 83**
Cheryl Asada, CSR 13496

# EXHIBIT 7

ONLINE STUDIO  FREE TRIAL  MYMODE  HEARTSTONE                SIGN IN        

HOME / SHOP / DIGITAL DVD LIBRARY / DIGITAL DVDS & DOWNLOADS / MAT WORKOUT



Tracy Anderson Products

# MAT WORKOUT

**$29.95**

Buy with **affirm** on orders over $150. Check your purchasing power

CHOOSE TYPE

| Choose an option ⌄ |
|---|



| 1 |   ADD TO CART



This 60-minute DVD program—the first one that Tracy ever released to the public—offers an ideal introduction to the Tracy Anderson Method. Throughout the hour, you will activate and engage all of your accessory muscles, pull in your larger muscles, and transform your body.

A SPECIAL NOTE FROM TRACY

I am so proud that you have chosen to have me as your teacher and design your healthiest body. I have dedicated over a decade to creating the tools, movements, and prescriptions to keep your muscles awake and alert and be able to give you the body you desire. No one in fitness has ever created the collection of content that the Tracy Anderson Method delivers to you. With this program, your results will never plateau or fail you like any fitness programs you may have tried in the past. This is the first Tracy Anderson Method DVD and is a great introduction to the Method and the muscular structure workouts that you will be completing while on the Method. I recommend that you begin with this DVD first and that you use this workout to wake up your muscles, invigorate your body, and build up your stamina as you gain strong fundamentals in the Method. I offer a lot of advice in the commentary throughout the workout and it is a really comprehensive overview of the the Method and an excellent starting point for any level of ability. You should do this DVD for at least 1 month or until you have mastered the entire workout and feel you have gained strength to move to the next level. This DVD should be used in conjunction with the Tracy Anderson Method Trampoline Cardio DVD. The goal of all of my DVDs is for you to become strong enough to begin Metamorphosis, which is customized by your specific body type and what all of my clients do. This is where the magic begins but it is very beneficial to learn the basics of the Method with this mat DVD first. It is crucial that you don't stay on one of my programs too long because the

Preview Video

the workout stops working for you and we will lose the hard work and momentum towards your goals. I am so excited to begin this transformation with you!

Love,

Tracy

HOW TO ACCESS YOUR DIGITAL PURCHASES & DASHBOARD

Visit the "Digital DVD Library" page after you have logged in.

# TRACY ANDERSON

| THE METHOD | SHOP | STUDIOS | WORKOUT PROGRAMS | COMMUNITY |
|---|---|---|---|---|
| The Method | Heartstone | Studio Membership | Online Studio | Instagram |
| Sign In | Heartstone Song | Private Personal Training | Free Trial | Facebook |
| Press | Gift Guide | Book a Class | HeartStone | Twitter |
| Blog | Tracy's Obsessions | New York City | MYMODE | YouTube |
| Move to Cure | Apparel | Los Angeles | MYMODE Elect | Spotify |
| Frequently Asked Questions | Beauty | Hamptons / Water Mill | Virtual Personal Training | Giphy |
| Contact Us | Workout Programs | Madrid | TA LIVE | |
| | Equipment | London | Teen Stream | |
| | Digital DVDs & Downloads | TA X THE COLONY PALM BEACH | Per4mance | |
| | Books and Magazines | | Digital Dashboard | |
| | Gift Cards | | DVDs & Downloads | |
| | Home | | Metamorphosis | |
| | Return Policy | | | |

© 2024 TRACY ANDERSON. ALL RIGHTS RESERVED.

PRIVACY POLICY / TERMS OF USE

# EXHIBIT 8

ONLINE STUDIO   FREE TRIAL   MYMODE   HEARTSTONE



SIGN IN


0

HOME / SHOP / DIGITAL DVD LIBRARY / DIGITAL DVDS & DOWNLOADS / PERFECT DESIGN SERIES SET (I-III SEQUENCES)



Tracy Anderson Products

# PERFECT DESIGN SERIES SET (I-III SEQUENCES)

**$84.95**

Buy with **affirm** on orders over $150. Check your purchasing power

CHOOSE TYPE

| Choose an option ▾ |
| --- |

| 1 | ADD TO CART |
| --- | --- |

This three-disc/video set—which includes three 55 minute workouts at the beginner, intermediate, and advanced levels—is designed to create balance and strength in the body. Each workout includes a warmup, along with targeted sequences for the arms, legs, abs, thighs, and butt.

HOW TO ACCESS YOUR DIGITAL PURCHASES & DASHBOARD

Visit the "Digital DVD Library" page after you have logged in.

Preview Video



# TRACY ANDERSON

| THE METHOD | SHOP | STUDIOS | WORKOUT PROGRAMS | COMMUNITY |
| --- | --- | --- | --- | --- |
| The Method | Heartstone | Studio Membership | Online Studio | Instagram |
| Sign In | Heartstone Song | Private Personal Training | Free Trial | Facebook |
| Press | Gift Guide | Book a Class | HeartStone | Twitter |

| | Tracy's Obsessions | | MYMODE | ▶ Youtube |
|---|---|---|---|---|
| Blog | Apparel | New York City | MYMODE Fleet | Spotify |
| Move to Cure | Beauty | Los Angeles | Virtual Personal Training | Giphy |
| Frequently Asked Questions | Workout Programs | Hamptons / Water Mill | TA LIVE | |
| Contact Us | Equipment | Madrid | Teen Stream | |
| | Digital DVDs & Downloads | London | Per4mance | |
| | Books and Magazines | TA X THE COLONY PALM BEACH | Digital Dashboard | |
| | Gift Cards | | DVDs & Downloads | |
| | Home | | Metamorphosis | |
| | Return Policy | | | |

© 2024 TRACY ANDERSON. ALL RIGHTS RESERVED.

PRIVACY POLICY / TERMS OF USE

# EXHIBIT 9

ONLINE STUDIO    FREE TRIAL    MYMODE    HEARTSTONE    SIGN IN





HOME / SHOP / DIGITAL DVD LIBRARY / DIGITAL DVDS & DOWNLOADS / PRECISION TONING





Preview Video



Tracy Anderson Products

# PRECISION TONING

### $14.99

Buy with **affirm** on orders over $150. Check your purchasing power

CHOOSE TYPE

ONLINE ONLY

Clear

| 1 | ADD TO CART |

This DVD program focuses on empowering the smaller accessory muscles as they strengthen and support the larger ones throughout the body while you learn the basics of the Tracy Anderson Method. Designed to tone, strengthen and engage every muscle, this is a workout for all skill levels.

FEATURES

• WARMUP + ARMS (15 MIN) — At a beginner to intermediate level, Tracy verbally cues you through a warm up and various arm movements that get your body warm and ready for the workout that follows.

• ABS (15 MIN) — This ab mat workout will take you through different crunch and plank positions that utilize the many abdominal muscles for a lean, flat stomach.

• LEGS + THIGHS (15 MIN) — This standing, thigh and lower body workout uses a chair for balance support. Here you will be lead through a series of easy to follow movement patterns targeting your legs.

• BUTT (15 MIN) — Using strategic movements to target the glutes, Tracy verbally cues you through a series of lower body mat exercises with light ankle weights.

SUGGESTED EQUIPMENT

One set of 3lb hand weights, one set of 1-2 pound ankle weights, and one Method Mat.

HOW TO ACCESS YOUR DIGITAL PURCHASES & DASHBOARD

Visit the "Digital DVD Library" page after you have logged in.

# TRACY ANDERSON

| THE METHOD | SHOP | STUDIOS | WORKOUT PROGRAMS | COMMUNITY |
|---|---|---|---|---|
| The Method | Heartstone | Studio Membership | Online Studio | Instagram |
| Sign In | Heartstone Song | Private Personal Training | Free Trial | Facebook |
| Press | Gift Guide | Book a Class | HeartStone | Twitter |
| Blog | Tracy's Obsessions | New York City | MYMODE | YouTube |
| Move to Cure | Apparel | Los Angeles | MYMODE Elect | Spotify |

Frequently Asked Questions

Contact Us

Beauty

Workout Programs

Equipment

Digital DVDs & Downloads

Books and Magazines

Gift Cards

Home

Return Policy

Hamptons / Water Mill

Madrid

London

TA X THE COLONY PALM BEACH

Virtual Personal Training

TA LIVE

Teen Stream

Per4mance

Digital Dashboard

DVDs & Downloads

Metamorphosis

Giphy

© 2024 TRACY ANDERSON. ALL RIGHTS RESERVED.

PRIVACY POLICY / TERMS OF USE

# EXHIBIT 10



ONLINE STUDIO   FREE TRIAL   MYMODE   HEARTSTONE

SIGN IN


0


T. ANDERSON
02/16/2024
**EX 86**
Cheryl Asada, CSR 13496

HOME / SHOP / DIGITAL DVD LIBRARY / DIGITAL DVDS & DOWNLOADS / UNLEASH YOUR INNER POP STAR





Preview Video

Tracy Anderson Products

# UNLEASH YOUR INNER POP STAR

$29.95

Buy with *affirm* on orders over $150. Check your purchasing power

CHOOSE TYPE

Choose an option

[ 1 ]          ADD TO CART

This 50-minute dance cardio DVD includes sequences that are unlike anything you will find in Metamorphosis — they will further strengthen your mind and body connection and torch calories. In addition to a full tutorial with breakdown sessions of each dance, this program includes options to do all of the dances from beginning to end, following along from the front or the back.

FEATURES

• FULL DANCE VIEW FROM THE FRONT (30 MIN) — Here you will experience a full 30 minute dance cardio workout with Tracy performing the choreography in a non-stop pace facing the camera.

• FULL DANCE VIEW FROM THE BACK (30 MIN) — Here you will experience a full 30 minute dance cardio workout with Tracy performing the choreography in a non-stop pace facing away from the camera for an easy to follow view.

• DANCE COMBINATIONS 1 – 5 (10 MIN EACH) — In this segment Tracy will break down and teach each dance demonstrating the different patterns and choreography giving you the tools needed to perform the dances for a full cardio workout.

SUGGESTED EQUIPMENT

Install the CardioFly® Super G Floor

HOW TO ACCESS YOUR DIGITAL PURCHASES & DASHBOARD

Visit the "Digital DVD Library" page after you have logged in.

1/2

# TRACY ANDERSON

| THE METHOD | SHOP | STUDIOS | WORKOUT PROGRAMS | COMMUNITY |
|---|---|---|---|---|
| The Method | Heartstone | Studio Membership | Online Studio | Instagram |
| Sign In | Heartstone Song | Private Personal Training | Free Trial | Facebook |
| Press | Gift Guide | Book a Class | HeartStone | Twitter |
| Blog | Tracy's Obsessions | New York City | MYMODE | YouTube |
| Move to Cure | Apparel | Los Angeles | MYMODE Elect | Spotify |
| Frequently Asked Questions | Beauty | Hamptons / Water Mill | Virtual Personal Training | Giphy |
| Contact Us | Workout Programs | Madrid | TA LIVE | |
| | Equipment | London | Teen Stream | |
| | Digital DVDs & Downloads | TA X THE COLONY PALM BEACH | Per4mance | |
| | Books and Magazines | | Digital Dashboard | |
| | Gift Cards | | DVDs & Downloads | |
| | Home | | Metamorphosis | |
| | Return Policy | | | |

© 2024 TRACY ANDERSON. ALL RIGHTS RESERVED.
PRIVACY POLICY / TERMS OF USE

# EXHIBIT 11



**2,979**
posts

**1M**
followers

**2,478**
following

## Tracy Anderson
Health & wellness website
Founder and Creator of @tracyandersonstudio,
@mymodebytracyanderson,
@heartstonebytracyanderson
A researched and results-proven fitness
methodology.

🔗 linktr.ee/tracyanderson and 2 more

 Followed by hollywoodreporter

| Follow | Message | Email |  |

   

Heartstone    Online Studio    Podcast    TA Clean B...    OMB Expe

  

  

   

# EXHIBIT 12

**DLA PIPER LLP (US)**
GINA DURHAM (SBN 295910)
*gina.durham@us.dlapiper.com*
555 Mission Street
Suite 2400
San Francisco, California 94105-2933
Tel:    415.836.2500
Fax:   415.836.2501

JASON TAYLOR LUEDDEKE (SBN 279242)
*jason.lueddeke@us.dlapiper.com*
KRISTINA FERNANDEZ MABRIE (SBN 318315)
*kristina.fernandezmabrie@us.dlapiper.com*
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, California 90067-4735
Tel:    310.595.3066
Fax:   310.595.3326

Attorneys for Plaintiffs
TRACY ANDERSON MIND AND BODY, LLC
and T.A. STUDIO NEW YORK LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| TRACY ANDERSON MIND AND BODY, LLC, a Delaware limited liability company; and T.A. STUDIO NEW YORK LLC, a California limited liability company, <br><br> Plaintiffs, <br><br> v. <br><br> MEGAN ROUP, an individual; and THE SCULPT SOCIETY, LLC, a California limited liability company, <br><br> Defendants. | Case No.  2:22-cv-04735-PSG-E <br><br> Hon. Philip S. Gutierrez <br><br> **PLAINTIFF TRACY ANDERSON MIND AND BODY, LLC'S OBJECTIONS AND RESPONSES TO DEFENDANTS MEGAN ROUP AND THE SCULPT SOCIETY'S FIRST SET OF REQUESTS FOR ADMISSION** <br><br> Action Filed:    July 11, 2022 <br> Trial Date:    November 14, 2024 |

| | |
|---|---|
| PROPOUNDING PARTY: | Defendants MEGAN ROUP and THE SCULPT SOCIETY, LLC |
| RESPONDING PARTY: | Plaintiff TRACY ANDERSON MIND AND BODY, LLC |
| SET NO.: | One |

Plaintiff TRACY ANDERSON MIND AND BODY, LLC, by and through its undersigned Counsel, and in accordance with the applicable Rules of Civil Procedure, hereby files these responses to Defendants' Requests for Admissions.

## **PRELIMINARY STATEMENT**

The following responses represent Plaintiff's good faith and reasonable effort to respond to the Request for Admission based on information and documents presently available and specifically known to Plaintiff. Plaintiff has not completed investigation of this case, has not completed discovery, and has not completed preparation for trial. It is anticipated that further discovery, independent investigation, legal research and analysis will supply additional facts, add additional meaning to the known facts, as well as establish new factual conclusions and legal contentions, all of which may lead to substantial additions to, changes in, and variations from the responses herein set forth. Accordingly, without assuming any obligation to do so, and without waiving any objection, Plaintiff reserves the right to amend or supplement any response.

Plaintiff submits the following responses subject to all objections ordinarily available if such statements are offered in court. All such objections are hereby expressly reserved and may be interposed at the time of trial or at any other time. No response or objection to any of the Request for Admission herein should not be taken as an admission by Plaintiff of the existence of any fact set forth in or assumed by the Request for Admission, or that such response or objection

constitutes admissible evidence.  No response to any of the Request for Admission is intended to be, nor shall any response be construed as, a waiver by Plaintiff of all or any part of any objection to any Request for Admission.

## GENERAL OBJECTIONS

1.    Plaintiff objects to the Request for Admission to the extent that they seek information protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or protection.  The production of any such information is inadvertent and shall not constitute a waiver of any privilege or protection or a waiver of any rights that Plaintiff may exercise to object to the use of such information in subsequent proceeding or during trial.

## RESPONSES TO REQUESTS FOR ADMISSION

### REQUEST FOR ADMISSION NO. 1:

Admit that TAMB's copyright registrations for each of the TA WOR S is only for authorship of the "entire motion picture."

### RESPONSE TO REQUEST FOR ADMISSION NO. 1:

Plaintiff states that the phrase "is only for" is ambiguous and Plaintiff interprets this to mean that the authorship statement in each certificate of registration only contains the phrase "entire motion picture" and admits Request for Admission No. 1 pursuant to that interpretation.

### REQUEST FOR ADMISSION NO. 2:

Admit that TAMB does not hold any copyright registration from the U.S. Copyright Office that covers any "choreographic work."

### RESPONSE TO REQUEST FOR ADMISSION NO. 2:

Denied.

### REQUEST FOR ADMISSION NO. 3:

Admit that TAMB does not hold any copyright registration from the U.S. Copyright Office that contains the term "choreographic work."

1

2 **RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

3     Admitted.

4 **REQUEST FOR ADMISSION NO. 4:**

5     Admit that TAMB does not hold any copyright registration from the U.S.

6 Copyright Office that covers any "choreography."

7 **RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

8     Denied.

9 **REQUEST FOR ADMISSION NO. 5:**

10     Admit that TAMB does not hold any copyright registration from the U.S.

11 Copyright Office that contains the term "choreography."

12 **RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

13     Admitted.

14 **REQUEST FOR ADMISSION NO. 6:**

15     Admit that TAMB did not exclude any elements from its "motion picture"

16 copyright registration applications filed with the U.S. Copyright Office for the TA

17 WORKS.

18 **RESPONSE TO REQUEST FOR ADMISSION NO. 6:**

19     Admitted.

20 **REQUEST FOR ADMISSION NO. 7:**

21     Admit that TAMB did not file a copyright registration application with the

22 U.S. Copyright Office for the movements depicted in the TA WORKS.

23 **RESPONSE TO REQUEST FOR ADMISSION NO. 7:**

24     Denied.

25 **REQUEST FOR ADMISSION NO. 8:**

26     Admit that TAMB does not hold a registered copyright from the U.S.

27 Copyright Office in the movements depicted in the TA WORKS.

28

**RESPONSE TO REQUEST FOR ADMISSION NO. 12:**

Denied.

**REQUEST FOR ADMISSION NO. 13:**

Admit that a purpose of the TA METHOD is to confer physical benefits on participants.

**RESPONSE TO REQUEST FOR ADMISSION NO. 13:**

TAMB admits that a purpose of the TA METHOD is to confer physical benefits, but denies that physical benefits are the only purpose of the TA METHOD.

**REQUEST FOR ADMISSION NO. 14:**

Admit that a purpose of the TA METHOD is to confer mental benefits on participants.

**RESPONSE TO REQUEST FOR ADMISSION NO. 14:**

TAMB admits that a purpose of the TA METHOD is to confer mental benefits, but denies that mental benefits are the only purpose of the TA METHOD.

**REQUEST FOR ADMISSION NO. 15:**

Admit that YOU have never performed the TA METHOD as a performance art.

**RESPONSE TO REQUEST FOR ADMISSION NO. 15:**

Denied.  The term "performance art" is ambiguous and TAMB answers this Request for Admission based on Tate's definition of "performance art" to mean "[a]rtworks that are created through actions performed by the artist or other participants, which may be live or recorded, spontaneous or scripted." https://www.tate.org.uk/art/art-terms/p/performance-art.

**REQUEST FOR ADMISSION NO. 16:**

Admit that YOU have never performed any of the movements in the TA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>VERIFICATION</u>**

I, Maria Kelling, declare:

I am the Chief Talent Development and Brand Content Officer of Tracy Anderson Mind and Body, LLC ("Plaintiff"). I am authorized to make this Verification for and on behalf of Plaintiff and I make this verification for that reason.

I have read **PLAINTIFF TRACY ANDERSON MIND AND BODY, LLC'S RESPONSES TO MEGAN ROUP AND THE SCULPT SOCIETY'S FIRST SET OF REQUESTS FOR ADMISSION** and know the contents thereof. I verify under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed this 9th day of February, 2024 at Los Angeles, California.

DocuSigned by:

_Maria Kelling_
_____
Maria Kelling

---

VERIFICATION

# EXHIBIT 13

**DLA PIPER LLP (US)**
GINA DURHAM (SBN 295910)
*gina.durham@us.dlapiper.com*
555 Mission Street
Suite 2400
San Francisco, California 94105-2933
Tel:   415.836.2500
Fax:   415.836.2501

JASON TAYLOR LUEDDEKE (SBN 279242)
*jason.lueddeke@us.dlapiper.com*
KRISTINA FERNANDEZ MABRIE (SBN 318315)
*kristina.fernandezmabrie@us.dlapiper.com*
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, California 90067-4735
Tel:   310.595.3066
Fax:   310.595.3326

Attorneys for Plaintiffs
TRACY ANDERSON MIND AND BODY, LLC
and T.A. STUDIO NEW YORK LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACY ANDERSON MIND AND BODY, LLC, a Delaware limited liability company; and T.A. STUDIO NEW YORK LLC, a California limited liability company,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>MEGAN ROUP, an individual; and THE SCULPT SOCIETY, LLC, a California limited liability company,<br><br>　　　　　Defendants. | Case No.  2:22-cv-04735-PSG-E<br><br>Hon. Philip S. Gutierrez<br><br>**PLAINTIFF TRACY ANDERSON MIND AND BODY, LLC'S SECOND SUPPLEMENTAL RESPONSES TO DEFENDANT MEGAN ROUP'S FIRST SET OF INTERROGATORIES** |

PROPOUNDING PARTY:　　Defendant MEGAN ROUP

RESPONDING PARTY:　　Plaintiff TRACY ANDERSON MIND AND BODY, LLC

SET NUMBER:　　　　　One

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and Local Rules 33-1 through 33-3, Plaintiff Tracy Anderson Mind and Body, LLC ("Plaintiff"), by and through its undersigned counsel, hereby submit these second supplemental responses to Defendant Megan Roup's ("Defendant") First Set of Interrogatories ("Interrogatories") as follows:

## PRELIMINARY STATEMENT

The following second supplemental responses represent Plaintiff's good faith and reasonable effort to respond to the Interrogatories based on information and documents presently available and specifically known to Plaintiff. Plaintiff has not completed investigation of this case and has not completed preparation for trial. It is anticipated that further independent investigation, legal research and analysis will supply additional facts, add additional meaning to the known facts, as well as establish new factual conclusions and legal contentions, all of which may lead to substantial additions to, changes in, and variations from the responses herein set forth. Accordingly, without assuming any obligation to do so, and without waiving any objection, Plaintiff reserves the right to amend or supplement any response.

Plaintiff submits the following supplemental responses subject to all objections ordinarily available if such statements are offered in court. All such objections are hereby expressly reserved and may be interposed at the time of trial or at any other time. No response or objection to any of the Interrogatories herein should be taken as an admission by Plaintiff of the existence of any fact set forth in or assumed by the Interrogatories, or that such response or objection constitutes admissible evidence. No response to any of the Interrogatories is intended to be, nor shall any response be construed as, a waiver by Plaintiff of all or any part of any objection to any Interrogatory.

1

## GENERAL OBJECTIONS

2      1.    Plaintiff objects to the Interrogatories to the extent that they seek

3  information protected by the attorney-client privilege, the attorney work product

4  doctrine, and/or any other applicable privilege or protection.  The production of

5  any such information is inadvertent and shall not constitute a waiver of any

6  privilege or protection or a waiver of any rights that Plaintiff may exercise to

7  object to the use of such information in subsequent proceeding or during trial.

8      2.    Plaintiff objects to the definition of "YOU" and "YOUR" on the

9  grounds that it is vague, ambiguous, and overbroad.  The definition includes

10  "parent companies, subsidiaries or other persons or entities acting or purporting to

11  act on [TAMB's] behalf," which may include Plaintiff T.A. Studio New York

12  LLC ("TANY").  To the extent Defendant intends this definition to include

13  TANY, then Plaintiff objects to the Interrogatories on the ground that they,

14  including subparts, exceed the number of interrogatories permitted under Rule 33

15  of the Federal Rules of Civil Procedure because Defendant also served TANY

16  with a set of Interrogatories.  As a result, Plaintiff understands the terms "YOU"

17  and "YOUR" to refer to Plaintiff Tracy Anderson Mind Body, LLC.

18      3.    Plaintiff objects to the definition of "TA METHOD" on the ground

19  that it mischaracterizes the nature of the Tracy Anderson Method and Paragraphs

20  1 and 19 of the FAC, which do not use the words "exercise protocol" to describe

21  the Tracy Anderson Method.  As set forth in the FAC, The Tracy Anderson

22  Method is a choreography protocol.  As a result, Plaintiff understands the term

23  "TA METHOD" to have the same meaning as that term is used in the FAC.

24  ## SUPPLEMENTAL RESPONSES TO INTERROGATORIES

25  ## INTERROGATORY NO. 1:

26      Identify all portions (by name of video work, and beginning and ending

27  timestamp(s)) of each of DEFENDANTS' WORKS that YOU contend infringe

28

2

TAMB's copyrights and indicate what parts (by name of work, and beginning and ending video timestamp(s)) of each of the TA WORKS it allegedly copies or infringes, and describe in detail the alleged copying or infringement by reference to the TA WORK(S) and allegedly infringing DEFENDANTS' WORK, including but not limited to as alleged in Paragraph 47 of the FAC.

**RESPONSE TO INTERROGATORY NO. 1:**

Plaintiff objects to this Interrogatory on the ground that it is overly broad and unduly burdensome because it (i) is not limited in time or scope, and (ii) purports to require Plaintiff to prepare a summary or compilation of information from hundreds of Defendants' videos (while simultaneously refusing to provide Plaintiff with copies of all of the videos). Plaintiff objects to this Interrogatory on the ground that it may seek the premature disclosure of expert testimony or opinions. Plaintiff further objects to this Interrogatory on the ground that it calls for a legal conclusion. Plaintiff further objects to this Interrogatory on the ground that it is vague and ambiguous with respect to the phrase "TAMB's copyrights," which are not identified. For purposes of its response, Pliaintiff will assume that the phrase refers to the copyrights asserted in this lawsuit. Plaintiff further objects to this Interrogatory on the ground that it is not composed of discrete subparts, but instead constitutes multiple distinct interrogatories.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows:

Pursuant to Fed. R. Civ. P. 33(d), Plaintiff will produce non-privileged documents from which information responsive to this Interrogatory may be determined. Following the substantial completion of its rolling document production, Plaintiff will supplement its response to this Interrogatory to identify such documents.

1  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1:**

2      Plaintiff objects to this Interrogatory on the ground that it is overly broad

3  and unduly burdensome because it (i) is not limited in time or scope, and (ii)

4  purports to require Plaintiff to prepare a summary or compilation of information

5  from hundreds of Defendants' videos (while simultaneously refusing to provide

6  Plaintiff with copies of all of the videos).  Plaintiff objects to this Interrogatory on

7  the ground that it may seek the premature disclosure of expert testimony or

8  opinions.  Plaintiff further objects to this Interrogatory on the ground that it calls

9  for a legal conclusion.  Plaintiff further objects to this Interrogatory on the ground

10  that it is vague and ambiguous with respect to the phrase "TAMB's copyrights,"

11  which are not identified.  For purposes of its response, Pliaintiff will assume that

12  the phrase refers to the copyrights asserted in this lawsuit.  Plaintiff further objects

13  to this Interrogatory on the ground that it is not composed of discrete subparts, but

14  instead constitutes multiple distinct interrogatories.

15      Subject to and without waiving the foregoing objections, Plaintiff responds

16  as follows:

17      Plaintiff is unable to provide a response to this request because Defendants

18  have not yet produced copies of DEFENDANTS' WORKS.

19  **SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1:**

20      Plaintiff objects to this Interrogatory on the ground that it is overly broad

21  and unduly burdensome because it (i) is not limited in time or scope, and (ii)

22  purports to require Plaintiff to prepare a summary or compilation of information

23  from hundreds of Defendants' videos (while simultaneously refusing to provide

24  Plaintiff with copies of all of the videos).  Plaintiff objects to this Interrogatory on

25  the ground that it may seek the premature disclosure of expert testimony or

26  opinions.  Plaintiff further objects to this Interrogatory on the ground that it calls

27  for a legal conclusion.  Plaintiff further objects to this Interrogatory on the ground

28

that it is vague and ambiguous with respect to the phrase "TAMB's copyrights," which are not identified. For purposes of its response, Pliaintiff will assume that the phrase refers to the copyrights asserted in this lawsuit. Plaintiff further objects to this Interrogatory on the ground that it is not composed of discrete subparts, but instead constitutes multiple distinct interrogatories.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows:

Plaintiffs contend that the below list contains examples of DEFENDANTS' WORKS' which contain content that infringes on TAMB's copyrights:

| TSS Video Title | Bates Number |
|---|---|
| 45 Full Body 08 | MR-TSS_009814 |
| 46 Full Body 14 | MR-TSS_010005 |
| 45 Full Body 08 | MR-TSS_009814 |
| 45 Full Body 13 | MR-TSS_010128 |
| 15 Booty 23 | MR-TSS_010609 |
| 20 Full Body 17 | MR-TSS_010654 |
| 10 Min Arms 37 | MR-TSS_009155 |
| LIVE WED 3.13 23MIN SLOW + CONTROLLED FULL BODY | No production/bates, found on TSS website after discovery closed |
| LIVE WED 3.13 23MIN SLOW + CONTROLLED FULL BODY | No production/bates, found on TSS website after discovery closed |
| 45 Full Body 12 (no cardio) | MR-TSS_010665 |
| 42MIN FULL BODY 27 | MR-TSS_009751 |
| 45MIN FULL BODY 26 (NO CARDIO) | MR-TSS_009057 |

| | |
|---|---|
| 42MIN FULL BODY 24 (NO CARDIO) | MR-TSS_009272 |
| 45MIN FULL BODY 18 (NO CARDIO) | MR-TSS_009778 |
| 30MIN FULL BODY 16 (NO CARDIO) (Katy Schuele) | MR-TSS_009020 |
| 14MIN BOOTY 32 | MR-TSS_010623 |
| 13MIN BOOTY 40 | MR-TSS_009142 |
| 15MIN BOOTY + ARMS 43 | MR-TSS_009210 |
| 30MIN FULL BODY 45 WITH AUDREY PETERS | No production/bates, found on TSS website after discovery closed |
| 10MIN ARMS 12 | MR-TSS_009423 |
| 20MIN SCULPT 36 WITH HELEN OWEN | MR-TSS_009236 |
| 30MIN DANCE CARDIO 23 | MR-TSS_009450 |
| 10MIN DANCING ARMS 02 | MR-TSS_009017 |
| 6MIN DANCING ARMS 38 | MR-TSS_009435 |
| 23MIN SLOW + CONTROLLED SCULPT 14 | MR-TSS_009393 |
| 23MIN SLOW + CONTROLLED SCULPT 09 | MR-TSS_009185 |
| 30MIN DANCE CARDIO 23 | MR-TSS_009185 |
| 18MIN SCULPT 56 WITH DANIELLE CAROLAN | No production/bates, found on TSS website after discovery closed |
| 45MIN FULL BODY 26 (NO | MR-TSS_009057 |

PLAINTIFF TRACY ANDERSON MIND AND BODY, LLC'S SECOND SUPPLEMENTAL
RESPONSES TO DEFENDANT MEGAN ROUP'S FIRST SET OF INTERROGATORIES
CASE NO. 2:22-CV-04735-PSG-E

| CARDIO) | |
|---|---|
| 45MIN FULL BODY 03 | MR-TSS_009948 |
| 6 Dancing Arms 14 | MR-TSS_009275 |
| 30 Full Body 02 | MR-TSS_009678 |
| 30 Sculpt 14 | MR-TSS_010591 |
| 30 Sculpt 15 | MR-TSS_010146 |
| 33 Full Body 19 | MR-TSS_010632 |
| 19 Full Body 15 | MR-TSS_009875 |
| 32 Sculpt 31 | No production/bates, found on TSS website after discovery closed |
| 30 Sculpt 31 | No production/bates, found on TSS website prior to March 12, 2024 in Advanced Programing |
| 30 Full Body 36 | MR-TSS_009077 |
| 33 full body 31 | MR-TSS_009108 |
| 31 Full Body 32 | MR-TSS_009080 |

In addition to the above TSS Videos, Plaintiffs also recently discovered that Roup has eighty-four (84) videos displayed on Obe Fitness, which also appear to contain infringing content.  Those videos can be located here: On-Demand Workout Videos & Fitness Classes | obé Fitness (obefitness.com)

Plaintiff asserts that the above content infringes on the below TA Videos:

- Metamorphosis Glutecentric Dance Cardio
- Metamorphosis Glutecentric Day 1-10
- Metamorphosis Glutecentric Day 11-20
- Metamorphosis Glutecentric Day 21-30
- Metamorphosis Glutecentric Day 31-40

- Metamorphosis Gluetecentric Day 51-60
- Metamorphosis Glutecentric Day 61-70
- Metamorphosis Glutecentric Day 71-80
- Metamorphosis Glutecentric Day 81-90
- Metamorphosis Continuity – Continuity Year 4 – Month 2 – OMN-435 Level 6
- Metamorphosis Continuity – Continuity Year 4 – Month 1 – OMN-434 Level 1
- Metamorphosis Continuity – Continuity Year 2 – OMN-410 Day 1-10
- Metamorphosis Continuity – Year 3 Common Assets – OMN-422 Day 21-30
- TAVA Main Programme
- Precision Toning – ARMS
- Continuity – 1.3.2G video 2 – Precision Toning – Arms
- Continuity – Abcentric 1.2.3A Video 2 – 1.3.1 Video 2
- Continuity – Glutecentric 1.1.3G Video 1
- Continuity – Glutecentric 1.1.1G Video 2
- Continuity – Glutecentric 2.2.3G Video 2
- Continuity – Glutecentric 2.4.1G Video 2
- Continuity – Hipcentric 2.2.3H Video 2
- Year 3 Common Assets Month 12 Video 1
- Year 3 Common Assets Month 11 Video 3
- Continuity – Omnicentric 1.1.3O video 3
- Continuity – Omnicentric 1.3.2 video 3
- Generally, the Metamorphosis Hipcentric and Abcentric DVDs

Plaintiffs are still in the process of reviewing the over 600 videos that Defendants produced and other videos that Defendants failed to produce, and reserve the right to supplement the above lists further if additional examples of infringing content

8

1  are located.

2  **INTERROGATORY NO. 2:**

3      Identify all parts (by name of the TA WORK, and beginning and ending

4  timestamp(s)) of each instance of allegedly copyrighted "choreography,"

5  including movements, sequences, or routines, in the TA WORKS that YOU

6  contend DEFENDANTS' WORKS infringe, and, for each such instance of

7  choreography, identify the allegedly infringing DEFENDANTS' WORK(S)

8  including by reference to beginning and ending video timestamp(s).

9  **RESPONSE TO INTERROGATORY NO. 2:**

10     Plaintiff objects to this Interrogatory on the ground that it is overly broad and

11 unduly burdensome because it (i) is not limited in time or scope, and (ii) purports

12 to require Plaintiff to prepare a summary or compilation of information from

13 hundreds of Defendants' videos (while simultaneously refusing to provide

14 Plaintiffs with copies of all of the videos). Plaintiff objects to this Interrogatory on

15 the ground that it may seek the premature disclosure of expert testimony or

16 opinions. Plaintiff further objects to this Interrogatory on the ground that it calls

17 for a legal conclusion. Plaintiff further objects to this Interrogatory on the ground

18 that it is vague and ambiguous with respect to the phrase "identify all parts…of

19 each instance." Plaintiff further objects to this Interrogatory on the ground that it

20 is not composed of discrete subparts, but instead constitutes multiple distinct

21 interrogatories.

22     Subject to and without waiving the foregoing objections, Plaintiff responds

23 as follows:

24     Pursuant to Fed. R. Civ. P. 33(d), Plaintiff will produce non-privileged

25 documents from which information responsive to this Interrogatory may be

26 determined. Following the substantial completion of its rolling document

27 production, Plaintiff will supplement its response to this Interrogatory to identify

28

PLAINTIFF TRACY ANDERSON MIND AND BODY, LLC'S SECOND SUPPLEMENTAL
RESPONSES TO DEFENDANT MEGAN ROUP'S FIRST SET OF INTERROGATORIES
CASE NO. 2:22-CV-04735-PSG-E

1  such documents.

2  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2:**

3        Plaintiff objects to this Interrogatory on the ground that it is overly broad

4  and unduly burdensome because it (i) is not limited in time or scope, and (ii)

5  purports to require Plaintiff to prepare a summary or compilation of information

6  from hundreds of Defendants' videos (while simultaneously refusing to provide

7  Plaintiff with copies of all of the videos).  Plaintiff objects to this Interrogatory on

8  the ground that it may seek the premature disclosure of expert testimony or

9  opinions.  Plaintiff further objects to this Interrogatory on the ground that it calls

10  for a legal conclusion.  Plaintiff further objects to this Interrogatory on the ground

11  that it is vague and ambiguous with respect to the phrase "identify all parts…of

12  each instance."  Plaintiff further objects to this Interrogatory on the ground that it

13  is not composed of discrete subparts, but instead constitutes multiple distinct

14  interrogatories.

15        Subject to and without waiving the foregoing objections, Plaintiff responds

16  as follows:

17        Pursuant to Fed. R. Civ. P. 33(d), Plaintiff will produce non-privileged

18  documents from which information responsive to this Interrogatory may be

19  determined.  Following the substantial completion of its rolling document

20  production, Plaintiff will supplement its response to this Interrogatory to identify

21  such documents.

22  **SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2:**

23        Plaintiff objects to this Interrogatory on the ground that it is overly broad

24  and unduly burdensome because it (i) is not limited in time or scope, and (ii)

25  purports to require Plaintiff to prepare a summary or compilation of information

26  from hundreds of Defendants' videos (while simultaneously refusing to provide

27  Plaintiff with copies of all of the videos).  Plaintiff objects to this Interrogatory on

28

1    the ground that it may seek the premature disclosure of expert testimony or

2    opinions.  Plaintiff further objects to this Interrogatory on the ground that it calls

3    for a legal conclusion.  Plaintiff further objects to this Interrogatory on the ground

4    that it is vague and ambiguous with respect to the phrase "identify all parts…of

5    each instance."  Plaintiff further objects to this Interrogatory on the ground that it

6    is not composed of discrete subparts, but instead constitutes multiple distinct

7    interrogatories.

8        Subject to and without waiving the foregoing objections, Plaintiff responds

9    as follows:

10        Interrogatory No. 2 seeks the same information as Interrogatory No. 1.

11    Plaintiff therefore refers Defendants to Plaintiffs Second Supplemental Response

12    to Interrogatory No. 1.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

11

1    DATED: April 3, 2024           **DLA PIPER LLP (US)**

2

3                  By:   *_/s/ Gina Durham_*

4                      GINA DURHAM
                      JASON T. LUEDDEKE

5                       KRISTINA FERNANDEZ MABRIE

6                       Attorneys for Plaintiffs
                      TRACY ANDERSON MIND AND

7                       BODY, LLC and T.A. STUDIO NEW
                      YORK LLC

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 14

GINA DURHAM (SBN 295910)
Gina.durham@us.dlapiper.com
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400
San Francisco, CA 94105-2933
Tel: 415.836.2500
Fax: 415.836.2501

JASON T. LUEDDEKE (SBN 279242)
Jason.lueddeke@us.dlapiper.com
KRISTINA FERNANDEZ MABRIE (SBN 318315)
kristina.fernandezmabrie@us.dlapiper.com
**DLA PIPER LLP (US)**
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, California 90067-4735
Tel:   310.595.3000
Fax:   310.595.3300

Attorneys for Plaintiffs
TRACY ANDERSON MIND AND BODY, LLC and
T.A. STUDIO NEW YORK LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACY ANDERSON MIND AND BODY, LLC, a Delaware limited liability company; and T.A. STUDIO NEW YORK LLC, a California limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>MEGAN ROUP, an individual; and THE SCULPT SOCIETY, LLC, a California limited liability company,<br><br>Defendants. | Case No.  2:22-cv-04735-PSG-E<br><br>Hon. Philip S. Gutierrez<br><br>**PLAINTIFFS TRACY ANDERSON MIND AND BODY, LLC AND T.A. STUDIO NEW YORK LLC'S RESPONSES TO DEFENDANT MEGAN ROUP AND THE SCULPT SOCIETY, LLC'S FIRST SET OF REQUESTS FOR PRODUCTION** |

PROPOUNDING PARTY:     Defendants Megan Roup and The Sculpt Society, LLC

RESPONDING PARTY:       Plaintiffs Tracy Anderson Mind and Body, LLC and T.A. Studio New York LLC

SET NUMBER:                      One

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Local Rules 33-1 through 33-3, Plaintiffs Tracy Anderson Mind and Body, LLC and T.A. Studio New York LLC ("Plaintiffs"), by and through their undersigned counsel, hereby respond to Defendant Megan Roup and The Sculpt Society, LLC's ("Defendants") First Set of Requests for Production ("Requests").

## PRELIMINARY STATEMENT

The following responses represent Plaintiffs' good faith and reasonable effort to respond to the Requests based on information and documents presently available and specifically known to Plaintiffs.  Plaintiffs have not completed investigation of this case, has not completed discovery, and has not completed preparation for trial.  It is anticipated that further discovery, independent investigation, legal research and analysis will supply additional facts, add additional meaning to the known facts, as well as establish new factual conclusions and legal contentions, all of which may lead to substantial additions to, changes in, and variations from the responses herein set forth.  Accordingly, without assuming any obligation to do so, and without waiving any objection, Plaintiffs reserve the right to amend or supplement any response herein.

Plaintiffs submit the following responses subject to all objections ordinarily available if such statements are offered in court.  All such objections are hereby expressly reserved and may be interposed at the time of trial or at any other time. No response or objection to any of the Requests herein should be taken as an admission by Plaintiffs of the existence of any fact set forth in or assumed by the Requests, or that such response or objection constitutes admissible evidence.  No response to any of the Requests is intended to be, nor shall any response be construed as, a waiver by Plaintiffs of all or any part of any objection to any Request.

## GENERAL OBJECTIONS

1.    Plaintiffs object to the Requests to the extent that they seek

1  information protected by the attorney-client privilege, the attorney work product

2  doctrine, and/or any other applicable privilege or protection.  The production of

3  any such information is inadvertent and shall not constitute a waiver of any

4  privilege or protection or a waiver of any rights that Plaintiffs may exercise to

5  object to the use of such information in subsequent proceeding or during trial.

6      2.    Plaintiffs object to Defendants' demand that Plaintiffs produce all

7  responsive documents 30 days after service of the Requests on the grounds that

8  the demand is unreasonable, overly burdensome, and inconsistent with FRCP

9  34(b)(1)(B).

10     3.    Plaintiffs object to Defendants' Instruction No.   on the ground that

11 the form of production requested in APPENDIX A for electronically stored

12 information ("ESI") was not mutually agreed upon.

13     4.    Plaintiffs object to the definition of "TA METHOD" on the ground

14 that it mischaracterizes the nature of The Tracy Anderson Method and Paragraphs

15 1 and 19 of the FAC, which do not use the words "exercise protocol" to describe

16 the Tracy Anderson Method.  As set forth in the FAC, The Tracy Anderson

17 Method is a choreography protocol.  As a result, Plaintiffs understand the term

18 "TA METHOD" to have the same meaning as that term is used in the FAC.

19            **RESPONSES TO REQUESTS FOR PRODUCTION**

20 **REQUEST FOR PRODUCTION NO. 1:**

21     Physical and electronic copies of each of the TA WORKS, as those works

22 are marketed and sold to the public, including DVD, Blu-ray, or online download,

23 including any physical or digital packaging, accompanying materials, or files.

24 **RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

25     Plaintiffs object to this Request on the ground that it is overly broad, unduly

26 burdensome, and disproportionate to the needs of the case because it (i) purports

27 to require the production of the TA WORKS in multiple different formats, and (ii)

28 seeks irrelevant documentation, including marketing and promotional materials

2

1  connection with the TA WORKS, including in connection with the movements,

2  alleged choreography, music, other elements or contributions, and Tracy

3  Anderson's or others' performances.

4  **RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

5      Plaintiffs object to this Request on the ground that it is overly broad, unduly

6  burdensome, and disproportionate to the needs of the case because it (i) is not

7  limited in time or scope, and (ii) seeks documents not reasonably calculated to

8  lead to the discovery of admissible evidence.  Plaintiffs further object to this

9  Request on the ground that it is vague and ambiguous with respect to the terms

10  "movements," "elements," "contributions," and "performances."  Plaintiffs further

11  object to this Request on the ground that it calls for a legal conclusion.  Plaintiffs

12  further object to this Request on the ground that it seeks the disclosure of

13  sensitive, proprietary or confidential business information or trade secrets.

14  **REQUEST FOR PRODUCTION NO. 7:**

15      All DOCUMENTS RELATING TO transfers of ownership of the TA

16  WORKS to TAMB.

17  **RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

18      Plaintiffs object to this Request on the ground that it is overly broad, unduly

19  burdensome, and disproportionate to the needs of the case because it (i) is not

20  limited in time or scope, and (ii) seeks documents not reasonably calculated to

21  lead to the discovery of admissible evidence since the ownership of the TA

22  WORKS is not in dispute.  Plaintiffs further object to this Request on the ground

23  that it assumes facts.  Plaintiffs further object to this Request on the ground that it

24  calls for a legal conclusion.

25      Subject to and without waiving the foregoing objections, Plaintiffs respond

26  as follows:

27      Plaintiffs will produce relevant, non-privileged documents related to the

28  ownership of the TA WORKS.

1    **REQUEST FOR PRODUCTION NO. 58:**

2        All DOCUMENTS that YOU intend to use at trial in this action.

3    **RESPONSE TO REQUEST FOR PRODUCTION NO. 58:**

4        Plaintiffs object to this Request on the ground that it is overly broad, unduly

5    burdensome, and disproportionate to the needs of the case because it is not limited

6    in time or scope.  Plaintiffs further object to this Request on the ground that it

7    does not describe the documents sought with sufficient particularity.  Plaintiffs

8    further object to this Request to the extent that it seeks documents protected by the

9    attorney-client privilege, the attorney work product doctrine, and/or any other

10   applicable privilege or protection.

11

12

13   DATED: December 26, 2023            **DLA PIPER LLP (US)**

14

15                                   By:  */s/ Gina Durham*
                                         GINA DURHAM
16                                       JASON T. LUEDDEKE
                                         KRISTINA FERNANDEZ MABRIE
17
                                         Attorneys for Plaintiffs
18                                       TRACY ANDERSON MIND AND
                                         BODY, LLC and T.A. STUDIO NEW
19                                       YORK LLC

20

21

22

23

24

25

26

27

28

PLAINTIFFS' RESPONSES TO DEFENDANTS' FIRST SET OF REQUESTS FOR PRODUCTION

# EXHIBIT 15

**DLA PIPER LLP (US)**
GINA DURHAM (SBN 295910)
*gina.durham@us.dlapiper.com*
555 Mission Street
Suite 2400
San Francisco, California 94105-2933
Tel:   415.836.2500
Fax:   415.836.2501

JASON TAYLOR LUEDDEKE (SBN 279242)
*jason.lueddeke@us.dlapiper.com*
KRISTINA FERNANDEZ MABRIE (SBN 318315)
*kristina.fernandezmabrie@us.dlapiper.com*
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, California 90067-4735
Tel:   310.595.3066
Fax:   310.595.3326

Attorneys for Plaintiffs
TRACY ANDERSON MIND AND BODY, LLC
and T.A. STUDIO NEW YORK LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| TRACY ANDERSON MIND AND BODY, LLC, a Delaware limited liability company; and T.A. STUDIO NEW YORK LLC, a California limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>MEGAN ROUP, an individual; and THE SCULPT SOCIETY, LLC, a California limited liability company,<br><br>Defendants. | Case No.  2:22-cv-04735-PSG-E<br><br>Hon. Philip S. Gutierrez<br><br>**PLAINTIFF T.A. STUDIO NEW YORK LLC'S OBJECTIONS AND RESPONSES TO DEFENDANT MEGAN ROUP'S FIRST SET OF REQUESTS FOR ADMISSION**<br><br>Action Filed:    July 11, 2022<br>Trial Date:      November 14, 2024 |

1  PROPOUNDING PARTY:      Defendant MEGAN ROUP

2  RESPONDING PARTY:       Plaintiff T.A. STUDIO NEW YORK LLC

3  SET NO.:                One

4      Plaintiff T.A. STUDIO NEW YORK LLC, by and through its undersigned

5  Counsel, and in accordance with the applicable Rules of Civil Procedure, hereby

6  serves these responses to Defendant MEGAN ROUP's Requests for Admissions.

7  ### **PRELIMINARY STATEMENT**

8      The following responses represent Plaintiff's good faith and reasonable

9  effort to respond to the Request for Admission based on information and

10 documents presently available and specifically known to Plaintiff.  Plaintiff has

11 not completed investigation of this case, has not completed discovery, and has not

12 completed preparation for trial.  It is anticipated that further discovery,

13 independent investigation, legal research and analysis will supply additional facts,

14 add additional meaning to the known facts, as well as establish new factual

15 conclusions and legal contentions, all of which may lead to substantial additions

16 to, changes in, and variations from the responses herein set forth.  Accordingly,

17 without assuming any obligation to do so, and without waiving any objection,

18 Plaintiff reserves the right to amend or supplement any response.

19     Plaintiff submits the following responses subject to all objections ordinarily

20 available if such statements are offered in court.  All such objections are hereby

21 expressly reserved and may be interposed at the time of trial or at any other time.

22 ### **GENERAL OBJECTIONS**

23     1.    Plaintiff objects to the Request for Admissions to the extent that they

24 seek information protected by the attorney-client privilege, the attorney work

25 product doctrine, and/or any other applicable privilege or protection.  The

26 production of any such information is inadvertent and shall not constitute a waiver

27 of any privilege or protection or a waiver of any rights that Plaintiff may exercise

28

to object to the use of such information in subsequent proceeding or during trial.

## OBJECTIONS AND RESPONSES TO REQUESTS FOR ADMISSION

### REQUEST FOR ADMISSION NO. 1:

Admit that the February 28, 2011 trainer agreement between YOU and ROUP was superseded.

### RESPONSE TO REQUEST FOR ADMISSION NO. 1:

Admitted.

### REQUEST FOR ADMISSION NO. 2:

Admit that YOUR breach of contract claim in the FAC against ROUP is based solely on the following "Confidential Information" restrictive covenant of the TRAINER AGREEMENT:



Restrictive Covenants: During your employment and following any termination thereof, without the prior written consent of a duly authorized representative of the Company, except to the extent required by an order of a court having competent jurisdiction or under subpoena from an appropriate government agency, in which event, you shall use your best efforts to consult



with the Company prior to responding to any such order or subpoena, you shall not use or disclose any confidential or proprietary trade secrets, customer and client lists, drawings, designs, marketing plans, sales scripts, training materials or methods (including, but not limited to, workouts, movements, exercise routines, exercise formulas, nutrition advice, content, sequences, prescriptions, dances, muscular structure work and equipment), CRM methods, management organization information (including, but not limited to, data and other information relating to members of the Board of Managers of the Company or any of its affiliates, the Company or any of its affiliates or to the management of the Company or any of its affiliates), operating policies or manuals, business plans, financial records, or other financial, commercial, business or technical information (x) that relate to the Company or any of its affiliates; or (y) that the Company or any of its affiliates has received that belongs to clients or others who do business with the Company or any of its affiliates (collectively, "*Confidential Information*") to any third Person (defined below) unless such Confidential Information has been previously disclosed to the public generally or is in the public domain (in each case, other than by reason of your breach of this paragraph).

### RESPONSE TO REQUEST FOR ADMISSION NO. 2:

Admitted.

**<u>VERIFICATION</u>**

I, Maria Kelling, declare:

I am the Chief Talent Development and Brand Content Officer of Tracy Anderson Mind and Body, LLC ("Plaintiff").  I am authorized to make this Verification for and on behalf of Plaintiff and I make this verification for that reason.

I have read **PLAINTIFFS T.A. STUDIO NEW YORK LLC'S RESPONSES TO DEFENDANT MEGAN ROUP'S FIRST SET OF REQUESTS FOR ADMISSION** and know the contents thereof.  I verify under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed this 9th day of February, 2024 at Los Angeles, California.

<u>Maria Kelling</u>
Maria Kelling

VERIFICATION

# EXHIBIT 16

1 | **DLA PIPER LLP (US)**
GINA DURHAM (SBN 295910)
2 | *gina.durham@us.dlapiper.com*
555 Mission Street
3 | Suite 2400
San Francisco, California 94105-2933
4 | Tel:   415.836.2500
Fax:   415.836.2501
5 |
6 | JASON TAYLOR LUEDDEKE (SBN 279242)
*jason.lueddeke@us.dlapiper.com*
7 | KRISTINA FERNANDEZ MABRIE (SBN 318315)
*kristina.fernandezmabrie@us.dlapiper.com*
8 | 2000 Avenue of the Stars
Suite 400 North Tower
9 | Los Angeles, California 90067-4735
Tel:   310.595.3066
10 | Fax:   310.595.3326

Attorneys for Plaintiffs
TRACY ANDERSON MIND AND BODY, LLC
and T.A. STUDIO NEW YORK LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

TRACY ANDERSON MIND AND BODY, LLC, a Delaware limited liability company; and T.A. STUDIO NEW YORK LLC, a California limited liability company,

Plaintiffs,

v.

MEGAN ROUP, an individual; and THE SCULPT SOCIETY, LLC, a California limited liability company,

Defendants.

Case No.  2:22-cv-04735-PSG-E

Hon. Philip S. Gutierrez

**PLAINTIFF T.A. STUDIO NEW YORK LLC'S OBJECTIONS AND RESPONSES TO DEFENDANT MEGAN ROUP'S SECOND SET OF INTERROGATORIES**

Action Filed:    July 11, 2022
Trial Date:      November 14, 2024

PROPOUNDING PARTY:        Defendant MEGAN ROUP

RESPONDING PARTY:         Plaintiff T.A. STUDIO NEW YORK LLC

SET NO.:                  Two

 

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and Local Rules 33-1 through 33-3, Plaintiff T.A. Studio New York LLC ("Plaintiff"), by and through its undersigned counsel, hereby responds to Defendant Megan Roup's ("Defendant") Second Set of Interrogatories ("Interrogatories") as follows:

### PRELIMINARY STATEMENT

The following responses represent Plaintiff's good faith and reasonable effort to respond to the Interrogatories based on information and documents presently available and specifically known to Plaintiff. Plaintiff has not completed investigation of this case, has not completed discovery, and has not completed preparation for trial. It is anticipated that further discovery, independent investigation, legal research and analysis will supply additional facts, add additional meaning to the known facts, as well as establish new factual conclusions and legal contentions, all of which may lead to substantial additions to, changes in, and variations from the responses herein set forth. Accordingly, without assuming any obligation to do so, and without waiving any objection, Plaintiff reserves the right to amend or supplement any response.

Plaintiff submits the following responses subject to all objections ordinarily available if such statements are offered in court. All such objections are hereby expressly reserved and may be interposed at the time of trial or at any other time. No response or objection to any of the Interrogatories herein should be taken as an admission by Plaintiff of the existence of any fact set forth in or assumed by the Interrogatories, or that such response or objection constitutes admissible evidence. No response to any of the Interrogatories is intended to be, nor shall any response

be construed as, a waiver by Plaintiff of all or any part of any objection to any Interrogatory.

## GENERAL OBJECTIONS

1.    Plaintiff objects to the Interrogatories to the extent that they seek information protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or protection.  The production of any such information is inadvertent and shall not constitute a waiver of any privilege or protection or a waiver of any rights that Plaintiff may exercise to object to the use of such information in subsequent proceeding or during trial.

2.    Plaintiff objects to the definition of "YOU" and "YOUR" on the grounds that it is vague, ambiguous, and overbroad.  The definition includes "parent companies, subsidiaries or other persons or entities acting or purporting to act on  TANY's  behalf," which may include Plaintiff Tracy Anderson Mind and Body, LLC ("TAMB").  To the extent Defendant intends this definition to include TAMB, then Plaintiff objects to the Interrogatories on the ground that they, including subparts, exceed the number of interrogatories permitted under Rule 33 of the Federal Rules of Civil Procedure because Defendant also served TAMB with Interrogatories.  As a result, Plaintiff understands the terms "YOU" and "YOUR" to refer to Plaintiff T.A. Studio New York LLC.

## RESPONSES TO INTERROGATORIES

## INTERROGATORY NO. 22:

Identify all special provision(s) of all contract(s) that YOU contend Roup breached in support of YOUR third cause of action (breach of contract) in the FAC, and quote those provisions in full.

PLAINTIFF T.A. STUDIO NEW YORK LLC'S OBJECTIONS AND RESPONSES TO DEFENDANT ROUP'S INTERROGATORIES, SET TWO
CASE NO. 2:22-CV-04735-PSG-E

1

## RESPONSE TO INTERROGATORY NO. 22:

2    From the February 28, 2011, Agreement between Roup and TANY (see

3   PLTFS0000005), Plaintiffs allege that Roup breached the following provision:

4

**Restrictive Covenants:** During your relationship with the Company or any of its affiliates and following any termination thereof, without the prior written consent of a duly authorized representative of the Company, except to the extent required by an order of a court having competent jurisdiction or under subpoena from an appropriate government agency, in which event, you shall use your best efforts to consult with the Company prior to responding to any such order or subpoena, you shall not use or disclose any confidential or proprietary trade secrets, customer and client lists, drawings, designs, marketing plans, sales scripts, training materials or methods (including, but not limited to, workouts, movements, exercise routines, exercise formulas, nutrition advice, content, sequences, prescriptions, dances, muscular structure work and equipment), CRM methods, management organization information (including, but not limited to, data and other information relating to members of the Board of Managers of the Company or any of its affiliates, the Company or any of its affiliates or to the management of the Company or any of its affiliates), operating policies or manuals, business plans, financial records, or other financial, commercial, business or technical information (x) that relate to the Company or any of its affiliates; or (y) that the Company or any of its affiliates has received that belongs to clients or others who do business with the Company or any of its affiliates (collectively, "*Confidential Information*") to any third Person (defined below) unless such Confidential Information has been previously disclosed to the public generally or is in the public domain (in each case, other than by reason of your breach of this paragraph).

13    From the June 11, 2011 Agreement between Roup and TANY (see

14   PLTFS00000010), Plaintiffs allege that Roup breached the following provision:

15

**Restrictive Covenants:** During your employment and following any termination thereof, without the prior written consent of a duly authorized representative of the Company, except to the extent required by an order of a court having competent jurisdiction or under subpoena from an appropriate government agency, in which event, you shall use your best efforts to consult

with the Company prior to responding to any such order or subpoena, you shall not use or disclose any confidential or proprietary trade secrets, customer and client lists, drawings, designs, marketing plans, sales scripts, training materials or methods (including, but not limited to, workouts, movements, exercise routines, exercise formulas, nutrition advice, content, sequences, prescriptions, dances, muscular structure work and equipment), CRM methods, management organization information (including, but not limited to, data and other information relating to members of the Board of Managers of the Company or any of its affiliates, the Company or any of its affiliates or to the management of the Company or any of its affiliates), operating policies or manuals, business plans, financial records, or other financial, commercial, business or technical information (x) that relate to the Company or any of its affiliates; or (y) that the Company or any of its affiliates has received that belongs to clients or others who do business with the Company or any of its affiliates (collectively, "*Confidential Information*") to any third Person (defined below) unless such Confidential Information has been previously disclosed to the public generally or is in the public domain (in each case, other than by reason of your breach of this paragraph).

26

## INTERROGATORY NO. 23:

27    State all facts and IDENTIFY all documents that YOU contend support

28

3

PLAINTIFF T.A. STUDIO NEW YORK LLC'S OBJECTIONS AND RESPONSES TO
DEFENDANT ROUP'S INTERROGATORIES, SET TWO
CASE NO. 2:22-CV-04735-PSG-E

1  YOUR third cause of action (breach of contract) in the FAC.

2  **RESPONSE TO INTERROGATORY NO. 23:**

3       Plaintiff objects to this Interrogatory on the ground that it is overly broad

4  and unduly burdensome because it purports to require Plaintiff to prepare a

5  summary or compilation of all of the documents, evidence, and depositions

6  (including those which have not yet occurred) in the case and.

7       Subject to and without waiving the foregoing objections, Plaintiff responds

8  as follows:

9       During her six-plus year tenure at TANY, Roup learned, was exposed to,

10  and had access to significant Confidential Information, such as (i) training

11  materials, choreography transcriptions, and custom write-ups related to the

12  performance and teaching of the TA Method (*See e.g.*, PLTFS0000225;

13  PLTFS0000226; PLTFS0000233; PLTFS0000260; PLTFS0000325;

14  PLTFS0000326; PLTFS0000343; PLTFS0000356; PLTFS0000369;

15  PLTFS0001012); and (ii) business information, customer lists, and operating

16  procedures, such as specialized customer intake methods. (*See e.g.*,

17  PLTFS0000885-PLTFS0000977; PLTFS0000982-PLTFS0000997).  In short,

18  Roup had access to all the materials necessary to replicate the TA Method and

19  related business, and she wasted no time in doing so, which is evidenced by the

20  fact that she started promoting the sculpt society to TANY client within days of

21  resigning from TANY.  (*See e.g.*, MR-TSS_000008; MR-TSS_000011; MR-

22  TSS_000014; MR-TSS_000017).  In fact, Roup quit TANY in or around February

23  2017 and less than one month later in March 2017, she founded TSS.

24       From the start, Roup has used and continues to use the same cueing, write-

25  ups, and video technique to communicate routines to her trainers—virtually

26  mirroring Plaintiffs' business model.  (*See e.g.*, MR-TSS_003666; MR-

27  TSS_003681; MR-TSS_0036682; MR-TSS_003733; MR-TSS_003734; MR-

28

1

## **VERIFICATION**

2

I, Maria Kelling, declare:

3

I am the Chief Talent Development and Brand Content Officer of Tracy

4

Anderson Mind and Body, LLC ("Plaintiff").  I am authorized to make this

5

Verification for and on behalf of Plaintiff and I make this verification for that

6

reason.

7

I have read **PLAINTIFF T.A. STUDIO NEW YORK LLC'S**

8

**RESPONSES TO DEFENDANT MEGAN ROUP'S SECOND SET OF**

9

**INTERROGATORIES** and know the contents thereof.  I verify under penalty of

10

perjury that the foregoing is true and correct to the best of my knowledge, information

11

and belief.

12

Executed this 9th day of February, 2024 at Los Angeles, California.

13

14

15

16

Maria Kelling

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 17

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## PA 1-929-100

**Effective Date of Registration:**
October 31, 2014

## Title

**Title of Work:** Metamorphosis by Tracy - Hipcentric

## Completion/Publication

**Year of Completion:** 2010
**Date of 1st Publication:** January 03, 2011
**Nation of 1st Publication:** United States

## Author

- **Author:** Tracy Anderson Private Training, LLC
  **Author Created:** entire motion picture
  **Work made for hire:** Yes
  **Citizen of:** United States

## Copyright Claimant

**Copyright Claimant:** Tracy Anderson Mind and Body, LLC
24 Hubert St., Third Floor, New York, NY, 10013, United States
**Transfer statement:** By written agreement

## Rights and Permissions

**Name:** Thomas Kjellberg
**Email:** txk@cll.com
**Telephone:** (212)790-9200
**Address:** Cowan, Liebowitz & Latman, PC
1133 Avenue of the Americas
New York, NY 10036-6799

## Certification

**Name:** Thomas Kjellberg
**Date:** October 29, 2014

PLTFS0006849

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**
## PA 1-929-090
**Effective Date of Registration:**
October 31, 2014

## Title

**Title of Work:**  The Tracy Anderson Method Presents Dance Cardio Workout DVD

## Completion/Publication

**Year of Completion:** 2008
**Date of 1st Publication:** April 01, 2008
**Nation of 1st Publication:** United States

## Author

- **Author:** Bubi and Babe Exercise, Inc.
  **Author Created:** entire motion picture
  **Work made for hire:** Yes
  **Citizen of:** United States

## Copyright Claimant

**Copyright Claimant:** Tracy Anderson Mind and Body, LLC
24 Hubert St., Third Floor, New York, NY, 10013, United States
**Transfer statement:** By written agreement

## Rights and Permissions

**Name:** Thomas Kjellberg
**Email:** txk@cll.com
**Telephone:** (212)790-9200
**Address:** Cowan, Liebowitz & Latman, PC
1133 Avenue of the Americas
New York, NY 10036-6799

## Certification

**Name:** Thomas Kjellberg
**Date:** October 29, 2014

PLTFS0006841

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## PA 1-929-015

**Effective Date of Registration:**
October 31, 2014

## Title

**Title of Work:**   The Tracy Anderson Method Presents Mat Workout DVD

## Completion/Publication

**Year of Completion:**   2008
**Date of 1st Publication:**   April 01, 2008
**Nation of 1st Publication:**   United States

## Author

• **Author:**   Bubi and Babe Exercise, Inc.
**Author Created:**   entire motion picture
**Work made for hire:**   Yes
**Citizen of:**   United States

## Copyright Claimant

**Copyright Claimant:**   Tracy Anderson Mind and Body, LLC
24 Hubert St., Third Floor, New York, NY, 10013, United States
**Transfer statement:**   By written agreement

## Rights and Permissions

**Name:**   Thomas Kjellberg
**Email:**   txk@cll.com
**Telephone:**   (212)790-9200
**Address:**   Cowan, Liebowitz & Latman, PC
1133 Avenue of the Americas
New York, NY 10036-6799

## Certification

**Name:**   Thomas Kjellberg
**Date:**   October 29, 2014

Page 1 of 2

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## PA 1-929-011

**Effective Date of Registration:**
October 31, 2014

## Title

**Title of Work:**   Tracy Anderson Cardio Dance for Beginners

## Completion/Publication

**Year of Completion:**   2014
**Date of 1st Publication:**   October 01, 2014
**Nation of 1st Publication:**   United States

## Author

•   **Author:**   Bubi and Babe Exercise, Inc.
**Author Created:**   entire motion picture
**Work made for hire:**   Yes
**Citizen of:**   United States

## Copyright Claimant

**Copyright Claimant:**   Tracy Anderson Mind and Body, LLC
24 Hubert St., Third Floor, New York, NY, 10013, United States
**Transfer statement:**   By written agreement

## Rights and Permissions

**Name:**   Thomas Kjellberg
**Email:**   txk@cll.com
**Telephone:**   (212)790-9200
**Address:**   Cowan, Liebowitz & Latman, PC
1133 Avenue of the Americas
New York, NY 10036-6799

## Certification

**Name:**   Thomas Kjellberg
**Date:**   October 29, 2014

Page 1 of 2

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## PA 1-929-093

**Effective Date of Registration:**
October 31, 2014

## Title

**Title of Work:** Tracy Anderson Dance + Cardio

## Completion/Publication

**Year of Completion:** 2013
**Date of 1st Publication:** December 01, 2013
**Nation of 1st Publication:** United States

## Author

• **Author:** Bubi and Babe Exercise, Inc.
**Author Created:** entire motion picture
**Work made for hire:** Yes
**Citizen of:** United States

## Copyright Claimant

**Copyright Claimant:** Tracy Anderson Mind and Body, LLC
24 Hubert St., Third Floor, New York, NY, 10013, United States
**Transfer statement:** By written agreement

## Rights and Permissions

**Name:** Thomas Kjellberg
**Email:** txk@cll.com
**Telephone:** (212)790-9200
**Address:** Cowan, Liebowitz & Latman, PC
1133 Avenue of the Americas
New York, NY 10036-6799

## Certification

**Name:** Thomas Kjellberg
**Date:** October 29, 2014

Page 1 of 2

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## PA 1-929-092

**Effective Date of Registration:**
October 31, 2014

---

## Title

**Title of Work:** The Tracy Anderson Method Presents Post-Pregnancy Workout DVD

## Completion/Publication

**Year of Completion:** 2008
**Date of 1st Publication:** April 01, 2008
**Nation of 1st Publication:** United States

## Author

- **Author:** Bubi and Babe Exercise, Inc.
  **Author Created:** entire motion picture
  **Work made for hire:** Yes
  **Citizen of:** United States

## Copyright Claimant

**Copyright Claimant:** Tracy Anderson Mind and Body, LLC
24 Hubert St., Third Floor, New York, NY, 10013, United States
**Transfer statement:** By written agreement

## Rights and Permissions

**Name:** Thomas Kjellberg
**Email:** txk@cll.com
**Telephone:** (212)790-9200
**Address:** Cowan, Liebowitz & Latman, PC
1133 Avenue of the Americas
New York, NY 10036-6799

## Certification

**Name:** Thomas Kjellberg
**Date:** October 29, 2014

Page 1 of 2

PLTFS0006842

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code,* attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

**PA 1-929-096**

**Effective Date of Registration:**
October 31, 2014

## Title

**Title of Work:**  Tracy Anderson Dance Cardio II

## Completion/Publication

**Year of Completion:** 2010
**Date of 1st Publication:** April 01, 2010
**Nation of 1st Publication:** United States

## Author

- **Author:** Bubi and Babe Exercise, Inc.
  **Author Created:** entire motion picture
  **Work made for hire:** Yes
  **Citizen of:** United States

## Copyright Claimant

**Copyright Claimant:** Tracy Anderson Mind and Body, LLC
24 Hubert St., Third Floor, New York, NY, 10013, United States
**Transfer statement:** By written agreement

## Rights and Permissions

**Name:** Thomas Kjellberg
**Email:** txk@cll.com
**Telephone:** (212)790-9200
**Address:** Cowan, Liebowitz & Latman, PC
1133 Avenue of the Americas
New York, NY 10036-6799

## Certification

**Name:** Thomas Kjellberg
**Date:** October 29, 2014

Page 1 of 2

PLTFS0006846

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

**PA 1-929-012**

**Effective Date of Registration:**
October 31, 2014

## Title _____

**Title of Work:** Tracy Anderson Mat Workout for Beginners

## Completion/Publication _____

**Year of Completion:** 2014
**Date of 1st Publication:** October 01, 2014
**Nation of 1st Publication:** United States

## Author _____

- **Author:** Bubi and Babe Exercise, Inc.
**Author Created:** entire motion picture
**Work made for hire:** Yes
**Citizen of:** United States

## Copyright Claimant _____

**Copyright Claimant:** Tracy Anderson Mind and Body, LLC
24 Hubert St., Third Floor, New York, NY, 10013, United States
**Transfer statement:** By written agreement

## Rights and Permissions _____

**Name:** Thomas Kjellberg
**Email:** txk@cll.com
**Telephone:** (212)790-9200
**Address:** Cowan, Liebowitz & Latman, PC
1133 Avenue of the Americas
New York, NY 10036-6799

## Certification _____

**Name:** Thomas Kjellberg
**Date:** October 29, 2014

Page 1 of 2

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## PA 1-929-097

**Effective Date of Registration:**
October 31, 2014

## Title

**Title of Work:** Tracy Anderson Precision Toning

## Completion/Publication

**Year of Completion:** 2013
**Date of 1st Publication:** September 03, 2013
**Nation of 1st Publication:** United States

## Author

- **Author:** Bubi and Babe Exercise, Inc.
  **Author Created:** entire motion picture
  **Work made for hire:** Yes
  **Citizen of:** United States

## Copyright Claimant

**Copyright Claimant:** Tracy Anderson Mind and Body, LLC
24 Hubert St., Third Floor, New York, NY, 10013, United States
**Transfer statement:** By written agreement

## Rights and Permissions

**Name:** Thomas Kjellberg
**Email:** txk@cll.com
**Telephone:** (212)790-9200
**Address:** Cowan, Liebowitz & Latman, PC
1133 Avenue of the Americas
New York, NY 10036-6799

## Certification

**Name:** Thomas Kjellberg
**Date:** October 29, 2014

Page 1 of 2

PLTFS0006847

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code,* attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## PA 1-929-013

**Effective Date of Registration:**
October 31, 2014

## Title

**Title of Work:** Tracy Anderson The Method for Beginners

## Completion/Publication

**Year of Completion:** 2013
**Date of 1st Publication:** August 06, 2013
**Nation of 1st Publication:** United States

## Author

- **Author:** Bubi and Babe Exercise, Inc.
**Author Created:** entire motion picture
**Work made for hire:** Yes
**Citizen of:** United States

## Copyright Claimant

**Copyright Claimant:** Tracy Anderson Mind and Body, LLC
24 Hubert St., Third Floor, New York, NY, 10013, United States
**Transfer statement:** By written agreement

## Rights and Permissions

**Name:** Thomas Kjellberg
**Email:** txk@cll.com
**Telephone:** (212)790-9200
**Address:** Cowan, Liebowitz & Latman, PC
1133 Avenue of the Americas
New York, NY 10036-6799

## Certification

**Name:** Thomas Kjellberg
**Date:** October 29, 2014

Page 1 of 2

PLTFS0006839

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## PA 1-929-098

**Effective Date of Registration:**
October 31, 2014

---

## Title

**Title of Work:** Tracy Anderson Post-Pregnancy 2 Workout Series

## Completion/Publication

**Year of Completion:** 2013
**Date of 1st Publication:** May 01, 2013
**Nation of 1st Publication:** United States

## Author

- **Author:** Bubi and Babe Exercise, Inc.
  **Author Created:** entire motion picture
  **Work made for hire:** Yes
  **Citizen of:** United States

## Copyright Claimant

**Copyright Claimant:** Tracy Anderson Mind and Body, LLC
24 Hubert St., Third Floor, New York, NY, 10013, United States
**Transfer statement:** By written agreement

## Rights and Permissions

**Name:** Thomas Kjellberg
**Email:** txk@cll.com
**Telephone:** (212)790-9200
**Address:** Cowan, Liebowitz & Latman, PC
1133 Avenue of the Americas
New York, NY 10036-6799

## Certification

**Name:** Thomas Kjellberg
**Date:** October 29, 2014

PLTFS0006848

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## PA 1-929-095

**Effective Date of Registration:**
October 31, 2014

## Title

**Title of Work:** Tracy Anderson Unleash Your Inner Popstar

## Completion/Publication

**Year of Completion:** 2014
**Date of 1st Publication:** May 01, 2014
**Nation of 1st Publication:** United States

## Author

- **Author:** Bubi and Babe Exercise, Inc.
  **Author Created:** entire motion picture
  **Work made for hire:** Yes
  **Citizen of:** United States

## Copyright Claimant

**Copyright Claimant:** Tracy Anderson Mind and Body, LLC
24 Hubert St., Third Floor, New York, NY, 10013, United States
**Transfer statement:** By written agreement

## Rights and Permissions

**Name:** Thomas Kjellberg
**Email:** txk@cll.com
**Telephone:** (212)790-9200
**Address:** Cowan, Liebowitz & Latman, PC
1133 Avenue of the Americas
New York, NY 10036-6799

## Certification

**Name:** Thomas Kjellberg
**Date:** October 29, 2014

Page 1 of 2

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## PA 1-929-094

**Effective Date of Registration:**
October 31, 2014

---

## Title

**Title of Work:** Tracy Anderson's Total Body Mini-Trampoline Workout

## Completion/Publication

**Year of Completion:** 2012
**Date of 1st Publication:** February 01, 2012
**Nation of 1st Publication:** United States

## Author

- **Author:** Tracy Anderson Private Training, LLC
  **Author Created:** entire motion picture
  **Work made for hire:** Yes
  **Citizen of:** United States

## Copyright Claimant

**Copyright Claimant:** Tracy Anderson Mind and Body, LLC
24 Hubert St., Third Floor, New York, NY, 10013, United States
**Transfer statement:** By written agreement

## Rights and Permissions

**Name:** Thomas Kjellberg
**Email:** txk@cll.com
**Telephone:** (212)790-9200
**Address:** Cowan, Liebowitz & Latman, PC
1133 Avenue of the Americas
New York, NY 10036-6799

## Certification

**Name:** Thomas Kjellberg
**Date:** October 29, 2014

Page 1 of 2

PLTFS0006844

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

**PA 1-930-683**

**Effective Date of Registration:**
October 31, 2014

## Title

**Title of Work:** Metamorphosis by Tracy - Omnicentric

## Completion/Publication

**Year of Completion:** 2010
**Date of 1st Publication:** January 03, 2011
**Nation of 1st Publication:** United States

## Author

**Author:** Tracy Anderson Private Training, LLC
**Author Created:** entire motion picture
**Work made for hire:** Yes
**Citizen of:** United States

## Copyright Claimant

**Copyright Claimant:** Tracy Anderson Mind and Body, LLC
24 Hubert St., Third Floor, New York, NY, 10013, United States
**Transfer statement:** By written agreement

## Rights and Permissions

**Name:** Thomas Kjellberg
**Email:** txk@cll.com
**Telephone:** (212)790-9200
**Address:** Cowan, Liebowitz & Latman, PC
1133 Avenue of the Americas
New York, NY 10036-6799

## Certification

**Name:** Thomas Kjellberg
**Date:** October 29, 2014

Page 1 of 2

PLTFS0006851

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## PA 1-930-681

**Effective Date of Registration:**
October 31, 2014

## Title

**Title of Work:** Tracy Anderson Teen Meta

## Completion/Publication

**Year of Completion:** 2013
**Date of 1st Publication:** April 01, 2013
**Nation of 1st Publication:** United States

## Author

- **Author:** Tracy Anderson Private Training, LLC
  **Author Created:** entire motion picture
  **Work made for hire:** Yes
  **Citizen of:** United States

## Copyright Claimant

**Copyright Claimant:** Tracy Anderson Mind and Body, LLC
24 Hubert St., Third Floor, New York, NY, 10013, United States
**Transfer statement:** By written agreement

## Rights and Permissions

**Name:** Thomas Kjellberg
**Email:** txk@cll.com
**Telephone:** (212)790-9200
**Address:** Cowan, Liebowitz & Latman, PC
1133 Avenue of the Americas
New York, NY 10036-6799

## Certification

**Name:** Thomas Kjellberg
**Date:** October 29, 2014

Page 1 of 2

PLTFS0006852

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## PA 1-930-682

**Effective Date of Registration:**
October 31, 2014

---

## Title

**Title of Work:** Tracy Anderson: The Perfect Design Series

## Completion/Publication

**Year of Completion:** 2010
**Date of 1st Publication:** October 01, 2010
**Nation of 1st Publication:** United States

## Author

- **Author:** Bubi and Babe Exercise, Inc.
  **Author Created:** entire motion picture
  **Work made for hire:** Yes
  **Citizen of:** United States

## Copyright Claimant

**Copyright Claimant:** Tracy Anderson Mind and Body, LLC
24 Hubert St., Third Floor, New York, NY, 10013, United States
**Transfer statement:** By written agreement

## Rights and Permissions

**Name:** Thomas Kjellberg
**Email:** txk@cll.com
**Telephone:** (212)790-9200
**Address:** Cowan, Liebowitz & Latman, PC
1133 Avenue of the Americas
New York, NY 10036-6799

## Certification

**Name:** Thomas Kjellberg
**Date:** October 29, 2014

Page 1 of 2

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## PA 1-930-680

**Effective Date of Registration:**
October 31, 2014

## Title

**Title of Work:** Metamorphosis by Tracy - Abcentric

## Completion/Publication

**Year of Completion:** 2010
**Date of 1st Publication:** January 03, 2011
**Nation of 1st Publication:** United States

## Author

- **Author:** Tracy Anderson Private Training, LLC
  **Author Created:** entire motion picture
  **Work made for hire:** Yes
  **Citizen of:** United States

## Copyright Claimant

**Copyright Claimant:** Tracy Anderson Mind and Body, LLC
24 Hubert St., Third Floor, New York, NY, 10013, United States
**Transfer statement:** By written agreement

## Rights and Permissions

**Name:** Thomas Kjellberg
**Email:** txk@cll.com
**Telephone:** (212)790-9200
**Address:** Cowan, Liebowitz & Latman, PC
1133 Avenue of the Americas
New York, NY 10036-6799

## Certification

**Name:** Thomas Kjellberg
**Date:** October 29, 2014

Page 1 of 2

PLTFS0006850

# EXHIBIT 18



Try the **Copyright Public Records System (CPRS)** pilot with enhanced search features and filters.

| Help | Search | History | Titles | Start Over |

---

# Public Catalog

 Copyright Catalog (1978 to present) at DC4
Search Request: Left Anchored Name = Tracy Anderson Mind and Body LLC
Search Results: Displaying 2 of 21 entries



| Labeled View |

---

### *Metamorphosis by Tracy - Glutecentric.*

| | |
|---:|:---|
| **Type of Work:** | Motion Picture |
| **Registration Number / Date:** | PA0001938799 / 2014-10-31 |
| **Application Title:** | Metamorphosis by Tracy - Glutecentric. |
| **Title:** | Metamorphosis by Tracy - Glutecentric. |
| **Description:** | 4 videodiscs (DVD) |
| **Copyright Claimant:** | Tracy Anderson Mind and Body, LLC, Transfer: By written agreement. Address: 24 Hubert St., Third Floor, New York, NY, 10013, United States. |
| **Date of Creation:** | 2010 |
| **Date of Publication:** | 2011-01-03 |
| **Nation of First Publication:** | United States |
| **Authorship on Application:** | Tracy Anderson Private Training, LLC, employer for hire; Citizenship: United States. Authorship: entire motion picture. |
| **Rights and Permissions:** | Thomas Kjellberg, Cowan, Liebowitz & Latman, PC, 1133 Avenue of the Americas, New York, NY, 10036-6799, (212) 790-9200, txk@cll.com |
| **Names:** | Tracy Anderson Private Training, LLC |
| | Tracy Anderson Mind and Body, LLC |



| **Save, Print and Email (Help Page)** | |
|:---|:---|
| Select Download Format | Full Record ▾   Format for Print/Save |
| Enter your email address: |  Email |

---

Help    Search    History    Titles    Start Over

Contact Us | Request Copies | Get a Search Estimate | Frequently Asked Questions (FAQs) about Copyright | Copyright Office Home Page | Library of Congress Home Page



Try the **Copyright Public Records System (CPRS)** pilot with enhanced search features and filters.

| Help | Search | History | Titles | Start Over |

# Public Catalog

 Copyright Catalog (1978 to present) at DC4
Search Request: Left Anchored Name = Tracy Anderson Mind and Body LLC
Search Results: Displaying 17 of 21 entries



Labeled View

***Tracy Anderson: The Pregnancy Project.***

|  |  |
|---|---|
| **Type of Work:** | Motion Picture |
| **Registration Number / Date:** | PA0001938802 / 2014-10-31 |
| **Application Title:** | Tracy Anderson: The Pregnancy Project. |
| **Title:** | Tracy Anderson: The Pregnancy Project. |
| **Description:** | 9 videodiscs (DVD) |
| **Copyright Claimant:** | Tracy Anderson Mind and Body, LLC, Transfer: By written agreement. Address: 24 Hubert St., Third Floor, New York, NY, 10013, United States. |
| **Date of Creation:** | 2013 |
| **Date of Publication:** | 2013-02-01 |
| **Nation of First Publication:** | United States |
| **Authorship on Application:** | Tracy Anderson Private Training, LLC, employer for hire; Citizenship: United States. Authorship: entire motion picture. |
| **Rights and Permissions:** | Thomas Kjellberg, Cowan, Liebowitz & Latman, PC, 1133 Avenue of the Americas, New York, NY, 10036-6799, (212) 790-9200, txk@cll.com |
| **Names:** | Tracy Anderson Private Training, LLC |
|  | Tracy Anderson Mind and Body, LLC |





| **Save, Print and Email (Help Page)** | |
|---|---|
| Select Download Format [Full Record ▾] | [Format for Print/Save] |
| Enter your email address: [                    ] | [Email] |

Help    Search    History    Titles    Start Over

Contact Us  |  Request Copies  |  Get a Search Estimate  |  Frequently Asked Questions (FAQs) about Copyright  |  Copyright Office Home Page  |  Library of Congress Home Page

# EXHIBIT 19

Summary Chart of U.S. Copyright Registration Certificates of TA Works (FRE 1006)

| Reg # | Title | Type of Work | Copyright Claimant | Transfer | Authorship on Application | Authorship |
|---|---|---|---|---|---|---|
| PA 1-929-090 | The Tracy Anderson Method Presents Dance Cardio Workout DVD | Motion Picture (DVD) | Tracy Anderson Mind and Body, LLC | By written agreement | Bubi and Babe Exercise, Inc., employer for hire | Entire motion picture |
| PA 1-929-015 | The Tracy Anderson Method Presents Mat Workout DVD | Motion Picture (DVD) | Tracy Anderson Mind and Body, LLC | By written agreement | Bubi and Babe Exercise, Inc., employer for hire | Entire motion picture |
| PA 1-929-092 | The Tracy Anderson Method Presents Post-Pregnancy Workout DVD | Motion Picture (DVD) | Tracy Anderson Mind and Body, LLC | By written agreement | Bubi and Babe Exercise, Inc., employer for hire | Entire motion picture |
| PA 1-929-096 | Tracy Anderson Dance Cardio II | Motion Picture (DVD) | Tracy Anderson Mind and Body, LLC | By written agreement | Bubi and Babe Exercise, Inc., employer for hire | Entire motion picture |
| PA0001930682 | Tracy Anderson: The Perfect Design Series | Motion Picture (DVD) | Tracy Anderson Mind and Body, LLC | By written agreement | Bubi and Babe Exercise, Inc., employer for hire | Entire motion picture |
| PA 1-929-100 | Metamorphosis by Tracy - Hipcentric | Motion Picture (DVD) | Tracy Anderson Mind and Body, LLC | By written agreement | Tracy Anderson Private Training, LLC, employer for hire | Entire motion picture |
| PA0001930680 | Metamorphosis by Tracy - Abcentric | Motion Picture (DVD) | Tracy Anderson Mind and Body, LLC | By written agreement | Tracy Anderson Private Training, LLC, employer for hire | Entire motion picture |
| PA0001930683 | Metamorphosis by Tracy - Omnicentric | Motion Picture (DVD) | Tracy Anderson Mind and Body, LLC | By written agreement | Tracy Anderson Private Training, LLC, employer for hire | Entire motion picture |

Summary Chart of U.S. Copyright Registration Certificates of TA Works (FRE 1006)

| Reg # | Title | Type of Work | Copyright Claimant | Transfer | Authorship on Application | Authorship |
|-------|-------|--------------|-------------------|----------|--------------------------|-----------|
| PA0001938799 | Metamorphosis by Tracy - Glutecentric | Motion Picture (DVD) | Tracy Anderson Mind and Body, LLC | By written agreement | Tracy Anderson Private Training, LLC, employer for hire | Entire motion picture |
| PA 1-929-094 | Tracy Anderson's Total Body Mini Trampoline Workout | Motion Picture (DVD) | Tracy Anderson Mind and Body, LLC | By written agreement | Tracy Anderson Private Training, LLC, employer for hire | Entire motion picture |
| PA0001938802 | Tracy Anderson: The Pregnancy Project | Motion Picture (DVD) | Tracy Anderson Mind and Body, LLC | By written agreement | Tracy Anderson Private Training, LLC, employer for hire | Entire motion picture |
| PA0001900681 | Tracy Anderson Teen Meta | Motion Picture (DVD) | Tracy Anderson Mind and Body, LLC | By written agreement | Tracy Anderson Private Training, LLC, employer for hire | Entire motion picture |
| PA 1-929-098 | Tracy Anderson Post-Pregnancy 2 Workout Series | Motion Picture (DVD) | Tracy Anderson Mind and Body, LLC | By written agreement | Bubi and Babe Exercise, Inc., employer for hire | Entire motion picture |
| PA 1-929-013 | Tracy Anderson The Method for Beginners | Motion Picture (DVD) | Tracy Anderson Mind and Body, LLC | By written agreement | Bubi and Babe Exercise, Inc., employer for hire | Entire motion picture |
| PA 1-929-097 | Tracy Anderson Precision Toning | Motion Picture (DVD) | Tracy Anderson Mind and Body, LLC | By written agreement | Bubi and Babe Exercise, Inc., employer for hire | Entire motion picture |
| PA 1-929-093 | Tracy Anderson Dance + Cardio | Motion Picture (DVD) | Tracy Anderson Mind and Body, LLC | By written agreement | Bubi and Babe Exercise, Inc., employer for hire | Entire motion picture |
| PA 1-929-095 | Tracy Anderson Unleash Your Inner Popstar | Motion Picture (DVD) | Tracy Anderson Mind and Body, LLC | By written agreement | Bubi and Babe Exercise, Inc., employer for hire | Entire motion picture |

Summary Chart of U.S. Copyright Registration Certificates of TA Works (FRE 1006)

| Reg # | Title | Type of Work | Copyright Claimant | Transfer | Authorship on Application | Authorship |
|---|---|---|---|---|---|---|
| PA 1-929-011 | Tracy Anderson Cardio Dance Workout [for beginners] | Motion Picture (DVD) | Tracy Anderson Mind and Body, LLC | By written agreement | Bubi and Babe Exercise, Inc., employer for hire | Entire motion picture |
| PA 1-020-012 | Tracy Anderson Mat Workout for Beginners | Motion Picture (DVD) | Tracy Anderson Mind and Body, LLC | By written agreement | Bubi and Babe Exercise, Inc., employer for hire | Entire motion picture |

# EXHIBIT 20

# FILED UNDER SEAL

# EXHIBIT 21

# LODGED WITH A SEPARATELY FILED NOTICE OF LODGING

# EXHIBIT 22

# LODGED WITH A SEPARATELY FILED NOTICE OF LODGING

# EXHIBIT 23

# LODGED WITH A SEPARATELY FILED NOTICE OF LODGING

# EXHIBIT 24

# LODGED WITH A SEPARATELY FILED NOTICE OF LODGING

# EXHIBIT 25

# LODGED WITH A SEPARATELY FILED NOTICE OF LODGING

MANATT, PHELPS & PHILLIPS, LLP
CHRISTOPHER CHATHAM (CA Bar #240972)
  CChatham@manatt.com
NATHANIEL L. BACH (CA Bar #246518)
  NBach@manatt.com
SARAH E. MOSES (CA Bar #291491)
  SMoses@manatt.com
ANDREA D. GONZALEZ (CA Bar #336134)
  ADGonzalez@manatt.com
2049 Century Park East, Suite 1700
Los Angeles, California  90067
Telephone:   (310) 312-4000
Facsimile:   (310) 312-4224

Attorneys for Defendants
MEGAN ROUP and THE SCULPT SOCIETY, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACY ANDERSON MIND AND BODY, LLC, a Delaware limited liability company; and T.A. STUDIO NEW YORK LLC, a California limited liability company, <br><br> Plaintiffs, <br><br> v. <br><br> MEGAN ROUP, an individual; and THE SCULPT SOCIETY, LLC, a California limited liability company, <br><br> Defendants. | No. 2:22-cv-04735-PSG-E <br><br> Hon. Philip S. Gutierrez <br><br> **DECLARATION OF MEGAN ROUP IN SUPPORT OF MOTION FOR FULL OR PARTIAL SUMMARY JUDGMENT** <br><br> Hearing Date:   June 7, 2024 <br> Hearing Time:   1:30 p.m. <br> Courtroom:   6A |

### DECLARATION OF MEGAN ROUP

I, Megan Roup, declare as follows:

    1.    I am a defendant in this lawsuit and the creator and owner of The Sculpt Society, LLC ("TSS"). I submit this declaration in support of Defendants' Motion for Full or Partial Summary Judgment. I have personal knowledge of the following facts and could competently testify about them.

    2.    I hold a bachelor of Fine Arts and Dance from New York University, Tisch School of the Arts. I am certified as a Group Fitness Instructor by ACE Certifications, and hold Pre- and Post-natal Certifications by ProNatal Fitness. Before founding TSS, I danced professionally for the Brooklyn Nets.

    3.    I also worked part time at T.A. Studio New York LLC ("TANY") as a trainer from early 2011 until February 2, 2017. As a trainer at TANY, I led dance-cardio and other exercise classes. After I voluntarily left my employment at TANY, I began my own fitness business, which became TSS.

    4.    Upon joining TANY, I signed a trainer agreement in February 2011. A true and correct copy of that agreement is attached as **Exhibit A**. I was never provided a copy of this agreement for my files, and did not see this agreement again after signing it until after Plaintiffs filed this lawsuit in July 2022.

    5.    Following the conclusion of my training with TANY, I signed an employment agreement with TANY on or about June 11, 2011. A true and correct copy of that agreement is attached as **Exhibit B**. I was never provided a fully executed copy of this agreement for my files, and did not see this agreement again after signing it until after Plaintiffs filed this lawsuit in July 2022.

    6.    On or about February 7, 2017, after my employment had ended, TANY sent me an "exit letter." The letter indicated that it was sent to "remind" me of my ongoing obligations to TANY, stating that I could not disclose or use "the Tracy Anderson methods." However, the letter did not acknowledge that

1   information or materials known or disclosed to the public were not confidential, and

2   did not explain what specific materials were confidential.  A true and correct copy

3   of this letter is attached as **Exhibit C**.

4         7.     I did not take any of TANY's "Confidential Information" with me

5   when I left TANY in February 2017, including any non-public class write-ups,

6   customer lists, training materials, business plans, or any other material or

7   information.  After leaving TANY, I did not have access to any of TANY's

8   "Confidential Information."

9         8.     At no time after leaving TANY did I ever reference or use any of

10  TANY's supposedly "Confidential Information" to create, develop, or operate TSS

11  or for any other reason.  I have never used nor thought about TANY's "Confidential

12  Information" when planning or teaching one of my workout classes.  And at no

13  time after leaving TANY did I ever disclose any of TANY's "Confidential

14  Information" to any third parties.

15        9.     Rather, after leaving TANY, I developed my own fitness business

16  under the TSS name, using business practices that are common in the fitness

17  industry—including creating write-ups for my exercise classes and shooting video

18  of myself performing exercise routines that I would then share with my trainers.

19       10.    TSS currently offers in-person classes and hundreds of on-demand

20  exercise videos, including dance-cardio and sculpting (*i.e.*, body and muscle

21  sculpting and toning) classes.  The exercises that are part of TSS's classes have

22  their roots in various disciplines of fitness, muscle-sculpting, dance, yoga, Pilates,

23  barre, meditation, and aerobics, all of which are designed to confer physical and

24  mental benefits on the participant taking the class.

25       11.    As most fitness instructors do, I verbally "cue" my classes, meaning

26  that I vocally instruct the movements that I am performing in my classes so that

27

28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

2

DECLARATION OF MEGAN ROUP IN SUPPORT OF MOTION FOR FULL OR PARTIAL SUMMARY
JUDGMENT

1   participants can better follow the flow, understand proper form and technique, and

2   also stay motivated and energized throughout a class.

3       12.    About a year after I stopped working for TANY, on or about March

4   13, 2018, I received a cease and desist letter from TANY, demanding that I remove

5   "video depicting exercise routines and movements developed by [TANY] which [I]

6   would have used at [TANY]" and that I refrain from using TANY's "movements

7   and techniques."  TANY's letter did not identify any specific video that it wanted

8   taken down or movements that it claimed to own.  If I did not do as TANY

9   demanded, TANY threatened to "retain counsel and pursue all available legal

10  remedies."  Attached hereto as **Exhibit D** is a true and correct copy of TANY's

11  March 13, 2018 letter.

12      13.    I responded to TANY's cease and desist letter on or about March 29,

13  2018.  I explained that I was in compliance with my post-employment obligations

14  to TANY and disputed any suggestion that I violated my employment agreement.

15  Nevertheless, in a good faith effort to address TANY's concerns, I asked TANY to

16  identify which "video" TANY referenced in its March 13, 2018 letter, and to

17  explain how that video supposedly violated the terms of my June 11, 2011

18  employment agreement.  Attached hereto as **Exhibit E** is a true and correct copy of

19  my March 29, 2018 letter to TANY, as produced by TANY in this litigation.  I

20  never received a response from TANY to my letter in any form before this lawsuit

21  was filed, more than four years later.

22      I declare under penalty of perjury under the laws of the United States of

23  America that the foregoing is true and correct, and that this declaration was

24  executed in West Hollywood, California, on April 17, 2024.

25

26  

        Megan Roup

27

28

Manatt, Phelps & Phillips, LLP
Attorneys at Law
Los Angeles

DECLARATION OF MEGAN ROUP IN SUPPORT OF MOTION FOR FULL OR PARTIAL SUMMARY JUDGMENT

# EXHIBIT A

# FILED UNDER SEAL

# EXHIBIT B

# FILED UNDER SEAL

# EXHIBIT C

February 2, 2017

Dear Ms. Megan Roup

We are in receipt of your notice that you will be leaving your employment as a Trainer with T.A. Studio LLC .  This letter is confirming that your last day will be February 2, 2017. Even though you are leaving the Company, you continue to have certain obligations to the Company. To remind you of those obligations, we have enclosed a copy of the Trainer Agreement you signed upon being hired. These obligations broadly include the following:

*Preservation of Confidential Information for the benefit of the Company*.  You have agreed not to use or disclose any Confidential Information of the Company. This includes (a) the Tracy Anderson methods, including the exercise routines, formulas, sequences, and movements and CRM Methods, (b) nutritional recipes, components and materials, and (c) customer lists and private information concerning customers provided to the Company.

*Non-Solicitation of Company Personnel*.  For a period of one year following the Cessation Date, you are not to take any action designed to solicit or encourage others to leave their employment with the Company, or otherwise encourage employees of the Company to engage in activities adverse to the Company's interest.

*Non-Disparagement*.  You have agreed that you will not disparage the Company or any affiliate of the Company, or engage in conduct that would impair the goodwill of the Company or any affiliate of the Company.

*Return of All Materials*.  On or before the Cessation Date, you are to return all property of the Company or its affiliates, of any nature and in whatever medium, in your possession or control.  You may not retain or make reproductions of such materials, whether physical, digital, or otherwise.

The Company's willingness to train and employ you on the terms of your employment, and the willingness to share its Confidential Information with you during the tenure of your employment, was expressly conditioned upon your agreement to the terms of your Trainer Agreement.  Accordingly, we must reserve all rights and remedies for any breach of the Trainer Agreement, or any other agreement that you may have with the Company.

Feel free to contact the Company if you have any questions regarding this letter or the terms of the Trainer Agreement.

T.A. Studio City LLC

Page 2

By: Joseph Hidalgo

MR-TSS_004050

# EXHIBIT D

13 March 2018

Ms. Megan Roup
180 Water Street #1502
New York, NY. 10038

Dear Megan:

We are sending you this correspondence to remind you of your post-employment duties now that your employment relationship with T.A. Studio, LLC ("TAM" or the "Company") has been terminated.

Upon commencement of your engagement by TAM, you signed a letter agreement dated as of June 11, 2011 outlining your work requirements and certain post-employment obligations required by TAM in order to join the TAM team. Specifically, as you may recall, you agreed to the following:

1.  In the Section labeled "Restrictive Covenants," you agreed, during employment and thereafter, not to "use or disclose...proprietary trade secrets, customer and client lists, drawings, designs, marketing plans, sales scripts, training materials or methods (including but not limited to, *workouts, movements, exercise routines, exercise formulas, nutrition advice, recipes, content, prescriptions, dances, sequences, muscular structure work and equipment*), CRM methods, ...." Pursuant to this clause, you have agreed not to use of any of the elements on this list of TAM Proprietary Information in perpetuity. TAM owns and/or controls all rights to such elements, each of which comprises a central asset of TAM's business and methods.

2.  Further on this that section, you agreed that "the Company will own all right, title and interest (including, but not limited to, patent rights, copyrights, trade secret rights and other rights throughout the world) in any inventions, works of authorship, ideas or information made or conceived or reduced to practice...." Thus, any modifications you added to the exercise routines or movements, or any routines you created for us at TAM during your employment, are in fact owned by TAM.

We understand that you are continuing to work in the field of personal training, and of course we want all of our former employees to achieve great success in their chosen endeavors. However, TAM has invested years, untold efforts and substantial funding to

MR-TSS_008471

# TA    TRACY ANDERSON

develop the very specific and unique assets, routines, techniques and methods of training, and have designed a business based on that material, and we must and do enforce all of our rights in our proprietary and protected information and assets.

We understand you have posted video depicting exercise routines and movements developed by TAM which you would have used at TAM. We respectfully must require you to take down all such video, and refrain from using these movements and techniques in your training endeavors, whether live in class or on video. We must protect our proprietary information and hope you will respect these requirements.

At any time that we become aware of any misuse, we will retain counsel and pursue all available legal remedies. Of course, we wish to avoid that. Thus, please confirm to me in writing that you have taken down the video and that you will refrain from using any such exercise routines and movements in your own trainer-client sessions and classes as well as videos.

Thank you.

Best,

Grace Paeck
Chief Operating Officer

# EXHIBIT E

# FILED UNDER SEAL